UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 15-9814 DSF (AGRx) | Date | 5/11/16 |
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | DALE S. FISCHER, United States District Judge |

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING Defendants' Motion to Dismiss (Dkt. No. 23)

Defendant Live Nation Entertainment, Inc. acquired Ticketmaster Entertainment, Inc. in 2010. The statute of limitations to challenge a merger under section 7 of the Clayton Act is four years. Nonetheless, Plaintiff Complete Entertainment Resources LLC filed this case, which includes a claim challenging the initial merger under section 7, in late 2015. Defendants move to dismiss based on the statute of limitations.

Plaintiff makes two major, somewhat contradictory, arguments in opposition to the motion. First, it claims that the merger was just one part of an ongoing monopolization scheme and, thus, part of a continuing violation under section 2 of the Sherman Act. The Court rejects this argument for the same reasons it was rejected in <u>Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.</u>, 392 F.3d 265 (8th Cir. 2004) and <u>Z Technologies Corp. v. Lubrizol Corp.</u>, 753 F.3d 594 (6th Cir. 2014). <u>Midwestern Mach.</u> rejected the idea that acts taken after the consummation of a merger could extend the section 7 statute of limitations indefinitely on a continuing violation theory:

> Applying this rationale to mergers makes no sense. If the initial violation was the merger itself, none of the "continuing violations" Midwestern alleges can justify restarting the statute of limitations because these acts were not undertaken to further an illegal policy of merger or to maintain the merger. Otherwise, every business decision could qualify as a continuing violation to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

restart the statute of limitations as long as the firm continued to desire to be merged. Once the merger is completed, the plan to merge is completed, and no overt acts can be undertaken to further that plan.

Midwestern Mach., 392 F.3d at 271. Z Technologies applied the same basic logic to the strategy employed by Plaintiff here – an attempt to use "continuing violations" of section 2 of the Sherman Act as a backdoor around the Clayton Act statute of limitations for challenging a merger:

> Although it is true that the Sherman Act regulates a broader swath of conduct than the Clayton Act, the claim in the present case is for an acquisition-merger monopoly, which is the precise conduct governed by the Clayton Act. There is no reason to treat the same conduct differently in sister statutes that are designed to promote the same legislative objective. Moreover, the same statute – 15 U.S.C. §15b – provides the statute of limitations for each. There is nothing in 15 U.S.C. § 15b that suggests it should be applied one way for merger-acquisition claims under the Sherman Act but differently for merger-acquisition claims under the Clayton Act.

Z Technologies, 753 F.3d at 602-603.

The Court finds this reasoning persuasive. Section 7 of the Clayton Act is the mechanism for challenging a potentially anticompetitive merger. It has a statute of limitations. If a merger itself violates the antitrust laws, the merger must be challenged within the limitations period. It cannot be the case that if a merger leads to monopoly power then anything anticompetitive that the newfound monopolist does is a "continuing violation" that began with the merger, allowing the merger to be challenged indefinitely under section 2 of the Sherman Act.[1] If that were true, the statute of limitations for section 7 of the Clayton Act would be written out of the law.

Plaintiff's second theory under the "hold and use" or "new use" doctrine fares no better. The "hold and use" doctrine allegedly allows the Clayton Act statute of limitations to be restarted "if assets are used in a different manner from the way that they were used when the initial acquisition occurred, and that new use injures the plaintiff." Midwestern Mach., 392 F.3d at 273. The hold and use doctrine is not particularly well-

---

[1] Divestiture of assets can be a remedy for a section 2 violation. But an allegation that divestiture is needed to prevent a section 2 violation is different from a direct challenge to a previously consummated merger.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

developed and if interpreted too broadly could easily eviscerate the statute of limitations for section 7 of the Clayton Act. The Court is skeptical of the legitimacy of the hold and use doctrine in part for this reason. The Court can find no Ninth Circuit opinion adopting it and has found only two district court cases from within the Circuit that apply it, both relatively recently. See Free Freehand Corp. v. Adobe Sys. Inc., 852 F. Supp. 2d 1171, 1188-89 (N.D. Cal. 2012); Abbyy USA Software House, Inc. v. Nuance Commc'ns Inc., 2008 WL 4830740, *6 (N.D. Cal. 2008). The theory stems from two Supreme Court decisions in government enforcement cases that did not even involve the statute of limitations for a private antitrust case. See Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1050-51 (8th Cir. 2000) (citing United States v. ITT Cont'l Baking Co., 420 U.S. 223, 240 (1975) and United States v. E.I. du Pont de Nemours & Co., 353 U.S. 586, 589 (1957)). It is difficult to understand why a potentially much later act by an acquirer of assets should serve to restart the statute of limitations for challenging the original acquisition of the assets. It makes much more sense to challenge the later anticompetitive act itself, rather than to couch the challenge as one against the merger or asset acquisition.

Every section 7 merger challenge is based on the concept that an acquiring firm will be able to do anticompetitive things after the acquisition that it could not have done prior to the acquisition. Section 7 bars any acquisition where "the effect of such acquisition *may be* substantially to lessen competition, or *to tend* to create a monopoly." 15 U.S.C. § 18 (emphasis added). In this light, it is obvious that the hold and use doctrine – to the degree that it is even valid at all – cannot be so broad that any change in operations at any time post-merger allows a long consummated merger to be challenged. The Court need not explore this issue in detail because whatever the precise contours of the doctrine, it does not apply to cases like this one where the complained of "new use" was, in fact, suspected and complained about prior to the merger. See also Midwestern Mach., 392 F.3d at 273 ("Unlike du Pont, it was clear at the time of the merger here that the combination . . . could lessen competition."). Judicially noticeable documents show that public complaints were made about the Live Nation/Ticketmaster merger that are similar to the complaint in this case – preferential treatment for Live Nation/Ticketmaster artist presale ticketing services to the exclusion of competitors. See United States v. Ticketmaster Entertainment, Inc., CV 10-139 RMC (D.D.C.) (Dkt. No. 13-2 at 19). In fact, an extremely similar antitrust action filed years prior to the merger claimed that Ticketmaster was using its exclusive contracts with promoters – including Live Nation's predecessor – to reduce competition for artist presale ticketing services in basically the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

same way as alleged here.  See Defs.' Suppl. Req. J. Notice, Ex. A.[2]  So even if the details may have changed in some way, there is no plausible argument that Plaintiff's "new use" allegations are actually new.

The motion to dismiss is GRANTED.  In opposition, Plaintiff argues that it is also seeking to challenge certain purchases by Live Nation of live music festivals.  The Court agrees with Defendants that these allegations are not clearly alleged in the complaint as it currently stands.  Counsel are to meet and confer to discuss whether Defendants will stipulate to an amendment of the complaint to add an explicit challenge to the festival acquisitions.  If not, Plaintiff should file a noticed motion for leave to amend.

IT IS SO ORDERED.

---

[2] Plaintiff's objection to judicial notice of this complaint misunderstands its relevance.  The point is not the underlying truth of the allegations.  The point is whether the kinds of conduct raised by Plaintiff in this case were understood as potentially anticompetitive behavior that could stem from the merger.  That others had raised the possibility (or reality) of such conduct prior to the merger clearly shows that this type of conduct was understood to be a potential result of the merger at the time it happened.  Cf. Free Freehand Corp. v. Adobe Sys. Inc., 852 F. Supp. 2d 1171, 1188-89 (N.D. Cal. 2012) (hold and use doctrine applied where acquirer engaged in act that it had explicitly disclaimed at time of merger).