UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | CV 15-9814 DSF (AGRx) | Date | 5/11/16 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc., et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order DENYING Plaintiff's Motion for Preliminary Injunction (Dkt. No. 27)

Plaintiff Complete Entertainment Resources LLC d/b/a Songkick moves to preliminarily enjoin Defendants Live Nation Entertainment, Inc. and Ticketmaster LLC from requiring Plaintiff or artists to pay service fees to Defendants in order for artists to receive ticket allocations for artist presales. Because Plaintiff has failed to show virtually any likelihood of success on the merits and has only made a weak showing, at best, as to irreparable harm, the motion is denied.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff . . . , so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

The complaint alleges that antitrust law forbids certain of Defendants' activities in the alleged artist presale ticketing services market. But the preliminary injunction motion fails to provide any showing that antitrust law bars anything Defendants are doing. Defendants have (mostly) exclusive contracts with performance venues that allow Defendants to sell and process tickets for performances at those venues. While the exclusive contracts are at issue in the lawsuit, the current motion makes no serious attempt to demonstrate that these contracts, in and of themselves, violate antitrust law.[1] The exclusive contracts generally include a carveout for the venue to sell "house seats" outside of the Ticketmaster system. The parties agree that "house seats" are generally defined to include tickets provided to a performing artist "for distribution through legitimate fan clubs in accordance with current guidelines (i.e., fan club holds)." Ray Decl., Ex. A, ¶¶ 2(b), 14. The contracts do not appear to define what "current guidelines" are referred to and the evidence provided does not seem to explicitly explain it either. However, it appears that the practice between Defendants and the venues is that the "current guidelines" are a fan club policy promulgated by Defendants at Defendants' discretion.

Defendants have sometimes found that a "fan club" did not satisfy their policy for a legitimate fan club under the fan club policy and relevant venue contract. When that happens, Defendants have, at least sometimes, asked the venue not to release tickets to the artist for presale through that fan club. Plaintiff fails to provide any reason why this is illegitimate on its face or why Plaintiff should be allowed to interject itself into the contracts between Defendants and the venues. Plaintiff almost exclusively focuses on two instances, one involving the band Alabama Shakes and the other, Weird Al Yankovic. In those cases – both occurring after this suit was filed – Defendants found that the fan clubs did not comply with the fan club policy. Nevertheless, Defendants were willing to release tickets to the artist if standard Ticketmaster fees were paid to them. In both cases, the artist accepted that condition.

Plaintiff essentially seeks to enjoin Defendants from enforcing the "fan club" provision in their contracts with venues. Plaintiff seems to think that "artist presales" should be conducted with no interference at all from Defendants.[2] But that is not what

---

[1] Ticketmaster's exclusive contracts with venues were the subject of a previously unsuccessful challenge by a different plaintiff. See Ticketmaster Corp. v. Tickets.com, Inc., 2003 WL 21397701 (C.D. Cal. 2003) (Hupp, J.), aff'd 127 Fed.Appx. 346 (9th Cir. 2005).

[2] The alleged market is for artist presale ticketing services, but Plaintiff fails to provide any economic analysis that this is a meaningful market separate from the type of general ticketing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

the contracts between Defendants and the venues say. The contracts provide for non-Ticketmaster sales of "house seats" by performing artists via "legitimate fan clubs in accordance with current guidelines." Plaintiff appears to believe that Defendants' purported market power in the ticketing business somehow means that Defendants cannot enforce the "legitimate" aspect of the fan club holdback. But Plaintiff provides no remotely valid or persuasive antitrust analysis to back up this belief. The logic is basically (1) Defendants have a large market share in the ticketing services business, (2) Defendants are preventing Plaintiff, a competitor, from doing something it wants to do, therefore (3) Defendants should be stopped by this Court. That is not an antitrust analysis. That Defendants threatened to block two particular artist presales is far short of a showing that Defendants' behavior is maintaining, enhancing, or exploiting Defendants' market power in any relevant market.[3]

Defendants' actions appear to be allowed by their contracts with various venues. As noted above, Plaintiff fails to make any serious antitrust attack on those exclusive contracts in this motion. There is also no attempt to demonstrate that Defendants' fan club policy, on its face, is anticompetitive. Plaintiff attempts to show, in its reply, that other "compliant" fan clubs are no different from the Alabama Shakes and Weird Al Yankovic fan clubs, but only do so through unhelpful, out of context webpage screen shots and a conclusory chart prepared by one of Plaintiff's employees.[4] See generally Bellin Decl., Ex A-U. And even if it were true that Defendants misapplied the policy in those two circumstances, misapplication of the policy in two limited instances would be insufficient to demonstrate an illegitimate scheme to monopolize. Plaintiff attempts to show Defendants' bad faith through accusations that the Alabama Shakes and Weird Al Yankovic actions were taken in retaliation for the filing of this lawsuit, but these accusations are only supported by hearsay related by Plaintiff's own employees. See Baron Decl. ¶¶ 25, 32. Defendants directly deny that they ever stated that they took the

---

services that Defendants engage in.

[3] The Court understands that Plaintiff contends that Defendants have interfered with many artist presales. However, for those presales there is absolutely no discussion or analysis at all, and they cannot form the basis of any showing of a likelihood of success on the merits.

[4] The general subject matter of the chart *could* be helpful, but the vague descriptions provided by this particular chart skirt some of the key disputes between the parties – e.g., what kind of content the fan club provides beyond ticket presales. See Bellin Decl., Ex. Q. Plaintiff has the burden of proof on this motion, and the Court cannot simply take its unsupported word that there are no substantial differences in the content offered by these fan clubs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

actions in retaliation for this lawsuit. See Zaidi Decl. ¶ 27.

The need for a limiting definition of "fan club" is apparent; otherwise Defendants' exclusive rights for ticket sale servicing could be eviscerated by phony direct "fan club" sales that were merely backdoor ways of cutting Ticketmaster out of the deal. Without some showing that Defendants are drafting or applying their policy in some manner that extends beyond the legitimate need for a fan club definition, there is no reason to believe that Defendants' actions violate antitrust law.

Plaintiff has also failed to demonstrate irreparable harm. Loss of money is typically not irreparable harm, and that is the harm that Plaintiff would suffer absent an injunction. Plaintiff claims that the loss of money and goodwill would be so severe that it could go out of business. The Court is not persuaded. Defendants have demonstrated that Plaintiff has room to continue to operate either with venues not related to Defendants or by cooperating with Defendants' fan club policy. While that might result in a smaller company than Plaintiff would wish, that kind of harm is simple monetary harm that could be compensated at the end of the case. Further, even if some small showing of likelihood of irreparable harm has been made, it fails to outweigh the failure to raise any substantial likelihood of success on the merits or even serious questions as to the merits.[5]

The motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

---

[5] Given Plaintiff's failure to make any persuasive showing on the merits or irreparable harm, the balance of the equities and the public interest favors denial of the motion.