1  LATHAM & WATKINS LLP
       Daniel M. Wall (SBN 102580)
2        *dan.wall@lw.com*
       Timothy L. O'Mara (SBN 212731)
3        *tim.o'mara@lw.com*
       Andrew M. Gass (SBN 259694)
4        *andrew.gass@lw.com*
       Kirsten M. Ferguson (SBN 252781)
5        *kirsten.ferguson@lw.com*
   505 Montgomery Street, Suite 2000
6  San Francisco, California 94111-6538
   Telephone: +1.415.391.0600
7  Facsimile: +1.415.395.8095

8  *Attorneys for Defendant Live Nation*
   *Entertainment, Inc. and Defendant and*
9  *Counter-Claimant Ticketmaster LLC*

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12          WESTERN DIVISION JUDICIAL DISTRICT

13

14  Complete Entertainment Resources LLC       CASE NO. 2:15-CV-09814 DSF
    d/b/a Songkick,                            (AGRx)
15
                       Plaintiff,              **DEFENDANTS AND COUNTER-**
16                                             **CLAIMANT'S MEMORANDUM**
           v.                                  **OF CONTENTIONS OF FACT AND**
17                                             **LAW**
    Live Nation Entertainment, Inc.;
18  Ticketmaster LLC,                          The Honorable Dale S. Fischer

19                     Defendants.             Pretrial Conference & *Daubert* Hearing
                                               Date:      Oct. 23, 2017
20                                             Time:      3:00 p.m.
                                               Place:     Courtroom 7D
21  Ticketmaster LLC,

22                     Counter-Claimant,       **REDACTED VERSION**
                                               **OF DOCUMENT PROPOSED TO**
23         v.                                  **BE FILED UNDER SEAL**

24  Complete Entertainment Resources LLC
    d/b/a Songkick,
25
26                     Counter Defendant.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                               DEFS. AND COUNTER-CLAIMANT'S
                                               MEM. OF CONTENTIONS OF FACT & LAW
                                               CASE NO. 2:15-CV-09814 DSF (AGRx)

# TABLE OF CONTENTS

**Page**

I.    SUMMARY STATEMENT OF SONGKICK'S CLAIMS ........................... 1

II.   CONTENTIONS OF LAW (SONGKICK'S AFFIRMATIVE CLAIMS) ................................................................................................. 3

    A.   Claim 1: Songkick Claims that Defendants Violated Section 1 of the Sherman Act ........................................................... 3

        1.   Songkick Claims That Defendants Harmed Competition By Tying ....................................................... 4

        2.   Songkick Claims That Defendants Harmed Competition By Exclusive Dealing ................................. 4

        3.   Songkick Claims That Defendants Harmed Competition Through A Vertically Arranged Boycott ........................................................................................ 5

        4.   Songkick Claims That Defendants Harmed Competition Through A Hub-And-Spoke Conspiracy ................................................................................ 5

    B.   Claim 2: Songkick Claims Defendants Violated Section 2 Of The Sherman Act ............................................................... 6

        1.   Unilateral Refusal To Deal ............................................ 7

        2.   Vertically Arranged Boycotts ....................................... 7

        3.   Tying .................................................................................. 8

        4.   Exclusive Dealing ........................................................... 8

    C.   Claim 3: Songkick Claims Defendants Misappropriated Its Trade Secrets .............................................................................. 8

        1.   Songkick Must Establish That The Alleged Trade Secrets Qualify For CUTSA Protection Before It May Claim Misappropriation ......................................... 9

            a.   Songkick Must Identify Its Trade Secrets With Reasonable Particularity To Gain CUTSA Protection ......................................... 9

            b.   Songkick Must Establish That The Alleged Trade Secrets Had Independent Economic Value ....................................................................... 10

            c.   Songkick Must Establish That It Took Reasonable Measures To Keep The Alleged Trade Secrets Confidential ................................ 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

2.   Songkick Must Establish That Defendants Misappropriated The Alleged Trade Secrets By Use, Disclosure, Or Acquisition By "Improper Means" ........................................................................... 11

3.   Songkick Must Establish That It Suffered Damages Caused By Defendants' Alleged Misappropriation ................................................................. 13

D.   Claim 4: Songkick Claims Defendants Violated The Computer Fraud And Abuse Act ("CFAA"), 18 U.S.C. § 1030 ............................................................................... 13

E.   Claim 5: Songkick Claims Defendants Intentionally Interfered With Songkick's Contractual Relations ........................... 14

F.   Claim 6: Songkick Claims Defendants Intentionally Interfered With Songkick's Prospective Economic Relations ........................................................................ 15

G.   Claim 7: Songkick's Promissory Estoppel Claim ......................... 15

H.   Claim 8: Songkick Claims Defendants Committed An "Unfair" Or "Unlawful" Business Practice In Violation Of The California Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.* ............................................................... 16

III.   CONTENTIONS OF FACT (SONGKICK'S AFFIRMATIVE CLAIMS) ............................................................................... 16

A.   Songkick Cannot Meet Its Burden To Prove Violations of The Sherman Act, Section 1 ............................................... 16

1.   Ticketmaster Owns The Exclusive Rights To Conduct Artist Presales At Ticketmaster Venues ................... 16

2.   Songkick Cannot Prove That "Artist Presale Ticketing Services" Is A Distinct Market From "Concert Venue Ticketing Services" ............................... 17

3.   Songkick Cannot Show That Ticketmaster's Acquisition of Artist Presale Rights Is The Result Of The Unlawful Exclusive Dealing ...................................... 17

a.   Songkick Cannot Prove It Was Foreclosed From The Artist Presales Market ................................. 17

b.   Songkick Does Not Have Antitrust Standing To Challenge Ticketmaster's Exclusive Contracts In The "Concert Services" Market .............. 18

c.   Songkick Cannot Prove Foreclosure In The "Concert Services" Market ........................................ 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

4.    Songkick Cannot Prove That Ticketmaster's Acquisition Of Artist Presale Rights Is The Result Of Unlawful Tying ........................................... 20

5.    Songkick Cannot Prove That Ticketmaster Engaged In A Hub-And-Spoke Conspiracy To Boycott Songkick ............................................. 20

6.    Songkick Cannot Prove That Ticketmaster Engaged In A Vertical Conspiracy To Boycott Songkick ..................................................... 21

7.    Songkick Cannot Prove A Causal Antitrust Injury ................. 21

8.    Songkick Cannot Otherwise Prove That Defendants Entered Into Any Unreasonable Restraint Of Trade ............................................... 22

B.    Songkick Cannot Meet Its Burden To Prove Violations of Section 2 Of The Sherman Act .......................................... 23

1.    Songkick Cannot Prove That "Artist Presale Ticketing Services" Is A Distinct Market From "Concert Venue Ticketing Services" ..................... 23

2.    Songkick Cannot Prove That Ticketmaster Has Monopoly Power Or A Dangerous Probability Of Achieving Monopoly Power In The Artist Presale Ticketing Services Market ..................................... 23

3.    Songkick Cannot Prove That Defendants Engaged In Exclusionary Conduct .................................. 24

      a.    Songkick Cannot Prove Defendants Engaged In An Anticompetitive Refusal To Deal With Songkick ..................................... 24

      b.    Songkick Cannot Prove Defendants Engaged In Exclusionary Tying, Exclusive Dealing, Or Vertically Arranged Boycotts .................... 25

      c.    Songkick Cannot Prove Defendants Otherwise Engaged In Exclusionary Conduct .......................................... 25

4.    Songkick Cannot Prove That It Suffered Any Antitrust Injury As A Result Of Any Alleged Ticketmaster Anticompetitive Conduct .................... 25

C.    Songkick Cannot Meet Its Burden To Prove Trade Secret Misappropriation .............................................. 25

1.    Songkick Cannot Meet Its Burden Of Proving That The Alleged Trade Secrets Qualify For CUTSA Protection ............................................... 26

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

|   |   | a. | Songkick Has Not Identified Its Alleged Trade Secrets With Particularity ................................... 26 |
|   |   | b. | Songkick Cannot Establish That The Alleged Trade Secrets Had Independent Economic Value ........................................................ 31 |
|   |   | c. | Songkick Cannot Establish That It Took Reasonable Measures To Maintain Secrecy ................. 32 |
|   | 2. |   | Songkick Cannot Meet Its Burden Of Proving That Defendants Used, Disclosed, or Improperly Acquired The Alleged Trade Secrets ........................................ 33 |
|   |   | a. | Because Ticketmaster Independently Developed TM360, Songkick Cannot Demonstrate That Defendants Used The Artist Toolbox ...................................... 34 |
|   |   | b. | Songkick Cannot Establish That Defendants Used Any Of The Other Alleged Trade Secrets ........................................................ 35 |
|   |   | c. | Defendants' Acquisition Of The Publicly-Available "Test Sites" Was Not Wrongful ................... 36 |
|   |   | d. | Songkick Cannot Show That Defendants Disclosed Any Of The Alleged Trade Secrets ........................................................ 37 |
|   | 3. |   | Songkick Cannot Establish That It Is Entitled To Damages ............................................................ 37 |
|   |   | a. | Songkick Is Not Seeking Actual Loss As A Result Of The Alleged Misappropriation .................... 37 |
|   |   | b. | Songkick Cannot Prove That Defendants Were Unjustly Enriched As A Result Of The Alleged Misappropriation ....................................... 39 |
| D. |   |   | Songkick Cannot Meet Its Burden To Prove Violations of The CFAA ................................................................. 39 |
| E. |   |   | Songkick Cannot Meet Its Burden To Prove Intentional Interference With Contractual Relations ......................... 40 |
| F. |   |   | Songkick Cannot Meet Its Burden To Prove Intentional Interference With Prospective Economic Relations .................. 41 |
| G. |   |   | Songkick Cannot Meet Its Burden To Prove Promissory Estoppel .................................................................. 41 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

H.     Songkick Is Not Entitled To Equitable Relief For Its Non-Jury UCL Claim Because It Cannot Demonstrate That Defendants Engaged In Unlawful, Unfair or Fraudulent Activity ........................................................ 42

IV.    SUMMARY STATEMENT OF DEFENDANTS' DEFENSE ................ 42

V.     DEFENDANTS' DEFENSES BAR SONGKICK'S CLAIMS ................ 44

A.     Contentions of Law (Defenses) ............................................ 44

1.     First Defense: Inequitable Conduct And Unclean Hands ...................................................................... 44

2.     Second Defense: Legal Privilege .................................. 44

3.     Third Defense: Justification/Privilege/Excuse ....................... 44

4.     Fourth Defense: Independent, Legitimate Business And Economic Justifications ...................................... 44

5.     Fifth Defense: No Harm To Competition ............................ 44

6.     Sixth Defense: Estoppel ............................................ 44

7.     Seventh Defense: Failure To Mitigate Damages .................... 44

8.     Eighth Defense: Adequate Remedy At Law ......................... 44

9.     Ninth Defense: Punitive Damages Invalid ......................... 45

10.    Tenth Defense: Statute of Limitations ............................ 45

11.    Eleventh Defense: Lack Of Standing ............................... 45

B.     Contentions of Fact (Defenses) ............................................ 45

1.     First Defense: The Doctrine Of Unclean Hands Precludes Songkick's Recovery ................................ 45

2.     Second, Third, Fourth, and Fifth Defenses: Songkick's State Law Claims Are Precluded Because Defendants' Conduct Was Legally Privileged And Justified ...................................... 46

3.     Sixth Defense: Songkick Is Estopped From Recovering On Its Claims* .................................... 47

4.     Seventh Defense: Songkick Failed To Mitigate Damages ...................................................... 47

5.     Eighth Defense: Songkick Has An Adequate Remedy At Law* .............................................. 48

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

6. Ninth Defense: Songkick Has No Basis For Seeking Punitive Damages ...................................... 48

7. Tenth: Songkick's Claims Are Barred By The Statute Of Limitations* .......................................... 48

8. Eleventh Defense: Songkick Lacks Standing .......................... 49

VI. SUMMARY OF TICKETMASTER'S COUNTERCLAIMS .................... 49

VII. CONTENTIONS OF LAW (TICKETMASTER'S COUNTERCLAIMS) ................................................................ 50

A. Claim 1: Songkick Intentionally Interfered With Ticketmaster's Contracts With Venues ............................ 50

B. Claim 2: Songkick Converted Ticketmaster's Property When It Sold Tickets To Which Ticketmaster Has The Exclusive Contractual Rights ............................................. 50

VIII. CONTENTIONS OF FACT (TICKETMASTER'S COUNTERCLAIMS) ................................................................ 51

A. The Evidence Proves Songkick Intentionally Interfered With Ticketmaster's Contracts With Venues ..................... 51

B. The Evidence Proves That Songkick Converted Ticketmaster's Property ................................................. 52

IX. ANTICIPATED EVIDENTIARY ISSUES AND TICKETMASTER'S POSITION ........................................... 53

A. *Daubert* Motions And Motions *In Limine* ..................... 53

B. Legal Theories Songkick Did Not Properly Disclose ....... 53

1. Songkick Did Not Properly Disclose A Conspiracy Claim Between Defendants And Venues ................ 54

2. Songkick Did Not Properly Disclose A Tying Claim Between Venue Ticketing Services And Artist Presale Ticketing Services ............................ 55

X. BIFURCATION OF ISSUES ............................................... 55

A. Songkick's UCL and Promissory Estoppel Claims Should Be Bifurcated For A Later Bench Trial Because There Is No Right To A Jury On These Equitable Claims ......... 55

XI. JURY TRIAL ................................................................. 56

XII. ABANDONED AND ADJUDICATED ISSUES ......................... 56

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.   Songkick's Antitrust Claims Under Section 7 of The Clayton Act And Section 2 Of The Sherman Act Challenging The Merger Of Live Nation And Ticketmaster Have Been Dismissed ..................................... 56

B.   Songkick Has Abandoned Its Claims Against Live Nation Based On The Concert Promotion Market ........................... 56

C.   Songkick Has Indicated It Does Not Intend To Pursue Its Trade Secret Claim Under New York Law ....................................... 57

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A-C Co. v. Security Pacific Nat. Bank,*
  173 Cal. App. 3d 462 (1985) ............................................................... 55

*AccuImage Diagnostics Corp v. Terarecon, Inc.,*
  260 F. Supp. 2d 941 (N.D. Cal. 2003) ........................................... 9, 57

*Advanced Choices, Inc. v. Dep't of Health Servs.,*
  107 Cal. Rptr. 3d 470 (Ct. App. 2010) ......................................... 15, 41

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
  836 F.3d 1171 (9th Cir. 2016) ......................................................... 7, 24

*Agam v. Gavra,*
  236 Cal. App. 4th 91 (2015) ................................................................ 48

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.,*
  819 F. Supp. 2d 1001 (E.D. Cal. 2011) ..................................... *passim*

*Aguilar v. Int'l Longshoremen's Union Local No. 10,*
  966 F.2d 443 (9th Cir. 1992) ......................................................... 15, 41

*Alderson v. United States,*
  718 F. Supp. 2d 1186 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th
  Cir. 2012) ............................................................................................. 11

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.,*
  226 Cal. App. 4th 26 (2014) ......................................................... 10, 29

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.,*
  190 F.3d 1051 (9th Cir. 2007) ......................................................... 3, 7

*Am. Credit Indemn. Co. v. Sacks,*
  213 Cal. App. 3d 622 (1989) ............................................................... 57

*Am. Prof'l Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal &
  Prof'l Publications, Inc.,*
  108 F.3d 1147 (9th Cir. 1997) ............................................................... 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
   472 U.S. 585 (1985) .................................................................................... 24

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*,
   52 Cal. App. 4th 867 (1997).................................................................... 46

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.*,
   685 F. Supp. 2d 1094 (E.D. Cal. 2010)............................................... 26

*Brantley v. NBC Universal, Inc.*,
   675 F.3d 1192 (9th Cir. 2012)........................................................... 4, 8

*Brescia v. Angelin*,
   172 Cal. App. 4th 133 (2009).............................................................. 29

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   873 F. Supp. 2d 1192 (N.D. Cal. 2012) .............................................. 9

*Bulldog N.Y. LLC v. Pepsico, Inc.*,
   8 F. Supp. 3d 152 (D. Conn. 2014) ............................................... 9, 57

*C & K Eng'g Contractors v. Amber Steel Co.*,
   23 Cal. 3d 1 (1978)............................................................... 15, 55, 56

*Calculators Hawaii, Inc. v. Brandt, Inc.*,
   724 F.2d 1332 (9th Cir. 1983)............................................................. 5

*Calloway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*,
   325 F. Supp. 2d 457 (D. Del. 2004) .................................................. 36

*Cargill Inc. v. Progressive Dairy Solutions, Inc.*,
   362 F. App'x 731 (9th Cir. 2010)....................................................... 42

*Caudle v. Bristow Optical Co.*,
   224 F.3d 1014, 1019 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000)............................................................................ 47

*City of San Jose v. Office of the Comm'r of Baseball*,
   776 F.3d 686 (9th Cir. 2015)....................................................... 16, 42

*Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.*,
   No. CV 98-1374-WMB SHX, 1999 WL 675446 (C.D. Cal. Aug. 12, 1999)........................................................................................... 37

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ix

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

*Cty. of Tuolumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148 (9th Cir. 2001) ............................................................... 5

*Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*,
887 F. Supp. 2d 459 (E.D.N.Y. 2012) .................................................. 46

*Denver Urban Homesteading, LLC v. Dervaes Inst.*,
No. CV149216JFWJPRX, 2015 WL 12819140 (C.D. Cal. July 15, 2015) ..................................................................................................... 49

*Diodes, Inc. v. Franzen*,
260 Cal. App. 2d 244 (1968) ................................................................. 9

*DVD Copy Control Ass'n, Inc. v. Bunner*,
116 Cal. App. 4th 241 (2004) .............................................................. 30

*Exxon Co. v. Sofec, Inc.*,
54 F.3d 570 (9th Cir. 1995) ................................................................. 55

*FAA Beverly Hills, Inc. v. Shahrokhi*,
No. B166856, 2004 WL 2211916 (Cal. Ct. App. Oct. 4, 2004) ............ 33

*Ferguson v. Greater Pocatello Chamber of Commerce*,
848 F.2d 976 (9th Cir. 1988) .......................................................... 18, 45

*Firetrace USA, LLC v. Jesclard*,
800 F. Supp. 2d 1042 (D. Ariz. 2010) ................................................. 26

*Foster v. Churchill*,
87 N.Y.2d 744 (1996) ........................................................................... 46

*Futurecraft Corp. v. Clary Corp.*,
205 Cal. App. 2d 279 (1962) ............................................................... 31

*Gemisys Corp. v. Phoenix Am., Inc.*,
186 F.R.D. 551 (N.D. Cal. 1999) ......................................................... 33

*Gough v. Rossmoor Corp.*,
585 F.2d 381 (9th Cir. 1978) ................................................................. 5

*Hodge v. Superior Court*,
145 Cal. App. 4th 278 (2006) .................................................. 15, 55, 56

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ............................................................. 10

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................ 14

*Jade Fashion & Co., Inc. v. Harkham Indus., Inc.*,
  229 Cal. App. 4th 635 (2014)........................................................................ 45

*JustMed, Inc. v. Byce*,
  600 F.3d 1118 (9th Cir. 2010)....................................................................... 35

*Kewanee v. Bicron Corp.*,
  416 U.S. 470 (1974) ...................................................................................... 30

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal 4th 1134 (2003)................................................................ 15, 16, 41, 42

*Lee v. Hanley*,
  61 Cal. 4th 1225 (2015)................................................................................. 50

*Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*,
  824 F.2d 582 (8th Cir. 1987) .......................................................................... 7

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
  726 F.2d 1381 (9th Cir. 1984) ........................................................................ 3

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
  801 F.3d 1150 (9th Cir. 2015)....................................................................... 21

*Mattel, Inc. v. MGA Entm't, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011)...................................................... 11, 34

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
  708 F.2d 1081 (7th Cir. 1983) ...................................................................... 21

*MetroNet Servs. Corp. v. Qwest Corp.*,
  383 F.3d 1124 (9th Cir. 2004) ........................................................................ 6

*Meyer v. Qualcomm Inc.*,
  No. 08CV655 WQH (LSP), 2009 WL 539902 (S.D. Cal. Mar. 3, 2009).................................................................................................. 45, 49

*Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*,
  208 F.3d 655 (8th Cir. 2000) .......................................................................... 7

*Mintz v. Mark Bartelstein and Assoc. Inc.*,
  906 F. Supp. 2d 1017 (C.D. Cal. 2012)......................................................... 38

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) ............................................................................ 5

*Moore v. Kulicke & Soffa Indus.*,
   318 F.3d 561 (3d Cir. 2003) ............................................................. 12

*In re Musical Instruments*,
   798 F.3d 1186 (9th Cir. 2015) ..................................................... 6, 20

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ........................................................... 3

*Netlist, Inc. v. Diablo Techs., Inc.*,
   2015 WL 1887261 (N.D. Cal. Apr. 24, 2015) ................................. 42

*Newcal Indus., Inc v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ................................................... 3, 4, 6

*NHC Ins. Servs. v. Millennium Corp. Sols.*,
   No. B210893, 2012 Cal. App. Unpub. LEXIS 949 (Feb. 7, 2012) ................... 39

*Novell, Inc. v. Microsoft Corp.*,
   731 F.3d 1064 (10th Cir. 2013) ......................................................... 7

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................. 40

*Omega Envtl., Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) ....................................................... 4, 8

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (Cal. 1990) ............................................................ 14

*Paddock Publ'ns, Inc. v. Chicago Tribune Co.*,
   103 F.3d 42 (7th Cir. 1996) ............................................................. 19

*Paladin Assocs., Inc. v. Montana Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ....................................................... 4, 8

*People v. First Fed. Credit Corp.*,
   104 Cal. App. 4th 721 (2002) .......................................................... 55

*People v. Laiwala*,
   143 Cal. App. 4th 1065 (2006) ........................................................ 31

*Pixion, Inc. v. PlaceWare, Inc.*,
  421 F. Supp. 2d 1233 (N.D. Cal. 2005) ......................................................... 11

*Quelimane Co. v. Stewart Title Guar. Co.*,
  19 Cal. 4th 26 (1998) ............................................................................... 50, 52

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ........................................................................ 6

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
  923 F. Supp. 1231 (N.D. Cal. 1995) ........................................................... 36

*Richardson v. La Rancherita of La Jolla, Inc.*,
  159 Cal. Rptr. 285 (Ct. App. 1979) ......................................................... 40, 46

*Rutman Wine Co. v. E & J. Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987) ..................................................................... 5, 7

*Ryan v. Microsoft Corp.*,
  147 F. Supp. 3d 868 (N.D. Cal. 2015) ........................................................ 49

*Sargent Fletcher, Inc. v. Able Corp.*,
  110 Cal. App. 4th 1658 (2003) ............................................................. *passim*

*Scott v. Phoenix Sch., Inc.*,
  175 Cal. App. 4th 702 (2009) ..................................................................... 48

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990) ...................................................................... 31

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
  983 F. Supp. 1303 (N.D. Cal. 1997) ........................................................... 15

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) ............................................................... 10, 29

*Solec Int'l, Inc. v. Mobil Solar Energy Corp.*,
  No. CV-89-971-JMI TX, 1990 WL 299252 (C.D. Cal. Oct. 25,
  1990) ........................................................................................................ 26

*Stanacard, LLC v. Rubard, LLC*,
  No. 12 CIV. 5176, 2016 WL 462508 (S.D.N.Y. Feb. 3, 2016) ................. 9, 57

*Steinberg Moorad & Dunn, Inc. v. Dunn*,
  136 F. App'x 6 (9th Cir. 2005) .................................................................... 55

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

xiii

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

*Steinberg Moorad & Dunn, Inc. v. Dunn*,
   No. CV 01-07009 RSWL, 2002 WL 31968234 (C.D. Cal. Dec. 23,
   2002) ................................................................................................ 10

*Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*,
   909 F. Supp. 1353 (C.D. Cal. 1995) ................................................. 11

*Thrifty-Tel, Inc. v. Bezenek*,
   46 Cal. App. 4th 1559 (1996) ............................................................ 47

*Ticketmaster Corp. v. Tickets.Com*,
   2003 WL 21397701 (C.D. Cal. March 7, 2003) ......................... 19, 23

*Toscano v. Professional Golfers Ass'n*,
   258 F.3d 978 (9th Cir. 2001) .............................................................. 5

*U.S. Healthcare v. Healthsource, Inc.*,
   986 F.2d 589 (1st Cir. 1993) ......................................................... 7, 21

*Unite Eurotherapy, Inc. v. Walgreen Co.*,
   No. 16-cv-01706-BTM-JMA, 2017 WL 513008 (S.D. Cal. Feb. 7,
   2017) ................................................................................................ 52

*United States v. Apple Inc.*,
   791 F.3d 290 (2d Cir. 2015) ............................................................. 20

*Universal By-Prods., Inc. v. City of Modesto*,
   117 Cal. Rptr. 525 (Ct. App. 1974) ............................................. 15, 41

*Vacco Indus., Inc. v. Van Den Berg*,
   5 Cal. App. 4th 34 (1992) ................................................................. 11

*Valle de Oro Bank v. Gamboa*,
   26 Cal. App. 4th 1686 (1994) ........................................................... 48

*Verizon Commc'ns v. Law Offices of Curtis V. Trinko*,
   540 U.S. 398 (2004) ...................................................................... 7, 24

*VSL Corp. v. General Techs.*,
   No. C 96-20446 RMW, 1997 WL 654103 (N.D. Cal. July 21,
   1997) ................................................................................................ 11

*Welco Elecs., Inc. v. Mora*,
   223 Cal. App. 4th 202 (2014) ............................................... 50, 51, 52

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

xiv

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443 (2002) .......................................................................... 29

*Wilkison v. Wiederkehr*,
    101 Cal. App. 4th 822 (2002) ............................................................................ 48

*William Inglis & Sons Baking Co. v. Continental Baking Co., Inc.*,
    942 F.2d 1332 (9th Cir. 1991), *non-cited portion of opinion
    vacated in part on reh'g*, 981 F.2d 1023 (9th Cir. 1992) .................................. 21

*Yield Dynamics, Inc. v. TEA Sys. Corp.*,
    154 Cal. App. 4th 547 (2007), *modified and reh'g denied*, 2007
    Cal. App. LEXIS 1586 ........................................................................... 10, 11, 32

*In re Zynga Privacy Litig.*,
    No. C 10-04680 JWW, 2011 WL 7479170 (N.D. Cal. June 15,
    2011), *aff'd*, 750 F.3d 1098 (9th Cir. 2014) ..................................................... 14

## STATUTES

15 U.S.C. § 15(b) ............................................................................................... 49

18 U.S.C. § 1030 ...................................................................................... 3, 13, 14

18 U.S.C. § 1030(e)(8) ....................................................................................... 40

18 U.S.C. § 1030(e)(11)…. ........................................................... 14, 37, 38, 40

Cal. Bus. & Prof. Code § 17200 ............................................................. 2, 16, 55

Cal. Bus. & Prof. Code § 17208 ........................................................................ 49

Cal. Civ. Code § 3426.1 ................................................................................. 9, 11

Cal. Civ. Code § 3426.1(a) .......................................................................... 12, 34

Cal. Civ. Code § 3426.1(b) ................................................................................ 33

Cal. Civ. Code § 3426.1(b)(1) ........................................................................... 12

Cal. Civ. Code § 3426.1(b)(2) ........................................................................... 12

Cal. Civ. Code § 3426.1(b)(4) ........................................................................... 12

Cal. Civ. Code § 3426.1(d)(1) ..................................................................... 10, 31

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

xv

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

Cal. Civ. Code § 3426.1(d)(2) ................................................................ 32

Cal. Civ. Code § 3426.3 ............................................................... 13, 39

Cal. Civ. Code § 3426.3(a) ...................................................................... 37

Cal. Civ. Code § 3426.3(b) ...................................................................... 13

Cal. Civ. Code § 3426.7(b)(2) .................................................................. 57

Cal. Civ. Proc. Code § 339.1 .................................................................... 49

Cal. Civ. Proc. Code § 2019.210 .............................................................. 29

## RULES

Fed. R. Civ. P. 26(e)(1) ............................................................................ 53

Fed. R. Civ. P. 37(c)(1) ..................................................................... 38, 53

Fed. R. Civ. P. 42(b) ................................................................................ 55

L.R. 16-4 .................................................................................................... 1

## OTHER AUTHORITIES

CACI § 4401 ................................................................................ 9, 10, 39

CACI § 4405 ............................................................................................ 12

CACI § 4406 ............................................................................................ 12

CACI § 4407 ............................................................................................ 12

CACI § 4408 ............................................................................................ 36

Manual of Model Criminal Jury Instructions for the District Courts of
    the Ninth Circuit § 8.97 ..................................................................... 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

xvi

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

Defendants and Counter-Claimant Live Nation Entertainment, Inc. and Ticketmaster LLC (collectively, "Defendants") submit the following Memorandum of Contentions of Fact and Law ("Memorandum") pursuant to L.R. 16-4 and the Court's Order re Jury Trial.

As required by L.R. 16-4, this Memorandum provides: (1) a summary statement of the claims Plaintiff Complete Entertainment Resources LLC d/b/a Songkick ("Songkick") has pleaded; (2) the elements required to establish those claims; (3) a brief description of the key evidence in opposition; (4) a summary statement of Defendants' affirmative defenses; (5) the elements required to establish those defenses; (6) a brief description of the key evidence relied on in support of each affirmative defense; (7) a summary statement of Ticketmaster's counterclaims; (8) the elements required to establish those claims; (9) a brief description of the key evidence relied on in support of those claims; (10) identification of anticipated evidentiary issues and Defendants' position; and (11) identification of pertinent issues of law and Defendants' position.[1]

## I.    SUMMARY STATEMENT OF SONGKICK'S CLAIMS

Songkick first claims that Defendants violated Section 1 of the Sherman Act. First Amended Complaint ("FAC") ¶¶ 203-57.  *See* ECF. No. 158.  Although Songkick has at times attempted to remain vague about what particular types of antitrust claims it is pursuing, the FAC alleges only Section 1 violations based on tying, exclusive dealing, hub-and-spoke conspiracy, and vertically arranged boycotts.  *Id.* ¶¶ 247-57.  In that document and over the intervening months, Songkick has alleged (sometimes without connection to anything in the FAC at all) that Ticketmaster ties the purchase of artist presale ticketing rights to the purchase of concert venue ticketing rights generally, that Ticketmaster's exclusive contracts with venues have foreclosed Songkick from competing in the artist presale

---

[1]  This Memorandum neither purports to be exhaustive nor does it address every item of evidence Defendants may offer at trial.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

ticketing services market, that Ticketmaster has orchestrated a hub-and-spoke conspiracy among venues to boycott Songkick, and that Songkick has a vertical boycott among venues to boycott Songkick. *Cf. id.*

Songkick also claims that Defendants have engaged in monopolization and attempted monopolization in violation of Section 2 of the Sherman Act. *Id.* ¶¶ 203-46. Songkick alleges that the same conduct that constitutes violations of Section 1 constitutes violations under Section 2. *Id.* at ¶¶ 203-36. Although the FAC discloses no additional theories, Songkick has at times suggested it is also pursuing a claim against Ticketmaster for unilateral refusal to deal.

Songkick further alleges a promissory estoppel claim and claims that Ticketmaster has intentionally interfered with Songkick's contractual relations and intentionally interfered with Songkick's prospective economic advantage under California law. *Id.* ¶¶ 270-81, 307-27. These claims are based on alleged instances where Ticketmaster has not released ticketing inventory to fan clubs that did not comply with Ticketmaster's fan club policy. *Id.* Songkick also alleges that the above-described alleged conduct constitutes "unfair" and "unlawful" business practices in violation of the California Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.

Additionally, Songkick claims that Ticketmaster misappropriated its trade secrets through a former Songkick employee named Stephen Mead. In July 2013, Mead joined TicketWeb, a Ticketmaster company that worked with Ticketmaster's Artist Services division. Artist Services, now called OnTour, offers artists products and services for marketing tours, conducting presales, operating fan clubs, and analyzing tour data. Over the ensuing months, Mead allegedly accessed Songkick's online products and sent emails to Ticketmaster colleagues attaching documents retained from Songkick. Mead obtained these Songkick documents from his personal laptop computer he had retained after leaving (which Songkick does not contend was wrongful), which Songkick had required him to use for

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

Songkick business.  Songkick alleges that Mead shared this information to help Ticketmaster build and grow OnTour's presale business in competition with Songkick's.   According to Songkick, with Mead's help, Ticketmaster misappropriated roughly three categories of alleged trade secrets—though Songkick has not identified *how* Ticketmaster has used or benefitted from this material.  *See* Declaration of A. Gass in Supp. of Defs.' Mots. *In Limine* and Mem. of Contentions of Fact and Law ("Gass Decl."), Ex. 10 (Dep. Ex. 444) (listing Songkick's alleged trade secrets); *id.*, Ex. 6 at 113 (Songkick's Proposed Jury Instruction No. 77) (the "Alleged Trade Secrets").  Songkick also claims that Mead and his colleagues violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by accessing Songkick's online products without authorization.

## II.   CONTENTIONS OF LAW (SONGKICK'S AFFIRMATIVE CLAIMS)

### A.   Claim 1: Songkick Claims that Defendants Violated Section 1 of the Sherman Act

To establish liability for its Section 1 Claim(s) under the Sherman Act, Songkick must prove (1) the existence of a contract, combination, or conspiracy among two or more persons or distinct business entities; (2) by which persons or entities intended to harm or restrain trade in interstate commerce; (3) the agreement actually injures competition in a relevant market; and (4) the plaintiff was harmed by defendant's anticompetitive contract, combination, or conspiracy, and that this harm flowed from an anticompetitive aspect of the practice under scrutiny.  *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015).   Under requirement (4), Songkick must show that its injury was suffered in the market where competition is being constrained, and not some other market.  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 2007).    Under requirement (3), Songkick must define a relevant market in which competition is allegedly harmed.  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1392 (9th Cir. 1984);

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

*Newcal Indus., Inc v. Ikon Office Solution*, 513 F.3d 1038, 1044-45 & n.3 (9th Cir. 2008). The boundaries of a product market are determined by reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. *Newcal Indus.*, 513 F.3d at 1045. In the operative Complaint, Songkick has alleged that Ticketmaster has committed Section 1 violations through tying, exclusive dealing, hub-and-spoke conspiracy, and vertically arranged boycotts.

### 1.    Songkick Claims That Defendants Harmed Competition By Tying

To prove a claim for tying, Songkick must show (1) there are two distinct products or services in different markets whose sales are tied together; (2) that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied product; (3) that the tying arrangement affects a "not insubstantial volume of commerce" in the tied market; and (4) that the challenged practice has an anticompetitive effect that (5) unreasonably restrains commerce. *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 n.7 (9th Cir. 2012); *see also Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003). "Essential to the second element of a tying claim is proof that the seller *coerced* a buyer to purchase the tied product." *Paladin Assocs*, 328 F.3d at 1159.

### 2.    Songkick Claims That Defendants Harmed Competition By Exclusive Dealing

To prove an exclusive dealing claim, Songkick must show that the Defendants (1) entered into an exclusive agreement that (2) forecloses competition in a substantial share of a relevant market; (3) where the restraint is unreasonable; (4) the agreement occurred in or affected interstate or foreign commerce; and (5) the agreement caused plaintiff to suffer an injury to its business or property. *See Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1169 (9th Cir. 1997).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

### 3. Songkick Claims That Defendants Harmed Competition Through A Vertically Arranged Boycott

To prove a vertically arranged boycott, Songkick must show that Defendants entered into agreements with other persons or businesses with a common scheme designed to boycott Songkick, and those agreements unreasonably restrained trade in the artist presales market pursuant to the rule of reason. *Toscano v. Professional Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001); *Rutman Wine Co. v. E & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987). In particular, Songkick must prove (1) Ticketmaster and one or more other persons or businesses entered into an agreement whereby they refused to deal with Songkick by boycotting Songkick's artist presale ticketing services; (2) all parties to the agreement (including artists and/or promoters) had a conscious commitment to a common scheme designed to achieve an unlawful objective; (3) the refusal to deal unreasonably restrained trade in a relevant market; (4) the refusal to deal occurred in or affected interstate commerce; and (5) Songkick was injured in its business or property because of the refusal to deal. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984); *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154–55 (9th Cir. 2001); *Toscano v. Professional Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001); *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1337 & n.2 (9th Cir. 1983); *Gough v. Rossmoor Corp.*, 585 F.2d 381, 387–88 (9th Cir. 1978).

### 4. Songkick Claims That Defendants Harmed Competition Through A Hub-And-Spoke Conspiracy

To prove a hub-and-spoke conspiracy claim, Songkick must show that Defendants and all venues in the alleged conspiracy agreed to reduce competition amongst themselves, made a conscious commitment to a common scheme designed to achieve an unlawful objective, and refused to deal with Songkick by boycotting Songkick's artist presales ticketing services and that either Defendant was (1) a "hub" where it had agreements with (2) spokes; here, venues and (3) the

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1    rim of the wheel, which would consist of agreements among the spokes.  *In re*

2    *Musical Instruments*, 798 F.3d 1186, 1192–93 (9th Cir. 2015).

3         **B.    Claim 2: Songkick Claims Defendants Violated Section 2 Of The**
              **Sherman Act**
4

5         To establish liability for its Section 2 Claim(s), Songkick must prove either

6    that Defendants engaged in "monopolization" or "attempted monopolization."  To

7    establish its monopolization claim, Songkick must prove that (1) Defendants had

8    possession of monopoly power in a relevant market; (2) the willful acquisition or

9    maintenance of that power through exclusionary conduct; and (3) causal antitrust

10   injury.  *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir.

11   2004).   To prove that Defendants have monopoly power, Songkick must first

12   define a relevant market or markets in which Defendants allegedly have monopoly

13   power.  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).

14   The   boundaries   of   a   product   market   are   determined   by   reasonable

15   interchangeability of use or the cross-elasticity of demand between the product

16   itself and substitutes for it.  *Newcal Indus*,513 F.3d at 1045.  "Monopoly power" is

17   the power to control prices or exclude competition.  *Am. Prof'l Testing Serv., Inc.*

18   *v. Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc.*, 108 F.3d 1147,

19   1154 (9th Cir. 1997).   A mere showing of substantial or even dominant market

20   share   alone   cannot   establish   market   power   sufficient   to   carry   out   a   predatory

21   scheme.   The plaintiff must show that new rivals are barred from entering the

22   market and show that existing competitors lack the capacity to expand their output

23   to challenge the predator's high price.  *Rebel Oil*, 51 F.3d at 1439.

24        To establish its attempted monopolization claim, Songkick must prove that

25   Defendants had (1) specific intent to control prices or destroy competition in a

26   relevant   market;   (2)   predatory   or   anticompetitive   conduct   directed   at

27   accomplishing that purpose; (3) a dangerous probability of achieving monopoly

28   power in a relevant market; and (4) causal antitrust injury.   Both monopolization

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

and attempted monopolization require that Songkick show that its injury was suffered in the market where competition is being constrained, and not some other market.   *Am. Ad Mgmt*, 190 F.3d at 1057.   Prong (2) of both the test for "monopolization" and "attempted monopolization" requires that Songkick prove Defendants' conduct was "exclusionary."   Songkick has here alleged that the nature of the anticompetitive conduct in which Ticketmaster has engaged is tying, exclusive dealing, refusal to deal, and vertically arranged boycotts.   The requirements for each are described below.

### 1.     Unilateral Refusal To Deal

To establish a claim for a unilateral refusal to deal, Songkick must prove that (1) Defendants have monopoly power; (2) the parties had a preexisting voluntary and presumably profitable course of dealing; and (3) Defendants' discontinuation of the preexisting course of dealing suggests a willingness to forsake short-term profits to achieve an anticompetitive end. *See Verizon Commc'ns v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 408-10 (2004); *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074-75 (10th Cir. 2013) (Gorsuch, J.); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1183-84 (9th Cir. 2016).

### 2.     Vertically Arranged Boycotts

To establish that a vertically arranged boycott is exclusionary, Songkick must show that Defendants entered into agreements with other persons or businesses with the intent to boycott Songkick, which unreasonably restrained trade in the artist presales market. *Rutman Wine Co. v. E & J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987).   An "exclusive supply agreement," however, never qualifies as such an agreement. *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 659 (8th Cir. 2000); *accord U.S. Healthcare v. Healthsource, Inc.*, 986 F.2d 589, 594 (1st Cir. 1993) (Boudin, J.); *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 590-96 (8th Cir. 1987).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

### 3. Tying

To establish that tying is exclusionary, Songkick must prove: (1) there are two distinct products or services in different markets whose sales are tied together; (2) that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement affects a "not insubstantial volume of commerce" in the tied market. *Paladin Assocs.*, 328 F.3d at 1159.  For a "rule of reason" tying claim, the plaintiff must additionally show (4) that the challenged practice has an anticompetitive effect that (5) unreasonably restrains commerce.  *Brantley*, 675 F.3d at 1197 n.7. "Essential to the second element of a tying claim is proof that the seller *coerced* a buyer to purchase the tied product." *Paladin Assocs*, 328 F.3d 1145, 1159 (9th Cir. 2003).

### 4. Exclusive Dealing

To establish that exclusive dealing is exclusionary, Songkick must prove that the Defendants (1) entered into an exclusive agreement that (2) forecloses competition in a substantial share of a relevant market; (3) where the restraint is unreasonable; (4) the agreement occurred in or affected interstate or foreign commerce; and (5) the agreement caused plaintiff to suffer an injury to its business or property. *See Omega Envtl.*, 127 F.3d at 1169.

### C. Claim 3: Songkick Claims Defendants Misappropriated Its Trade Secrets

To establish its claim for trade secret misappropriation, Songkick must prove that (1) it owned or was a licensee of the Alleged Trade Secrets; (2) the Alleged Trade Secrets were kept secret at the time of misappropriation; (3) Defendants improperly used, disclosed, or acquired the Alleged Trade Secrets; (4) either Songkick suffered actual loss or Defendants were unjustly enriched;[2] and (5)

---

[2]  Songkick has neither disclosed, nor does it claim damages for, actual loss under the CUTSA.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Defendants' use, disclosure, or acquisition of the Alleged Trade Secrets was a

2   substantial factor in causing the loss or unjust enrichment.   *See* CACI § 4401;

3   *accord Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665 (2003).

4           **1.   Songkick Must Establish That The Alleged Trade Secrets**

5                 **Qualify For CUTSA Protection Before It May Claim Misappropriation**

6        California law[3] dictates that in order to establish the existence of a trade

7   secret under the CUTSA, the plaintiff must (1) identify the alleged "trade secret"

8   with particularity and "separate [it] from matters of general knowledge," (2) prove

9   that it derives independent economic value from its secrecy, and (3) prove that it is

10  the subject of reasonable efforts to maintain its secrecy.   *See* Cal. Civ. Code §

11  3426.1; *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192,

12  1212-13 (N.D. Cal. 2012); *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819

13  F. Supp. 2d 1001, 1017-18 (E.D. Cal. 2011).

14          **a.   Songkick Must Identify Its Trade Secrets With**

15                **Reasonable Particularity To Gain CUTSA Protection**

16       The CUTSA does not offer protection for trade secrets unless they can be

17  "separate[d] from matters of general knowledge in [a] trade or of special

18  knowledge of those persons who are skilled in [a] trade." *Brocade*, 873 F. Supp.

19  2d at 1212-13 (internal quotation marks omitted); *accord Diodes, Inc. v. Franzen*,

20  260 Cal. App. 2d 244 (1968) (seminal case).   Nor does the CUTSA protect "ways

21  of doing the same thing that others in the same field do." *Agency Solutions.Com*,

22  819 F. Supp.2d at 1017.   Additionally, "background information comprising . . .

23  features and functions, the business requirements and the high level design

---

[3]   During the pretrial conference of counsel regarding jury instructions and other Local Rule 16 matters, counsel for Songkick indicated that it would be withdrawing its claim for trade secret misappropriation under New York law.   To the extent Songkick attempted to assert trade secret claims simultaneously under New York and California law, it cannot do so. *See AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003); *Stanacard, LLC v. Rubard, LLC*, No. 12 CIV. 5176, 2016 WL 462508, at *18 (S.D.N.Y. Feb. 3, 2016); *Bulldog N.Y. LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 162 (D. Conn. 2014).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

specifications that are incorporated into software and are evident in the operation of the software are not trade secrets." *Id.*; *accord Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 222 (2010).

"It is critical to any CUTSA [c]ause of action . . . that the information claimed to have been misappropriated be clearly identified." *Silvaco*, 184 Cal. App. 4th at 221. Songkick is thus "burdened to make two showings." *Agency Solutions.com*, 819 F. Supp. 2d at 1015. First, it must "clearly identify what the 'thing' is that is alleged to be a trade secret, and second, [it] must . . . clearly articulate why that 'thing' belongs in the legal category of trade secret." *Id.*; *accord Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998); *see also Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 53 (2014) (defining trade secret). In all instances, the description must be sufficiently particularized to enable the Court and trier of fact to "ascertain at least the boundaries within which the secret lies," and why it qualifies for protection. *Altavion*, 226 Cal. App. 4th at 44; *Agency Solutions.com*, 819 F. Supp. 2d at 1017.

### b. Songkick Must Establish That The Alleged Trade Secrets Had Independent Economic Value

Songkick must also establish that its Alleged Trade Secrets have independent economic value due to their secrecy. *See* Cal. Civ. Code § 3426.1(d)(1); *Steinberg Moorad & Dunn, Inc. v. Dunn*, No. CV 01-07009 RSWL, 2002 WL 31968234, at *24 (C.D. Cal. Dec. 23, 2002); *see also* CACI § 4401. To satisfy this burden, Songkick must show that the Alleged Trade Secrets are "sufficiently valuable and secret to afford [it] an actual or potential economic advantage over others." *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 564 (2007), *modified and reh'g denied*, 2007 Cal. App. LEXIS 1586. In that vein, Songkick must provide evidence giving "some solid sense of *how* useful the [Alleged Trade Secrets are], *e.g.*, *how much* time, money, or labor [use of the Alleged Trade Secrets] would save, or at least that these savings would be 'more

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

than trivial.'" *See id.* at 565.

### c. Songkick Must Establish That It Took Reasonable Measures To Keep The Alleged Trade Secrets Confidential

The Alleged Trade Secrets are not protectable unless Songkick can also demonstrate that it took "efforts that are reasonable under the circumstances to maintain [their] secrecy." *See* Cal. Civ. Code § 3426.1. It is Songkick's burden to provide evidence of "what steps it took to maintain the secrecy of" the Alleged Trade Secrets. *See VSL Corp. v. General Techs.*, No. C 96-20446 RMW, 1997 WL 654103, at *3 (N.D. Cal. July 21, 1997). "[A]n unprotected disclosure of the holder's secret terminates the existence of the trade secret." *Stutz Motor Car of Am., Inc. v. Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1359 (C.D. Cal. 1995) (citing *Vacco Indus., Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 50 (1992)); *accord Pixion, Inc. v. PlaceWare, Inc.*, 421 F. Supp. 2d 1233, 1243-46 (N.D. Cal. 2005). Such unprotected disclosure may take the form of "an employer's failure to mark documents as confidential or trade secret." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 959 (C.D. Cal. 2011) (internal quotation marks omitted); *accord Alderson v. United States*, 718 F. Supp. 2d 1186, 1200 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012) ("In the absence of the ability to take 'reasonable efforts' to maintain secrecy through confidentiality agreements, there simply cannot be any trade secret.").

### 2. Songkick Must Establish That Defendants Misappropriated The Alleged Trade Secrets By Use, Disclosure, Or Acquisition By "Improper Means"

If Songkick meets its burden to establish that the Alleged Trade Secrets are protectable under the CUTSA, it must then prove that Defendants misappropriated the Alleged Trade Secrets by "use," "disclosure," or "acquisition . . . by improper means." Cal. Civ. Code § 3426.1. To prove misappropriation by "use," Songkick bears the burden of demonstrating that (1) Defendants used the Alleged Trade Secrets without Songkick's consent *and* either (a) acquired knowledge of the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

Alleged Trade Secrets by improper means or (b) knew of a legal obligation limiting their use of the Alleged Trade Secrets.  *See* CACI § 4407; Cal. Civ. Code § 3426.1(b)(2); *see also Agency Solutions.Com*, 819 F. Supp. 2d at 1015 (use).  To prove misappropriation by disclosure, Songkick must prove that Defendants (1) disclosed the Alleged Trade Secrets without Songkick's consent *and* (2) knew or had reason to know that they used improper means to acquire them.  CACI § 4406; Cal. Civ. Code § 3426.1(b)(4).  To prove that Defendants misappropriated the Alleged Trade Secrets through "acquisition . . . by improper means," Songkick must demonstrate that (1) Defendants acquired the trade secrets *and* (2) knew or had reason to know that they used improper means to acquire them.  CACI § 4405; Cal. Civ. Code § 3426.1(b)(1); *Agency Solutions.Com*, 819 F. Supp. 2d at 1015 (acquisition).  "Improper means" are defined by statute (*see* Cal. Civ. Code § 3426.1(a)).  Songkick claims that Defendants acquired the Alleged Trade Secrets through the "improper means" of "theft, misrepresentation, or breach or inducing a breach of a duty to maintain secrecy."  *See* Gass Decl., Ex. 6 at 123 (Songkick's Proposed Jury Instruction No. 85).

Under California law, a party cannot recover for misappropriation where the allegedly infringing products—here, Ticketmaster 360 ("TM360")[4]—have been "independent[ly] deriv[ed]."  *See* Cal. Civ. Code § 3426.1(a); *Sargent Fletcher*, 110 Cal. App. 4th at 1669-70 ("Proof that defendant's use resulted from independent derivation . . . is evidence that there was no improper use on its part."); *see also Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 567 (3d Cir. 2003) (applying analogous Pennsylvania law).  To show that Defendants misappropriated any of Songkick's Alleged Trade Secrets, Songkick bears the burden of proving that TM360 was *not* independently developed, and was instead derived from

---

[4] TM360 is Ticketmaster's data analytics and reporting tool, which was developed in early 2012.  It gives Ticketmaster's venue, artist, and promoter clients comprehensive reports on a variety of data related to concerts and fans, including ticket sales, fan demographics, and web traffic.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1  Songkick's Alleged Trade Secrets.   *Sargent Fletcher*, 110 Cal. App. 4th at

2  1669-70.

### 3. Songkick Must Establish That It Suffered Damages Caused By Defendants' Alleged Misappropriation

The CUTSA permits Songkick to recover damages measured by its actual loss or the amount by which Defendants were unjustly enriched, provided it can prove such damages.  *See* Cal. Civ. Code § 3426.3.  Where actual loss or unjust enrichment are not provable, CUTSA permits the Court to award a reasonable royalty.  *See* Cal. Civ. Code § 3426.3(b).  Songkick has not disclosed a computation of actual loss resulting from the alleged CUTSA violation and its damages expert, Mr. Yurkerwich, has not offered any opinion purporting to quantify any alleged actual loss from trade secret misappropriation.[5]  Songkick has also never alleged that it is entitled to a reasonable royalty, nor has it provided any evidence or expert report calculating a reasonable royalty.  Songkick is thus limited to seeking unjust enrichment damages resulting from trade secret misappropriation, as this is the only computation of damages it has disclosed.  However, Songkick also bears the burden of proving that Defendants' alleged unjust enrichment was caused by the alleged misappropriation of Songkick's Alleged Trade Secrets.

### D. Claim 4: Songkick Claims Defendants Violated The Computer Fraud And Abuse Act ("CFAA"), 18 U.S.C. § 1030

To establish its CFAA claim, Songkick bears the burden of proving that (1) Defendants intentionally accessed a Songkick computer or computer system that was used in or affected commerce or communication between one state and another state; (2) Defendants accessed the Songkick computer or computer system

---

[5]   During a meet-and-confer regarding the parties proposed jury instructions, Songkick claimed that it was seeking actual loss in the form of lost business value resulting from alleged trade secret misappropriation, and that Mr. Yurkerwich had disclosed such a computation of damages.  For the reasons explained in Defendants' Motion *in limine* regarding Songkick's undisclosed damages computations, this is false.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

without authorization, or in a way that exceeded authorized access; (3) Defendants obtained information from the Songkick computer or computer system; and (4) Songkick suffered "loss by reason of a violation" of the statute of at least $5,000. *See* 18 U.S.C. § 1030; Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 8.97.

"Loss" is specifically defined in the CFAA as "any reasonable cost to a victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the system or information to its condition prior to the incursion, and any revenue lost, cost incurred, or damages incurred because of interruption of services." 18 U.S.C. § 1030(e)(11). Harm resulting from misappropriation or use of any information obtained through the unauthorized access does not count towards the $5,000 loss requirement. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1068 (N.D. Cal. 2012) (dismissing CFAA claims on grounds plaintiffs failed to plead cognizable CFAA "loss," where plaintiffs alleged that defendants collected and used plaintiff's personal information through hacking); *In re Zynga Privacy Litig.*, No. C 10-04680 JWW, 2011 WL 7479170, at *3 (N.D. Cal. June 15, 2011), aff'd, 750 F.3d 1098 (9th Cir. 2014) (misappropriation and disclosure of plaintiff's information, obtained via hacking, is not loss under CFAA).

### E.   Claim 5: Songkick Claims Defendants Intentionally Interfered With Songkick's Contractual Relations

To establish its claim for intentional interference with contractual relations, Songkick bears the burden of proving "(1) a valid contract between [Songkick] and a third party; (2) [Defendants'] knowledge of this contract; (3) [Defendants'] intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (Cal. 1990).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

### F.   Claim 6: Songkick Claims Defendants Intentionally Interfered With Songkick's Prospective Economic Relations

To establish its claim for intentional interference with prospective economic relations, Songkick bears the burden of proving "(1) the existence of a specific economic relationship between [Songkick] and third parties that may economically benefit [Songkick]; (2) knowledge by [Defendants] of this relationship; (3) intentional acts by [Defendants] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to [Songkick]." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1311 (N.D. Cal. 1997) (internal quotations omitted).   Additionally, Songkick "must plead that [Defendants] engaged in an independently wrongful act . . . proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal 4th 1134 (2003).

### G.   Claim 7: Songkick's Promissory Estoppel Claim

To establish its promissory estoppel claim, Songkick must prove "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance [was] both reasonable and foreseeable; and (4) the party asserting the estoppel [was] injured by his reliance." *Advanced Choices, Inc. v. Dep't of Health Servs.*, 107 Cal. Rptr. 3d 470, 479 (Ct. App. 2010) (citation omitted). "Basic contract principles indicate that reliance on a promise made with the reservation of the option to change that promise is unreasonable." *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (California law); *see also Universal By-Prods., Inc. v. City of Modesto*, 117 Cal. Rptr. 525, 532 (Ct. App. 1974).[6]

---

[6]   For the reasons explained in Section X(A), Songkick's equitable promissory estoppel and UCL claims do not carry a right to a jury trial and should be bifurcated for a later bench trial, to the extent that Songkick seeks to present evidence for these claims that does not pertain to any of its jury-triable claims. *Hodge v. Superior Court,* 145 Cal. App. 4th 278, 282-85 (2006); *C & K Eng'g Contractors v. Amber Steel Co.*, 23 Cal. 3d 1, 10 (1978).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

**H.   Claim 8: Songkick Claims Defendants Committed An "Unfair" Or "Unlawful" Business Practice In Violation Of The California Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.**

To recover for unfair competition, Songkick bears the burden of proving to the Court (which adjudicates UCL claims) that Defendants engaged in unlawful, unfair, or fraudulent business practices.  Cal. Bus. & Prof. Code § 17200.  For the conduct that Songkick alleges is anticompetitive, whether it also violates the UCL is derivative of the federal antitrust laws.   "If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reasons . . . the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers." *City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686, 691-92 (9th Cir. 2015).   Songkick also bears the burden of proving that it has disclosed, and is entitled to, a remedy available under the UCL.  "[N]onrestitutionary disgorgement of profits is not an available remedy . . . under the UCL." *Korea Supply Co.*, 29 Cal 4th at 1152.  Remedies under the UCL are meant to "restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.* at 1149 (plaintiff not entitled to restitution when seeking disgorgement of profits rather than the return of money or property once in its possession).   Songkick therefore bears the burden of (1) identifying "funds" that (2) were acquired by Defendants, (3) to which Songkick has an ownership interest, before it can recover under the UCL.

## III.   CONTENTIONS   OF   FACT   (SONGKICK'S   AFFIRMATIVE CLAIMS)

### A.   Songkick Cannot Meet Its Burden To Prove Violations of The Sherman Act, Section 1

#### 1.   Ticketmaster Owns The Exclusive Rights To Conduct Artist Presales At Ticketmaster Venues

This case concerns (at least) hundreds of venue contracts, each separately

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

negotiated between two sophisticated commercial entities.  Those contracts make clear that Ticketmaster is the only ticketing service provider that has the contractual right to conduct artist presales at the venues with which it contracts. The agreements expressly prohibit the use of any third-party ticketing service other than Ticketmaster for selling any of the venue's tickets.   *See, e.g.*, O'Mara Decl. in Supp. Defs.' Mot. for Partial Summ. J., ECF No. 222, ("O'Mara Decl.") Ex. 43 at § 2(c).   Therefore, Ticketmaster owns the exclusive rights to all of the venue's tickets, including "presales" of every stripe—artist, credit card, or anything else. *Id.*  at § 2(a).  Even for artist presales that comply with the fan club policy, a venue may not allow artists to use another ticketing service, like Songkick, to conduct those sales unless Ticketmaster agrees.

## 2.   Songkick Cannot Prove That "Artist Presale Ticketing Services" Is A Distinct Market From "Concert Venue Ticketing Services"

Songkick has not presented evidence showing that services for artist presales are not reasonably interchangeable with services for concert tickets generally. That is because artist presales tickets and general concert tickets are reasonably interchangeable, and therefore venues treat their provision as reasonably interchangeable.  *See* O'Mara Decl. Ex. 51, Expert Report of Jeff Kline ¶¶ 50, 53.

## 3.   Songkick Cannot Show That Ticketmaster's Acquisition of Artist Presale Rights Is The Result Of The Unlawful Exclusive Dealing

Ticketmaster has exclusive rights over presales simply because they have been included in the package of exclusive rights traded in its venue agreements. *E.g.*, O'Mara Decl. Ex, 43.

### a.   Songkick Cannot Prove It Was Foreclosed From The Artist Presales Market

To prove that Ticketmaster acquired ticketing rights as a product of exclusive dealing, Songkick must show that the exclusive agreements foreclosed Songkick from competing.   However, Songkick has deliberately adopted a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

business strategy by which it simply refuses to compete for ticketing rights from venues.  O'Mara Decl. Ex. 74, ACCESS00003102 at -115; O'Mara Decl. Ex. 67, M. Noble Dep. 90:22-91:12; Mead Decl. ¶ 11, ECF No. 38.  It is undisputed that Songkick does not try to cut presale ticketing rights deals of any kind with any U.S. concert venue (or any ticketing company that acquired rights from a concert venue).  O'Mara Decl. Ex. 74, ACCESS00003102 at -115; O'Mara Decl. Ex. 67, M. Noble Dep. 90:22-91:12; Mead Decl. ¶ 11, ECF No. 38.  It deals with artists on the false pretense that artists have some kind of natural rights to conduct presales, notwithstanding the existence of thousands of exclusive venue ticketing contracts to the contrary.  Because Songkick has made no attempt to compete, it cannot demonstrate the foreclosure prong of the exclusive dealing test.  *Ferguson v. Greater Pocatello Chamber of Commerce*, 848 F.2d 976, 983 (9th Cir. 1988).

### b. Songkick Does Not Have Antitrust Standing To Challenge Ticketmaster's Exclusive Contracts In The "Concert Services" Market

Songkick's antitrust standing is limited by the narrow scope of its business. Songkick is not a participant in the concert venue ticketing services market—the market allegedly restrained or monopolized by exclusive agreements with substantial up-front payments.  By choice, Songkick does not bid for venue ticketing services contracts.  O'Mara Decl. Ex. 50, Songkick's Resp. to Defs.' 1st RFAs, Resp. No. 3 at 6, Jan. 26, 2017); *id.*, Ex. 48, M. Jones Dep. 56:13-19.  It therefore has intentionally chosen not to participate in the market for concert services, and does not have standing to challenge Ticketmaster's agreements.

### c. Songkick Cannot Prove Foreclosure In The "Concert Services" Market

Even if Songkick had antitrust standing to challenge Ticketmaster's contracts in the concert services market, Songkick cannot show that the exclusive contracts have foreclosed competition in the concert services market.  The contracts are predominately awarded as a result of a competitive bidding process in

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1  response to the venues' RFPs.  O'Mara Decl. Ex. 49, A. Dexter Dep. 68:3-69:15;

2  Gahagan Decl. ¶ 6, ECF No. 39-2.  Johnson Decl. ¶ 5, ECF No. 220-136; Hall

3  Decl. ¶ 4, ECF No. 220-137; Bedier Decl. ¶ 5, ECF No. 220-133; Marion Decl. ¶

4  5, ECF No. 220-135.  The venues overwhelmingly prefer these exclusive, long

5  term deals. O'Mara Decl. Ex. 51, Kline Report ¶¶ 28-31;  *e.g.*, Bedier Decl. ¶ 13,

6  ECF No. 220-133; Johnson Decl. ¶¶ 9-11, ECF No. 220-136.  And the terms of

7  these contracts continue to provide extensive pro-competitive and efficiency

8  benefits.

9       The contracts that become available for renewal in any given year permit

10  rivals effectively to compete with Ticketmaster for the venues' ticketing rights, and

11  for new firms to enter the market. ████████████████████████████████████

12  ████████████████████████████████ is about the same as when the Court in

13  *Tickets.com* held that Ticketmaster's exclusive deals were not anticompetitive.

14  *Ticketmaster Corp. v. Tickets.Com*, 2003 WL 21397701, at *2 (C.D. Cal. March 7,

15  2003); Gahagan Decl. ¶ 8, ECF No. 39-2.  When they do come up for bid,

16  Ticketmaster faces competition from several major, established competitors

17  (including Tickets.com itself) and, in recent years, a series of new market entrants.

18  O'Mara Decl. Ex. 55, Farrell Report ¶¶ 177, 200; Johnson Decl. ¶ 6, ECF No. 220-

19  136; Hall Decl. ¶ 5, ECF No. 220-137; Bedier Decl. ¶ 5, ECF No. 220-133; Marion

20  Decl. ¶ 5, ECF No. 220-135. ██████████████████████████████████████

21  ██████████████████████████████████████████████████████ Gahagan Decl.

22  ¶ 10, ECF No. 39-2.

23       Perhaps most importantly, there is absolutely no evidence in the record that

24  Ticketmaster forces or coerces venues into these exclusive agreements.  There is

25  instead simply competition-for-the-contract, "a form of competition that antitrust

26  laws protect rather than proscribe, and . . . is common." *Paddock Publ'ns, Inc. v.*

27  *Chicago Tribune Co.*, 103 F.3d 42, 45 (7th Cir. 1996) (Easterbrook, J.).

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

**4.**   **Songkick Cannot Prove That Ticketmaster's Acquisition Of Artist Presale Rights Is The Result Of Unlawful Tying**

So far as Defendants understand it, Songkick has alleged a "buy-side" tie, where a powerful buyer insists on acquiring a seller's full line of products so that it cannot sell to others, even though the seller would prefer to sell different products to different buyers.  Tying requires coercion.  There is no evidence in the record that Ticketmaster forces venues to sell presale rights along with the rest of the ticketing rights Ticketmaster acquires.  Songkick's own expert acknowledged at his deposition that he knew of no evidence that Ticketmaster actually engaged in requirements tying, or that presales came to be within the scope of the exclusive rights agreements as a result of coercion or forcing by Ticketmaster.  O'Mara Decl. Ex. 53, J. Farrell Dep. 43:22-44:6.  Further, Songkick cannot prove unlawful tying because under its own theory, the purchasers of the tying product (the venues who purchase venue ticketing services) are different from the purchasers of the tied product (the artists who purchase artist presale ticketing services).   Thus, Songkick's tying claim fails as a matter of law.

**5.**   **Songkick Cannot Prove That Ticketmaster Engaged In A Hub-And-Spoke Conspiracy To Boycott Songkick**

So far as Defendants understand it, Songkick alleges, in essence, that Ticketmaster has engaged in a "hub-and-spoke" conspiracy with venues, and perhaps artist managers, to boycott Songkick (despite not having explicitly pled such a theory).  Hub-and-spoke conspiracy claims require proof that the "spokes" conspired with one another as well—a so-called "rim."  *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015) ("a rimless hub-and-spoke conspiracy is not a hub-and-spoke conspiracy at all (for what is a wheel without a rim?); it is a collection of purely vertical agreements"); *United States v. Apple Inc.*, 791 F.3d 290, 296-97 (2d Cir. 2015).

There is no evidence of any kind of venue or artist conspiracy in this record.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1   Literally *none*.  Songkick cannot possibly meet its burden to prove a venue or artist
2   conspiracy at the "rim" level.

3          **6.     Songkick Cannot Prove That Ticketmaster Engaged In A
              Vertical Conspiracy To Boycott Songkick**
4

5          Songkick also alleges that Ticketmaster engaged in a vertical conspiracy
6   with non-venue third-parties  to boycott Songkick.  Songkick must prove that the
7   parties to such agreements had a conscious commitment to achieve an unlawful
8   objective; namely, boycotting Songkick.  Songkick's evidence does not establish
9   any conscious commitment to boycott Songkick.  First, there cannot be any vertical
10  "boycott" with venues because by not releasing its inventory to Songkick,
11  Ticketmaster was merely enforcing the terms of its contracts with venues.  *E.g.*,
12  O'Mara Decl. Ex. 43 at § 2(c).  That is not a "boycott."  *U.S. Healthcare, Inc. v.*
13  *Healthsource, Inc.*, 986 F.2d 589, 594 (1st Cir. 1993).  So too with artists and artist
14  managers.  As it relates to artists and their managers, Songkick's evidence does not
15  even establish there was an agreement between the parties regarding Songkick, let
16  alone a "conscious commitment to an unlawful objective."  *E.g.* O'Mara Decl. Ex.
17  117, Expert Report of David Yurkerwich, ("Yurkerwich Report") Ex. 9.5 at 73
18  (Entry for Usher).

19         **7.     Songkick Cannot Prove A Causal Antitrust Injury**

20         In order to establish causal antitrust injury, Songkick must show "in a
21  reasonable manner the link between the injury suffered and the illegal practices of
22  the defendant." *Magnetar Techs. Corp. v. Intamin, Ltd*., 801 F.3d 1150, 1160 (9th
23  Cir. 2015) (quoting *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081,
24  1161 (7th Cir. 1983).  Once Songkick has proved that is has suffered some injury
25  attributable to the alleged anticompetitive conduct of Defendants, it is Songkick's
26  burden to provide sufficient evidence to permit a "just and reasonable estimate of
27  damages." *William Inglis & Sons Baking Co. v. Continental Baking Co., Inc.*, 942
28  F.2d 1332, 1339–41 (9th Cir. 1991), *non-cited portion of opinion vacated in part*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1    *on reh'g*, 981 F.2d 1023 (9th Cir. 1992).

2       Songkick cannot establish that any of the alleged anticompetitive conduct

3  harmed it.  Songkick relies entirely on the Expert Report of David Yurkerwich to

4  establish causal antitrust injury.  For the reasons explained in Defendants' motion

5  for summary judgment, *Daubert* motion and based on the evidence to be presented

6  at trial, Mr. Yurkerwich fails to establish any link between the alleged

7  anticompetitive conduct and the bulk of the damages he has proffered.  Mot. for

8  Summ. J. at 58-65; Mot. to Exclude Testimony, ECF No. 276-2.  Among other

9  reasons, Songkick's claimed damages are based on Mr. Yurkerwich's assumptions

10 that (1) Songkick would have won business at percentage rates pulled entirely from

11 thin air; (2) that Songkick's business value is zero; and (3) that all of Defendants'

12 artist presale profits after a particular date are attributable to alleged wrongdoing.

13 These assumptions are based on nothing and are contradicted by the facts in

14 evidence.  Mr. Yurkerwich's proffered damages reports are not sufficient to

15 establish a causal connection between the alleged anticompetitive conduct and the

16 alleged damages, and certainly cannot provide a "just and reasonable estimate of

17 damages."  Nor is there any other record evidence that would support this element

18 of Songkick's claim.

19         **8.**    **Songkick Cannot Otherwise Prove That Defendants
20                Entered Into Any Unreasonable Restraint Of Trade**

21      Songkick has alleged no further Section 1 theories.  However, to the extent

22 that Songkick is permitted to do so at trial, the record contains no evidence that

23 Defendants have entered into any unreasonable restraints of trade or that Songkick

24 will be able to prove any of the required elements of such a claim.

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

**B.     Songkick Cannot Meet Its Burden To Prove Violations of Section 2 Of The Sherman Act**

       **1.     Songkick Cannot Prove That "Artist Presale Ticketing Services" Is A Distinct Market From "Concert Venue Ticketing Services"**

Songkick has not presented evidence showing that services for artist presales are not reasonably interchangeable with services for concert tickets generally. That is because artist presales tickets and general concert tickets are reasonably interchangeable, and therefore venues and other consumers treat their provision as reasonably interchangeable. *See* O'Mara Decl. Ex. 51, Expert Report of Jeff Kline ¶¶ 50, 53.

       **2.     Songkick Cannot Prove That Ticketmaster Has Monopoly Power Or A Dangerous Probability Of Achieving Monopoly Power In The Artist Presale Ticketing Services Market**

Even if artist presale ticketing services were its own market, Songkick cannot show by either direct evidence or circumstantial evidence that Ticketmaster has monopoly power or a dangerous probability of achieving monopoly power in it.  Because artist presales are part of the bundle of rights venues put up for bid in requests for proposals, *see supra* at Section III(A)(1), Ticketmaster engages in competitive bidding to win the rights to service artist presales.  Ticketmaster does not have the ability to control prices or exclude competition due to the highly competitive nature of these bids.  The contracts that become available for renewal in any given year permit rivals to effectively compete with Ticketmaster for the venues' ticketing rights, and for new firms to the enter the market. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is about the same as when the Court in *Tickets.com* held that there "are no meaningful barriers to entry" for Ticketmaster competitors.  *Tickets.Com*, 2003 WL 21397701, at *4; Gahagan Decl. ¶ 8, ECF No. 39-2.  When they do come up for bid, Ticketmaster faces competition from several major, established competitors (including Tickets.com itself) and, in recent years, a series of new market entrants.  O'Mara

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1  Decl. Ex. 55, Farrell Report ¶¶ 177, 200; Johnson Decl. ¶ 6, ECF No. 220-136;

2  Hall Decl. ¶ 5, ECF No. 220-137; Bedier Decl. ¶ 5, ECF No. 220-133; Marion

3  Decl. ¶ 5, ECF No. 220-135. █████████████████████████████████████████

4  ████████████████████████████████████████████████████  Gahagan Decl.

5  ¶ 10, ECF No. 39-2.  Songkick cannot prove that Ticketmaster has the ability to

6  control prices or exclude competition, nor can Songkick prove that Ticketmaster

7  has a dangerous probability of achieving monopoly power in the artist presale

8  services market.

9          3.     **Songkick Cannot Prove That Defendants Engaged In Exclusionary Conduct**

10

11                 a.     **Songkick Cannot Prove Defendants Engaged In An Anticompetitive Refusal To Deal With Songkick**

12

13         Songkick's primary antitrust complaint is that Ticketmaster has enforced the

14  requirements of its fan club policy such that Songkick has lost potential revenue.

15  Ticketmaster owns the exclusive rights to service artist presales at the venues with

16  which it contracts.  *See supra* Section III(A)(1).  It has no duty to deal with

17  Songkick under the antitrust laws unless it can prove that there has been a

18  profitable course of dealing between Songkick and Defendants, and Defendants

19  refuse to continue it on profitable terms.  *See Aspen Skiing Co. v. Aspen Highlands*

20  *Skiing Corp.,* 472 U.S. 585, 610 (1985) (emphasizing that dealing with plaintiff

21  "would have entailed no cost to [defendant] itself, [and] would have provided it

22  with immediate benefits"); *Trinko*, 540 U.S. at 409; *Aerotec*, 836 F.3d at 1184

23  ("[T]here is only a duty not to refrain from dealing where the only conceivable

24  rationale or purpose is 'to sacrifice short-term benefits in order to obtain higher

25  profits in the long run from the exclusion of competition.'" (citation omitted)).

26         Defendants never had a pre-existing, voluntary business relationship with

27  Songkick (and certainly not a profitable one).  And moreover, Songkick is taking

28  the extraordinary position that Ticketmaster must release ticket inventories for

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

Songkick's benefit *without compensation,* in the service of its preferred, "we do not acquire inventory—we never pay in advance for our allocation" business model.  O'Mara Decl. Ex. 74, ACCESS00003102 at -115; O'Mara Decl. Ex. 67, M. Noble Dep. 90:22-91:12; Mead Decl. ¶ 11, ECF No. 38.  Songkick cannot prove the *Aspen Skiing* exception to the general prohibition on imposing an antitrust duty to deal with competitors.

### b. Songkick Cannot Prove Defendants Engaged In Exclusionary Tying, Exclusive Dealing, Or Vertically Arranged Boycotts

To the extent Defendants can understand it, Songkick has claimed that Defendants' alleged tying, exclusive dealing, and vertically arranged boycotts violates both Section 1 and Section 2 of the Sherman Act.  For the same reasons Songkick cannot prove this alleged conduct violates Section 1, it cannot prove that it is exclusionary conduct under Section 2.  *See supra* Section III(A).

### c. Songkick Cannot Prove Defendants Otherwise Engaged In Exclusionary Conduct

Songkick has alleged no further Section 2 theories.  However, to the extent that Songkick is permitted to do so at trial, the record contains no evidence that Defendants have engaged in otherwise exclusionary conduct or that Songkick will be able to meet its burden on any element of a Section 2 claim.

### 4. Songkick Cannot Prove That It Suffered Any Antitrust Injury As A Result Of Any Alleged Ticketmaster Anticompetitive Conduct

For the same reasons Songkick cannot establish causal antitrust damages for its Section 1 claims, *see* Section V(A)(7), Songkick cannot show causal damages for its Section 2 claims.

### C. Songkick Cannot Meet Its Burden To Prove Trade Secret Misappropriation

Songkick's CUTSA claim lacks merit.  First, Songkick cannot demonstrate that the Alleged Trade Secrets are legally protectable under the CUTSA for several

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

independent reasons:   (1) it has not identified (and cannot identify) with the required particularity the things it claims constitute the Alleged Trade Secrets; (2) it cannot prove that the Alleged Trade Secrets ever had independent economic value; and (3) it cannot prove that it took reasonable efforts to protect the Alleged Trade Secrets.   *Cf. Agency Solutions.Com*, 819 F. Supp. 2d at 1024 (no relief where plaintiff failed to adequately allege particularized trade secrets or use by defendant).

Second, Songkick cannot prove misappropriation by disclosure or use of any of the Alleged Trade Secrets, and even to the extent it establishes that Defendants improperly acquired one or more of the Alleged Trade Secrets, Songkick cannot prove, nor did it disclose, any injury linked to such acquisition.  *See, e.g.*, *Solec Int'l, Inc. v. Mobil Solar Energy Corp.*, No. CV-89-971-JMI TX, 1990 WL 299252, at *1 (C.D. Cal. Oct. 25, 1990), *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) (same)).[7]   Third, Songkick cannot establish damages.

### 1.   Songkick Cannot Meet Its Burden Of Proving That The Alleged Trade Secrets Qualify For CUTSA Protection

#### a.   Songkick Has Not Identified Its Alleged Trade Secrets With Particularity

***No Proper Identification of Trade Secrets.***  Because Songkick amended its Complaint to add its trade secret claims only three weeks before the close of fact discovery, Defendants were unable to propound discovery requests asking Songkick to identify its trade secrets with reasonable particularity.  At a discovery conference before Magistrate Rosenberg on March 1, 2017, Ticketmaster requested

---

[7] Moreover, for certain of the Alleged Trade Secrets (*e.g.*, the "test sites," described below), Songkick cannot establish that Defendants improperly acquired these items because they were publicly available on the Internet.  *See Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1054 (D. Ariz. 2010) (granting summary judgment where plaintiff failed to show that defendant used misappropriated information).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS. AND COUNTER-CLAIMANT'S MEM. OF CONTENTIONS OF FACT & LAW CASE NO. 2:15-CV-09814 DSF (AGRx)

that the Court permit it to amend its January 27, 2017, 30(b)(6) notice of Songkick to include a topic seeking information on Songkick's trade secret claims, including the identity of the alleged trade secrets and information on the alleged acts of misappropriation. *See* Gass Decl. Ex. 12 at 20:8-13 (Mar. 1, 2017 Discovery Conf. Tr.).   Songkick refused to permit the examination (which would have been the only discovery it provided on its trade secret claims), claiming that it had provided "a very-detailed, very-in-depth amended complaint that . . . identifies all trade secrets," *id.* at 24:16-17, and that the topic was unnecessary as its "expert will be talking about all the trade secret issues," *id.* at 37:2-3.   The Court nevertheless granted Ticketmaster's request in part, and ordered Songkick to have its witness testify as to "the identity of each trade secret(s) with reasonable particularity, including compilations." ECF No. 173 at 5.

At that deposition, Songkick disclosed a written list of nine Alleged Trade Secrets.   *See* Gass Decl. Ex. 10 (Dep. Ex. 444) (listing "1. Artist Toolboxes; 2. Online Stores; 3. Artist Pipelines; 4. Financial Information; 5. Customer Data; 6. Weekly Head of Department Reports; 7. Client Lists; 8. BOD Presentations, business plans, internal strategies; 9. Contracts with third parties").   Although those trade secrets varied from those identified in Songkick's amended complaint, the list did not include any sort of compilation trade secret.   Indeed, not once in his deposition did Mr. Block identify a compilation trade secret (and by their nature, it is manifest that the nine alleged secrets could not combine into a single unified whole).   Mr. Block's testimony was the only discovery with respect to the identity of Songkick's trade secrets because Songkick did not produce an expert report on that issue, despite having informed the court that it would.[8]

---

[8]   Songkick's only expert report addressing trade secrets is Mr. Cunningham's report, and his opinions were limited to "whether Songkick undertook reasonable measures to maintain the secrecy of its artist toolboxes and 'test stores'" and "whether [Ticketmaster] without authorization accessed Songkick's artist toolboxes and test sites." Declaration of K. Cunningham in Supp. of Pl.'s Opp'n to

The parties exchanged proposed jury instructions on August 23, 2017, and met and conferred about them on September 17, 2017.   In its proposed jury instructions, Songkick identified a different set of trade secrets than those that Mr. Block had identified.  *See id.*, Ex. 6 at 113 (Songkick's Proposed Jury Instruction No. 77) (listing "1. Songkick's client-facing artist toolboxes …; 2. Songkick's 'test sites,' …; 3. Songkick's internal strategy documents and non-public financial data, such as Songkick's client lists and related data, 'Weekly Head of Department reports,' and actual and forecasted revenues and profits").  Again, Songkick did not identify a compilation trade secret.

Nearly four weeks later, after multiple exchanges of proposed jury instructions and objections, and only after Defendants had identified potential motions *in limine* based on Songkick's abandonment of certain of the Alleged Trade Secrets, Songkick served "Revised and Supplemental Instructions," which reverted to its original list of nine trade secrets and added, for the first time, a "compilation data" trade secret.  *See id.*, Ex. 7 (Songkick's Revised Proposed Jury Instruction No. 77).   Songkick had never before disclosed a compilation trade secret, and has not since provided any particularized information about what "compilation data" means.   Songkick's duty to identify any alleged compilation trade secret is particularly critical where, as here, its list of Alleged Trade Secrets contains items that cannot possibly be compiled into a single trade secret (such as the Artist Toolbox and Weekly Head of Department reports). Songkick's failure to identify a compilation trade secret or "compilation data" bars any CUTSA claim for its alleged misappropriation.

The remaining items on Songkick's ever-changing list of Alleged Trade Secrets generally divide into three categories: (1) the Artist Toolbox; (2) the test sites for Songkick's online stores; and (3) the "internal strategy documents and

---

Defs.' Mot. for Partial Summ. J., ECF No. 239-30, Ex. 1 (Expert Report of Kyle Cunningham, ¶ 2).  He did not identify the alleged trade secrets.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

non-public financial data, such as Songkick's client lists and related data, 'Weekly Head of Department reports,' and actual and forecasted revenues and profits" (the "Internal Documents").  Songkick has failed to identify the supposed Internal Documents with reasonable particularity, except to point to a single document purporting to be a "Weekly Head of Department report" from 2012.  Songkick's vague narrative of general concepts cannot meet California's requirement that trade secrets for which a party seeks to recover be "clearly identified," *Silvaco*, 184 Cal. App. 4th at 221.  It is impossible to discern "the boundaries within which the secret lies"; therefore, Songkick has never met its burden to identify all the Alleged Trade Secrets with reasonable particularity, nor can it meet its burden at trial to demonstrate to the jury that each Alleged Trade Secret is a "thing" which could be deemed a trade secret.  *See Altavion*, 226 Cal. App. 4th at 43-44; *Agency Solutions.com*, 819 F. Supp. 2d at 1017; Cal. Civ. Proc. Code § 2019.210.

As Songkick failed to, and still cannot, identify what the Internal Documents are, it cannot recover under the express terms of the CUTSA for any of them.  *See Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009); *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1453 (2002) ("The ultimate determination of trade secret status *is subject to proof presented at trial*." (emphasis added)).

***No Protectable Trade Secrets.***  Songkick has provided limited information identifying the first Alleged Trade Secret, an online product called the Artist Toolbox, or "Client-Facing Reporting Toolbox."  But it appears that this is a suite of "reporting" tools that Songkick offers artists in connection with their presales. Songkick claims that Defendants "used" the Artist Toolbox to develop their own reporting product, TM360, even though TM360 has existed in substantially the same form since 2012, long before any allegation of misappropriation.

Songkick has also attempted to provide an identification for its "test sites" for its "artist stores."  These artist stores are the public-facing ticketing websites Songkick builds for artists to embed in their websites (on which they sell presale

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

tickets); the test sites are artist stores for shows that have not yet gone on sale, but which Songkick nevertheless made publicly accessible on the Internet without any password protection.  Moreover, Songkick used a simple, sequential numbering system for the publicly accessible URLs of these websites: https://www.crowdsurge.com/store/?storeid=1324, -1325, etc.

The Artist Toolboxes and test sites are not protectable under the CUTSA, because they are "ways of doing the same thing that others in the [ticketing] field do."  *See Agency Solutions.Com*, 819 F. Supp. 2d at 1017; *accord Kewanee v. Bicron Corp.*, 416 U.S. 470, 475 (1974) ("The subject of a trade secret must be secret, and must not be of public knowledge or of a general knowledge in the trade or business."); *DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004) (same).  The Artist Toolbox is allegedly a client-facing data analytics and reporting tool, which provides artists and managers with information regarding ticket sales, revenue, and fan demographics—all without any confidentiality or duties of nondisclosure by the user.  This set of features and functionality exists in many products in the ticketing industry and is therefore not protectable.  Likewise, the test sites are nothing more than online ticketing stores—a product that is ubiquitous in the ticketing industry, published to consumers routinely, and is used every time a fan buys a ticket over the Internet.  The test sites are not legally protectable trade secrets.

Moreover, both the Artist Toolbox and test sites are the products Songkick markets and discloses regularly to its clients.  Songkick markets the Artist Toolbox to artists (and their representatives) with whom it hopes to work by openly sharing animated graphical representations of the tool's features.  *See* Gass Decl. Ex. 9 at 610:9-612:13, 617:1-14 (Dep. Tr. of Songkick's 30(b)(6), Josh Block) ("Block Dep.").   And by Songkick's own account, it builds the test sites to pitch to potential artist-clients as part of its product offering, and makes them available over the Internet.  *Id.* at 552:4-18.  These items are client-facing, and inherently

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

30

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1   disclose their features and functionality to the user.  Information that is viewable to

2   an end-user is not protectable as a trade secret, particularly where there is no duty

3   of confidentiality.  *See Self Directed Placement Corp. v. Control Data Corp*., 908

4   F.2d 462, 465-66 (9th Cir. 1990) (applying California law) (information cannot be

5   trade secret if fully disclosed to anyone who purchases product); *see also*

6   *Futurecraft Corp. v. Clary Corp.*, 205 Cal. App. 2d 279, 289 (1962) (design

7   features not trade secret because all features disclosed in finished, sold product).

8   Songkick even disclosed screenshots of the Artist Toolbox on its public website.

9   *See* Gass Decl. Ex. 11 (Wayback Machine Printout of CrowdSurge Website,

10  TM00125535).

11          As for the Internal Documents, Songkick cannot show that any of them are

12  protectable trade secrets either.  Songkick has adduced no evidence that its Internal

13  Documents merit trade secret protection—indeed, Songkick has not even provided

14  an example of what any of these allegedly misappropriated documents are aside

15  from the Weekly Head of Department Report, which it admits was years outdated

16  by the time it was disclosed to Defendants and no longer in use at the company.

17  *See id.*, Ex. 9 at 512:5-513:12, 591:12-592:2 (Block Dep.) ("Q. Since you became

18  the head of the strategy department at Songkick in the summer of 2015, have you

19  ever received a head of department weekly report that was consistent with what

20  you reviewed in preparation for the deposition today?  A. No.").

21                  **b.      Songkick Cannot Establish That The Alleged Trade
22                            Secrets Had Independent Economic Value**

23  Songkick's misappropriation claim also fails because it cannot establish that the

24  Alleged Trade Secrets had "independent economic value . . . from not being

25  generally known" at the time of misappropriation.  *See* Cal. Civ. Code

26  § 3426.1(d)(1); *People v. Laiwala*, 143 Cal. App. 4th 1065, 1072 (2006).  As

27  discussed above in Section III(C)(1)(a), the Artist Toolbox and test sites were

28  publicly disclosed—if they had any value at all, it was not because they were "not

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

31

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

generally known" to the public.  Indeed, by their nature, the Artist Toolboxes were routinely disclosed to third parties as part of Songkick's regular business activities. These products cannot derive value from being secret because they are not secret, and are thus not protectable under CUTSA.  Similarly, Songkick's Internal Documents, to the extent Defendants can identify them, had no value.   Songkick itself admits that the Weekly Head of Department Report was outdated and obsolete.  *See* Gass Decl. Ex. 9 at 512:5-513:12, 591:12-592:2 (Block Dep.).

None of the documents Songkick claims were misappropriated are trade secrets because they could not possibly have been "useful" or provide any benefit that was "more than trivial."  *See Yield Dynamics*, 154 Cal. App. 4th at 565.  None of Songkick's Alleged Trade Secrets had independent economic value by virtue of their secrecy.

### c.      Songkick Cannot Establish That It Took Reasonable Measures To Maintain Secrecy

Songkick's CUTSA claim also fails because the Alleged Trade Secrets were not "[t]he subject of efforts that are reasonable under the circumstances to maintain [their] secrecy."  Cal. Civ. Code § 3426.1(d)(2).

As discussed above, the Artist Toolbox is in no sense of the word a "secret" at all—it is the product Songkick offers and markets to artists and managers Accordingly, Songkick has marketed the tool to artists (and their representatives) with whom it hopes to work by openly sharing animated graphical representations of the tool's features.  *See* Gass Decl. Ex. 9 at 610:9-612:13, 617:1-14 (Block Dep.).  Songkick has freely distributed that material to third parties through email, on its public-facing website, and in pitch meetings, without ever seeking nondisclosure or confidentiality protection or asking clients not to publicly disclose it.  *Id.* at 616:2-621:17.  Indeed, ***Ticketmaster*** was sent a copy of Songkick's pitch deck, which Songkick circulated broadly to prospective clients, months before Mead was hired.  Songkick even demonstrated its platform tools to Ticketmaster in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

32

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1    2011, and Live Nation—through company-owned artist management companies—

2    had authorized access to the toolbox, the same one Songkick now claims is its

3    trade secret.  Because Songkick "publicly disclose[d] the [Artist Toolbox], [its]

4    property right in the information [was] extinguished."  *See Gemisys Corp. v.*

5    *Phoenix Am., Inc.*, 186 F.R.D. 551, 557 (N.D. Cal. 1999).

6         The same is true of the test sites.  Songkick created these public-facing

7    ticketing websites to pitch to artists and gain their business.  *See* Gass Decl. Ex. 9

8    at 552:4-18 (Block Dep.).    Moreover, Songkick made the test sites publicly

9    available on the Internet without any password protection.   Songkick's disclosure

10   of the test sites, without *any* measures to keep them secret, dooms its trade secret

11   claim.

12        Songkick also failed to take reasonable measures to keep its Internal

13   Strategy documents secret.  Songkick required Mead to use his personal laptop for

14   Songkick business, and it made no effort to delete any Songkick documents from

15   his laptop before he left Songkick's employ.  Songkick has not even alleged that

16   any of the documents were marked confidential, password protected, or encrypted,

17   or that it took measures to prevent their dissemination outside of the company.

18   Under these circumstances, Songkick cannot show that it took reasonable measures

19   to protect the secrecy of any of its Alleged Trade Secrets.  *See, e.g.*, *FAA Beverly*

20   *Hills, Inc. v. Shahrokhi*, No. B166856, 2004 WL 2211916, at *2 (Cal. Ct. App.

21   Oct. 4, 2004).

22        **2.**    **Songkick Cannot Meet Its Burden Of Proving That**
23             **Defendants Used, Disclosed, or Improperly Acquired The Alleged Trade Secrets**

24        Even if the Alleged Trade Secrets were protectable as a matter of law under

25   the CUTSA (they are not), Songkick cannot establish that Defendants used any of

26   the Alleged Trade Secrets.  *See* Cal. Civ. Code § 3426.1(b).   The product that

27   Songkick accuses of using its Artist Toolbox, TM360, was independently

28   developed by Ticketmaster prior to Defendants' exposure to the Artist Toolbox.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

33

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1    Moreover, Songkick has offered no evidence that Defendants "used" the test

2    sites—indeed, the evidence Songkick points to shows only that Defendants viewed

3    the publicly-available websites (as anyone with a web browser could do), not that

4    Ticketmaster took any action as a result of viewing them.   As to the Internal

5    Documents, Songkick has offered no theory or evidence to support a claim of

6    misappropriation by use.

7    In addition, there is no evidence to support Songkick's only theory of

8    misappropriation by disclosure, which alleges that Defendants disclosed the

9    features and functionality of the Artist Toolbox by using it to develop TM360.

10   Finally, Songkick's CUTSA claim alleging improper acquisition of the test

11   sites fails.   Ticketmaster learned of and accessed the test sites by public means,

12   precluding any claim of acquisition by improper means as to that Alleged Trade

13   Secret.

14                    a.    **Because    Ticketmaster   Independently   Developed
                           TM360,   Songkick   Cannot   Demonstrate   That
15                         Defendants Used The Artist Toolbox**

16   Songkick claims that Defendants used the Artist Toolbox to develop their

17   data   analytics   and   reporting   tool,   TM360.    This   is   demonstrably   false.

18   Uncontroverted evidence establishes that Ticketmaster independently developed

19   TM360 in-house and based on products developed long before any Alleged Trade

20   Secrets were disclosed to Ticketmaster.   The CUTSA "does not prevent a person

21   from using independently developed . . . trade secret information." *Mattel, Inc.*,

22   782 F. Supp. 2d at 963; *accord* Cal. Civ. Code § 3426.1(a) ("independent

23   derivation" is not "improper means").   It is Songkick's burden to *disprove* that

24   TM360 is the product of independent development and/or derivation. *See Sargent*

25   *Fletcher*, 110 Cal. App. 4th at 1669-70.

26   TM360 (now called "Ticketmaster One" or "TMOne"), originally developed

27   in early 2012, gives users comprehensive reports on a variety of data related to

28   concerts and fans, including ticket sales, fan demographics, and web traffic.

LATHAM&WATKINS␣␣␣
ATTORNEYS AT LAW
SAN FRANCISCO

34

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1   TM360 was originally marketed to Ticketmaster's venue clients, though artists and
2   managers used it as well.   In April 2013, Ticketmaster rolled out a version of
3   TM360 specifically designed for artists and managers.  This version was identical
4   to the prior version, except that two reporting features relevant only to venues
5   (ticket resales and ticket delivery method) were disabled.  TM360 was rebranded
6   as TMOne in August 2015, though its features remained the same as those initially
7   offered to artist clients in April 2013.   Nevertheless, Songkick claims—without
8   any evidence or expert testimony—that Defendants somehow misappropriated its
9   "secret" Artist Toolbox to develop TM360.  This is wholly without merit, and
10  Songkick's misappropriation by use claim regarding the Artist Toolbox fails for
11  this reason as well.[9]

12          **b.      Songkick Cannot Establish That Defendants Used Any Of The Other Alleged Trade Secrets**
13

14          Songkick has identified no evidence showing that Defendants used any of
15  the other Alleged Trade Secrets.  "Use" of a trade secret requires "exploitation of
16  the trade secret that is likely to result in injury to the trade secret owner or
17  enrichment to the defendant."  *See JustMed, Inc. v. Byce*, 600 F.3d 1118, 1130 (9th
18  Cir. 2010) (discussing Idaho's substantially identical trade secret statute); *Agency*
19  *Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1028 (E.D. Cal.
20  2011) (applying quoted language from *JustMed* to CUTSA).

21          As discussed above, Songkick has zero evidence that Defendants "used" the
22  Artist Toolbox, let alone used it to develop a product that existed before any

23  _____

24  [9]   In Songkick's proposed jury instructions, it claims that if it shows the Artist
25  Toolbox and TM360 are "similar," the burden to prove non-use shifts to
    Defendants, citing a litany of pre-CUTSA cases.  California law squarely rejects
    Songkick's attempt to shift the burden to establish an element of its
26  misappropriation claim.  *See Sargent Fletcher*, 110 Cal. App. 4th at 1668-74
    (affirming decision to refuse proposed instruction shifting burden of proof to
27  defendant to show independent development upon showing of substantial
    similarity between plaintiff's and defendant's products, on grounds CUTSA rejects
28  burden shifting framework).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

35                                        DEFS. AND COUNTER-CLAIMANT'S
                                          MEM. OF CONTENTIONS OF FACT & LAW
                                          CASE NO. 2:15-CV-09814 DSF (AGRx)

alleged misappropriation ever occurred.   Likewise, Songkick has offered no evidence that Defendants "used" the test sites.   Songkick's allegation is that Defendants "monitored" the test sites and used the information gleaned from the test sites to steal business away from Songkick.  There is zero evidence to support this claim.  Instead, the evidence Songkick points to shows only that Defendants frequently viewed the test sites online, as any member of the public could do, *not* that Ticketmaster took any action as a result of viewing them, let alone "exploited" them for its own enrichment.

Finally, Songkick has no evidence that Defendants used or even looked at any of Songkick's Internal Documents, and has not and cannot point to a single example of any use made by Defendants or any benefits conferred on Defendants by access to those documents. The complete absence of evidence from Songkick as to a Ticketmaster product or Ticketmaster research and development using Songkick's Artist Toolboxes, test sites, or Internal Documents is dispositive of "use." *See Calloway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 325 F. Supp. 2d 457, 461-62 (D. Del. 2004) (rejecting CUTSA claim based on use where plaintiff "failed to put forth any evidence that show[ed] that [defendant] used in any way" the alleged trade secrets).

### c. Defendants' Acquisition Of The Publicly-Available "Test Sites" Was Not Wrongful

Songkick cannot show that Defendants' acquisition of its test sites was improper, as those sites were publicly available online without any password protection or credentials required for access.  "[I]t is not improper to acquire a trade secret or knowledge of the trade secret by . . . observing the information in public use or on public display." CACI § 4408.  Any observation of the test sites was therefore proper.  *See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1256 (N.D. Cal. 1995) (alleged trade secret posted online was not protectable).  Moreover, to the extent Songkick claims its publicly-

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

36

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

available test sites were somehow improperly acquired because Mead knew of their existence because of his employment at Songkick, that claim fails as well. Mead figured out the numbering system while employed at Ticketmaster, long after his time at Songkick and independent of anything he learned during his employment there. *See Agency Solutions.Com*, 819 F. Supp. 2d at 1026 ("Reverse engineering . . . shall not be considered improper means.").

### d. Songkick Cannot Show That Defendants Disclosed Any Of The Alleged Trade Secrets

Songkick has not alleged that Defendants disclosed any of the Alleged Trade Secrets except for the Artist Toolbox. Regarding the Toolbox, Songkick's misappropriation by disclosure theory is that Defendants "disclosed" the Toolbox by using it in its product, TM360. For the reasons stated in Section III(C)(1)(a), *supra*, Songkick has zero evidence to support this allegation. *Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.*, No. CV 98-1374-WMB SHX, 1999 WL 675446, at *8 (C.D. Cal. Aug. 12, 1999) (lack of evidence bars misappropriation by disclosure claim).

### 3. Songkick Cannot Establish That It Is Entitled To Damages

The CUTSA permits a plaintiff to recover "actual loss" or a defendant's unjust enrichment, to the extent it is not included in "actual loss." Cal. Civ. Code § 3426.3(a).

### a. Songkick Is Not Seeking Actual Loss As A Result Of The Alleged Misappropriation

Songkick's only Rule 26 disclosures with respect to any of its damages in this action are dated February 26, 2016, which was almost a full year *before* Songkick filed its First Amended Complaint on February 16, 2017 and asserted its trade secret claim.[10] Even though Songkick twice supplemented its disclosures

---

[10]  Songkick served its ***Fourth*** Supplemental Initial Disclosures on Ticketmaster less than 72 hours after Ticketmaster's disclosure, during the parties September 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

37

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

following its filing of the First Amended Complaint to add items related to trade secret and CFAA liability—on March 6 and 9, 2017—each time it elected not to update its computation of damages.  As such, those Rule 26 disclosures, including any disclosures relating to Songkick's computation of its damages, cannot, and do not, concern any claims added in that First Amended Complaint, including Songkick's trade secret misappropriation and CFAA claims.

In fact, Songkick's sole disclosure with respect to damages for those newly added claims is in the March 13, 2017 report of its damages expert David Yurkerwich, who purports to identify the "damages caused by the Defendants' actions in this matter."  *See* Declaration of D. Yurkerwich in Supp. of Pl.'s Opp'n to Defs.' Mot. for Partial Summ. J., ECF No. 239-27, Ex. 1 (Expert Report of David Yurkerwich, ¶ 4).  Mr. Yurkerwich did not offer an opinion as to Songkick's actual loss resulting from the alleged misappropriation.  *See id.*, Ex. 3 (Reply Expert Report of David Yurkerwich, ¶ 92) ("I do not provide the loss of business value analysis as an estimate of the individual damages for [Songkick's] other, non-antitrust claims.").

At his deposition on May 17, 2017, Mr. Yurkerwich again expressly forswore lost business value as a measure of Songkick's damages from its trade

---

meet and confer, that it intended to bring a Motion *in limine* regarding Songkick's failure to disclose "loss" under the CFAA (and just 96 hours before the filing deadline).  Gass Decl. Ex. 5.  In those disclosures, Songkick stated for the first time that it was seeking losses within the meaning of section 18 U.S.C. § 1030(e)(11) and that Mr. Yurkerwich would provide supplemental opinions to "demonstrate losses exceeding $5,000."  This eleventh-hour disclosure should be rejected for multiple reasons.  First, those disclosures constitute an admission that Songkick has not previously disclosed any losses under 18 U.S.C. § 1030(e)(11), and that it cannot therefore satisfy the CFAA's  jurisdictional threshold at trial.  Second, litigation costs such as expert fees do not constitute "loss."  *Mintz v. Mark Bartelstein and Assoc. Inc.*, 906 F. Supp. 2d 1017 (C.D. Cal. 2012) ("litigation expenses in this case do not qualify as a 'loss' under the CFAA").  Because Songkick is no longer operating, any future costs that it will incur investigating the alleged intrusion will necessarily be limited to litigation costs.  Third, pursuant to Rule 37(c)(1), the Court should preclude Songkick from relying on any matters disclosed therein because the disclosures were served over six months after the close of fact discovery and at a time when Ticketmaster cannot test any of these alleged new facts.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

38

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

secret misappropriation and CFAA claims—this time under oath.  Mr. Yurkerwich testified:  "I have testified to the relevance of the business value analysis to the anti-competitive behavior. . . I am not suggesting that the loss of business value analysis is an estimate of the individual damages for the other claims."  Gass Decl., Ex. 8 (Yurkerwich Dep. 193:14-23).  Consequently, there is no basis for Songkick to present any argument at trial that it has somehow suffered actual loss resulting from the alleged misappropriation.

### b. Songkick Cannot Prove That Defendants Were Unjustly Enriched As A Result Of The Alleged Misappropriation

Songkick's CUTSA claim also fails because there is no causal connection between the alleged misappropriation and any unjust enrichment of Defendants. Songkick must show that, "but for" Defendants' misappropriation, Defendants would not have been enriched, and that such misappropriation played a "substantial factor" in bringing about that enrichment.  *See NHC Ins. Servs. v. Millennium Corp. Sols.*, No. B210893, 2012 Cal. App. Unpub. LEXIS 949, at *20-21 (Feb. 7, 2012); CACI § 4401.  Songkick has made no attempt to show Defendants' alleged misappropriation *caused* Defendants to be unjustly enriched. Indeed, Defendants have not used any of the Alleged Trade Secrets and thus could not have been enriched from them.  Songkick's CUTSA claim thus also fails because it cannot demonstrate causation.  *See* Cal. Civ. Code § 3426.3.

### D. Songkick Cannot Meet Its Burden To Prove Violations of The CFAA

Songkick's claim that Defendants violated the CFAA fails because Songkick has not disclosed, and cannot prove, $5,000 of "loss by reason of a violation of" the CFAA.  As discussed above in Section III(C)(3)(a), Songkick's only damages disclosure in this case with respect to the CFAA claim was provided by its expert, Mr. Yurkerwich.  Nowhere does Mr. Yurkerwich provide a computation of, or cite any evidence supporting, "loss" under the CFAA.  As with its trade secret claims,

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

39

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1 Songkick could have amended its damages disclosure to include information

2 regarding any alleged "loss" resulting from the CFAA violation after amending its

3 complaint.  It did not timely do so, even though it twice supplemented its Rule 26

4 disclosures to support its CFAA and trade secret claims before the close of fact

5 discovery.[11]  This failure dooms its CFAA claim, because Songkick adduced no

6 evidence whatsoever that could satisfy the jurisdictional threshold in the CFAA of

7 $5,000 of "loss."  *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949

8 (N.D. Cal. 2014) (defendant entitled to judgment on pleadings on CFAA claim

9 where plaintiff fails specifically to provide details allowing factfinder to calculate

10 $5,000 of "loss" as defined in 18 U.S.C. §§ 1030(e)(8), (11)).

11
12
### E.  Songkick Cannot Meet Its Burden To Prove Intentional Interference With Contractual Relations

13 Songkick claims that Defendants intentionally interfered with Songkick's

14 contractual relations with artists by pressuring artists to use Defendants to sell

15 presale tickets instead of Songkick, and by withholding tickets from artists who

16 chose to work with Songkick.  This claim is factually and legally defective.  Even

17 if Songkick could show that it had valid contracts with artists (which it cannot), it

18 is not tortious interference for Defendants to assert their own contractual rights.

19 Where the defendant "has a present, existing economic interest to protect, such as

20 the ownership or condition of property, or a prior contract of his own . . . he is

21 privileged to prevent performance of the contract of another which threatens it."

22 *Richardson v. La Rancherita of La Jolla, Inc.*, 159 Cal. Rptr. 285, 289 (Ct. App.

23 1979).   Indeed, even if the defendant is wrong about the scope of his own rights,

24 "for obvious reasons of policy he is likewise privileged to assert an honest claim."

25 *Id.*   No reasonable jury could find that any interference with Songkick's artist

26

27 [11]   As noted above, Songkick's grossly belated supplemental disclosure of
28 September 21, 2017—six months after the close of discovery—purporting to
calculate "loss" does not save Songkick's CFAA claim.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

40

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

contracts was the result of anything other than Defendants' reasonable, good faith understanding of their own pre-existing rights.  Songkick's claim for intentional interference with contractual relations thus fails.

### F.   Songkick Cannot Meet Its Burden To Prove Intentional Interference With Prospective Economic Relations

Songkick's intentional interference with prospective economic relations claim is derivative of its antitrust and intentional interference with contractual relations claims, *see* FAC ¶ 323, and fails for the same reasons.  Songkick cannot show that Defendants "engaged in an independently wrongful act . . . proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply Co.*, 63 P.3d at 953-54.  To the extent Defendants "interfered" with Songkick's relationships with potential artist-clients, it did so only to protect its pre-existing rights.  Songkick's intentional interference with prospective economic relations claim thus fails.

### G.   Songkick Cannot Meet Its Burden To Prove Promissory Estoppel

Promissory estoppel, an equitable claim that must be tried to the Court, requires proof that the defendant made a "clear and unambiguous" promise on which the plaintiff "reasonabl[y] and foreseeabl[y]" relied.  *Advanced Choices, Inc. v. Dep't of Health Servs.*, 107 Cal. Rptr. 3d 470, 479 (Ct. App. 2010) (citation omitted). If a "promise" is made with the reservation of the right to change that promise, reliance on that promise is unreasonable as a matter of law.  *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (California law); *see also Universal By-Prods., Inc. v. City of Modesto*, 117 Cal. Rptr. 525, 532 (Ct. App. 1974). Ticketmaster's fan club policy—which could not possibly be interpreted as a promise *to Songkick*—has always included precisely the sort of reservations that make any reliance on it unreasonable.  Moreover, Songkick has known about this reservation of rights, and expressly acknowledged it.  *See* O'Mara Decl. Ex. 69 (ACCESS00003919).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

41

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

**H.     Songkick Is Not Entitled To Equitable Relief For Its Non-Jury UCL Claim Because It Cannot Demonstrate That Defendants Engaged In Unlawful, Unfair or Fraudulent Activity**

Because UCL claims are equitable, they must be tried to the Court.  *See Cargill Inc. v. Progressive Dairy Solutions, Inc.*, 362 F. App'x 731, 733-34 (9th Cir. 2010) ("[Section] 17200 counterclaim was not subject to a jury trial"); *Netlist, Inc. v. Diablo Techs., Inc.*, 2015 WL 1887261, at *3 (N.D. Cal. Apr. 24, 2015) (same).    Songkick cannot establish that Defendants engaged in "unlawful, unfair or fraudulent" conduct.    Because Songkick's UCL claim is expressly derivative of its federal antitrust claims, *City of San Jose*, 776 F.3d at 691-92, and those claims fail, Songkick's UCL claim fails as well.  *See supra* Section III(A)-(B).   To the extent Songkick's UCL claim is predicated on other alleged offenses, because those claims fail, Songkick's UCL claim fails as well.  *See supra*.  Moreover, Songkick is not entitled to recovery under the UCL because it is not seeking a remedy available under the UCL.  To the extent Songkick is seeking lost profits for its UCL claim, "nonrestitutionary disgorgement of profits is not an available remedy . . . under the UCL." *Korea Supply Co.*, 29 Cal 4th at 1152.   Remedies under the UCL are meant to "restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.* at 1149 (plaintiff not entitled to restitution when seeking disgorgement of profits rather than the return of money or property once in its possession).

## IV.    SUMMARY STATEMENT OF DEFENDANTS' DEFENSE

Songkick alleges that Defendants have violated Sections 1 and 2 of the Sherman Act.  Songkick's claims fail for several reasons.  Ticketmaster owns the rights to sell *all* of the tickets at the venues with which it contracts—including artist presales.  Thus, Ticketmaster is under no obligation to provide artist presale ticketing rights to Songkick or the artists it services at all.  Songkick's principal complaint then is that Ticketmaster won't give it, for free, the rights to sell tickets and make a profit.  This is not a cognizable antitrust theory.    For other of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

42

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1   Songkick's antitrust theories, Songkick contends that somehow Ticketmaster has
2   foreclosed it from competing for artist presale rights when it admits that it actually
3   makes no effort to compete for those rights through competitive bidding.  Songkick
4   cannot demonstrate foreclosure if it does not even attempt to compete.   And
5   finally, Songkick alleges various boycotts between artists, venues, and Defendants
6   that have no basis in reality.  To be cognizable, Songkick would need to show
7   agreements between the various artists or venues, which it has not even attempted
8   to show.  Because Songkick cannot show that any of the conduct it alleged was
9   anticompetitive, its antitrust claims must fail.

10      Songkick's related state law claims are equally meritless.   Songkick's
11   intentional interference claims fail because Defendants are privileged to protect
12   their own interests.  Songkick's promissory estoppel claim fails because it cannot
13   show a promise to Songkick on which it reasonably relied.  And Songkick's UCL
14   claim is entirely derivative of its federal antitrust claims.   Because those claims
15   fail, Songkick's UCL claim fails as well.

16      Finally, as explained above, Songkick's trade secret and CFAA claims
17   allege that Defendants "hacked" into its computer systems and misappropriated its
18   valuable trade secrets through information obtained by Stephen Mead, a former
19   Songkick employee who, in July 2013, joined a Ticketmaster-affiliate called
20   TicketWeb.  These claims ultimately fail because (1) Songkick cannot establish
21   that any of the Alleged Trade Secrets are in fact trade secrets; (2) Songkick cannot
22   establish that the Alleged Trade Secrets were used, disclosed, or improperly
23   accessed by Defendants, particularly because the bulk of the allegedly accessed
24   information is disclosed routinely by Songkick to third parties; (3) Songkick has
25   not alleged any actual loss resulting from the alleged misappropriation and cannot
26   prove Defendants were unjustly enriched as a result of the alleged
27   misappropriation; and (4) Songkick has not disclosed, and cannot establish, any
28   "loss" as defined in the CFAA resulting from the allegedly unauthorized access.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

43

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

## V.     DEFENDANTS' DEFENSES BAR SONGKICK'S CLAIMS

### A.     Contentions of Law (Defenses)

Defendants intend to assert the following affirmative defenses:

#### 1.     First Defense: Inequitable Conduct And Unclean Hands

Songkick's legal and equitable claims are barred by equity, including the doctrine of unclean hands and Songkick's own inequitable conduct.

#### 2.     Second Defense: Legal Privilege

Songkick's claims are barred because they attack conduct that is authorized by the United States laws.

#### 3.     Third Defense: Justification/Privilege/Excuse

Songkick's state law claims are barred because Defendants' actions were legally privileged and/or justified.

#### 4.     Fourth Defense: Independent, Legitimate Business And Economic Justifications

Songkick's state law claims are barred because all conduct engaged in by Defendants was reasonable and based upon legitimate business and economic justifications.

#### 5.     Fifth Defense: No Harm To Competition

Songkick's tortious interference claims are barred by the competition privilege.

#### 6.     Sixth Defense: Estoppel

Songkick is estopped from obtaining the relief it seeks due to its own acts and omissions.

#### 7.     Seventh Defense: Failure To Mitigate Damages

Songkick's claims are barred in whole or in part because Songkick failed to mitigate its alleged damages, if any. *Id.*

#### 8.     Eighth Defense: Adequate Remedy At Law

If Songkick suffered any injury or damage, which Defendants deny,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

44

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1  Songkick would be adequately compensated in an action at law for damages.
2  Accordingly, Songkick has a complete and adequate remedy at law and is not
3  entitled to equitable relief.  *Id.*

### 9.   Ninth Defense: Punitive Damages Invalid

4
5  Songkick's claims for punitive damages are invalid on their face and/or as
6  applied to Defendants under applicable law.  *Id.* at 34.

### 10.   Tenth Defense: Statute of Limitations

7
8  Songkick's claims are barred, in whole or in part, by the statute of
9  limitations.  *Id.* at 34.

### 11.   Eleventh Defense: Lack Of Standing

10
11  To establish its defense that Songkick's Sherman Act claims are barred
12  because Songkick lacks standing, Defendants must show that Songkick "fails to
13  allege the type of injury that the antitrust laws were designed to prevent and that
14  flows from the conduct that makes [Defendants'] acts unlawful."  *Meyer v.*
15  *Qualcomm Inc.*, No. 08CV655 WQH (LSP), 2009 WL 539902, at *8 (S.D. Cal.
16  Mar. 3, 2009).  Songkick lacks antitrust standing, *inter alia*, because it does not bid
17  for the rights to sell tickets at venues.  It therefore cannot be foreclosed from that
18  market.  *Ferguson v. Greater Pocatello Chamber of Commerce*, 848 F.2d 976, 983
19  (9th Cir. 1988).

### B.   Contentions of Fact (Defenses)

20

#### 1.   First Defense: The Doctrine Of Unclean Hands Precludes Songkick's Recovery

21
22

23  As demonstrated above, Songkick has engaged in improper conduct that
24  would make it inequitable to grant it relief.    To prevail on an unclean hands
25  defense, Defendants must show that Songkick's conduct "prejudicially affect[ed] .
26  . . the rights of [Defendants] so that it would be inequitable to grant [Songkick]
27  relief."  *Jade Fashion & Co., Inc. v. Harkham Indus., Inc.*, 229 Cal. App. 4th 635,
28  654 (2014) (omission in original) (internal citation omitted).  Since entering the

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN FRANCISCO

45

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1   U.S. market, Songkick's self-described business model has been to "disrupt the
2   live ticketing space and challenge existing limitations" on how artist presale
3   ticketing service providers could do business."      O'Mara Decl. Ex. 72,
4   ACCESS00010325 at -327.    Knowing that Ticketmaster owned the exclusive
5   rights to sell artist presale tickets, Songkick ran presales that it knew were not
6   permitted under Ticketmaster's fan club policy.

7              **2.    Second, Third, Fourth, and Fifth Defenses: Songkick's State**
8                 **Law Claims Are Precluded Because Defendants' Conduct**
                  **Was Legally Privileged And Justified**

9        Defendants' conduct that Songkick complains of is legally privileged under
10  the competition privilege and was justified to protect its legitimate financial
11  interests.   Actions taken to protect an economic interest cannot give rise to a
12  tortious interference with contract claim.     *Dell's Maraschino Cherries Co. v.*
13  *Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 482 (E.D.N.Y. 2012) (citing
14  *Foster v. Churchill,* 87 N.Y.2d 744, 750-51 (1996)).   To the extent it is not an
15  element of plaintiff's affirmative claim, *see Bed, Bath & Beyond of La Jolla, Inc. v.*
16  *La Jolla Vill. Square Venture Partners*, 52 Cal. App. 4th 867, 880-81 (1997),
17  Defendants' conduct is protected by the competition privilege.

18       It is not tortious interference to assert one's own contractual rights.   Where
19  the defendant "has a present, existing economic interest to protect, such as the
20  ownership or condition of property, or a prior contract of his own . . . he is
21  privileged to prevent performance of the contract of another which threatens it."
22  *Richardson v. La Rancherita of La Jolla, Inc.*, 159 Cal. Rptr. 285, 289 (Ct. App.
23  1979).   Indeed, even if the defendant is wrong about the scope of his own rights,
24  "for obvious reasons of policy he is likewise privileged to assert an honest claim."
25  *Id.*   The conduct Songkick has complained of was the result of Ticketmaster's
26  reasonable, good faith understanding of its own pre-existing rights.   Such conduct
27  is legally privileged under the competition privilege and justified.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

46

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

### 3. Sixth Defense: Songkick Is Estopped From Recovering On Its Claims*[12]

Among other reasons, Songkick has repeatedly made representations that it knew Ticketmaster owned the exclusive rights to sell *all* the tickets at venues with which it contracts and that it had to comply with Ticketmaster's fan club policy. *E.g.* O'Mara Decl. Ex. 70, SEQUOIA_000075 at -077.  Further, Songkick has represented to the Court that Ticketmaster does not have the right to sell artist presales, *e.g.* Songkick's Opp. to Defs.' and Counterclaimant's Mot. For Partial Summ. J. ("Opp."), ECF No. 230-2 at 52-54.  But some of its antitrust theories are expressly predicated on Ticketmaster owning the right to sell artist presales.  *E.g.* Opp. at 56 ("there is substantial economic evidence of coercion to purchase more ticketing services than the venue wanted").  Songkick should be estopped from recovering based on theories that Ticketmaster does not own the right to sell artist presale tickets.

### 4. Seventh Defense: Songkick Failed To Mitigate Damages

To establish a mitigation defense, Defendants must show that Songkick failed to take reasonable steps to mitigate its damages.  *See Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1568 (1996) ("A plaintiff has a duty to mitigate damages and cannot recover losses it could have avoided through reasonable efforts."); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1019 (9th Cir. 2000), as amended on denial of reh'g (Nov. 2, 2000) (affirming district court's grant of summary judgment on plaintiff's damages after certain date on grounds plaintiff failed to mitigate damages).

Even if Ticketmaster's actions to assert its contract rights were wrongful (they were not), Songkick continued to run presales at Ticketmaster-contracted venues long after Ticketmaster first informed (and would continue to inform)

---

[12] All defenses designated by an asterisk are included solely for preservation for purposes of appeal.  Defendants do not intend to advance them at trial.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

47

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1  Songkick that its presales were, in Ticketmaster's view, invalid.  *See, e.g.*, O'Mara

2  Decl. Ex. 81, SK00076197 at -197, -204, -206.   Songkick's conduct was

3  unreasonable and the damages it continued to accrue were easily avoidable with

4  the information and resources available to Songkick at the time.  *Agam v. Gavra*,

5  236 Cal. App. 4th 91, 111 (2015).  Mitigation would have not required Songkick to

6  relinquish any important or valuable rights.  *Valle de Oro Bank v. Gamboa*, 26 Cal.

7  App. 4th 1686, 1691 (1994).

### 5. Eighth Defense: Songkick Has An Adequate Remedy At Law*

10  Defendants can establish that Songkick's equitable claims are barred by

11  showing that "[a]n ordinary action at law" would afford Songkick "full and

12  adequate relief."  *Wilkison v. Wiederkehr*, 101 Cal. App. 4th 822, 833 (2002).  If

13  Songkick suffered any damage as a result of Defendants' conduct (it did not),

14  Songkick could be adequately compensated for this loss by monetary damages.

15  Songkick is thus not entitled to seek equitable relief.

### 6. Ninth Defense: Songkick Has No Basis For Seeking Punitive Damages

18  Songkick is not entitled to punitive damages because it cannot prove "by

19  clear and convincing evidence that [Defendants have] been guilty of oppression,

20  fraud, or malice."  *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009).

21  As to Songkick's antitrust and related state law claims, there is ample evidence that

22  Defendants acted reasonably and in good faith to protect their contractual rights.

23  And as to Songkick's trade secret and CFAA claims, there is no evidence that

24  Defendants acquired, used, or disclosed any protectable trade secrets, or that

25  Defendants were unjustly enriched by any such misappropriation.

### 7. Tenth: Songkick's Claims Are Barred By The Statute Of Limitations*

28  To establish the defense that Songkick's claims are barred by the applicable

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

48

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

statutes of limitations, Defendants must show that Songkick's alleged injuries occurred at a time beyond the applicable limitations periods.  *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 879 (N.D. Cal. 2015) (for Sherman Act claims, "plaintiff's knowledge is generally irrelevant to accrual, which is determined according to the date on which injury occurs."); *Denver Urban Homesteading, LLC v. Dervaes Inst.*, No. CV149216JFWJPRX, 2015 WL 12819140, at *3 (C.D. Cal. July 15, 2015) (intentional interference with contractual relations and prospective economic relations).

Songkick's claims are subject to limitation periods between 2 and 4 years, beginning from the date of the act complained of or the discovery of damage.  *See* 15 U.S.C. § 15(b) (4 year limitation period for Sherman Act claims); Cal. Bus. & Prof. Code § 17208 (4 year limitation period for UCL claim); Cal. Code Civ. Proc. § 339.1 (2 year limitation period for promissory estoppel and tortious interference claims).  Songkick may therefore not seek or obtain damages for alleged conduct that took place prior to the applicable limitation periods.

### 8.   Eleventh Defense: Songkick Lacks Standing

To establish the defense that Songkick's Sherman Act claims are barred because Songkick lacks standing, Defendants must show that Songkick "fails to allege the type of injury that the antitrust laws were designed to prevent and that flows from the conduct that makes [Defendants'] acts unlawful."  *Meyer v. Qualcomm Inc.*, No. 08CV655 WQH (LSP), 2009 WL 539902, at *8 (S.D. Cal. Mar. 3, 2009).

## VI.   SUMMARY OF TICKETMASTER'S COUNTERCLAIMS

Ticketmaster claims that Songkick intentionally interfered with Ticketmaster's contracts.  *See* Defendants' Answer and Counter-Complaint, ¶¶ 59-70, ECF No. 58.   The evidence demonstrates that Ticketmaster had contracts with venues that provided it the exclusive right to sell *all* of those venues' tickets. Songkick knew of those contracts, and knew that if it was going to sell artist

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

49

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

presales consistent with Ticketmaster's exclusive rights, it would have to comply with Ticketmaster's fan club policy. Songkick intentionally ran presales that did not comply with Ticketmaster's fan club policy, and thereby deprived Ticketmaster of the lost sales it was entitled to under its contracts.

Ticketmaster also claims that Songkick's exercise of control and disposition of artist presales at Ticketmaster-contracted venues constitutes conversion of Ticketmaster's intangible rights. *Id.* Ticketmaster owns the right to sell the tickets that Songkick serviced the sale of, and therefore, wrongfully converted Ticketmaster's property.

## VII.  CONTENTIONS OF LAW (TICKETMASTER'S COUNTERCLAIMS)

### A.   Claim 1: Songkick Intentionally Interfered With Ticketmaster's Contracts With Venues

To prove intentional interference with contractual relations, the plaintiff must show that (1) there exists a valid contract between the plaintiff and a third party; (2) the defendant knew of the contract; (3) the defendant intentionally induced a breach or disrupted the contractual relationship; (4) an actual breach or disruption occurred; and (5) the plaintiff was harmed as a result. *See Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).

### B.   Claim 2: Songkick Converted Ticketmaster's Property When It Sold Tickets To Which Ticketmaster Has The Exclusive Contractual Rights

To prove a claim for conversion, Ticketmaster must show (1) Ticketmaster's ownership or right to possession of the property; (2) Songkick's conversion by a wrongful act or disposition of property rights; and (3) damages. *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). The wrongful disposition of intangible property interests constitutes a conversion. *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014)

Conversion is a strict liability tort. *Id.* The foundation of the action rests

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

50

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. *Id.* Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. *Id.*

## VIII. CONTENTIONS OF FACT (TICKETMASTER'S COUNTERCLAIMS)

### A. The Evidence Proves Songkick Intentionally Interfered With Ticketmaster's Contracts With Venues

The first element of Ticketmaster's intentional interference claim, the existence of valid contracts between Ticketmaster and venues, is not in dispute. The contracts are in evidence. *See, e.g.*, O'Mara Decl. Ex. 43. The evidence establishes the second element, Songkick's knowledge of these contracts. For more than five years, Ticketmaster repeatedly informed Songkick that its presales consistently violated its exclusive contractual rights with Ticketmaster venues. *E.g.*, O'Mara Decl. Ex. 81, SK00076197 at -204.

The evidence establishes the third element, Songkick's intention to disrupt these contractual relations. Songkick's entire business model is premised on disrupting Ticketmaster's contractual relations. Songkick's goal is to "disrupt the live ticketing space and challenge existing limitations." O'Mara Decl. Ex. 72, ACCESS00010325 at-327. It concededly aims to do away with what it views as the "old ticketing model," O'Mara Decl. Ex. 66, ACCESS00003248 at -252, and transform the U.S. market into an allocation market—where primary ticketing services do not enjoy exclusive ticketing rights—as exists in the U.K. It seeks to "turn the entire TM venue exclusivity model on its head." O'Mara Decl. Ex. 71, SK00615134, at -134. And it went about carrying that plan into action by repeatedly creating and running pre-sales that no reasonable person could believe were consistent with Ticketmaster's exclusive rights, over Ticketmaster's repeated objections. *See, e.g.*, Reply Separate Statement of Undisputed Facts ("RSSUF")

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

51

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

¶¶ 128-31, ECF No. 249-2 (collecting examples); *see also Unite Eurotherapy, Inc. v. Walgreen Co.*, No. 16-cv-01706-BTM-JMA, 2017 WL 513008, at *4 (S.D. Cal. Feb. 7, 2017) (continuing to sell products online "after being notified of Plaintiff's contractual relationship with its resellers" that prohibited those sales shows the requisite intent).

The evidence establishes the fourth element, that Songkick in fact interfered with Ticketmaster's contracts with venues. Ticketmaster's contracts are breached when Songkick conducts artist presales that do not comply with Ticketmaster's fan club policy. Songkick has repeatedly conducted presales that do not comply with Ticketmaster's fan club policy. *See, e.g.*, RSSUF ¶¶ 245-86.

And the evidence establishes the fifth element, that Ticketmaster was harmed as a result of Songkick's interference. Damages in actions for intentional interference with contractual relations are measured by the "lost benefits" a party expected to receive under the contract. *Quelimane*, 960 P.2d at 531. Every one of Songkick's noncompliant presales sold tickets that rightfully belonged to Ticketmaster and deprive Ticketmaster of the revenue and profits it would have realized from those sales.

**B.    The Evidence Proves That Songkick Converted Ticketmaster's Property**

As demonstrated *supra*, Ticketmaster owns the right to sell *all* the tickets at venues with which it contracts. The agreements expressly prohibit the use of any third-party ticketing service other than Ticketmaster for selling any of the venue's tickets. *See, e.g.*, O'Mara Decl. Ex. 43 at § 2(c). Therefore, Ticketmaster owns the exclusive rights to all of the venue's tickets, including "presales" of every stripe—artist, credit card, or anything else. *Id.* at § 2(a). When Songkick runs presales that do not comply with the fan club policy, it is exercising control over ticket rights that are, by contract, Ticketmaster's. *See Welco*, 223 Cal. App. 4th at 211-12. Ticketmaster has been damaged because the revenue that Songkick

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

52

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1    received was rightfully Ticketmaster's.

2    **IX.    ANTICIPATED EVIDENTIARY ISSUES AND TICKETMASTER'S**
3    **POSITION**

4         **A.    *Daubert* Motions And Motions *In Limine***

5         On September 6, 2017, Defendants filed one *Daubert* Motion to exclude the

6    opinions of Songkick's damages expert, Mr. Yurkerwich.  Songkick's Opposition

7    to Defendants' *Daubert* Motion is due on September 29, 2017.  Defendants' Reply

8    in support of their *Daubert* Motion is due on October 9, 2017.

9         Concurrently with this Memorandum, Defendants are filing five motions *in*

10   *limine* to exclude certain of Songkick's evidence.   To Defendants knowledge,

11   Songkick is filing five motions *in limine*.  Oppositions to the parties' motions *in*

12   *limine* are due on October 2, 2017.  Defendants incorporate herein the arguments

13   made in their *Daubert* Motion, Motions *in limine*, Oppositions to Songkick's

14   Motions *in limine*, and all materials filed in support thereof.

15        **B.    Legal Theories Songkick Did Not Properly Disclose**

16        Songkick responded to Defendants' interrogatory requests to provide, *inter*

17   *alia*, "all facts that support [Songkick's] contention that Defendants have violated

18   Section 1 of the Sherman Act" and to "identify and describe all facts that support

19   your contention that Defendants have violated Section 2 of the Sherman Act" on

20   January 26, 2017 and then supplemented those responses on March 6, 2017.

21   Pursuant to Rule 26(e)(1), it was required to supplement these responses if it

22   learned "that in some material responses the disclosure or response is incomplete

23   or incorrect."   Songkick's failure to serve a supplemental disclosure identifying its

24   new legal theories and the facts underlying them is sanctionable pursuant to Rule

25   37(c)(1).   Defendants reserve all rights, including the ability to move to exclude

26   the introduction of these improperly disclosed legal theories and the facts

27   underlying them into evidence.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

53

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1   **1.    Songkick Did Not Properly Disclose A Conspiracy Claim**
2   **Between Defendants And Venues**

3      In its Opposition to Summary Judgment, Songkick alleged that Ticketmaster

4   was participating in a conspiracy with venues to boycott Songkick.  *See* Opp. at 33.

5   Songkick stated "The only instances in which the venues did not allocate those

6   artist presale tickets was when TM injected itself into the process.   This is the

7   definition of a concerted refusal to deal."   *Id.* (citations omitted).   However,

8   Defendants asked explicitly for Songkick to "identify and describe all instances in

9   which you claim that Defendants pressured, induced, or coerced (or attempted to

10  pressure, induce, or coerce) artists, artists' representatives, and/or venues into

11  boycotting or refusing to deal with Songkick, or into using Ticketmaster's own

12  ticketing services to conduct an artist presale."  Songkick responded by specifying

13  instances where Defendants allegedly pressured only artists or their management.

14  Decl. of A. Wolfson in Supp. of Songkick's Opp'n to Defs' Mot. for Partial Summ.

15  J. ("Wolfson Decl."), Ex. 7, Songkick's Resp. to First Set of Interrogs. at 40-48

16  ("Interrog. Resp."), ECF 232-108; *id.* at 41 ("Defendants repeatedly interfered with

17  Songkick's ability to conduct artist presales as part of a concerted effort to pressure

18  **artists, their management, and their other representatives** not to deal with

19  Songkick.").   Songkick in fact supplemented its response on this very question,

20  but only to add more artists to its list.  *See* Wolfson Decl. Ex. 10, Songkick's Supp.

21  Resp. to First Set of Interrogs. ("Supp. Resp.") at  9-19, ECF No. 232-111.

22     Songkick also has advanced a species of hub-and-spoke conspiracy claim,

23  asserting that Ticketmaster has formed a cartel with venues in a conspiracy to raise

24  ticketing fees to concert-goers.  This claim was first raised by Plaintiff's economic

25  expert, Joseph Farrell.  O'Mara Ex. 53, J. Farrell Dep. 152:20-22 ("Q: Professor

26  are you arguing fundamentally that Ticketmaster organized a venue cartel?  A: To

27  a limited degree, but, yes").   This theory is nowhere to be found in the

28  interrogatory responses.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

54

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1
2

### 2. Songkick Did Not Properly Disclose A Tying Claim Between Venue Ticketing Services And Artist Presale Ticketing Services

3   Songkick's opposition advances a tying claim, where Ticketmaster allegedly

4   tied the purchase of artist presales ticketing services to the purchase of concert

5   venue ticketing services generally.  Opp. at 23-24.  This theory alleges that venues

6   only sell artist presale rights to Ticketmaster due to its market power in the concert

7   venue ticketing services market and some sort of tying condition.  *Id.*   While

8   Songkick's interrogatory responses discuss at considerable length an alleged tie

9   between the concert promotion services market and an artist's use of Ticketmaster

10   for artist presales, *see* Interrog. Resp. 39-40, they do not say anything regarding a

11   tie between the concert services market and the artist presales services market.

12   ## X.   BIFURCATION OF ISSUES

13   "For convenience, to avoid prejudice, or to expedite and economize, the

14   court may order a separate trial of one or more separate issues."  Fed. R. Civ. P.

15   42(b).  Whether to grant or deny a motion to bifurcate is within the discretion of

16   the court.  *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir. 1995).

17
18

### A. Songkick's UCL and Promissory Estoppel Claims Should Be Bifurcated For A Later Bench Trial Because There Is No Right To A Jury On These Equitable Claims

19   Songkick does not have a right to a jury trial for its UCL claim under

20   California Business and Professions Code § 17200.  *Hodge v. Superior Court,* 145

21   Cal. App. 4th 278, 282-85 (2006); *People v. First Fed. Credit Corp.*, 104 Cal. App.

22   4th 721, 733 (2002) (observing that "there is no right to a jury trial in [UCL]

23   cases"); *Steinberg Moorad & Dunn, Inc. v. Dunn*, 136 F. App'x 6, 9 (9th Cir.

24   2005) (same).  Nor does Songkick have a right to a jury trial for its promissory

25   estoppel claim.  *See, e.g.*, *C & K Eng'g Contractors v. Amber Steel Co.*, 23 Cal. 3d

26   1, 10 (1978) (no right to a jury trial for a promissory estoppel claim); *A-C Co. v.*

27   *Security Pacific Nat. Bank*, 173 Cal. App. 3d 462 (1985) (same).

28   Defendants thus request the Court bifurcate adjudication of Songkick's UCL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

55

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

and promissory estoppel claims to the extent that Songkick intends to offer evidence for these claims that it does not also intend to offer for its jury-triable claims. The jury need not be exposed to allegations and evidence relating solely to these non-jury triable claims.

## XI.   JURY TRIAL

Songkick filed a demand for jury trial with its initial Complaint on December 22, 2014 (*see* ECF No. 1) and with its First Amended Complaint on February 16, 2017. *See* ECF. 158. As discussed in Sections III(G)-(H), *supra*, there is no right to a jury trial in connection with Songkick's UCL or promissory estoppel claims. *Hodge*, 145 Cal. App. 4th at 282-85; *C & K Eng'g Contractors*, 23 Cal. 3d at 10.

## XII.   ABANDONED AND ADJUDICATED ISSUES

### A.   Songkick's Antitrust Claims Under Section 7 of The Clayton Act And Section 2 Of The Sherman Act Challenging The Merger Of Live Nation And Ticketmaster Have Been Dismissed

Songkick claimed that the merger of Live Nation and Ticketmaster violated Section 2 of the Sherman Act, FAC ¶¶ 230-36, and Section 7 of the Clayton Act, *id.* ¶¶ 258-62. The Court properly dismissed those claims because they were not alleged within the statute of limitations period. EFC No. 62.

### B.   Songkick Has Abandoned Its Claims Against Live Nation Based On The Concert Promotion Market

Songkick originally pursued a tying claim where it alleged that Live Nation tied its provision of concert promotion services to the use of Ticketmaster's artist presale services. *See* FAC ¶¶ 208-18. Since then Songkick has admittedly abandoned its concert-promotion tying claim, and any claim implicating the concert promotion market. Pl.'s Opp. to App. to File Oversize Br. at 3, EFC No. 205; Opp. at 57.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

56

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

**C.     Songkick Has Indicated It Does Not Intend To Pursue Its Trade Secret Claim Under New York Law**

As noted above in Section III(C), during the pretrial conference of counsel regarding jury instructions and other Rule 16 matters, counsel for Songkick indicated that it would be withdrawing its claim for trade secret misappropriation under New York law.  The Court should reject any attempt by Songkick to reassert its New York trade secret claim, as it cannot simultaneously pursue trade secret claims under both California and New York law.

CUTSA provides the "unitary definition[] of trade secret and trade secret misappropriation" in California.  *Am. Credit Indemn. Co. v. Sacks*, 213 Cal. App. 3d 622, 630 (1989).  As such, CUTSA preempts all other common law claims for misappropriation of trade secrets.   Cal. Civ. Code § 3426.7(b)(2); *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003). That preemption extends beyond alternative California common law claims to include common law claims brought pursuant to the laws of other jurisdictions. *See, e.g.*, *Stanacard, LLC v. Rubard, LLC*, No. 12 CIV. 5176, 2016 WL 462508, at *18 (S.D.N.Y. Feb. 3, 2016) (holding that Delaware's materially identical Uniform Trade Secrets Act would, if applied to the case, preempt New York's trade secret law); *Bulldog N.Y. LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 162 (D. Conn. 2014) (dismissing a materially identical Connecticut Uniform Trade Secrets Act claim on the basis that it and plaintiff's New York common law claim "cannot both be brought").   Accordingly, although Songkick was permitted to plead in the alternative, when the case is tried to the finder of fact, Songkick cannot simultaneously assert trade secret claims under both California and New York law. As Songkick has represented to Defendants that it will not be pursuing its New York trade secret misappropriation claim, this Court should preclude Songkick from reasserting it in the trial of this matter.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

57

DEFS. AND COUNTER-CLAIMANT'S
MEM. OF CONTENTIONS OF FACT & LAW
CASE NO. 2:15-CV-09814 DSF (AGRx)

1    Dated:  September 25, 2017

2                                              LATHAM & WATKINS LLP

3

4                                       By:    */s/ Daniel M. Wall*
                                               Daniel M. Wall
5                                              Timothy L. O'Mara
                                               Andrew M. Gass
6                                              Kirsten M. Ferguson

7                                              Attorneys for Defendant
                                               LIVE NATION ENTERTAINMENT,
8                                              INC. and Defendant and Counter-
                                               Claimant TICKETMASTER LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

58                          DEFS. AND COUNTER-CLAIMANT'S
                            MEM. OF CONTENTIONS OF FACT & LAW
                            CASE NO. 2:15-CV-09814 DSF (AGRx)