QUINN EMANUEL URQUHART & SULLIVAN, LLP
Frederick A. Lorig (Bar No. 057645)
fredlorig@quinnemanuel.com
Kevin Y. Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Complete
Entertainment Resources LLC

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Complete Entertainment Resources LLC d/b/a Songkick,<br><br>              Plaintiff,<br><br>       v.<br><br>Live Nation Entertainment, Inc.; Ticketmaster LLC,<br><br>              Defendants.<br><br>───────────────────────<br>Ticketmaster LLC,<br><br>              Counter Claimant,<br><br>       v.<br><br>Complete Entertainment Resources LLC d/b/a Songkick,<br><br>              Counter Defendant. | CASE NO. 15-cv-9814 DSF (AGRx)<br><br>**PLAINTIFF AND DEFENDANTS' JOINTLY AGREED JURY INSTRUCTIONS**<br><br>The Honorable Dale S. Fischer |

### Index of Jury Instructions – Agreed Upon

| No. | Title | Source | Page No. |
|---|---|---|---|
| 1 | Duty Of Jury | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.3 (7th ed. July 2017 Update). | 2 |
| 2 | Claims And Defenses | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.5 (7th ed. July 2017 Update). | 3 |
| 3 | Burden Of Proof | Ninth Circuit Jury Instructions Committee, Manual of Model Jury Instructions for the Ninth Circuit, Civil Instruction 10.08 (1985) (modified). | 5 |
| 4 | What Is Evidence | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.9 (7th ed. July 2017 Update). | 6 |
| 5 | What Is Not Evidence | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.10 (7th ed. July 2017 Update). | 7 |
| 6 | Direct And Circumstantial Evidence | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.12 (7th ed. July 2017 Update). | 8 |
| 7 | Rulings On Objections | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.13 (7th | 9 |

| No. | Title | Source | Page No. |
|---|---|---|---|
| | | ed. July 2017 Update). | |
| 8 | Credibility Of Witnesses | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.14 (7th ed. July 2017 Update). | 10 |
| 9 | Conduct Of The Jury | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.15 (7th ed. July 2017 Update). | 12 |
| 10 | Publicity During Trial | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.16 (7th ed. July 2017 Update). | 14 |
| 11 | No Transcript Available To Jury | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.17 (7th ed. July 2017 Update). | 15 |
| 12 | Taking Notes | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.18 (7th ed. July 2017 Update). | 16 |
| 13 | Bench Conferences And Recesses | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.20 (7th ed. July 2017 Update). | 17 |
| 14 | Outline Of Trial | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.21 (7th ed. July 2017 Update). | 18 |

| No. | Title | Source | Page No. |
|-----|-------|--------|----------|
| 15 | Duty Of Jury | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.4 (7th ed. July 2017 Update). | 20 |
| 16 | Claims And Defenses | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.5 (7th ed. July 2017 Update). | 21 |
| 17 | Burden Of Proof | Ninth Circuit Jury Instructions Committee, Manual of Model Jury Instructions for the Ninth Circuit, Civil Instruction 10.08 (1985). | 23 |
| 18 | What Is Evidence | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.9 (7th ed. July 2017 Update). | 24 |
| 19 | What Is Not Evidence | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.10 (7th ed. July 2017 Update). | 25 |
| 20 | Direct And Circumstantial Evidence | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.12 (7th ed. July 2017 Update). | 26 |
| 21 | Stipulations Of Fact | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.2 (7th ed. July 2017 Update). | 27 |

| No. | Title | Source | Page No. |
|-----|-------|--------|----------|
| 22 | Deposition In Lieu Of Live Testimony | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.4 (7th ed. July 2017 Update). | 28 |
| 23 | Use Of Interrogatories | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.11 (7th ed. July 2017 Update). | 29 |
| 24 | Use Of Requests For Admission | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.12 (7th ed. July 2017 Update). | 30 |
| 25 | Expert Opinion | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.13 (7th ed. July 2017 Update). | 31 |
| 26 | Credibility Of Witnesses | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.14 (7th ed. July 2017 Update). | 32 |
| 27 | Duty To Deliberate | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 3.1 (7th ed. July 2017 Update). | 34 |
| 28 | Consideration Of The Evidence – Conduct Of The Jury | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 3.2 (7th ed. July 2017 Update). | 35 |

| No. | Title | Source | Page No. |
|---|---|---|---|
| 29 | Communication With Court | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 3.3 (7th ed. July 2017 Update). | 37 |
| 30 | Return Of Verdict | Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 3.5 (7th ed. July 2017 Update). | 38 |
| 31 | Vicarious Responsibility | CACI 3700 (2017) (modified); Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 4.2 (7th ed. July 2017 Update). | 39 |
| 32 | Sherman Act-Liability Of Parent Corporation For Conduct Of Subsidiary Corporation | *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1068-70 (D. Colo. 2004) (citing authorities); *Reading Int'l, Inc. v. Oaktree Capital Mgmt., LLC*, 317 F. Supp. 2d 301, 324-25 (S.D.N.Y. 2003) (citing authorities). | 40 |
| 33 | Introduction To Antitrust Claims | 1st Am. Compl. ¶¶ 203–257, ECF No. 158 (First, Second, and Third Claims for Relief). | 44 |
| 34 | Sherman Act—Statutes Defining The Claim | Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, 3A Federal Jury Practice and Instructions § 150:10 (6th ed. Aug. 2017 Update). | 45 |
| 35 | Antitrust Damages—Injury And Causation | ABA Model Antitrust Instructions at 300-301, Ch. 6 § A.1 (Instruction 1). | 47 |
| 36 | Antitrust Damages—Introduction And Purpose | ABA Model Antitrust Instructions at 304, Ch. 6 § B.1 (Instruction 1). | 49 |

| No. | Title | Source | Page No. |
|---|---|---|---|
| 37 | Antitrust Damages—Basis For Calculating Damages | ABA Model Antitrust Instructions at 307, Ch. 6 § B.3 (Instruction 3) | 50 |
| 38 | Antitrust Damages—Mitigation | ABA Model Antitrust Instructions at 324, Ch. 6 § B.14 (Instruction 14). | 51 |
| 39 | Sherman Act, Section 1—Rule Of Reason—Proof Of Competitive Harm | ABA Model Antitrust Instructions at 5-6, Ch. 1 § C.2 (Instruction 3B). | 57 |
| 40 | Sherman Act, Section 1—Tying—Rationale For Prohibition Of Tying Arrangements | ABA Model Antitrust Instructions at 85, Ch. 2 § E.2 (Instruction 2). | 59 |
| 41 | Sherman Act, Section 1—Tying—Existence Of Market Power With Respect To The Tying Product | ABA Model Antitrust Instructions at 94, Ch. 2 § E.8 (Instruction 8). | 60 |
| 42 | Sherman Act, Section 1—Tying—Foreclosure Of A Substantial Volume Of Commerce With Respect To The Tied Product | ABA Model Antitrust Instructions at 97, Ch. 2 § E.9 (Instruction 9). | 62 |
| 43 | Sherman Act, Section 1—Tying—Business Justification Defense | ABA Model Antitrust Instructions at 99, Ch. 2 § E.11 (Instruction 11). | 63 |
| 44 | Sherman Act, Section 2—Monopolization—Elements | ABA Model Antitrust Instructions at 102, Ch. 3 § A.1 (Instruction 1) | 66 |
| 45 | Sherman Act, Section 2—Monopolization—Monopoly Power Defined | ABA Model Antitrust Instructions at 104, Ch. 3 § A.2 (Instruction 2). | 67 |
| 46 | Sherman Act, Section | ABA Model Antitrust Instructions at | 68 |

| No. | Title | Source | Page No. |
|---|---|---|---|
|  | 2—Monopolization—Relevant Market | 106, Ch. 3 §§ A.3 (Instruction 3) |  |
| 47 | Sherman Act, Section 2—Monopolization—Relevant Product Market | ABA Model Antitrust Instructions at 108-09, Ch. 3 §§ A.4 (Instruction 4). | 69 |
| 48 | Sherman Act, Section 2—Monopolization—Relevant Product Market—Supply Substitutability | ABA Model Antitrust Instructions at 112, Ch. 3 §§ A.5 (Instruction 5). | 71 |
| 49 | Sherman Act, Section 2—Monopolization—Existence Of Monopoly Power—Indirect Proof | ABA Model Antitrust Instructions at 115-117, Ch. 3 §§ A.7 (Instruction 7). | 73 |
| 50 | Sherman Act, Section 2—Monopolization—Existence Of Monopoly Power—Direct Proof | ABA Model Antitrust Instructions at 121-22, Ch. 3 §§ A.8 (Instruction 8). | 76 |
| 51 | Sherman Act, Section 2—Monopolization—Willful Acquisition Or Maintenance Of Monopoly Power | ABA Model Antitrust Instructions at 123-124, Ch. 3 §§ A.9 (Instruction 9). | 78 |
| 52 | Sherman Act, Section 2—Monopolization—Leveraging | ABA Model Antitrust Instructions at 133, Ch. 3 §§ B.3 (Instruction 3). | 81 |
| 53 | Sherman Act, Section 2—Attempt To Monopolize—Elements | ABA Model Antitrust Instructions at 155, Ch. 3 §§ D.1 (Instruction 1). | 83 |
| 54 | Sherman Act, Section 2—Attempt To Monopolize—Anticompetitive Conduct | ABA Model Antitrust Instructions at 158, Ch. 3 §§ D.2 (Instruction 2). | 84 |

| No. | Title | Source | Page No. |
|---|---|---|---|
| 55 | Sherman Act, Section 2—Attempt To Monopolize— Specific Intent | ABA Model Antitrust Instructions at 160-61, Ch. 3 §§ D.3 (Instruction 3). | 85 |
| 56 | Sherman Act, Section 2—Attempt To Monopolize— Dangerous Probability Of Success | ABA Model Antitrust Instructions at 164, Ch. 3 §§ D.4 (Instruction 4). | 87 |
| 57 | Federal Computer Fraud And Abuse Act | None: transitional instruction | 89 |
| 58 | Federal Computer Fraud And Abuse Act— Definitions | 18 U.S.C. § 1030(e) (2006) (computer, protected computer, loss, person, and damage); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072, 1078 (9th Cir. 2004) (citing *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 582 n.10 (1st Cir. 2001)) (without authorization); *Facebook, Inc. v. Power Ventures, Inc.*, 828 F.3d 1068, 1067, 1077 (9th Cir. 2016), as amended on denial of reh'g (Dec. 9, 2016); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009). | 90 |
| 59 | Federal Computer Fraud And Abuse Act—18 U.S.C. § 1030(A)(2)(C) | Ninth Circuit Manual of Model Criminal Jury Instructions, No. 8.97 (2010) (modified); 18 U.S.C. §§ 1030(a)(2)(C), 1030(g), and 1030(c)(2)(B)(iii); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1059 (S.D. Iowa 2009) (requiring plaintiff to prove civil CFAA claim by a preponderance of the evidence). | 92 |
| 60 | Misappropriation Of Trade Secrets (California)—Secrecy | CACI 4403 (2017) (modified). | 94 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| No. | Title | Source | Page No. |
|-----|-------|--------|----------|
|  | Requirement |  |  |
| 61 | Causation – Substantial Factor | CACI 430 | 95 |
| 62 | Causation – Multiple Causes | CACI 431 | 96 |
| 63 | Misappropriation Of Trade Secrets (California)—Trade Secret" Defined | CACI 4402 (2017) (modified). | 97 |
| 64 | Misappropriation Of Trade Secrets (California)— "Independent Economic Value" Explained | CACI 4412 (2017) (modified). | 98 |
| 65 | Misappropriation Of Trade Secrets (California)—Reasonable Efforts To Protect Secrecy | CACI 4404 (2017) (modified). | 99 |
| 66 | Misappropriation Of Trade Secrets (California) – Affirmative Defense – Information Was Readily Ascertainable By Proper Means | CACI 4420 (modified). | 101 |
| 67 | Misappropriation Of Trade Secrets (California)—Unjust Enrichment | CACI 4410 (2017) (modified). | 102 |
| 68 | Misappropriation Of Trade Secrets (California)—Punitive Damages | CACI 4411 (2017) (modified). | 103 |

Case No. 15-cv-9814 DSF (AGRx)
JOINT JURY INSTRUCTIONS

| No. | Title | Source | Page No. |
|---|---|---|---|
| 69 | Intentional Interference With Prospective Economic Relations | CACI 2202 (2017) | 105 |
| 70 | Intentional Interference With Contractual Relations | CACI 2201 (2017) | 106 |
| 71 | Intentional Interference With Contractual Relations–Oral And Written Contracts | BAJI 10.57 (2017) | 107 |
| 72 | Intentional Interference With Contractual Relations–Inference | BAJI 7.83 (2017) | 108 |
| 73 | Intentional Interference – Affirmative Defense – Privilege To Protect Own Financial Interest | CACI 2210 (2017) (modified). | 109 |
| 74 | Intentional Interference With Contractual Relations And Intentional Interference With Prospective Economic Relations – Punitive Damages | CACI 3945 (2017) | 110 |
| 75 | Intentional Interference With Contractual Relations | CACI 2201 | 114 |

# **TABLE OF CONTENTS**

**Page**

I.    GENERAL INSTRUCTIONS – PRELIMINARY JURY INSTRUCTIONS ................................................................. 1

II.   GENERAL INSTRUCTIONS - FINAL JURY INSTRUCTIONS ............... 19

III.  PLAINTIFF'S CLAIMS ................................................................ 41

    A.    FEDERAL ANTITRUST CLAIMS INSTRUCTIONS THAT ARE UNDISPUTED AS TO CONTENT AND ORDER OF APPEARANCE ........................................................ 42

    GENERAL INSTRUCTIONS ................................................ 43

    ANTITRUST DAMAGES INSTRUCTIONS ................................ 46

    B.    FEDERAL ANTITRUST CLAIMS INSTRUCTIONS THAT ARE UNDISPUTED AS TO CONTENT BUT DISPUTED AS TO ORDER OF APPEARANCE ........................................... 53

    SHERMAN ACT, SECTION 1 AND VARIOUS  CONDUCT-SPECIFIC INSTRUCTIONS ...................................... 56

    C.    FEDERAL COMPUTER FRAUD AND ABUSE ACT ("CFAA") CLAIMS INSTRUCTIONS ................................... 88

    D.    TRADE SECRET MISAPPROPRIATION INSTRUCTIONS .......... 93

    E.    INTENTIONAL INTERFERENCE INSTRUCTIONS .................... 104

IV.   DEFENDANTS' CLAIMS ............................................................ 113

## I.     <u>GENERAL INSTRUCTIONS – PRELIMINARY JURY INSTRUCTIONS</u>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 1**

**<u>DUTY OF JURY</u>**

Members of the jury:  You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

<u>Authority:</u>

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.3 (7th ed. July 2017 Update).

# INSTRUCTION NO. 2

## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff asserts the following claims:

1.　monopolization in violation of Section 2 of the Sherman Act;

2.　attempted monopolization in violation of Section 2 of the Sherman Act;

3.　unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

4.　exclusive dealing in violation of Sections 1 and 2 of the Sherman Act;

5.　tying in violation of Sections 1 and 2 of the Sherman Act;

6.　boycott in violation of Sections 1 and 2 of the Sherman Act;

7.　trade secret misappropriation under California law;

8.　unlawful access to a protected computer in violation of the Computer Fraud and Abuse Act;

9.　intentional interference with contractual relations;

10.　intentional interference with prospective economic relations; and

11.　promissory estoppel.

Plaintiff has the burden of proving these claims.

Defendants deny those claims and also assert the following counterclaims:

1.　intentional interference with contractual relations; and

2.　conversion.

Defendants have the burden of proof on these counterclaims and their affirmative defenses.

Plaintiff denies Defendants' counterclaims and affirmative defenses.

Case No. 15-cv-9814 DSF (AGRx)
JOINT JURY INSTRUCTIONS

1

<u>Authority:</u>

2

    Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.5 (7th ed. July 2017 Update).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 3

## <u>BURDEN OF PROOF</u>

1.      When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

2.      When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  The only claim in this case that must be proven by clear and convincing evidence is Plaintiff's claim for punitive damages.  All other claims must be proven by only a preponderance of the evidence.

3.      You should base your decision on all of the evidence, regardless of which party presented it.


<u>Authority:</u>

Ninth Circuit Jury Instructions Committee, Manual of Model Jury Instructions for the Ninth Circuit, Civil Instruction 10.08 (1985) (modified).

**INSTRUCTION NO. 4**

**<u>WHAT IS EVIDENCE</u>**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I may instruct and/or have instructed you to accept as proved.


Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.9 (7th ed. July 2017 Update).

# INSTRUCTION NO. 5

## <u>WHAT IS NOT EVIDENCE</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.     Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.10 (7th ed. July 2017 Update).

**INSTRUCTION NO. 6**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.12 (7th ed. July 2017 Update).

# INSTRUCTION NO. 7

## **RULINGS ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.13 (7th ed. July 2017 Update).

# INSTRUCTION NO. 8

## **CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.     the opportunity and ability of the witness to see or hear or know the things testified to;

2.     the witness's memory;

3.     the witness's manner while testifying;

4.     the witness's interest in the outcome of the case, if any;

5.     the witness's bias or prejudice, if any;

6.     whether other evidence contradicted the witness's testimony;

7.     the reasonableness of the witness's testimony in light of all the evidence; and

8.     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

Case No. 15-cv-9814 DSF (AGRx)
JOINT JURY INSTRUCTIONS

1    The weight of the evidence as to a fact does not necessarily depend on the

2  number of witnesses who testify.  What is important is how believable the witnesses

3  were, and how much weight you think their testimony deserves.

4

5    Authority:

6    Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury

7  Instructions for the District Courts of the Ninth Circuit 1.14 (7th ed. July 2017 Update).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-

# INSTRUCTION NO. 9

## <u>CONDUCT OF THE JURY</u>

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any

research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.


Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.15 (7th ed. July 2017 Update).

**INSTRUCTION NO. 10**

**PUBLICITY DURING TRIAL**

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies.  If any juror is exposed to any outside information, please notify me immediately.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.16 (7th ed. July 2017 Update).

**INSTRUCTION NO. 11**

**<u>NO TRANSCRIPT AVAILABLE TO JURY</u>**

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

<u>Authority:</u>

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.17 (7th ed. July 2017 Update).

# INSTRUCTION NO. 12

## <u>TAKING NOTES</u>

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the envelope in the jury room.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.


<u>Authority:</u>

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.18 (7th ed. July 2017 Update).

# INSTRUCTION NO. 13

## BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.20 (7th ed. July 2017 Update).

# INSTRUCTION NO. 14

## OUTLINE OF TRIAL

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The Plaintiff will then present evidence, and counsel for the Defendants may cross-examine.  Then the Defendants may present evidence, and counsel for the Plaintiff may cross-examine.  After the parties' main case is presented, Plaintiff may be permitted to present what is called rebuttal evidence.

We will proceed in this order even though, in this case, both sides have claims against the other.  So you will be hearing opening statements and evidence that relates to Plaintiff's claims and Defendants' counterclaims together.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.


Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.21 (7th ed. July 2017 Update).

-18-

1

II.     <u>GENERAL INSTRUCTIONS - FINAL JURY INSTRUCTIONS</u>

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 15**

**<u>DUTY OF JURY</u>**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.


<u>Authority:</u>

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.4 (7th ed. July 2017 Update).

## INSTRUCTION NO. 16

## <u>CLAIMS AND DEFENSES</u>

To help you follow the evidence and these instructions, I will give you a brief summary of the positions of the parties:

Plaintiff asserts the following claims:

1.      monopolization in violation of Section 2 of the Sherman Act;

2.      attempted monopolization in violation of Section 2 of the Sherman Act;

3.      unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

4.      exclusive dealing in violation of Sections 1 and 2 of the Sherman Act;

5.      tying in violation of Sections 1 and 2 of the Sherman Act;

6.      boycott in violation of Sections 1 and 2 of the Sherman Act;

7.      trade secret misappropriation under California law;

8.      unlawful access to a protected computer in violation of the Computer Fraud and Abuse Act;

9.      intentional interference with contractual relations;

10.     intentional interference with prospective economic relations; and

11.     promissory estoppel.

Plaintiff has the burden of proving these claims.

Defendants deny those claims and also asserts the following counterclaims:

1.      intentional interference with contractual relations; and

2.      conversion.

Defendants have the burden of proof on these counterclaims and their affirmative defenses.

Plaintiff denies Defendants' counterclaims and affirmative defenses.

1

    <u>Authority:</u>

2

    Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.5 (7th ed. July 2017 Update).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 17

### **BURDEN OF PROOF**

1.      When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

2.      When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true.  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  The only claim in this case that must be proven by clear and convincing evidence is Plaintiff's claim for punitive damages.  All other claims must be proven by only a preponderance of the evidence.

3.      You should base your decision on all of the evidence, regardless of which party presented it.


Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Jury Instructions for the Ninth Circuit, Civil Instruction 10.08 (1985).

# INSTRUCTION NO. 18

## <u>WHAT IS EVIDENCE</u>

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits that are admitted into evidence;

3.    any facts to which the lawyers have agreed; and

4.    any facts that I may instruct and/or have instructed you to accept as proved.


Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.9 (7th ed. July 2017 Update).

# INSTRUCTION NO. 19

## <u>WHAT IS NOT EVIDENCE</u>

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say or have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.      Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.


Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.10 (7th ed. July 2017 Update).

**INSTRUCTION NO. 20**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.12 (7th ed. July 2017 Update).

**INSTRUCTION NO. 21**

**<u>STIPULATIONS OF FACT</u>**

The parties have agreed to certain facts that will be read to you.  You must therefore treat these facts as having been proved.


<u>Authority:</u>

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.2 (7th ed. July 2017 Update).

**INSTRUCTION NO. 22**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.4 (7th ed. July 2017 Update).

# INSTRUCTION NO. 23

## <u>USE OF INTERROGATORIES</u>

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

<u>Authority:</u>

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.11 (7th ed. July 2017 Update).

**INSTRUCTION NO. 24**

**<u>USE OF REQUESTS FOR ADMISSION</u>**

Evidence was presented to you in the form of admissions to the truth of certain facts.  These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.


<u>Authority:</u>

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.12 (7th ed. July 2017 Update).

# INSTRUCTION NO. 25

## EXPERT OPINION

You have heard testimony from expert witnesses who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witnesses' education and experience, the reasons given for the opinion, and all the other evidence in the case.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 2.13 (7th ed. July 2017 Update).

# INSTRUCTION NO. 26

## <u>CREDIBILITY OF WITNESSES</u>

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory;

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case, if any;

5.    the witness's bias or prejudice, if any;

6.    whether other evidence contradicted the witness's testimony;

7.    the reasonableness of the witness's testimony in light of all the evidence; and

8.    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

1    The weight of the evidence as to a fact does not necessarily depend on the

2    number of witnesses who testify.  What is important is how believable the witnesses

3    were, and how much weight you think their testimony deserves.

4

5    Authority:

6    Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 1.14 (7th ed. July 2017

7    Update).

# INSTRUCTION NO. 27

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror.  The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should.  But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.


Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 3.1 (7th ed. July 2017 Update).

**INSTRUCTION NO. 28**

**CONSIDERATION OF THE EVIDENCE – CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any Internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved— including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath

-35-

1   to tell the truth, and the accuracy of their testimony is tested through the trial

2   process.  If you do any research or investigation outside the courtroom, or gain any

3   information through improper communications, then your verdict may be influenced

4   by inaccurate, incomplete or misleading information that has not been tested by the

5   trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if

6   you decide the case based on information not presented in court, you will have

7   denied the parties a fair trial.  Remember, you have taken an oath to follow the rules,

8   and it is very important that you follow these rules.

9        A juror who violates these restrictions jeopardizes the fairness of these

10   proceedings, and a mistrial could result that would require the entire trial process to

11   start over.  If any juror is exposed to any outside information, please notify the court

12   immediately.

13

14        Authority:

15        Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury
     Instructions for the District Courts of the Ninth Circuit 3.2 (7th ed. July 2017
16   Update).

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 29

## **COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk or bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 3.3 (7th ed. July 2017 Update).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 30

## **RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk or bailiff that you are ready to return to the courtroom.

Authority:

Ninth Circuit Jury Instructions Committee, Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit 3.5 (7th ed. July 2017 Update).

1

2

**INSTRUCTION NO. 31**

**VICARIOUS RESPONSIBILITY**

3    One may authorize another to act on his or her behalf in transactions with

4 third persons.  This relationship is called "agency."  The person giving the authority

5 is called the "principal"; the person to whom authority is given is called the "agent."

6    A principal is responsible for harm caused by the wrongful conduct of its

7 employees while acting within the scope of their employment.

8    Under the law, a corporation is considered to be a person.  It can only act

9 through its employees, agents, directors, or officers.  Therefore, a corporation is

10 responsible for the acts of its employees, agents, directors, and officers performed

11 within the scope of authority.

12

13    Authority:

14    CACI 3700 (2017) (modified); Ninth Circuit Jury Instructions Committee,
Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit

15 4.2 (7th ed. July 2017 Update).

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 32**

2

<u>**SHERMAN ACT—LIABILITY OF PARENT CORPORATION FOR**</u>

3

<u>**CONDUCT OF SUBSIDIARY CORPORATION**</u>

4

A parent corporation is liable for the conduct of a subsidiary corporation

5

which it owns if it controls, directs, dictates, or encourages the conduct of the

6

subsidiary corporation.

7

<u>Authority:</u>

8

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F.
Supp. 2d 1048, 1068-70 (D. Colo. 2004) (citing authorities); *Reading Int'l, Inc. v.*

9

*Oaktree Capital Mgmt., LLC*, 317 F. Supp. 2d 301, 324-25 (S.D.N.Y. 2003) (citing authorities).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

### III.    PLAINTIFF'S CLAIMS

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A.   <u>FEDERAL ANTITRUST CLAIMS INSTRUCTIONS THAT ARE
UNDISPUTED AS TO CONTENT AND ORDER OF APPEARANCE</u>

-42-

1

**GENERAL INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-43-

**INSTRUCTION NO. 33**

**INTRODUCTION TO ANTITRUST CLAIMS**

Plaintiff claims that Defendants have violated federal antitrust law—specifically, the Sherman Act—in three separate ways:

1.      Plaintiff claims that, in violation of Section 1 of the Sherman Act, Defendants have entered into contracts or conspiracies that unlawfully restrain trade in (a) an alleged market for "artist presale ticketing services," and/or (b) in a separate alleged market for "concert venue ticketing services."

2.      Plaintiff claims that, in violation of Section 2 of the Sherman Act, Defendants have willfully acquired and/or maintained a monopoly in the alleged "artist presale ticketing services" market, or alternatively in an alleged market for "concert venue ticketing services"; and

3.      Plaintiff claims that Defendant have attempted to monopolize the alleged "artist presale ticketing services" market, or alternatively in an alleged market for "concert venue ticketing services," also in violation of the Section 2 of the Sherman Act.

I will now give you instructions that address each of Plaintiff's separate claims based on this alleged conduct.


Authority:

1st Am. Compl. ¶¶ 203–257, ECF No. 158 (First, Second, and Third Claims for Relief).

**INSTRUCTION NO. 34**

**<u>SHERMAN ACT—STATUTES DEFINING THE CLAIM</u>**

Section 1 of the Sherman Act (15 U.S.C.A. § 1) provides that:

Every contract, combination … or conspiracy, in restraint of trade or commerce … is … illegal … .

Section 2 of the Sherman Act (15 U.S.C.A. § 2) provides that:

Every person who shall monopolize, or attempt to monopolize, … or conspire with any other person to … monopolize any part of the trade or commerce … shall be … guilty of a [violation of the antitrust laws].

<u>Authority:</u>

Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, 3A Federal Jury Practice and Instructions § 150:10 (6th ed. Aug. 2017 Update).

1

**ANTITRUST DAMAGES INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INSTRUCTION NO. 35
### ANTITRUST DAMAGES—INJURY AND CAUSATION

If you find that Defendants have violated Section 1 or Section 2 of the Sherman Act, then you must decide if Plaintiff is entitled to recover damages from Defendants.

Plaintiff is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

1.      Plaintiff was in fact injured as a result of Defendants' alleged violation of the antitrust laws;

2.      Defendants' alleged illegal conduct was a material cause of Plaintiff' s injury; and

3.      Plaintiff's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Plaintiff to establish that it is entitled to recover damages, it must prove that it was injured as a result of Defendants' alleged violation of the antitrust laws. Proving the fact of damage does not require Plaintiff to prove the dollar value of its injury. It requires only that Plaintiff prove that it was in fact injured by Defendants' alleged antitrust violation. If you find that Plaintiff has established that it was in fact injured, you may then consider the amount of Plaintiffs' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Plaintiff has established that it was in fact injured.

Plaintiff must also offer evidence that establishes by a preponderance of the evidence that Defendants' alleged illegal conduct was a material cause of Plaintiff's injury. This means that Plaintiff must have proved that some damage occurred to it as a result of Defendants' alleged antitrust violation, and not some other cause. Plaintiff is not required to prove that Defendants' alleged antitrust violation was the

-47-

sole cause of its injury; nor need Plaintiff eliminate all other possible causes of injury.  It is enough if Plaintiff has proved that the alleged antitrust violation was a material cause of its injury.

Finally, Plaintiff must establish that its injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If Plaintiff's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then Plaintiff's injuries are antitrust injuries.  On the other hand, if Plaintiff's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Plaintiff's injuries are not antitrust injuries and Plaintiff may not recover damages for those injuries under the antitrust laws.

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services, or where a competitor is more efficient and can charge lower prices and still earn a profit.  The antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

In summary, if Plaintiff can establish that it was in fact injured by Defendants' conduct, that Defendants' conduct was a material cause of Plaintiff's injury, and that Defendants' injury was the type that the antitrust laws were intended to prevent, then Plaintiff is entitled to recover damages for the injury to its business or property.

Authority:

ABA Model Antitrust Instructions at 300-301, Ch. 6 § A.1 (Instruction 1).

**INSTRUCTION NO. 36**

**ANTITRUST DAMAGES—INTRODUCTION AND PURPOSE**

If you find that Defendants violated the antitrust laws and that this violation caused injury to Plaintiff, then you must determine the amount of damages, if any, Plaintiff is entitled to recover.  The fact that I am giving you instructions concerning the issue of Plaintiff's damages does not mean that I believe Plaintiff should, or should not, prevail in this case.  If you reach a verdict for Defendants on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that Plaintiff should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured Plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred.  The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages— or to deter particular conduct in the future.  Furthermore, you are not permitted to award to Plaintiff an amount for attorneys' fees or the costs of maintaining this lawsuit.


Authority:

ABA Model Antitrust Instructions at 304, Ch. 6 § B.1 (Instruction 1).

**INSTRUCTION NO. 37**

**ANTITRUST DAMAGES—BASIS FOR CALCULATING DAMAGES**

You are permitted to make just and reasonable estimates in calculating Plaintiff's damages.  You are not required to calculate damages with mathematical certainty or precision.  However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  Damages may not be based on guesswork or speculation.  Plaintiff must prove the reasonableness of each of the assumptions upon which the damages calculation is based.

If you find that Plaintiff has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

If you find that Plaintiff has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages.

Authority:

ABA Model Antitrust Instructions at 307, Ch. 6 § B.3 (Instruction 3)

**INSTRUCTION NO. 38**

**ANTITRUST DAMAGES—MITIGATION**

Plaintiff may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence.  Plaintiff is not entitled to increase any damages through inaction.  The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss.  If Plaintiff failed to take reasonable steps available to it, and the failure to take those steps resulted in greater harm to Plaintiff than it would have suffered had it taken those steps, then Plaintiff may not recover any damages for that part of the injury it could have avoided.

Defendants have the burden of proof on this issue.  Defendant must prove by a preponderance of the evidence that Plaintiff:

1.      acted unreasonably in failing to take specific steps to minimize or limit its losses;

2.      that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps; and

3.      the amount by which Plaintiff's loss would have been reduced had plaintiff taken those steps.

In determining whether Plaintiff failed to take reasonable measures to limit its damages, you must remember that the law does not require Plaintiff to take every conceivable step that might reduce its damages.  The evidence must show that Plaintiff failed to take commercially reasonable measures that were open to it.  Commercially reasonable measures mean those measures that a prudent businessperson in Plaintiff's position would likely have adopted, given the circumstances as they appeared at that time.   Plaintiff should be given wide latitude in deciding how to handle the situation, so long as what Plaintiff did was not unreasonable in light of the existing circumstances.

1

Authority:

2

ABA Model Antitrust Instructions at 324, Ch. 6 § B.14 (Instruction 14).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B.   FEDERAL ANTITRUST CLAIMS INSTRUCTIONS THAT ARE UNDISPUTED AS TO CONTENT BUT DISPUTED AS TO ORDER OF APPEARANCE

### *Plaintiff's Position as to Order of Antitrust Instructions:*

The Parties have a limited dispute regarding the order of the following proposed antitrust instructions which are otherwise agreed to as to form.  Songkick requests that the Court provide the jury with the Sherman Act – Section 2 instructions prior to the Sherman Act – Section 1 instructions.  That order tracks Songkick's complaint and, for the reasons discussed below, makes conceptual sense notwithstanding that Section "2" comes before Section "1."

First, there is nothing in the ABA model instructions nor any legal authority requiring any particular order for these instructions.  Defendants nevertheless maintain that Section 1 instructions must precede Section 2 instructions because that is the order in which they were presented by the ABA's publication.  However, Section 1 and Section 2 claims are distinct claims that are separately evaluated on their own merits.  These are *Songkick's* claims as plaintiff, and it is Songkick's general prerogative to control its case, which includes ordering its claims in a manner Songkick finds most logically consistent with its trial presentation.

Second, for a purely practical reason, it is logically preferable to provide Section 2 instructions first.  This is because the concept of a "relevant market" is described and discussed only in the Section 2 form instructions.  Given that Songkick's claims all require it to prove relevant market and market power, the former is a necessary concept for the jury's understanding and consideration of Songkick's Section 1 claims. Under either ordering, the instructions for Section 1 and 2 will necessarily cross reference one another, but ordering the Section 2 claims first will minimize cross-references to generic mention of concepts that the jury needs to keep track of and anticipate encountering in later instructions.

For these reasons, and because Defendants' insistence that Section 1 instructions go first is based on the arbitrary order in which they appear in the ABA

-53-

model book, Songkick believes that the Court should provide the jury with the Section 2 instructions first.

### ***Defendants' Position as to Order of Antitrust Instructions:***

The parties' disagreement regarding the proposed order of the antitrust instructions is not merely about the order of those particular instructions, but, more importantly, it is about whether Plaintiff can change the order contemplated by the Model Instructions in an effort to support some undefined, generalized claims for antitrust liability under Sections 1 and 2 of the Sherman Act.

Rather than provide the jury the ABA Model Antitrust Instructions in the order in which they are found in the model, Plaintiff insists that the instructions relating to antitrust liability should begin with Section 2, then move to Section 1, and finally end with the "various conduct specific instructions," as Plaintiff's refer to them in the headings they insisted on.  In doing so, Plaintiff is trying to order the instructions in such a way that leaves Section 1 and Section 2 as seemingly distinct analyses that are divorced from the conduct specific analyses for which Plaintiff must meet specific elements in order to prevail.  (This is particularly true if titles / headings on the specific instructions are not provided to the jury.)

Plaintiff's proposal to, in effect, segregate the conduct specific instructions is further exacerbated by the fact that Plaintiff proposes a host of individual instructions, such as Plaintiff's Proposed Instruction No. 90, found in Plaintiff's submission on the disputed instructions.  These instructions, combined with the way Plaintiff wants to order them, invite error by creating the impression that Plaintiff has some generalized Section 1 concerted action claims that stand separate and apart from Plaintiff's exclusive dealing, tying, and boycott claims.  *See Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) (rejecting plaintiff's attempt to "join [two] claim[s] that cannot succeed, and alchemize them into a new form of antitrust liability never before recognized by this Court"); *see also generally* Defs. and Counter-Claimant's Reply in Supp. of Mot. for Partial Summ. J. at 1–7, 10, ECF

No. 249-1 ("Defs.' MSJ Reply").  Defendants respectfully ask the Court to give the instructions in the order contemplated by the model instructions.  This approach provides more clarity to the jury, properly identifies the challenged conduct early on, presents the instructions in a completely neutral order, and makes it clear that in order to prevail on its claims, Plaintiff must prevail on one of the conduct specific tests at issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SHERMAN ACT, SECTION 1 AND VARIOUS
# CONDUCT-SPECIFIC INSTRUCTIONS

**INSTRUCTION NO. 39**

**SHERMAN ACT, SECTION 1—RULE OF REASON—**

**PROOF OF COMPETITIVE HARM**

As I mentioned, to prove that the challenged restraint is unreasonable, Plaintiff first must demonstrate that the restraint has resulted or is likely to result in a substantial harm to competition.  Although it may be relevant to the inquiry, harm that occurs merely to the individual business of Plaintiff is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, Plaintiff must show that the harm to competition occurred in an identified market, known as a relevant product market.  A market for a service may be a relevant "product" market.  The term a relevant "product" market is used with respect to a market for services, as well as a market for products.  It is Plaintiff's burden to prove the existence of a relevant market.

If you find that Plaintiff has proven the existence of a relevant market, then you must determine whether Plaintiff also has proven that the challenged restraint has or is likely to have a substantial harmful effect on competition in that market.  A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality.  If the challenged conduct has not resulted in or is not likely to result in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced or is likely to produce competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;

-57-

- • the purpose and nature of the restraint;
- • the nature and structure of the relevant market;
- • the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and
- • whether the defendant possesses market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.  A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power.   The ability to charge higher prices for better products or services, however, is not market power.   An important factor in determining whether Defendants possess market power is Defendants' market share, that is, its percentage of the products or services sold in the relevant market by all competitors.  Other factors that you may consider is determining whether Defendants have market power include market share trends, barriers to entry, entry and exit by other companies, and number and size of competitors.  If Defendants do not possess a substantial market share, it is less likely that Defendants possess market power.  If Defendants do not possess market power, it is less likely that the challenged restrain has resulted or will result in a substantial harmful effect on competition in the market.

Authority:

ABA Model Antitrust Instructions at 5-6, Ch. 1 § C.2 (Instruction 3B).

**INSTRUCTION NO. 40**

**<u>SHERMAN ACT, SECTION 1—TYING—RATIONALE FOR</u>**

**<u>PROHIBITION OF TYING ARRANGEMENTS</u>**

Not all tying arrangements are unlawful.  The essential characteristic of an invalid tying arrangement is a seller's exploitation of its market power over the tying product ("concert venue ticketing services") to force buyers to purchase a tied product ("artist presale ticketing services") that buyers either did not want at all or might have preferred to purchase elsewhere.

Authority:

ABA Model Antitrust Instructions at 85, Ch. 2 § E.2 (Instruction 2).

**INSTRUCTION NO. 41**

**SHERMAN ACT, SECTION 1—TYING—EXISTENCE OF MARKET POWER WITH RESPECT TO THE TYING PRODUCT**

You may find that Defendants have market power with respect to "concert venue ticketing services" if, by reason of some advantage, Defendants have the power to raise its prices for "concert venue ticketing services" without losing an appreciable amount of its business or otherwise to force a purchaser of "concert venue ticketing services" to do something that the purchaser would not do in a more competitive market.

Plaintiff may prove power over price with respect to "concert venue ticketing services" by establishing that the price of the tied package is higher than the price of components sold in competitive markets

In the alternative, you may determine whether Defendants have market power with respect to "concert venue ticketing services" by considering whether Defendants have a high share of that market for "concert venue ticketing services" such that purchasers do not have alternative sources of "concert venue ticketing services" or a reasonably interchangeable substitute readily available.  If Defendants' market share of the market for "concert venue ticketing services" is below 30 percent, Defendants do not have market power.  But if Defendants' market share of the market for "concert venue ticketing services" is above 30 percent, you may consider that in determining whether Defendants have market power.  Whether a high market share is an indicator of Defendants' power to raise prices without loss of appreciable business is a function of numerous market conditions, including the uniqueness of the product, the ability of existing competitors to expand production, and the ease (or difficulty) with which new competitors can enter the market and make a price increase unprofitable.  If you find that purchasers of "concert venue ticketing services" do not have readily available alternative sources of supply and are forced as a practical matter to buy "concert venue ticketing services" from

-60-

Defendants, you may find that Defendants have market power.  You may also consider in your market power determination the presence of any unique features or costs associated with "concert venue ticketing services" that effectively prevent others from offering a comparable product.

Authority:

ABA Model Antitrust Instructions at 94, Ch. 2 § E.8 (Instruction 8).

**INSTRUCTION NO. 42**

**SHERMAN ACT, SECTION 1—TYING—FORECLOSURE OF A SUBSTANTIAL VOLUME OF COMMERCE WITH RESPECT TO THE TIED PRODUCT**

If you determine that "concert venue ticketing services" and "artist presale ticketing services" are separate products that have been tied to one another and that Defendants have market power for "concert venue ticketing services," then you must determine whether Plaintiff has proven that Defendants have foreclosed a substantial amount of interstate or foreign commerce with respect to "artist presale ticketing services."

In determining whether Defendants has foreclosed a substantial amount of commerce with respect to "artist presale ticketing services," you should first consider the total dollar amount of Defendants' sales of "artist presale ticketing services" in interstate or foreign commerce achieved by the tying arrangement in absolute terms.

If the dollar amount of Defendants' sales of "artist presale ticketing services" was substantial, you should next consider whether there has been or likely will be a substantial adverse effect on competition with respect to "artist presale ticketing services" due to the tying arrangement. If there was not a substantial adverse effect on competition with respect to "artist presale ticketing services" due to the tying arrangement, then you must find in favor of defendant on the tying claim.

There is no substantial foreclosure if only a small percentage of sales in the market for "artist presale ticketing services" were affected by the tying arrangement. There also is no substantial foreclosure if you find that purchasers would not have bought "artist presale ticketing services" at all in the absence of the tying arrangement.

Authority:

ABA Model Antitrust Instructions at 97, Ch. 2 § E.9 (Instruction 9).

**INSTRUCTION NO. 43**

**SHERMAN ACT, SECTION 1—TYING—BUSINESS JUSTIFICATION DEFENSE**

Defendants contend that the alleged tying arrangement is justified.  If you find that Plaintiff has proven all of the elements of a tying claim, then you should consider whether Defendants have proven, by a preponderance of the evidence, a business justification for the tying arrangement.  Defendants have the burden of proof in this issue.

Defendants contend that the tying arrangement is justified because it  is the venues that prefer and demand broad ticketing services contracts that include rights to both presales and other sales.  Defendants contend that the competitive benefits to the venues from the alleged tying arrangement include that it: (1) promotes operational efficiencies (such as reducing the costs of training venue personnel, and enhancing system performance and reliability), (2) facilitates venues' ability to generate competition for the ticketing services contract, (3) prevents freeriding and potential "finger pointing" problems that can arise with multiple ticketing providers, and (4) facilitates venues' ability to negotiate substantial up-front payments and other attractive financial terms.

In determining whether the tying arrangement is justified, you must decide whether it serves a legitimate business purpose of Defendants.  In making this determination, you should consider whether the justification Defendants offer is the real reason that it imposed the tying arrangement.

You must also consider whether Defendants' claimed objective could reasonably have been realized through less restrictive means.  Even if some type of constraint is necessary to promote a legitimate business interest, Defendants must not adopt a constraint that is more restrictive than reasonably necessary to achieve that interest.

In determining whether Defendants' objective could reasonably have been achieved through other means, you may assess such factors as whether other means to achieve Defendants' objective were more or less expensive and more or less effective than the means chosen by Defendants.

If you find that Defendants could reasonably have achieved its legitimate business purpose by less restrictive means, then you may find that there was no business justification and find for Plaintiff on the tying claim.  If you find that the tying arrangement serves a legitimate business purpose of Defendants, and that there are not less restrictive means reasonably available to achieve that purpose, then you must find for Defendant and against Plaintiff on the tying claim.

Authority:

ABA Model Antitrust Instructions at 99, Ch. 2 § E.11 (Instruction 11).

1
2

**SHERMAN ACT, SECTION 2 AND VARIOUS
CONDUCT-SPECIFIC INSTRUCTIONS**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 44**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—ELEMENTS**

Plaintiff alleges that it was injured by Defendants' unlawful monopolization of the alleged market for artist presale ticketing services.  To prevail on this claim, Plaintiff must prove each of the following elements by a preponderance of the evidence:

1. the alleged market is a valid antitrust market;

2. Defendants possessed monopoly power in that market;

3. Defendants willfully acquired or maintained monopoly power in that market by engaging in anticompetitive conduct;

4. Defendants' conduct occurred in or affected interstate or foreign commerce; and

5. Plaintiff was injured in its business or property because of Defendants' anticompetitive conduct.

If you find that Plaintiff has failed to prove any of these elements, then you must find for Defendants and against Plaintiff on this claim.  If you find that Plaintiff has proved each of these elements by a preponderance of the evidence, then you must find for Plaintiff against Defendant on this claim.


Authority:

ABA Model Antitrust Instructions at 102, Ch. 3 § A.1 (Instruction 1).

**INSTRUCTION NO. 45**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—MONOPOLY POWER DEFINED**

To prove its monopolization claim, Plaintiff must prove that Defendants have monopoly power in a relevant antitrust market.  Monopoly power is the power to control prices, restrict output, and exclude competition in a relevant antitrust market.  More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.  However, possession of monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether Plaintiff has met its burden of proving monopoly power in a relevant market.

Authority:

ABA Model Antitrust Instructions at 104, Ch. 3 § A.2 (Instruction 2).

**INSTRUCTION NO. 46**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—RELEVANT MARKET**

Plaintiff must prove by a preponderance of the evidence that Defendants had monopoly power in a relevant product market.  Defining the relevant market is essential because you are required to make a judgment about whether Defendants have monopoly power in a properly defined economic market.  To make this judgment, you must be able to determine what, if any, economic forces restrain Defendants' freedom to set prices for or to restrict the production level of the products or services in question.

The most likely and most important restraining force will be actual and potential competition from other firms and their products.  This includes all firms and products that act or likely could act as restraints on Defendants' power to set prices as it pleases because customers could switch to them if Defendants set their own prices too high.  All the firms and products that exert such restraining force are within what is called the relevant market.

You must consider the relevant product market in determining whether Plaintiff has met its burden to prove the relevant market by a preponderance of the evidence.


Authority:

ABA Model Antitrust Instructions at 106, Ch. 3 §§ A.3 (Instruction 3)

**INSTRUCTION NO. 47**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—RELEVANT PRODUCT MARKET**

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.  In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all those products may be in the same relevant product market.  A market for a service may be a relevant "product" market.  The term a relevant "product" market is used with respect to a market for services, as well as a market for products.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable.  In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn?  Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue.  If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market.   If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in

the product market.  In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are interchangeable;
- the relationship between the price of one product and sales of another;
- the presence or absence of specialized vendors;
- the perceptions of either industry or the public as to whether the products are in separate markets;
- the views of Plaintiff and Defendants regarding who their respective competitors are; and
- the existence or absence of different customer groups or distribution channels.

In this case, Plaintiff contends that the relevant product market is the alleged market for "artist presale ticketing services."

By contrast, Defendants contend that Plaintiff has failed to allege the proper relevant product market.  Defendant contends that there is no market limited to just "artist presale ticketing services."  Instead, Defendants claim, there is one market for ticketing service providers, in general, and serving artist presales is a part of a ticketing company's business.

If you find that Plaintiff has proven a relevant product market, then you should continue to evaluate the remainder of Plaintiff's claim. However, if you find that Plaintiff has failed to prove such a market, then you must find in  Defendants favor on this claim.


Authority:

ABA Model Antitrust Instructions at 108-09, Ch. 3 §§ A.4 (Instruction 4).

**INSTRUCTION NO. 48**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—RELEVANT
PRODUCT MARKET—SUPPLY SUBSTITUTABILITY**

In deciding whether Plaintiff has proven a relevant product market you may also consider what the law refers to as "the cross-elasticity of supply" or, in other words, the extent to which the producers of one product would be willing to shift their resources, such as intellectual property, manufacturing facilities, or personnel to producing another product in response to an increase in the price of the other product.  Such producers, to the extent that they exist, can increase supply and, therefore, drive prices back to competitive levels, defeating any effort by a would-be-monopolist to charge significantly higher prices.

Take two show manufacturers, for example.  The first manufacturer produces shoes for women, while the second manufacturer produces shoes for men. Generally speaking, men's and women's shoes are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the men's shoe manufacturer could quickly shift its resources to start producing women's shoes if the women's shoe manufacturer raised its prices significantly and vice versa.  Although women would not buy men's shoes, nor would men buy women's shoes, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, men's and women's shoes would be included in the same market.

If, in determining the products in the relevant product market you find that there are manufacturers that have the ability to alter their production to manufacture products that can reasonably be substituted with Defendants'—even though they do not presently complete with Defendants—you may consider whether the existence of these potential alternative suppliers can influence the price that Defendants charge for their product and, if so, that amount of the product that these suppliers are

-71-

1  likely to produce.  However, if you find that there are no others who would switch

2  production to products that would compete with Defendants', you may define the

3  market solely on your evaluation of whether the existing allegedly competing

4  products are reasonable substitutes for each other.

5

6  Authority:

7  ABA Model Antitrust Instructions at 112, Ch. 3 §§ A.5 (Instruction 5).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 49**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER—INDIRECT PROOF**

If you find that Plaintiff has proven a relevant market, then you should determine whether Defendants have monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. Plaintiff has introduced evidence of the structure of the market to show that Defendants have monopoly power. The evidence presented by the parties includes evidence of Defendants' market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors. If this evidence establishes that Defendants have the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that Defendant have monopoly power in the market.

**Market Share**

The first factor that you should consider is Defendants' share of the relevant market. Based on the evidence that you have heard about Defendants' market share, you should determine Defendants' market share as a percentage of total sales in the relevant market. The Defendant must have a significant share of the market in order to possess monopoly power.

In evaluating whether the percentage of market share supports a finding of monopoly power, you also should consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry (that is, how difficult is it for other producers to enter the market and begin competing with Defendants for sales), the entry and exit by other companies, and the number and size of competitors. Along with Defendants' market share, these factors should inform you as to whether Defendants have monopoly power. The higher the company's share, the higher the likelihood that a company has monopoly power.

-73-

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power.  However, if you find that the other evidence demonstrates that Defendants do, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that Defendants has monopoly power.

**Market Share Trends**

The trend in Defendants' market share is something you may consider.  An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market.  Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way.  Barriers to entry might include intellectual property rights (such as patents or trade secrets), the large financial investment required to build a plant or satisfy governmental regulations, specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).

Evidence of low or no entry barriers may be evidence that Defendants do not have monopoly power, regardless of Defendants' market share, because new competitors could enter easily if Defendants attempted to raise prices for a substantial period of time.  By contrast, evidence of high barriers to entry along with high market share may support an inference that Defendants have monopoly power.

**Entry and Exit by Other Companies**

The history of entry and exit in the relevant market may be helpful to consider.  Entry of new competitors or expansion of existing competitors may be evidence that Defendants lack monopoly power.  On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit

-74-

margins are relatively high, may support an inference that Defendants have monopoly power.

**Number and Size of Competitors**

You may consider whether Defendants' competitors are capable of effectively competing.  In other words, you should consider whether the financial strength, market shares, and number of competitors act as a check on Defendants' ability to price its products.  If Defendants' competitors are, vigorous or have large or increasing market shares this may be evidence that the Defendants lack monopoly power.  On the other hand, if you determine that Defendants' competitors are weak or have small or declining market shares, this may support an inference that Defendants have monopoly power.

**Conclusion**

If you find that Defendants have monopoly power in the relevant market, then you must consider the remaining elements of this claim.  If you find that Defendants do not have monopoly power, then you must find for Defendants and against Plaintiff on this claim.

Authority:

ABA Model Antitrust Instructions at 115-117, Ch. 3 §§ A.7 (Instruction 7).

**INSTRUCTION NO. 50**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—EXISTENCE OF MONOPOLY POWER—DIRECT PROOF**

If you find that Plaintiff has proven a relevant market, then you should determine whether Defendants have monopoly power in that market.  As I instructed you earlier, monopoly power is the power to control prices, and exclude competition in a relevant antitrust market.  More precisely, a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time.

Plaintiff has the burden of proving that Defendants have the ability to raise or maintain the prices that it charges for goods or service in the relevant market above competitive levels.  Plaintiff must prove that Defendants have the power to do so by themselves—that is, without the assistance of, and despite competition from, any existing or potential competitors.

Plaintiff must also prove that Defendants have the power to maintain prices above a competitive level for a significant period of time.  If Defendants attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then Defendants do not have monopoly power.

Similarly, Plaintiff must prove that Defendants have the ability to exclude competition.  For example, if Defendants attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdraw, then Defendants do not have monopoly power.

The ability to earn high profit margins or high rate of return does not necessarily mean that Defendants have monopoly power.  Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit

margins than its competitors, such as superior products or services, low costs, superior advertising or marketing.  However, an ability to sell at higher price or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power.  By contrast, evidence that Defendants would lose a substantial amount of sales if they raised prices substantially, or that Defendants' profit margins were low compared to their competitors, or that Defendants' margin go up and down or are steadily decreasing, might be evidence that Defendants do not have monopoly power.

If you find that Defendants have monopoly power in the relevant market, then you must consider the remaining elements of this claim.  If you find that Defendants do not have monopoly power, then you must find for Defendants and against Plaintiff on this claim.

Authority:

ABA Model Antitrust Instructions at 121-22, Ch. 3 §§ A.8 (Instruction 8).

**INSTRUCTION NO. 51**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—WILLFUL**

**ACQUISITION OR MAINTENANCE OF MONOPOLY POWER**

The next element Plaintiff must prove is that Defendants willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market.  Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition.  Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws.  The acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, is not unlawful.

A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine.  This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals—or the achievement of these goals—unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Defendants' conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is

-78-

1   consistent with competition on the merits, whether the conduct provides benefits to

2   consumers, and whether the conduct would make business sense apart from any

3   effect it has on excluding competition or harming competitors.

4        For example, suppose there are five firms that make printers for home

5   computers and that these printers comprised a relevant product market.  Suppose

6   also that Firm A developed a more efficient manufacturing process that allowed it to

7   sell profitably at a lower price than its Competitors.  If Firm A grew its market share

8   and achieved monopoly power by selling profitably at a lower price, it would not be

9   unlawful for Firm A to achieve monopoly power in this way.  Developing more

10   efficient processes and developing the ability to sell profitably at lower prices is

11   competition on the merits and benefits consumers, and it therefore is not

12   anticompetitive conduct even if it has a negative effect on competitors.

13        Similarly, in the same example, suppose Firm B developed and patented a

14   revolutionary new printer and consumers so preferred Firm B's printer that Firm B

15   achieved monopoly power.  It would not be unlawful for Firm B to achieve

16   monopoly power in this way.  Firm B "built a better mousetrap," which is

17   competition on the merits and benefits consumers, and it therefore is not

18   anticompetitive conduct.

19        By contrast, in the same example, suppose not only that Firm C makes

20   printers, but also that Firm C is the world's only manufacturer of computers and that

21   there are barriers to entry in the computer market such that no other firm will be able

22   to enter that market.  Suppose also that Firm C altered its computers in such a way

23   that only Firm C's printers would work with its computers, and that the alteration

24   does not improve the design of Firm C 's computers or provide any benefits to

25   competition or consumers.  The only effect of the alteration is to exclude competing

26   printer makers from the marketplace.  It would be unlawful for Firm C to achieve

27   monopoly power in the printer market in this way.

28

As these examples show, the acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason.  You may not find that a company willfully acquired or maintained monopoly power through anticompetitive means if it has acquired or maintained that power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to raw materials or markets; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; or because changes in cost or consumer preference have driven out all but one supplier, or because the market is so limited that it is impossible to efficiently produce the product except by a plant large enough to supply the whole demand.

If you find that Plaintiff has proven by a preponderance of the evidence that Defendants willfully acquired or maintained monopoly power through anticompetitive acts, then you must consider whether Plaintiff has proved the remaining elements of this claim.  If, however, you find that Plaintiff did not prove this element by a preponderance of the evidence, then you must find for Defendants and against Plaintiff on this claim.

Authority:

ABA Model Antitrust Instructions at 123-124, Ch. 3 §§ A.9 (Instruction 9).

**INSTRUCTION NO. 52**

**SHERMAN ACT, SECTION 2—MONOPOLIZATION—LEVERAGING**

As stated before, one of the elements Plaintiff must prove is that Defendants engaged in exclusionary or restrictive conduct.  Plaintiff claims that the conduct element is satisfied in this case by Defendants' use of anticompetitive conduct and its monopoly power in one product market to obtain or maintain or in an attempt to obtain monopoly power in a second product market.

Specifically, Plaintiff claims that the anticompetitive conduct element is satisfied by unlawful leveraging—that is, Defendants' alleged use of anticompetitive conduct and its monopoly power in the alleged "concert venue ticketing services" market to obtain monopoly power in the alleged "artist presale ticketing services" market and exclude Plaintiff from that market.

To establish that Defendants engaged in anticompetitive conduct by leveraging its position from one market to another market, Plaintiff must prove the following:

1. The alleged "concert venue ticketing services" market was a relevant market under the instructions you have received concerning relevant market;

2. Defendants had monopoly power in that market;

3. The alleged "artist presale ticketing services" market was a separate relevant product market;

4. Defendants, through anticompetitive conduct, used their monopoly position in the alleged "concert venue ticketing services" market in an attempt to monopolize the alleged "artist presale ticketing services" market, and

5. Defendants in fact monopolized or had a dangerous probability of monopolizing the market for the alleged "artist presale ticketing services" market.

1    If you find that Plaintiff has failed to prove any of these elements in addition

2 to the elements of an attempt to monopolize claim, then you must find for

3 Defendants and against Plaintiff on Plaintiff's leveraging claim.  If you find that

4 Plaintiff has proved each element in addition to the elements of an attempt to

5 monopolize claim, then you must find for Plaintiff on this leveraging claim.

6

7    Authority:

8    ABA Model Antitrust Instructions at 133, Ch. 3 §§ B.3 (Instruction 3).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 53**

**SHERMAN ACT, SECTION 2—ATTEMPT TO MONOPOLIZE—
ELEMENTS**

In addition to its monopolization claim under Section 2 of the Sherman Act, Plaintiff also claims that it was injured by Defendants unlawful attempt to monopolize.

Specifically, Plaintiff alleges that it was injured by Defendants' unlawful attempt to monopolize the market for "artist presale ticketing services."  To prevail on its claim of attempted monopolization, Plaintiff must prove each of the following elements by a preponderance of the evidence:

1. Defendants engaged in anticompetitive conduct;

2. Defendants had a specific intent to achieve monopoly power in a relevant market;

3. there was a dangerous probability that Defendants would achieve their goal of monopoly power in the relevant market;

4. Defendants' conduct occurred in or affected interstate or foreign commerce; and

5. Plaintiff was injured in its business or property by Defendants' anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for Defendants and against Plaintiff on Plaintiff's claim of attempted monopolization.  If you find that the evidence is sufficient to prove all five elements as to Defendants, then you must find for Plaintiff and against Defendants on Plaintiff's claim of attempted monopolization.


Authority:

ABA Model Antitrust Instructions at 155, Ch. 3 §§ D.1 (Instruction 1).

-83-

**INSTRUCTION NO. 54**

**SHERMAN ACT, SECTION 2—ATTEMPT TO MONOPOLIZE—**

**ANTICOMPETITIVE CONDUCT**

It is not sufficient for Plaintiff to prove that Defendants intended to monopolize the relevant market.  Plaintiff must also show that Defendants engaged in anticompetitive conduct, coupled with an intent to monopolize and a dangerous probability that Defendants would succeed.  Generally, a firm engages in anticompetitive conduct when it attempts to exclude rivals without an efficiency-enhancing justification for its conduct.


Authority:

ABA Model Antitrust Instructions at 158, Ch. 3 §§ D.2 (Instruction 2).

## INSTRUCTION NO. 55

## SHERMAN ACT, SECTION 2—ATTEMPT TO MONOPOLIZE—SPECIFIC INTENT

The second element that Plaintiff must prove is that Defendants had a specific intent to monopolize a relevant market. To do so, Plaintiff must first prove that the market it is talking about—"artist presale ticketing services"— is a relevant market for antitrust purposes. Plaintiff must then prove that Defendants had a specific intent to monopolize that market. The court will begin by instructing you on the relevant market, and the court will then discuss specific intent. If Plaintiff proves both that "artist presale ticketing services" is a relevant market and that Defendants have a specific intent to monopolize that market, you must find that Plaintiff has proven this element of its attempted monopolization claim and you should consider the other elements of the claim. If you find that Plaintiff fails to prove either of these points, then you must find for Defendants on Plaintiff's attempted monopolization claim.

I previously instructed you (in Instruction No. [-]) on how to determine whether there is a relevant market.

If you find that Plaintiff has proven a relevant market, you must then decide whether Defendants have the specific intent to monopolize that market. In other words, you must decide if the evidence shows that Defendants acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market.

There are several ways in which Plaintiff may prove that Defendants had the specific intent to monopolize. There may be evidence of direct statements of Defendants' intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of Defendants at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of

Defendants.  You must be careful, however, to distinguish between Defendants' lawful intent to compete aggressively, which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that Defendants actually intended to obtain a monopoly, specific intent may be inferred from what Defendants did.  For example, if the evidence shows that Defendants lacked a legitimate business justification and the natural and probable consequence of Defendants' conduct in the relevant market was to give Defendants control over prices and to exclude or destroy competition, and that this was plainly foreseeable by Defendants, then you may (but are not required to) infer that Defendants specifically intended to acquire monopoly power.

In this case, Plaintiff argues that the conduct underlying the claim of attempt to monopolize also constitutes an unreasonable restraint of trade under Section 1 of the Sherman Act.  If you find on the basis of this conduct that Plaintiff has proven a substantial claim of restraint of trade under the instructions you [have received]/[will receive] pertaining to Section 1 of the Sherman Act, then you may infer from such conduct that Defendants had the specific intent to achieve monopoly power.

Authority:

ABA Model Antitrust Instructions at 160-61, Ch. 3 §§ D.3 (Instruction 3).

**INSTRUCTION NO. 56**

**SHERMAN ACT, SECTION 2—ATTEMPT TO MONOPOLIZE—**

**DANGEROUS PROBABILITY OF SUCCESS**

If you find that Defendants had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize:  namely, that there was a dangerous probability that Defendants would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

I previously instructed you (in Instructions Nos. [-] through [-]) on how to determine whether Defendants have monopoly power in a relevant market.

In determining whether there was a dangerous probability that Defendants would acquire the ability to control price in the market, you should consider such factors as:

- defendants' market share;

- the trend in defendants' market share;

- whether the barriers to entry into the market made it difficult for competitors to enter the market; and

- the likely effect of any anticompetitive conduct on Defendants' share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that Defendants would ultimately acquire monopoly power.  A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that Defendants would ultimately acquire monopoly power.


Authority:

ABA Model Antitrust Instructions at 164, Ch. 3 §§ D.4 (Instruction 4).

1      C.    <u>FEDERAL COMPUTER FRAUD AND ABUSE ACT ("CFAA")</u>
2           <u>CLAIMS INSTRUCTIONS</u>
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 57**

**FEDERAL COMPUTER FRAUD AND ABUSE ACT**

Plaintiff claims that Defendants violated the Federal Computer Fraud and Abuse Act ("CFAA").  I will now instruct you on the law regarding the applicable provisions of the CFAA, and the damages you may award if you find a CFAA violation.  If you find that either Defendant violated the CFAA provisions that follow, you should find for Plaintiff and against that Defendant on the CFAA claim. If you do not find that a Defendant violated the CFAA, then you must find against Plaintiff on its CFAA claim as to that Defendant.

Authority:

None:  transitional instruction.

## INSTRUCTION NO. 58

## FEDERAL COMPUTER FRAUD AND ABUSE ACT—DEFINITIONS

For purposes of Instruction Nos. 73-75, the following terms have the following meanings:

Access is "without authorization" when the person has not received permission to use the computer for any purpose, or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway.

"Computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device.

"Protected computer" means a computer which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

"Loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

"Person" means any individual, firm, corporation, educational institution, financial institution, governmental entity, or legal or other entity.

"Damage" means any impairment to the integrity or availability of data, a program, a system, or information.

1

<u>Authority:</u>

2

    18 U.S.C. § 1030(e) (2006) (computer, protected computer, loss, person, and damage); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072, 1078 (9th Cir. 2004) (citing *EF Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 582 n.10 (1st Cir. 2001)) (without authorization); *Facebook, Inc. v. Power Ventures, Inc.*, 828 F.3d 1068, 1067, 1077 (9th Cir. 2016), as amended on denial of reh'g (Dec. 9, 2016); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 59**

**<u>FEDERAL COMPUTER FRAUD AND ABUSE ACT—18 U.S.C. §</u>**

**<u>1030(a)(2)(C)</u>**

Plaintiff claims that Defendants violated Section 1030(a)(2)(c) of the CFAA. To prevail under this provision as to any Defendant, Plaintiff must prove each of the following elements by a preponderance of the evidence:

Defendants intentionally accessed one or more of Plaintiff computer(s) or computer system(s);

Defendants accessed Plaintiff's computer(s) or computer system(s) without authorization;

By accessing without authorization Plaintiff's computer(s) or computer system(s), Defendants obtained information from Plaintiff's computer(s) or computer system(s) that was used in or affected commerce or communication between one state and other state(s).

Defendants' actions caused loss to Plaintiff of at least $5,000.

The terms "computer," "without authorization," and "loss" were defined in a prior instruction.


Authority:

Ninth Circuit Manual of Model Criminal Jury Instructions, No. 8.97 (2010) (modified); 18 U.S.C. §§ 1030(a)(2)(C), 1030(g), and 1030(c)(2)(B)(iii); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1059 (S.D. Iowa 2009) (requiring plaintiff to prove civil CFAA claim by a preponderance of the evidence).

1   D.   <u>TRADE SECRET MISAPPROPRIATION INSTRUCTIONS</u>

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 60**

**MISAPPROPRIATION OF TRADE SECRETS (CALIFORNIA)—SECRECY REQUIREMENT**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information.  It may be disclosed to employees involved in Plaintiff's use of the trade secret as long as they are instructed to keep the information secret.  It may also be disclosed to nonemployees if they are obligated to keep the information secret.  However, it must not have been generally known to the public or to people who could obtain value from knowing it.

Authority:

CACI 4403 (2017) (modified).

**INSTRUCTION NO. 61**

**CAUSATION – SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.

Authority:

CACI 430

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### INSTRUCTION NO. 62

### <u>CAUSATION – MULTIPLE CAUSES</u>

A person's conduct may combine with another factor to cause harm.  If you find that Defendants' conduct was a substantial factor in causing Plaintiff's harm, then Defendants are responsible for the harm.  Defendants cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Plaintiff's harm.

<u>Authority</u>:

CACI 431

**INSTRUCTION NO. 63**

**MISAPPROPRIATION OF TRADE SECRETS (CALIFORNIA)—TRADE SECRET" DEFINED**

To prove that the Claimed Trade Secret(s) were trade secrets, Plaintiff must prove all of the following:

That the Claimed Trade Secret(s) were secret;

That the Claimed Trade Secret(s) had actual or potential independent economic value because they were secret; and

That Plaintiff made reasonable efforts to keep the Claimed Trade Secret(s) secret.


Authority:

CACI 4402 (2017) (modified).

# INSTRUCTION NO. 64

## MISAPPROPRIATION OF TRADE SECRETS (CALIFORNIA)— "INDEPENDENT ECONOMIC VALUE" EXPLAINED

A Claimed Trade Secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the Claimed Trade Secret and who could obtain economic value from its disclosure or use.  In determining whether a Claimed Trade Secret had actual or potential independent economic value because it was secret, you may consider the following:

- The extent to which Plaintiff obtained or could obtain economic value from the Claimed Trade Secret in keeping it secret;

- The extent to which others could obtain economic value from the Claimed Trade Secret if was not secret;

- The amount of time, money, or labor that Plaintiff expended in developing the Claimed Trade Secret; and

- The amount of time, money, or labor that was saved by a competitor who used the Claimed Trade Secret.

The presence or absence of any one or more of these factors is not necessarily determinative.

Authority:

CACI 4412 (2017) (modified).

**INSTRUCTION NO. 65**

**MISAPPROPRIATION OF TRADE SECRETS (CALIFORNIA)—**

**REASONABLE EFFORTS TO PROTECT SECRECY**

To establish that a Claimed Trade Secret is a trade secret, Plaintiff must prove that it made reasonable efforts under the circumstances to keep it secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Plaintiff, exercising due care to protect important information of the same kind.  This requirement applies separately to each of the Claimed Trade Secrets.

In determining whether or not Plaintiff made reasonable efforts to keep a Claimed Trade Secret secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

- Whether documents or computer files containing the Claimed Trade Secret were marked with confidentiality warnings;
- Whether Plaintiff instructed its employees to treat the Claimed Trade Secret as confidential;
- Whether Plaintiff restricted access to the Claimed Trade Secret to persons who had a business reason to know the information;
- Whether Plaintiff kept the Claimed Trade Secret in a restricted or secured area;
- Whether Plaintiff required employees or others with access to the Claimed Trade Secret to sign confidentiality or nondisclosure agreements;
- Whether Plaintiff took any action to protect the specific Claimed Trade Secret, or whether it relied on general measures taken to protect its business information or assets;
- The extent to which any general measures taken by Plaintiff would prevent the unauthorized disclosure of the Claimed Trade Secret;

1    • Whether there were other reasonable measures available to Plaintiff that it did

2        not take.

3        The presence or absence of any one or more of these factors is not necessarily

4    determinative.

5

6        Authority:

7        CACI 4404 (2017) (modified).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 66**
**MISAPPROPRIATION OF TRADE SECRETS (CALIFORNIA) –**
**AFFIRMATIVE DEFENSE – INFORMATION WAS READILY**
**ASCERTAINABLE BY PROPER MEANS**

Defendants did not misappropriate Plaintiff's trade secrets if Defendants prove that the alleged trade secrets were readily ascertainable by proper means at the time of the alleged acquisition or use.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

Authority:

CACI 4420 (modified).

**INSTRUCTION NO. 67**

**MISAPPROPRIATION OF TRADE SECRETS (CALIFORNIA)—UNJUST
ENRICHMENT**

Defendants were unjustly enriched if their misappropriation of one or more of
Plaintiff's Claimed Trade Secrets caused Defendants to receive a monetary benefit
that they otherwise would not have achieved.  To decide the amount of any unjust
enrichment, first determine the value of Defendants' benefit that would not have
been achieved except for their misappropriation.  Then subtract from that amount
Defendants' reasonable expenses, including the value of the expenses in evidence.
In calculating the amount of any unjust enrichment, do not take into account any
amount that you included in determining any amount of damages for Plaintiff's
actual loss.

Authority:

CACI 4410 (2017) (modified).

## INSTRUCTION NO. 68

## MISAPPROPRIATION OF TRADE SECRETS (CALIFORNIA)—PUNITIVE DAMAGES

If you decide that Defendants' misappropriation caused Plaintiff harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Plaintiff and to discourage similar conduct in the future.

In order to recover punitive damages, Plaintiff must prove by clear and convincing evidence that Defendants acted willfully and maliciously. You must determine whether Defendants acted willfully and maliciously, but you will not be asked to determine the amount of any punitive damages. I will calculate the amount later.

"Willfully" means that Defendants acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Defendants acted with an intent to cause injury, or that Defendants' conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. Defendants acted with knowing disregard if they were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.

Authority:

CACI 4411 (2017) (modified).

-103-

1

E.      <u>INTENTIONAL INTERFERENCE INSTRUCTIONS</u>

# INSTRUCTION NO. 69

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

Plaintiff claims that Defendants-intentionally interfered with an economic relationship between Plaintiff and its clients or prospective clients that probably would have resulted in an economic benefit to Plaintiff. To establish this claim, Plaintiff must prove all of the following:

1. That Plaintiff and one or more of the clients or prospective clients were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff;

2. That Defendants knew of the relationship(s);

3. That Defendants engaged in wrongful conduct, including their violations of Section 17200 of the California Business and Professions Code and the Computer Fraud and Abuse Act, their misappropriation of Plaintiff's trade secrets, their intentional interference with Plaintiff's contractual relations, their inducement of Mr. Mead's breach of his Separation Agreement with Plaintiff, and the allegations underlying Plaintiff's promissory estoppel claim;

4. That by engaging in this conduct, Defendants intended to disrupt the relationship(s) between Plaintiff and its clients or knew that disruption of the relationship(s) was certain or substantially certain to occur;

5. That the relationship(s) was/were disrupted;

6. That Plaintiff was harmed; and

7. That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

I previously instructed you regarding a substantial factor and multiple causes.

Authority:

CACI 2202 (2017)

**INSTRUCTION NO. 70**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

Plaintiff claims that Defendants intentionally interfered with the contracts between Plaintiff and its clients. To establish this claim, Plaintiff must prove all of the following:

1. That there was a contract between Plaintiff and one or more of the clients;

2. That Defendants knew of the contract(s);

3. That Defendants' conduct prevented performance or made performance more expensive or difficult;

4. That Defendants intended to disrupt the performance of the contract(s) or knew that disruption of performance was certain or substantially certain to occur;

5. That Plaintiff was harmed; and

6. That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

I previously instructed you regarding a substantial factor and multiple causes.

Authority:

CACI 2201 (2017)

**INSTRUCTION NO. 71**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS–**

**ORAL AND WRITTEN CONTRACTS**

A contract may be oral, written, or partly oral and partly written.  An oral, or a partly oral and partly written contract, is as valid and enforceable as a written contract.


Authority:

BAJI 10.57 (2017)

**INSTRUCTION NO. 72**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS–**

**INFERENCE**

If you find that either Defendant knew of the existence of at least one of Plaintiff's contracts and intentionally engaged in acts or conduct which were substantially certain to induce a breach of contract, you may, but are not required to, infer that Defendants intended to induce a breach of contract.

Authority:

BAJI 7.83 (2017)

**INSTRUCTION NO. 73**

**INTENTIONAL INTERFERENCE – AFFIRMATIVE DEFENSE –**

**PRIVILEGE TO PROTECT OWN FINANCIAL INTEREST**

Defendants claim there was no intentional interference with contractual relations because Defendants acted only to protect their legitimate financial interests.  To succeed, Defendants must prove all of the following:

    1. That Defendants had a legitimate financial interest in the contractual relations because Defendants had the right to distribute tickets at the venues with which they had agreements;

    2. That Defendants acted only to protect their own financial interest;

    3. That Defendants acted reasonably and in good faith to protect themselves; and

    4. That Defendants used appropriate means to protect themselves.

Authority:

CACI 2210 (2017) (modified).

**INSTRUCTION NO. 74**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

**AND INTENTIONAL INTERFERENCE WITH PROSPECTIVE**

**ECONOMIC RELATIONS – PUNITIVE DAMAGES**

If you decide that either of Defendants or both Defendants' conduct caused Plaintiff harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Plaintiff and to discourage similar conduct in the future.

You may award punitive damages against either Defendants or both Defendants only if Plaintiff proves that they engaged in that conduct with malice, oppression, or fraud. To do this, Plaintiff must prove one of the following by clear and convincing evidence:

1.     That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Defendants, who acted on behalf of Defendants; or

2.     That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Defendants; or

3.     That one or more officers, directors, or managing agents of Defendants knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Defendants acted with intent to cause injury or that Defendants' conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A person acts with knowing disregard when he or she is aware of the probable dangerous consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Defendants' conduct was despicable and subjected Plaintiff to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Defendants intentionally misrepresented or concealed a material fact and did so intending to harm Plaintiff.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision-making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a) How reprehensible was Defendants' conduct? In deciding how reprehensible Defendants' conduct was, you may consider, among other factors:

1. Whether the conduct caused physical harm;

2. Whether Defendants disregarded the health or safety of others;

3. Whether Plaintiff was financially weak or vulnerable and Defendants knew Plaintiff was financially weak or vulnerable and took advantage of it;

4. Whether Defendants' conduct involved a pattern or practice; and

5. Whether Defendants acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Plaintiff's harm or between the amount of punitive damages and potential harm to Plaintiff that Defendants knew was likely to occur because of their conduct?

(c) In view of Defendants' financial condition, what amount is necessary to punish them and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Defendants have substantial financial resources.

1    Punitive damages may not be used to punish Defendants for the impact of
2 their alleged misconduct on persons other than Plaintiff.

3

4    Authority:
5    CACI 3945 (2017)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 15-cv-9814 DSF (AGRx)
JOINT JURY INSTRUCTIONS

1

IV.    DEFENDANTS' CLAIMS

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 15-cv-9814 DSF (AGRx)

JOINT JURY INSTRUCTIONS

**INSTRUCTION NO. 75**

**<u>Intentional Interference With Contractual Relations</u>**

Defendant claims that Plaintiff intentionally interfered with the contract between it and its clients.  To establish this claim, Defendant must prove all of the following:

1. That there was a contract between Defendant and one or more of the clients;

2. That Plaintiff knew of the contract;

3. That Plaintiff intended to disrupt the performance of this contract;

4. That Plaintiff's conduct prevented performance or made performance more expensive or difficult;

5. That Defendant was harmed; and

6. That Plaintiff's conduct was a substantial factor in causing Defendant's harm.

<u>Authority:</u>

CACI 2201

-114-

1   Dated: October 12, 2017                    QUINN EMANUEL URQUHART &

2                                              SULLIVAN, LLP

3                                     By:    */s/* Fred A. Lorig

4                                            _____

5                                            Fred A. Lorig

6                                            *Attorneys for Plaintiff Complete Entertainment*
                                             *Resources LLC*

7

8                                            LATHAM & WATKINS LLP

9

10                                    By:    */s/* Dan Wall

                                             _____

11                                           Dan Wall

12                                           *Attorneys for Defendant Live Nation*
                                             *Entertainment, Inc. and Defendants and Counter-*
13                                           *Claimant Ticketmaster LLC*

14

15

16                              **ATTESTATION**

17          Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Fred Lorig, attest under penalty of

18   perjury that I have obtained concurrence and authorization from Dan Wall of Latham & Watkins,

19   LLP to affix his electronic signature to this filing.

20

21   Dated: October 12, 2017                   QUINN EMANUEL URQUHART &

22                                             SULLIVAN, LLP

23                                    By:    */s/* Fred A. Lorig

24                                           _____

25                                           Fred A. Lorig

26                                           *Attorneys for Plaintiff Complete Entertainment*
                                             *Resources LLC*

27

28