UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 15-9814 DSF (AGRx) | Date | 10/16/17 |
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | DALE S. FISCHER, United States District Judge |

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order DENYING Motion for Summary Judgment

Defendants Live Nation Entertainment, Inc. and Ticketmaster LLC move for summary judgment on Plaintiff Complete Entertainment Resources, LLC's claims and on Ticketmaster's counterclaim.

The basic facts can briefly be recited as follows. Plaintiff, d/b/a Songkick, was[1] in the business of providing event ticketing services for "artist presales." Artist presales are sales of event tickets that typically precede ticket sales to the general public, are usually sold by the artist, and are targeted at fans of the artist. Plaintiff contracted with artists to provide ticketing services needed to sell artist presale tickets. Defendant Ticketmaster – wholly owned by Defendant Live Nation – contracts primarily with event venues to provide ticketing services. Ticketmaster typically signs multiyear contracts with venues; Ticketmaster claims these contracts give it exclusive ticketing rights to all tickets at that venue, including artist presales. It is undisputed that Ticketmaster controls a sizeable majority of the market in venue-based ticketing services. It is also undisputed that Ticketmaster controls a sizeable majority of the market for artist presale ticket servicing.[2] There is evidence in the record that venues have historically allowed artists to distribute a

---

[1] The Court is informed that Plaintiff has recently ceased business.

[2] There is a dispute whether artist presale ticketing services is a relevant antitrust market, but no dispute that Ticketmaster services a very large percentage of the artist presales that occur.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

limited number of tickets outside of the standard venue ticketing system offered to the general public – the artist presale.[3] Pl. Additional Material Fact (AMF) ¶ 295. Ticketmaster's exclusive contracts with venues provide, in part, for artist presales through a retention of the right on behalf of the venue to distribute tickets through "legitimate fan clubs." See, e.g., Wolfson Decl., Ex. 222 at TM00002129, TM00002148. What constitutes a "legitimate fan club" is to be set out in "current guidelines." See id. In practice, the venues and Ticketmaster appear to have delegated the drafting of the "guidelines" and their interpretation exclusively to Ticketmaster in its sole judgment. Those guidelines have taken the form of the so-called "fan club policy." Given the contracts between Ticketmaster and a sizeable majority of the performing venues in the United States (and the entirety of North America) and the way in which Ticketmaster has implemented the fan club policy, Plaintiff claims that it found it increasingly difficult to contract with artists to service artist presales. As a result, Plaintiff has brought this suit to challenge the operation of the exclusive contracts between Ticketmaster and the various venues as a restraint of trade in violation of the Sherman Act and has brought several related state law claims. Defendants have moved for summary judgment.

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Rather, "the

---

[3] Defendants inappropriately respond to a large majority of Plaintiff's proposed material facts by failing to admit or deny them and instead merely declare them "immaterial to the resolution of Defendants' summary judgment motion." The Court will view any statement with the sole response of "immaterial" as admitted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (internal quotation marks and ellipsis omitted).

    There are a number of material factual disputes, although the parties could be said to agree generally on many of the basic foundational historical facts. More significantly, there is an enormous gulf between the parties as to the proper inferences to be drawn from the facts that are known. Modern antitrust is driven by economic analysis and the two sides present completely different viewpoints on the proper framing and interpretation of the economics of the restraints at issue. Given these differences, in order to succeed on summary judgment, Defendants essentially need to show that Plaintiff has failed to meet its burden to show an anticompetitive effect derived from the restraints at issue either as a matter of evidentiary production or as a matter of law.

    There is no question that there is a restraint of trade involved. Plaintiff challenges exclusive contracts that, by their very nature, exclude competitors. The parties further agree that the restraint(s) in question should be analyzed under the rule-of-reason. "The rule of reason weighs legitimate justifications for a restraint against any anticompetitive effects. [The factfinder] reviews all the facts, including the precise harms alleged to the competitive markets, and the legitimate justifications provided for the challenged practice, and [then] determine[s] whether the anticompetitive aspects of the challenged practice outweigh its procompetitive effects." <u>California ex rel. Harris v. Safeway, Inc.</u>, 651 F.3d 1118, 1133 n. 10 (9th Cir. 2011) (en banc).

    The following is a simplified version of Plaintiff's basic theory of anticompetitive effects as the Court understands it. Artists demand and expect a certain volume of artist presale tickets that they control and distribute to fans. Historically, venues have accommodated this demand. Plaintiff contracted with artists to – among other things – provide a platform for selling artist presale tickets. Ticketmaster's exclusive contracts with venues allow it to prevent artists from utilizing third-party vendors, like Plaintiff, to distribute presale tickets that, absent the contracts, artists would be able to acquire from the venues and distribute with fewer restraints.[4] Significantly, Plaintiff argues that Ticketmaster is, in part, able to do this because it has market power in the venue ticket

---

[4] Plaintiff points to practices in United States venues not contracted with Ticketmaster as well as overseas venues as evidence that artists have more choice absent the Ticketmaster exclusive contracts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

servicing market. This market power makes it difficult for an artist to avoid appearing in Ticketmaster venues entirely. In turn, Plaintiff presents evidence that artists prefer to purchase presale ticket servicing on an entire tour basis. AMF ¶¶ 309-312. Therefore, the presence of even a small number of Ticketmaster venues where Ticketmaster seeks to exclude Plaintiff can potentially prevent Plaintiff from effectively competing for an artist's presale ticket servicing business. Given Ticketmaster's overwhelming market share, if it has power to exclude Plaintiff from servicing artist presales at venues where it has the general venue ticket servicing contract, Plaintiff would effectively be unable to acquire any business from artists for the presale ticketing servicing needs.

Defendants have several arguments as to why this theory should be rejected. They argue that Plaintiff fails to compete in the relevant competition – the competition for the exclusive contract from the venues. Defendants claim that Plaintiff could approach venues either for the rights for all servicing or for a carveout of the artist presale rights, and Plaintiff's failure to do so essentially means that it lacks standing to complain that it has not won a competition it never entered. But this argument presupposes that the natural state of competition is long-term servicer/venue exclusive contracts that exclude competition at the artist presale level – the very restraints that Plaintiff is challenging. There is evidence in the record that there is a historical practice of artist presale ticketing – controlled by the artists, not Ticketmaster – that Ticketmaster is now attempting to restrain through its contracts with venues. In fact, Defendants admit that Ticketmaster itself solicits business from artists for presale servicing and controls a large share of that market.

Defendants certainly have potentially meritorious defenses, but – given the balancing inherent in a rule-of-reason analysis – this cannot be resolved by way of summary judgment. In their moving papers, Defendants include a section entitled "Ticketmaster's Acquisition of Artist Presale Rights Is Not the Result of Unlawful Exclusive Dealing," but this section fails to establish that Plaintiff's attack on the exclusive contracts fails as a matter of law. Defendants cite cases and DOJ/FTC guidance for the propositions that vertical exclusive contracts are "rarely" anticompetitive and that lack of coercion between the contracting parties makes liability "far less likely." Def. Mem. at 26-28. Obviously this fails to establish anything about the particular restraint being discussed. It may be true that voluntary vertical restraints usually survive a rule-of-reason analysis, but this particular vertical restraint may not. Plaintiff has presented expert testimony that the Ticketmaster/venue exclusive contracts – while voluntary on both sides – may harm competition because the structure of those contracts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

undermines the incentive of the venues to keep fees down.[5] The negative effects of the relationship are pushed off onto artists and the ultimate consumers, i.e., the audience for the events.[6]

      Defendants' response to this does not have much salience in the context of a summary judgment motion. Defendants devote approximately four pages in their opening brief to asserting that Plaintiff's expert's argument is unprecedented and should not be credited. But Defendants seem to admit that such a theory may have viability in academic circles,[7] and even if no argument quite like this has been presented in litigation, the Court fails to see how this is an argument to grant summary judgment in favor of Defendant under a rule-of-reason analysis. If nothing else, this may just be a uniquely structured market with an idiosyncratic set of restraints. There is no reason to think that the uniqueness of a market's structure somehow immunizes the field from antitrust scrutiny. Plaintiff's expert is an eminent economist specializing in the area of antitrust. He appears to cite relevant academic work and portions of the record in this case. Despite Defendants' adamant statements to the contrary, his argument is not absurd on its

---

[5] This is different from Defendants' characterization of the argument as being based on some kind of explicit purpose on the part of the venues to squeeze artists and end consumers. See Reply at 15-17. Plaintiff's point is that by structuring the market for venue ticketing services to be driven by large upfront payments to the venues, Ticketmaster is able to realign the unilateral interests of the venues to be more supportive of Ticketmaster's (allegedly) anticompetitive conduct and less supportive of free competition. Whether this proposition is correct is an open question, but one cannot simply assume that the venues' voluntary economic choices will prevent anticompetitive harm to non-contracting third-parties like artists and end consumers.

[6] Supporting Plaintiff's expert's theory is data purporting to show not only that ticket servicing fees charged to consumers are higher in the United States where there are more exclusives, but also that the percentage of total tickets sold is lower in the United States than in other countries where exclusive ticketing deals are rarer. Farrell Decl., Ex. 1 at 144-150. This undercuts the idea that the exclusive contracts at issue enhance total welfare.

[7] Given the economics-driven nature of modern antitrust law, it is unclear why Defendants seem to think economic "academic circles" don't count. It would be strange for a defendant in a pharmaceutical product defect case to attempt to discredit research into the operation of its drug or the relevant class of drugs because that research came from a university setting. Presumably, the problem is that the economists in question aren't Defendants' kind of economists. And perhaps Defendants are right that those economists do not have particularly good ideas. But that's not for the Court to sort out on a motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

face. The Court is unaware of any legal rule that says that an antitrust defendant prevails in a rule-of-reason case if a plaintiff's legal theory of anticompetitive harm cannot neatly fit in a preexisting legal "box."[8] Defendants are free to attack Plaintiff's expert, put on their own expert, and let the finder of fact decide who is right and who is wrong.

The state law claims also survive summary judgment. Defendants assert that the promissory estoppel claim is not viable because it was unreasonable to rely on the fan club policy because Ticketmaster reserved the right to alter it at any time. But this misconstrues the nature of the claim. Plaintiff argues that it received a promise from Ticketmaster that as long as Plaintiff complied with the policy – whatever it happened to be at the time – Plaintiff would be allowed to conduct presales. Plaintiff's claim is not premised on an unchanging policy. Further, there are questions of disputed fact regarding whether Plaintiff's sales actually complied with the fan club policy. Defendants' arguments regarding the contractual interference claim are basically conclusory assertions that the claim is entirely based on Defendants' enforcement of Defendants' contractual rights; Defendants simply fail to do the work necessary for summary judgment on that claim. Defendants' arguments with regard to the unfair competition and interference with prospective economic relations are premised on a failure of Plaintiff's antitrust claims. Because the antitrust claims will not be dismissed, those state law claims also will not be dismissed.

Defendants' attack on Plaintiff's damages theories also fails. There are clear factual disputes regarding whether certain artists would have used Plaintiff's services absent Defendants' actions. It is fairly obvious that there cannot be certainty in this matter given the need to hypothesize about an alternative past, but there is material from which a factfinder could decide that at least some artist-clients would have chosen Plaintiff if not for Defendants' allegedly anticompetitive conduct.[9]

---

[8] This is not a case where there is, for example, no restraint as a matter of law or the restraint has no plausible effect on competition. There is clearly a restraint of trade and it is admittedly exclusionary to rivals. Plaintiff has presented evidence that the restraint is anticompetitive; Defendants have presented evidence of procompetitive justifications. So, under the rule-of-reason, the finder of fact evaluates the arguments and weighs the effects.

[9] Most of Defendants' evidentiary objections concern damages-related evidence. While some objections may be meritorious with regard to specific pieces of evidence, there is more than sufficient admissible evidence to support some amount of damages. For the purposes of this motion, Defendants' most significant objection is to the introduction of Plaintiffs' records of customer statements regarding their reasons for not using Plaintiffs' services. This objection is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

    Defendants' brief arguments regarding their contractual interference counterclaim appear to be premised on a finding that the contracts in question are not anticompetitive. The tort of intentional interference with a contractual relationship requires an existing and valid contract. Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990). A void contract cannot form the basis for an interference claim. A-Mark Coin Co. v. General Mills, 148 Cal. App. 3d 312, 320-21 (1983). Illegality of a contract renders the contract void. Yuba Cypress Hous. Partners, Ltd. v. Area Developers, 98 Cal. App. 4th 1077, 1082 (2002) ("Where the object of the contract is illegal, courts generally will not enforce it or lend assistance to a party who seeks to benefit from an illegal act."); Bovard v. Am. Horse Enterprises, Inc., 201 Cal. App. 3d 832, 838 (1988) ("Whenever a court becomes aware that a contract is illegal, it has a duty to refrain from entertaining an action to enforce the contract."). Therefore, if the contractual restraints at issue violate the Sherman Act, the contracts cannot form the basis for a successful interference claim. See also Restatement (Second) of Torts § 774; Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 82 (1982) (illegality of contractual provision under Sherman Act is defense to non-performance of provision).

    The motion for summary judgment is DENIED.

    IT IS SO ORDERED.

---

also the subject of a motion in limine and will be discussed in more detail in the ruling on that motion. At this point it is enough to say that recitation of customer statements of this kind falls within the Rule 803(3) exception for statements of motive, as has been recognized by numerous courts. See, e.g., Callahan v. A.E.V., Inc., 182 F.3d 237, 250-53 (3d Cir. 1999); Herman Schwabe, Inc. v. United Shoe Machinery Corp., 297 F.2d 906, 913-14 (2d Cir. 1962) (applying motive exception pre-Federal Rules); Consol. Credit Agency v. Equifax, Inc., 2005 WL 6218038, *1-2 (C.D. Cal. 2005) (Snyder, J.).