UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

| Present: The Honorable | Alicia G. Rosenberg, United States Magistrate Judge | |
|---|---|---|
| Marine Pogosyan | n/a | n/a |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|

**Proceedings:** In Chambers: REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS

On September 25, 2017, Plaintiff Complete Entertainment Resources LLC ("Songkick") filed a motion for sanctions. (Dkt. Nos. 313-316, 323-325.) On October 2, 2017, Defendant Live Nation Entertainment, Inc. and Defendant/Counterclaimant Ticketmaster LLC (collectively "Defendants") filed an opposition. (Dkt. Nos. 351-353, 355-356.) On October 9, 2017, Songkick filed a reply. (Dkt. Nos. 385-389.)

The District Judge referred the motion to this court. (Dkt. No. 327.) The court heard oral argument on October 16, 2017.

For the reasons set forth below, the court recommends that:

(1) The District Court permit Songkick to re-open the depositions of Zeeshan Zaidi and Stephen Mead, and permit Songkick to make a showing thereafter of good cause to reopen the depositions of Michael Rapino and Jared Smith. Fed. R. Civ. P. 16(b)(4).

(2) Songkick's motion for sanctions be denied.

*I.    Factual Background*

Defendants' electronic discovery vendor, Compliance, explains that it collected over six million electronic documents, applied the agreed-upon search terms and identified 770,026 documents for review. (Zamsky Decl. ¶ 3.) Compliance's document review attorneys were trained at length by Defendants' outside counsel, Latham & Watkins, who reviewed both the operative complaint and document requests. In addition, Latham provided a coded sample of documents to the document review attorneys. Latham attorneys were available to the document review attorneys for guidance throughout the first-level review. (*Id.* ¶ 4; O'Mara Decl. ¶ 7.) Latham expressly states that it instructed the document review attorneys to code as "responsive" all documents mentioning Songkick or CrowdSurge.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

(*Id.*)

The approximately 40 document review attorneys conducted a first-level review of the 770,026 electronic documents for responsiveness, confidentiality and privilege. (Zamsky Decl. ¶ 4.) Compliance senior project managers conducted a second-level review of a sample of more than 10% of the 770,026 documents. The second-level review, which consumed approximately 1800 attorney hours, included "specific searches of documents initially tagged 'not responsive' for relevant terms that would actually indicate responsiveness" as well as samples of each first-level reviewer's work product. (*Id.* ¶¶ 5, 8.) Compliance also used electronic quality control processes to identify anomalies. Latham reviewed the statistical metrics. (*Id.* ¶ 6.)

Compliance represents that it did not discover the document review problem at issue in Songkick's motion in its first or second-level reviews. (*Id.* ¶ 7.)

At the third level of review, senior Latham attorneys reviewed a random statistical sample of the documents, including documents marked non-responsive, and created "targeted searches to (a) locate other potential instances of any error that was identified in the document pool, (b) review those documents and correct any errors, (c) instruct the contract attorneys on the error and how to avoid repeating it in the future, and (d) make sure the error did not appear in future productions by applying the same targeted search and comprehensive review to those productions as well." (O'Mara Decl. ¶¶ 9-11.) After reviewing approximately 15% of the documents reviewed by Compliance's document review attorneys, Latham did not find any false negatives (documents marked non-responsive that were actually responsive). Thereafter, Latham's third-level review shifted to documents marked responsive. (*Id.* ¶ 10.) Latham estimates that it spent over 200 hours on this third-level review.

During the third level of review, Latham identified two Compliance document review attorneys whose accuracy rates did not meet standards. Those two document review attorneys were terminated. Each document reviewed by them was re-reviewed by Compliance senior managers. (*Id.* ¶¶ 11, 13.)

Defendants represent that they did not discover the document review problem at issue in Songkick's motion for sanctions during any level of review. (*Id.* ¶ 12.)

The discovery cut-off date passed on March 8, 2017. (Dkt. No. 147.)

Two months later in early May 2017, Defendants received a subpoena in connection with a Government investigation. Document production to the Government began in July 2017. (*Id.* ¶ 16.) In August 2017, Defendants became aware of two documents concerning access to Songkick's computer systems that should have been produced in this case because they mentioned CrowdSurge. Upon investigation, Latham determined that the two documents had been mistakenly coded as non-responsive by Compliance document review attorneys, and the mistake had not been caught at the second and third-level reviews. After running a supplemental search of all documents coded non-responsive by Compliance document review attorneys, Latham conducted a review of each document that referenced

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

Songkick or CrowdSurge. This review took approximately two weeks. (*Id.* ¶¶ 18-19.)

Although Defendants do not give precise dates, Mr. Wall states that he was first informed of the situation on August 30, 2017. (Wall Decl. ¶ 2.) On September 7, 2017, Mr. Wall transmitted a letter that notified Songkick of the situation, attached the two documents already identified and advised that a supplemental production would be made "soon," after Defendants completed their investigation. (Exh. 5 to O'Mara Decl.) Mr. Wall conceded that the two documents "were responsive and should have been produced to Songkick during discovery" and represented that Defendants would not object to Songkick's use of the supplemental production at trial. (*Id.*) On September 11, 2017, Mr. Wall answered several questions from Songkick's counsel. (Exh. 3 to Wolfson Decl.)

On September 11, 2017, Defendants made a supplemental production of 3,954 electronic documents (hereinafter "Supplemental Production"). (O'Mara Decl. ¶ 19.)

Of the 3,954 documents, approximately 1,746 documents contain the term Songkick or CrowdSurge. The remainder consist of embedded image or logo files, or family members of the documents that are not responsive in their own right. (*Id.* ¶¶ 19-20.) Defendants further represent that close to 50% of the 1,746 documents include industry publications, contact lists or other documents that are irrelevant to this case. (*Id.* ¶ 20.) At the hearing, Defendants provided the court with 10 sample documents in these categories. The sample documents appeared to be at most tangential to this case.

Songkick did not materially dispute these particular facts, and states that it added 635 documents from the Supplemental Production to its trial exhibit list. (Wolfson Decl. ¶ 3.) Even taking into account the 1,746 documents, Defendants state that the error rate was 0.22% (1,746 ÷ 770,026) or, to put it another way, the accuracy rate was 99.78%.

Mr. Wall states that, on September 25, a senior Quinn Emanuel partner proposed an agreement under which neither side would make charges of "'intentionality" in their respective allegations of discovery misconduct. Mr. Wall accepted the offer. Mr. Wall did not attach the emails at Quinn Emanuel's request but offered to provide the documents to the court at the hearing. (Wall Decl. ¶¶ 7, 12.) Defendants represent that their motion *in limine*, Dkt. No. 300, therefore made clear that it did not accuse Songkick of intentional discovery misconduct. (O'Mara Decl. ¶ 32; Dkt. No. 300-1 at 6 n.3).) The amended memorandum of points and authorities that Songkick subsequently filed on September 28 was apparently an attempt to modify its motion for sanctions to comply with the parties' agreement. Defendants attach an email dated September 27, 2017 from Songkick's counsel indicating that Songkick's motion seeks sanctions "on other bases than intent." (Exh. 17 to O'Mara Decl.) At the hearing, Songkick confirmed that it agreed not to argue in its motion for sanctions that Defendants' conduct was intentional.

## II. *Songkick's Request to Reopen Two Depositions*

Songkick seeks a court order permitting it to reopen the depositions of Zeeshan Zaidi and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

Stephen Mead. In addition, if good cause is shown from those two depositions, Songkick will seek a court order to reopen the depositions of Michael Rapino and Jared Smith.

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause exists when a deadline cannot reasonably be met despite the diligence of the party seeking the extension. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); Advisory Committee Notes, 1983 Amendments. Although Songkick makes its request in the context of a motion for sanctions, nothing precludes application of Rule 16(b)(4). For example, Fed. R. Civ. P. 37(e) governs available sanctions in the context of failure to preserve electronically stored information ("ESI"). However, "[n]othing in the rule limits the court's powers under Rule 16 and 26 to authorize additional discovery." Advisory Committee Notes, 2015 Amendments.

At the hearing, the court was informed that Zaidi and Mead recently resigned after the conclusion of investigations into their respective actions, and are currently represented by separate lawyers. Songkick argues that the Supplemental Production includes direct evidence indicating Zaidi and others obtained access to certain Songkick website tools through information provided by Mead, CrowdSurge's former vice president. (Exhs. 13,[1] 14, 15, 19, 21, 22, 23, 41.) Songkick represents that, before the Supplemental Production, it relied on one instance of direct evidence, circumstantial evidence and its expert's reconstruction of unauthorized access albeit without direct evidence that it originated from Ticketmaster. Songkick argues that it should have the opportunity to inquire further into direct unauthorized access by a competitor in support of its claims based on trade secret misappropriation and violations of the Computer Fraud and Abuse Act (CFAA). (Corr. Mem. at 6-8.) Defendants' argument that this new evidence is merely cumulative is rejected. At the hearing, Songkick advised that Zaidi and Mead have indicated they may seek to quash trial subpoenas and, therefore, there is a risk Songkick will not otherwise have an opportunity to confront these witnesses with documents from the Supplemental Production and obtain their testimony.

Songkick diligently filed its motion after the Supplemental Production, which was made after the discovery cut-off date. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Songkick, through no fault of its own, has not had an opportunity to depose the individuals at issue regarding the material new evidence in the Supplemental Production and, potentially, their recent separation from Ticketmaster. There is a risk that these witnesses will not appear at trial.

The court finds ample good cause to recommend that the depositions of Zaidi and Mead be reopened, and that Songkick have the opportunity to make a showing of good cause to reopen the depositions of Rapino and Smith.[2] *See C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th

---

[1] In the court copy, the document attached as Exhibit 13 is actually Exhibit 41. Nevertheless, Defendants do not dispute Songkick's quotations from the actual Exhibit 13.

[2] At the hearing, counsel for Defendants advised the court that Songkick itself had belatedly produced material documents and that Defendants may seek to re-open certain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

Cir. 2011) (finding court did not abuse "broad discretion" in amending scheduling order); *Ellis v. Permanente*, 2017 U.S. Dist. LEXIS 164791, *10-*11 (S.D. Cal. Oct. 4, 2017) (reopening discovery based on newly produced material documents); *Akey v. Placer Cnty.*, 2017 U.S. Dist. LEXIS 70162, *9-*10, *16 & n.8 (E.D. Cal. May 8, 2017) (reopening discovery when material documents produced after close of discovery and denying motion for sanctions).

This court does not anticipate that potential discovery disputes regarding re-opened depositions would consume undue time. Under the court's streamlined procedures for discovery dispute resolution, counsel for the moving party must first confer with opposing counsel, which may be counsel for Defendants or for the third party as applicable. If informal resolution is not reached, the moving party must contact the Courtroom Deputy Clerk (CRD) and request a telephonic or in-person hearing with the court. In the court's experience, disputes can generally be resolved at the hearing. If not, the court sets a briefing schedule at the hearing in consultation with counsel.

### III. *Songkick's Motion for Sanctions*

Songkick seeks sanctions under the court's inherent authority and Fed. R. Civ. P. 37(c)(1).

#### A. *Rule 37(c)(1) Is Not Applicable*

Songkick has not shown that Rule 37(c)(1) is applicable. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Advisory Committee Notes acknowledge that evidence preclusion "is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party." Advisory Committee Notes, 1993 Amendments. The Rule provides that a court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(iv).

Fed. R. Civ. P. 37(c)(1). Rule 37(b)(2)(A)(i) provides that one permissible sanction is an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."

Songkick relies on Rule 26(e)(1) as the predicate violation for Rule 37(c)(1). As relevant here,

---

discovery if Songkick is permitted to do so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

Rule 26(e)(1) provides: "A party . . .. who has responded to . . . [a] request for production . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Defendants did not fail to supplement its document production in a timely manner once it "learn[ed]" of the omission in the context of the Government investigation. *See Aylus Networks, Inc. v. Apple Inc.*, 2015 U.S. Dist. LEXIS 148409, *8-*9 (N.D. Cal. Nov. 2, 2015) (finding supplementation within approximately one month to be timely); *see also Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, 2016 U.S. Dist. LEXIS 54141, *12 (D. Nev. Apr. 21, 2016) (finding supplementation within 5-6 weeks to be timely).

Songkick argues that Defendants were "reckless with respect to their document productions" in the first place. (Corr. Mem. at 12.) Songkick does not argue intentional misconduct.

The Advisory Committee Notes to a prior version of Rule 26(e) explain that it "is made for the situation in which a party, or more frequently his lawyer, obtains actual knowledge that a prior response is incorrect. This exception does not impose a duty to check the accuracy of prior responses, but it prevents knowing concealment by a party or attorney." Advisory Committee Notes, 1970 Amendments.[3] "The obligation to supplement . . . discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect." Advisory Committee Notes, 1993 Amendments. Supplementation must occur "'in a timely manner.'" Advisory Committee Notes, 2007 Amendments.

The Advisory Committee Notes are "a particularly reliable indicator of legislative intent" because "the explanatory notes are contemporaneously drafted by the same entity charged with drafting the rules." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 (9th Cir. 2014) (noting Ninth Circuit has "frequently relied on the advisory committees' notes for guidance" and insight into meaning of Rules). Of course, the Advisory Committee Notes do not foreclose judicial consideration of a Rule's meaning. *Id.*

The Advisory Committee Notes are consistent with the plain language of Rule 26(e). Absent any evidence that Defendants "learn[ed]" that their document production was incomplete and thereafter

---

[3] The version of Rule 26(e)(2) at the time provided: "A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." *Bunch v. United States*, 680 F.2d 1271, 1280, 1282 (9th Cir. 1982) (finding failure to present evidence of knowing concealment); *Wyller v. Fairchild Hiller Corp.*, 503 F.2d 506, 508 n.2 (9th Cir. 1974).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

failed to supplement "in a timely manner," Songkick cannot make out a violation of Rule 26(e)(1). The parties have not cited any case, and the court has not located any, in which a court found a violation of Rule 26(e) absent evidence that a party actually knew or learned that its prior disclosure or response was incomplete or incorrect. For example, in *R&R Sails, Inc. v. Ins. Co. of the State of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012), the plaintiff failed to provide a copy or description of the invoices on which it based its calculation of *Brandt* attorneys fees in its Rule 26(a) disclosures, and failed to produce the invoices in response to a subpoena to its damages expert. *Id.* at 1246-47. The plaintiff first identified the invoices in its pretrial memorandum filed after the close of discovery and even then did not produce the invoices. *Id.* at 1247. The plaintiff did not argue that it did not know of the invoices; indeed, the invoices were the basis on which it calculated *Brandt* fees. As another example, a plaintiff filed a motion for summary judgment based on a webpage it had not previously disclosed or produced. The plaintiff clearly knew the webpage existed but tried to excuse non-disclosure, non-production and non-supplementation by saying that it believed it was technologically unable to produce a copy of the webpage until the day it filed its motion for summary judgment. *BWP Media USA Inc. v. Rich Kids' Clothing Co.*, 2015 U.S. Dist. LEXIS 8034, *8 (W.D. Wash. Jan. 23, 2015). The Ninth Circuit upheld the district court's order precluding the plaintiff from relying on the webpage attached to its motion. *BWP Media USA Inc. v. Urbanity, LLC*, 2017 U.S. App. LEXIS 107842, *2 (June 19, 2017).

Here, by contrast, defense counsel and Defendants' e-discovery vendor, Compliance, represent that they were unaware of the coding error at the time of the document production. Defense counsel represents that they were unaware of the coding error until August 2017, when they discovered two documents in discovery to the Government that were not produced in this case and conducted an investigation. The record contains no basis on which this court could find that Defendants "learn[ed]" that Ticketmaster's discovery response was incomplete or incorrect any earlier.[4] Songkick's argument that a previous discovery dispute in November 2016 should have put Defendants on notice of the coding error is without merit. As reflected in this court's order dated November 10, 2016, the issues at the time involved commencement of the duty to preserve ESI and the scope of various discovery requests. None of the issues addressed by the court involved suspicion of coding error, systemic or otherwise. (Dkt. No. 126.)

### B.  *Inherent Authority*

Songkick's argument that Defendants were reckless in producing documents in the first place will therefore be analyzed under the court's inherent authority, Songkick's alternative basis for sanctions. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citation omitted). Songkick requests four types of sanctions. The first category, reopening depositions is mooted by the court's discussion of Rule 16(b)(4). The court therefore addresses the other three categories.

---

[4]  Moreover, this is not a case in which a party knowingly failed to search records in its possession, custody or control. Defendants have shown that they actually searched for, reviewed and produced documents pursuant to protocols and three layers of review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

    *1.    Adverse Inference Instructions and Attorneys Fees*

    Songkick seeks an instruction informing the jury of Defendants' belated production and permitting (but not requiring) the jury to draw adverse inferences for each claim for relief. (Proposed Order, Dkt. No. 313-6.) Songkick seeks reasonable attorneys fees "for reviewing the September 11, 2017 production and filing its motion for sanctions." (*Id.*)

    A court may impose sanctions under its inherent power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-47 & n.10 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). In *Fink*, the Ninth Circuit used to the term "bad faith" to refer to "a broad range of willful improper conduct." *Id.* On the other hand, in the case of a chronically late attorney, for example, "mere tardiness does not demonstrate the improper purpose or intent required for inherent power sanctions." *Id.* (citation omitted). Similarly, a court "may not sanction mere 'inadvertent' conduct" under its inherent authority. *Id.* at 993 (citing *Zambrano v. City of Tustin*, 885 F.2d 1473, 1485 (9th Cir. 1989)).

    The Ninth Circuit has interpreted its precedent as permitting imposition of sanctions under a court's inherent authority "when an attorney has acted recklessly if there is something more – such as an improper purpose." *Id.*; *see also id.* at 993-94 (recklessness plus frivolousness, harassment or improper purpose). The Ninth Circuit recently reiterated that standard in *Ibrahim v. United States Dep't of Homeland Sec.*, 835 F.3d 1048, 1057 (9th Cir. 2016).

    Songkick has not identified any reckless aspect of the procedures defense counsel employed for document review: (1) upfront training on the allegations and document requests at issue; (2) provision of coded sample documents to the document review attorneys; (3) availability of defense counsel for questions during the review process; (4) a second layer of quality control review based on random sampling, including documents initially marked nonresponsive; and (5) a third layer of review by defense counsel based on random sampling, including documents initially marked nonresponsive.

    In the end, Songkick necessarily relies on the fact that the error rate, however small, included documents that mentioned Songkick or CrowdSurge. It remains improper, however, "'to infer nefarious intent or bad faith' from 'ordinary discovery errors.'" *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) (quoting *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988,, 993 (8th Cir. 1999)). A court inquires "whether the producing party's search and response were objectively reasonable under the circumstances, not whether the search and response were error-free." *Id.* This is true even when "'there's a hole in defendants' document productions'" and when "'some small number of documents (even crucial documents) are found relatively late in the process.'"[5] *Id.*

---

    [5] Songkick makes much of the fact that 3,954 of the 770,026 documents reviewed were incorrectly marked nonresponsive. As discussed above, Songkick did not dispute that only 1,746

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

(citation omitted). As Defendants point out, Songkick used predictive coding and yet also ended up omitting documents from its production that should have been marked responsive based solely on the existence of a company name, such as Sequoia or Q Prime, in the document.

The court declines to find recklessness or frivolousness based on the coding error in reviewing voluminous ESI given the objectively reasonable search and quality control protocols employed by defense counsel. Songkick's failure to show conduct tantamount to bad faith dooms its request for adverse inference instructions and attorneys fees.[6] "'Mere recklessness does not alone constitute bad faith; rather, an award of attorney's fees is justified when reckless conduct is combined with an additional factor such as frivolousness, harassment, or an improper purpose.'" *Ibrahim*, 835 F.3d at 1057, 1060 (citation omitted).

### 2. *Jury Instructions That Certain Facts Are Established*

Songkick seeks adverse jury instructions that the following facts have been deemed proven: (1) "The materials Stephen Mead forwarded to his colleagues at Ticketmaster are Songkick's trade secrets"; (2) "Ticketmaster is responsible for Mr. Mead's misappropriation and breach of his contract"; (3) "Ticketmaster did not independently create the equivalent of Songkick's trade secrets"; and (4) "Defendants used Songkick's trade secrets." (Proposed Order, Dkt. No. 313-6.)

Songkick seeks a sanction that would amount to success on at least its seventh claim for misappropriation of trade secrets, if not also its ninth claim for violation of the Computer Fraud and Abuse Act and possibly its fifth claim for unfair competition. (*See* Proposed Pretrial Conference Order at 6-7, 9-11, 26-27, Dkt. No. 376-1.) *See United States v. Kahaluu Constr. Co.*, 857 F.2d 600, 602-03 & n.5 (9th Cir. 1988) (reviewing Rule 37(b)(2)(A)(i) order that plaintiff's allegations be taken as established as akin to dismissal).

Under these circumstances, the court must consider "whether the claimed noncompliance involved willfulness, fault, or bad faith" and "the availability of lesser sanctions." *R&R Sails,* 673 F.3d

---

documents contained responsive terms and only 635 were added as trial exhibits. The number of documents Songkick cites for evidence of unauthorized access to its website tools is far smaller.

[6] Songkick's request for fees in reviewing the Supplemental Production would not be recoverable in any event. The Supreme Court has held that the test under the court's inherent authority "is appropriately framed as a but-for test: The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct.'" *Haeger*, 137 S. Ct. at 1187 (citation omitted). "[W]hen 'the cost[] would have been incurred in the absence of' the discovery violation, the court (possessing only the power to compensate for harm the misconduct has caused) must leave it alone." *Id.* (citation omitted). Had Defendants produced the documents during discovery, Songkick would have incurred the expense of reviewing that document production.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-9814-DSF (AGRx) | Date | October 18, 2017 |
|---|---|---|---|
| Title | Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al | | |

at 1247-48 (reaffirming application of same requirements under Rule 37(c)(1)).

Given that Songkick has not established recklessness plus an additional factor, Songkick cannot satisfy the standard for sanctions in the form of jury instructions establishing certain facts as true. Although Songkick relies on *Haeger*, Songkick does not argue that Defendants' conduct was intentional and, therefore, *Haeger* is clearly distinguishable. In *Haeger*, Plaintiffs served document requests for test records for G159 tires. Goodyear initially objected and later supplemented its response by producing test data for G159 tires at 30 mph. Plaintiffs requested the rest of the test data. Goodyear failed to supplement its responses. *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1238-39 (9th Cir. 2016), *rev'd*, 137 S. Ct. 1178 (2017). A Goodyear engineer delivered high speed tests to outside counsel Musnuff, who forwarded it to local counsel, Hancock. Musnuff and Hancock did not produce the tests to Plaintiffs. In response to the court's question as to whether there is any internal test documentation that Goodyear had not produced, Hancock falsely stated that Goodyear had responded to outstanding discovery and would supplement those responses if a document shows up. *Id.* at 1239. Hancock's response was false because at the time "Hancock had been sent the High Speed tests and had stated to Musnuff that they should be produced promptly 'given the accusation of no high speed testing in the January report that put that at issue in the case.'" *Id.* The court found that the attorneys knew the high speed tests were responsive to document requests since February 2007. *Id.* at 1240. Plaintiffs served another document request in May 2007 that requested test data as to whether G159 tires were suitable for use at a speed of 75 mph. Goodyear produced high speed test data on June 21, 2007 but improperly withheld additional tests. Its Rule 30(b)(6) witness testified falsely in September 2007 that while additional tests had been undertaken to determine if Goodyear could justify a speed rating of 75 mph, "none of these additional tests was available." *Id.* The witness knew but failed to mention the tests for heat rise, crown durability, bead durability and DOT endurance for the G159 tires. *Id.* at 1241. The case settled on the first day of trial. *Id.* at 1240. The court found that attorneys' testimonies that they had not knowingly engaged in discovery fraud to be "untruthful and unreliable." *Id.* at 1241. By contrast, there is no comparable evidence in this case.

### IV.    Recommendation

It is recommended that the District Court permit Songkick to re-open the depositions of Zeeshan Zaidi and Stephen Mead, and permit Songkick to make a showing thereafter of good cause to reopen the depositions of Michael Rapino and Jared Smith. Fed. R. Civ. P. 16(b)(4).

It is further recommended that Plaintiff's motion for sanctions be denied.

|  | : |
|---|---|
| Initials of Preparer | mp |