<pre>
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                    WESTERN DIVISION

 4     THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING

 5

 6   COMPLETE ENTERTAINMENT RESOURCES    )
     LLC D/B/A SONGKICK,                 )
 7                                       )
                      Plaintiff,         )
 8                                       )
                                         )
 9              vs.                      )   No. CV 15-9814 DSF-AGR
                                         )
10   LIVE NATION ENTERTAINMENT, INC.;    )
     TICKETMASTER LLC,                   )
11                                       )
                      Defendants.        )
12   _____)

13   TICKETMASTER LLC,                   )
                                         )
14           Counter Claimant,           )
                                         )
15                                       )
                vs.                      )
16                                       )
     COMPLETE ENTERTAINMENT RESOURCES    )
17   LLC D/B/A/ SONGKICK,                )
                                         )
18           Counter Defendant.          )
     _____)
19

20          REPORTER'S TRANSCRIPT OF PROCEEDINGS

21              Los Angeles, California

22         Monday, October 23, 2017, 2:54 P.M.

23         Pretrial Conference; Motions in Limine

24

25                   PAT CUNEO CSR 1600, CRR-CM
                        Official Reporter
</pre>

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:     QUINN EMANUEL URQUHART & SULLIVAN, LLP
                            BY:   FREDERICK A. LORIG, PARTNER
 3                                ADAM WOLFSON, PARTNER
                                  KEVIN Y. TERUYA, PARTNER
 4                                VIOLA TREBICKA, ASSOCIATE
                                  JENNIFER D. ENGLISH, ASSOCIATE
 5                                ATTORNEYS AT LAW
                            865 S. Figueroa Street
 6                          10th Floor
                            Los Angeles, California 90017
 7                          213-443-3047
                            fredericklorig@quinnemanuel.com
 8                          adamwolfson@quinnemanuel.com
                            kevinteruya@quinnemanuel.com
 9                          violatrebicka@quinnemanuel.com
                            jenniferenglish@quinnemanuel.com
10
     FOR THE DEFENDANTS:    LATHAM & WATKINS LLP
11                          BY:   DANIEL SCOTT SCHECTER
                            AND   ROBERT JAMES ELLISON
12                                ATTORNEYS AT LAW
                            10250 Constellation Boulevard
13                          Suite 1100
                            Los Angeles, California 90067
14                          424-653-5500; 424-653-5501
                            daniel.schecter@lw.com
15                          robert.ellison@lw.com
                                  -and-
16                          LATHAM & WATKINS LLP
                            BY:   DANIEL M. WALL, ATTORNEY AT LAW
17                          AND   ANDREW M. GASS, ATTORNEY AT LAW
                            AND   TIMOTHY L. O'MARA, ATTORNEY AT LAW
18                          505 Montgomery Street
                            Suite 2000
19                          San Francisco, California  94111-6538
                            415-391-0600
20                          dan.wall@lw.com;  andrew.gass@lw.com;
                            tim.omara@lw.com
21

22                          PAT CUNEO CSR 1600, CRR-CM
                            Official Reporter
23                          First Street Courthouse
                            350 W. First Street, Room 4311
24                          Los Angeles, California 90012-4565
                            213-894-1782
25                          patcuneo1600@gmail.com
                            www.patcuneo.com
```

LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 23, 2017; 2:54 P.M.

-oOo-

THE CLERK:  Calling Item No. 12, CV 15-9814, Complete Entertainment Resources vs. Live Nation Entertainment.

Counsel state your appearances.

THE COURT:  Ms. Plato, do you know who all these people are?

THE CLERK:  Yes, Your Honor.

THE COURT:  All right.  Then before you speak, each of you will state your name again for our court reporter.  I'm not going to waste time to hear from each of you about who you are.

Who is going to be the main counsel handling the pretrial for the plaintiff?

MR. LORIG:  Your Honor, Frederick Lorig.  I'll handle the pretrial conference order and the Daubert.  There are various assignments for various of the other motions.

THE COURT:  Okay.

And for the defense?

MR. WALL:  Daniel Wall, Latham & Watkins, and the same, Your Honor.

THE COURT:  All right.  So first let's just confirm that there were no objections to Judge Rosenberg's order so that will be basically final.

1      There were no sanctions but there were two

2  depositions that were allowed with I think another two that

3  might be allowed.  So what's the plan on that?

4      MR. LORIG:  Your Honor, should I speak from the

5  podium?

6      THE COURT:  Yes, please.  Lectern.

7      MR. LORIG:  Your Honor, Frederick Lorig.

8      We have talked with counsel for the proposed

9  deponents.  We're awaiting Your Honor's order and we -- once

10  we get that order, we will serve deposition subpoenas.

11      We were advised that they may seek to quash at

12  least in the case of Mr. Zaidi.

13      THE COURT:  I'm not sure what order you're waiting

14  for from me.

15      MR. LORIG:  Our understanding was until you had

16  adopted the recommendation of Magistrate Judge Rosenberg, we

17  weren't allowed to issue the deposition subpoenas.

18      THE COURT:  Well, submit a proposed order and if

19  it's in order, I will sign it; and I'm going to order it now

20  so you can go ahead and work on those subpoenas.

21      And why would there be a motion to quash?

22      MR. LORIG:  There's --

23      THE COURT:  I'm not asking you.  You're not going

24  to make one.  Why would there be a motion to quash?

25      MR. WALL:  Your Honor, Daniel Wall again.  We're

| | |
|---|---|
| 1 | not filing a motion to quash.  What our understanding is |
| 2 | these employees no longer work for Ticketmaster.  They have |
| 3 | separate counsel.  We too have been told, just as Mr. Lorig |
| 4 | has been told, that they may seek to quash.  We don't know |
| 5 | anything more about it than that. |
| 6 | THE COURT:  All right.  Well, it sounds like one |
| 7 | of them would be in breach of an agreement if there was a |
| 8 | motion to quash but I'll decide that if I have to. |
| 9 | Before I forget, I don't know why you brought me |
| 10 | more boxes.  I don't need more boxes.  I need fewer boxes. |
| 11 | So I'm going to expect you to clean my chambers out of the |
| 12 | boxes that I already have or at least most of them because I |
| 13 | didn't need them to begin with and I certainly don't want |
| 14 | them now and my shredder would burn up if I tried to shred |
| 15 | your documents. |
| 16 | All right.  What efforts have you made at |
| 17 | settlement because we're not going to have enough room in |
| 18 | this courtroom for a trial apparently. |
| 19 | MR. WALL:  Again Dan Wall. |
| 20 | We have mediated and our intention was that after |
| 21 | the -- Your Honor's summary judgment order which of course |
| 22 | we've received, we would return to mediation. |
| 23 | We don't have -- we need to go through -- we need |
| 24 | to contact the mediator again and schedule that but I think |
| 25 | that that's our intention. |

1          THE COURT:  Excellent.  So I'll have some more

2     rulings by the end of today so you'll have some more

3     guidance on what you will and will not be able to do at

4     trial.

5          Let's skip to Motion in Limine No. 3 because we've

6     talked about the two depositions.

7          Do you want to wait and see about Motion in Limine

8     No. 3 until you figure out whether you're going to be able

9     to get those two depositions, Mr. Lorig?

10          MR. LORIG:  Your Honor, Mr. Wolfson was going to

11     argue Motion in Limine No. 3.

12          THE COURT:  Okay.  Mr. Wilson, what do you want to

13     do?

14          MR. LORIG:  Wolfson.

15          MR. WOLFSON:  Your Honor, if we could hold the

16     motion I suppose in abeyance and see what happens.  One of

17     the issues though is the missing witness instruction.

18          THE COURT:  Right.

19          MR. WOLFSON:  Would you prefer that I speak at the

20     podium, Your Honor?

21          THE COURT:  It's -- well, at least in Judge Real's

22     courtroom it's a lectern so we all try to be consistent.  He

23     even sent around a section from the dictionary with a

24     picture so we would all know that it's a lectern.

25          MR. WOLFSON:  I'll make sure to keep that in mind

1    for all future --

2              THE COURT:  I used to have it on the post-it note

3    up here but now I remember.

4              MR. WOLFSON:  Your Honor, the aspect of Motion in

5    Limine 3 that we think would still be pending is the missing

6    witness instruction request.

7              THE COURT:  Only if they're missing.

8              MR. WOLFSON:  Right.  And part of this is

9    understanding what are the agreements in place.  As we've

10   noted to the Court, Mr. Mead has a separation agreement

11   where he has to cooperate with the defendants.

12             So we believe that means that he's under their

13   control for purpose of attendance at trial.  We've requested

14   that he be made available and that is something that if

15   defendants refuse to make him available, then we would

16   believe that missing witness instruction is appropriate.

17             That may need to wait to see what they actually

18   say.

19             THE COURT:  All right.  I'll hold off on that.

20             So let's move on to the Daubert motion.  I'll

21   start off by indicating that citing other judges' opinions

22   is not particularly helpful to me.  I'm kind of

23   strong-willed and I like to make my own decisions.

24             So in general, to the extent that

25   Mr. Yurkerwich -- if that's the correct pronunciation -- is

1    just handling calculations, that certainly seems to be well

2    within his expertise.

3            I'm going to give you my tentative thoughts on the

4    other issues and then I'll hear argument.

5            Though it seems obvious to me that Mr. Yurkerwich

6    doesn't have any expertise concerning whether an artist

7    actually decided not to do business with Songkick because of

8    some unlawful conduct by the defendants or for any other

9    reason; and the facts that he relies on are not the kinds of

10   facts that accountants rely on.  That will be for the jury

11   to decide based on the evidence presented to them by someone

12   other than Mr. Yurkerwich.

13           So to be clear we need to have admissible evidence

14   about each individual artist for which Songkick claims

15   damages.

16           He also doesn't appear to have any expertise to

17   divide artists into categories so he can't testify to the

18   categories; and his percentages are purely speculative so

19   the bottom line on that would be that the aggregated data

20   can't be used and only damages relating to the specific

21   artist for which there's evidence presented can be included

22   in any testimony and of course we have motions in limine on

23   that which we can address which I will address later.

24           The loss is miscalculation based on GTV.  GTV

25   seems to be used in a couple of different ways.  For the

1    purposes of his report, is it gross transaction value?

2              MR. LORIG:  Yes, Your Honor.

3              THE COURT:  All right.  So in any event, there's

4    no support for using this method of valuation so he won't be

5    able to testify to it.

6              He can testify to implied valuation at the time of

7    the merger but not a hypothetical future valuation.  I don't

8    think that was in his report.

9              He can testify to current valuation.  The company

10   was sold although there's, I understand, a pending motion so

11   that's tentative until I resolve that.

12             With regard to unjust enrichment, I believe there

13   is enough support in the record for the business-model

14   approach but not the artist-client approach.

15             There isn't any foundation for his assumption that

16   every artist that Ticketmaster didn't conduct presales for

17   in 2012 or 2013 but did in 2014 or 2015 became a client

18   because of the alleged misappropriation.

19             So those are my tentative thoughts and I'll hear

20   from plaintiff's counsel.

21             MR. LORIG:  Your Honor, Fred Lorig again.

22             To begin with, as we pointed out in our papers, we

23   didn't offer Mr. Yurkerwich as a causation expert.  We

24   intended him to rely on trial testimony.

25             With regards to GTV, if we can, Your Honor, I'd

1    like to state that we do believe that there was support in

2    the record for the GTV approach.  The reason we believe

3    there was support for the GTV approach is, as we indicated

4    in our papers, it is one of three methods to value a

5    company.

6          You know, we've all seen reports of a start-up

7    company being sold for a multiple of GTV.  Certainly in the

8    Access documents we presented to Your Honor in our papers,

9    Access and Sequoia and the other investors all valued

10   Songkick based on its GTV.  So we do believe there is both

11   academic support for it as well as support in the record.

12         Your Honor, we submitted to you several

13   PowerPoints that had been prepared long before the

14   litigation which showed how the company was valued.  It was

15   valued by GTV estimates.

16         We also provided to Your Honor evidence through a

17   table attached to Mr. Yurkerwich's expert report where other

18   ticketing companies were sold for a multiple of GTV.

19         Therefore, we respectfully submit that we're in a

20   quandary because it's very difficult to go to the jury and

21   say you've been pushed out of business without having a

22   basis for what the value would have been in a but-for world.

23         We know that in 2015 in the midst of the

24   monopolization, the value was 100 million before the

25   investment and 117 million after the investment.

1       Those values were based on GTV estimates and what

2  we're left with is the problem of trying to estimate what

3  the value of the business would be if it hadn't been run out

4  of business in a world without the alleged monopolization.

5       Respectfully, Your Honor, we believe that GTV is

6  well-supported in the literature for the reasons stated in

7  the papers as well as, more importantly, in the documents

8  that the investors themselves used when they were

9  calculating the value of Songkick for the last round of

10  investment in 2015.

11       THE COURT:  Excuse me.  If you want to talk, you

12  leave the courtroom.  Nobody speaks when I'm on the bench

13  other than counsel.  So go or stay but, if you're sitting

14  here, you can't talk.

15       MR. TERUYA:  Sorry.

16       THE COURT:  Sorry, Mr. Lorig.  Continue.

17       MR. LORIG:  Yes, Your Honor.

18       I apologize.  We had submitted to you two

19  exhibits.  Exhibit 46 to Mr. Wolfson's declaration and

20  Exhibit 32 to Mr. Wolfson's declaration, each of which dealt

21  with GTVs.

22       We did prepare some PowerPoints which we can hand

23  up if Your Honor thinks it will be helpful.  They don't deal

24  with each point but they do deal with the GTV issue.

25       THE COURT:  Has counsel seen those?

1        MR. LORIG:  No.  I asked to exchange before the

2    hearing and he didn't want to.

3        THE COURT:  Well, you can give him a copy and give

4    me a copy.

5                    (Counsel complies.)

6        THE COURT:  Okay.  Go ahead.

7        MR. LORIG:  Your Honor, if you look at slide 10 in

8    that, in the PowerPoints, you'll see an actual reproduction

9    of the internal memorandum that was used by one of the

10   investors.

11       And as you can see, that in coming to their

12   evaluation of 100 million pre-investment, they were

13   calculating it -- and by the way, the underlining is ours.

14   I want to make clear.  You can see the GTV estimate there.

15       The other document that was attached to

16   Mr. Wolfson's declaration is Exhibit 46.  The slide --

17       THE COURT:  Well, wait a minute.

18       MR. LORIG:  I'm sorry.

19       THE COURT:  Let's stay on 10.

20       MR. LORIG:  Yes, Your Honor.

21       THE COURT:  What are you referring to the GTV?

22       MR. LORIG:  They call it GMV.

23       THE COURT:  Okay.  And so where does that hook up

24   with transaction?

25       MR. LORIG:  So there was an actual arm's-length

transaction with an investor.  The investor was dealing with
a company that had no record of profitability in the past.

It was looking at potential profitability in the
future and it was evaluating the company based on gross
transactional value or gross merchandise value as they
called it here.

THE COURT:  It doesn't say "value," it says
"volume."

MR. LORIG:  Gross merchandise volume, yes, Your
Honor.  It's an English company.  I don't know what to say.
We call it GTV.

THE COURT:  Okay.

MR. LORIG:  The second exhibit, Exhibit 46 which
is slide 13, Your Honor, is part of the investor
presentation made by the company; and I apologize for the
readability.  It was black in the original so it's black
here.

But as Your Honor can see, they're -- looking at
the right-hand side, you can see the GTV projections that
were used with regards to evaluating the value of the
company.

If Your Honor would -- doesn't mind turning back
to slide 9, you'll see the actual deposition testimony of
Mr. Yurkerwich where he's talking about his reliance on what
the investors themselves had done in looking at these

1   valuations based on GTV.

2          And if Your Honor doesn't mind turning to slide

3   14, this was -- this is a reproduction of a portion of his

4   report where he talks about the fact that he was valuing the

5   company in a but-for world based on GTV because other

6   ticketing companies -- StubHub, TicketsNow, Eventbrite,

7   SeatGeek, Ticketfly -- were sold for a multiple of GTV.

8          His report, Your Honor, refers to an Exhibit 14.0

9   and I apologize.  That is not in the deck.  14.0 is page 107

10  of his report and it lists the actual value of the sale of

11  each of those companies -- StubHub, TicketsNow, Eventbrite,

12  SeatGeek, Ticketfly -- provides the GTV and provides the GTV

13  multiple.

14         I apologize for it not being within the deck.  I

15  only have one copy but, if I can show it to Mr. Wall and

16  hand it up, I would appreciate it.

17         THE COURT:  All right.

18         MR. LORIG:  Shall I continue?

19         THE COURT:  Yes.

20         MR. LORIG:  It was argued at slide 8 at what's

21  before you that a market-based approach using GTV is one of

22  the three preferred valuation methodologies.

23         We argued in our papers that Areeda & Hovenkamp

24  makes clear that when a company is forced out of business

25  you would ordinarily look at damages, the price which it

1    could have reasonably sold the business as a going concern.

2         If we can't use GTV as did the other ticketing

3    companies, I don't know how we're going to be able to prove

4    that other than to say in 2015 we were worth 117 million

5    post-investment.

6         Certainly in a but-for world in 2017, we would

7    have been worth something more than 117 but I don't know how

8    we're going to be able to do it if we can't use the GTV used

9    throughout the industry.

10        In the defendant's reply, they brought up the fact

11   that one could use EBITDA -- E-B-I-T-D-A -- rather than GTV

12   as one of the metrics for value.  But that's a matter of

13   choice for a valuation expert.

14        Certainly with a start-up company like Songkick

15   which had not made profits yet, it was very much like

16   Snapchat is today.  It's never made profit.  Amazon didn't

17   make a profit for decades.  Nevertheless, the value of the

18   companies went up over time based on multiples of their

19   gross transaction value.

20        And we cited to Your Honor a case that we had

21   hoped would be helpful.  It's a district court case, Abarca

22   v. Franklin City Water District where the Court said in this

23   circuit, an expert's decision to use one forum of scientific

24   methodology over another goes to the expert's credibility

25   rather than the admissibility of the testimony.

1    We believe that since Mr. Yurkerwich's GTV

2    analysis is properly derived both from third-party

3    investment by companies like Sequoia and Access as well as

4    what was done with other ticketing companies, it should be

5    admissible and any criticisms really should go to

6    credibility.

7         It's something to be argued at trial not, we

8    believe, to be discarded on the basis of an in limine

9    motion.

10        Finally, Your Honor, on that point -- the point of

11   the GTV -- one of the slides we handed up, slide 11, is an

12   excerpt from Live Nation's own second quarter reports in

13   2017.

14        And as you can see looking at slide 11, Live

15   Nation itself values itself based on this GTV.  So this is

16   hardly the creative trickery that defendants' claim in their

17   papers.

18        Respectfully, Your Honor, GTV was used with other

19   transactions of ticketing companies.  It was used by

20   third-party investors.  It was used by Live Nation itself

21   and we would respectfully ask Your Honor to consider these

22   matters before making a final ruling on that point.

23        THE COURT:  All right.

24        MR. WALL:  Thank you, Your Honor.  Dan Wall again.

25        So let me just begin by putting this into, you

1    know, some context which may short-circuit it.

2            The GTV, whatever its merits, is a product of the

3    first part of Mr. Yurkerwich's analysis which is based upon

4    all 139 artists and the cumulative tickets that he derives

5    out of that.

6            In Your Honor's tentative, you indicated that you

7    were not going to allow them to put the numbers before the

8    jury until they first established artist by artist with

9    admissible evidence that there was a loss.

10           So this is somewhat moot at this point because

11   he's multiplying it by a number that has no validation in

12   that process that Your Honor has described.

13           In other words, it infects the earlier problems

14   that Your Honor addressed.  Infects this lost-business

15   analysis.

16           The second point -- and this is just really the

17   critical issue here -- is that this is not a debate as to

18   whether one factor in the valuation of a ticketing company

19   is its gross transaction volume or value.

20           Of course it is.  It's the sales metric

21   essentially; that the issue is that Mr. Yurkerwich is trying

22   to make it the only criteria to come up with a valuation by

23   taking the gross transaction volume, irrespective of all

24   other considerations including the profitability of the

25   volume which is the most obvious missing thing here.

1          Taking that volume and simply multiplying it by

2     the average that he imputed from these five companies that

3     he mentions in his report.  There is no validation in this

4     record that anyone ever has valued a ticketing company

5     solely like that; only looking to the gross transaction

6     volume and not considering the profitability of it and so

7     forth.

8          And I'll just give you two crystal-clear examples

9     of that in the slides that Mr. Lorig handed up to you.

10          If you look at his slide No. 10, which is the one

11     that is entitled "GTV is how Songkick's outside investors

12     valued the companies," it's -- each and every one of those

13     lines shows that GTV was in fact one of three criteria.

14          This gross merchandise volume which I assume for

15     these purposes is the same thing as GTV.  The revenue

16     derived from the volume and then the profitability of the

17     volume.

18          Similarly, if you look a couple of pages back -- I

19     think it's his slide 13 -- you will see -- this is the one

20     that they said that Songkick used GTV in the course of its

21     own internal valuation.

22          Yes, sure, that's one of the things that's on

23     slide 13 but so is gross margin, so is the EBITDA margin, so

24     are tickets sold, registered users, profitability metrics

25     and all sorts of things like that.

1          It's just plainly not the case that Songkick or

2     anybody else ever looked at a ticketing company said:

3     What's the GTV?  And, upon that, applied some multiple to

4     it.

5          And I do think that at this most elemental sense,

6     you know, the question is not volume, it's the profitability

7     of the volume.

8          And, you know, it sort of -- it almost recalls,

9     you know, that old joke about somebody who loses money on

10    every sale but makes it up on volume; right?

11         Unless there's a profit margin on the volume,

12    neither Wall Street nor anybody else is going to give at any

13    significant value which is why -- and according to the

14    record evidence -- no one uses GTV alone, everyone uses in

15    combination with other things that values the GTV in a real

16    world, sensible way.

17         And that's why we think, you know, aside from the

18    fact that Mr. Yurkerwich doesn't have the expertise or the

19    foundation to say that the ticketing industry does this, he

20    hasn't validated that this is what people in this industry

21    do.

22         Thank you, Your Honor.

23         THE COURT:  I should have clarified that I meant

24    that factor alone was the concern; and I didn't mention that

25    as to paragraphs 47 to 51 concerning the negative effects

relating to Live Nation's influence as a concert promoter,

he can't base his damages on that either.

So, Mr. Lorig, did you want to comment on the

other tentative issues; the rulings that I made?

MR. LORIG:  Yes, Your Honor.

If I understand the last point correctly, Michael

Rapino, the CEO of Live Nation, personally directed

Ticketmaster.  He's not an employee of Ticketmaster.

As Your Honor could see from all the memorandums

that were submitted to you in the summary judgment motions

and as Your Honor commented in your denial of the motion,

Mr. Rapino was up to his elbows in this but he's not an

employee of Ticketmaster.

He directed Live Nation to help Ticketmaster

wholly-owned subsidiary any way he could, and Live Nation is

responsible as the controlling entity that controlled

Ticketmaster as if it wasn't a separate company.

Respectfully, we don't believe that given the

memorandums from Mr. Rapino directing the very wrongdoing

that Ticketmaster is alleged to have done that there's any

reason why Mr. Yurkerwich cannot rely on what Mr. Rapino did

as essentially the puppet-master for Ticketmaster.

And with regards again back to the GTV issue and

the EBITDA issue, young companies, start-up companies like

Snapshot or Songkick don't have profits.  They may go 20

1    years before they make a profit.

2            A $117 million valuation was placed on this

3    company on the basis of GTV in a hypothetical; even though

4    that was years away.  It's also referred to -- excuse me --

5    in the other slides.

6            And, respectfully, if we can't use GTV, we would

7    ask for at least a chance to use these very slides that we

8    submitted to Your Honor for an alternate methodology because

9    without the GTV we have no way to value the company that

10   they put out of business.  They put them out of business

11   before they made any profits, Your Honor.

12           THE COURT:  I suspect the defense will have an

13   objection to that so let's move on to any other issue that

14   you want to address.

15           MR. WALL:  We are content with the tentative

16   otherwise, Your Honor, so we have nothing.

17           THE COURT:  All right.

18           Anything else, Mr. Lorig?

19           MR. LORIG:  Nothing else, Your Honor.

20           THE COURT:  All right.

21           Let's talk about the trade secrets.  What precise

22   claims -- what precise secrets is the plaintiff planning to

23   proceed with here?

24           MR. LORIG:  Your Honor, I'm not sure that's

25   brought up by one of the motions but I can address that.

```
 1              THE COURT:  This is a pretrial.
 2              MR. LORIG:  Yes, Your Honor.
 3              THE COURT:  I get to ask whatever questions I
 4    want.
 5              MR. LORIG:  Absolutely.  I was just saying it
 6    hadn't been addressed.
 7              THE COURT:  It was in your pretrial conference
 8    report and the memoranda of points of contentions of fact
 9    and law which I spent both days of my weekend on so this is
10    the time that I want to talk about them.
11              MR. LORIG:  Yes, Your Honor.
12              The proposed jury instructions contain the nine
13    trade secrets at issue.  They are what we call compilations
14    of data that numerous documents dealing with both all the
15    various tools are used, the ones that were copied by
16    Mr. Mead and Mr. Zaidi.
17              THE COURT:  Okay.  Number 1, what's No. 1?
18              MR. LORIG:  Artist toolboxes.
19              THE COURT:  Okay.  Isn't that something that other
20    people can see?  How is that a secret?
21              MR. LORIG:  It's how you go about doing it.  The
22    artist toolboxes are used by the artist and their promoters
23    and they receive data and it was one of the sales angles
24    that was used by Songkick to differentiate itself from
25    Ticketmaster.
```

1          THE COURT:  What is it?

2          MR. LORIG:  It's a particular methodology used in

3     the software so that when you take out your phone you can

4     see the report in realtime translating you where the

5     customers are, who's coming, so you can plan your own

6     marketing activities.

7               It tells who's buying, who's not buying, where

8     they're buying, how much they're buying.  It gives an artist

9     what it wants to know.  It was one of the reasons why they

10    did business with Songkick rather than Ticketmaster because

11    at that time Ticketmaster didn't give them any of that data.

12    They held it back.

13         THE COURT:  Well, was there some kind of an

14    agreement that they couldn't show anybody else their phone?

15    I don't -- there may be other violations of law.  Maybe

16    copyright or something but I don't understand why it's a

17    trade secret.

18         MR. LORIG:  It's a trade secret because it's not

19    otherwise reasonably available to the defendant.  The

20    defendant is not an artist.  The defendant is not a a

21    promoter.  The defendant Ticketmaster would not have access

22    to that.

23         THE COURT:  Suppose an artist came and said to

24    Ticketmaster:  Here's what I get from Songkick.  If you

25    could do this for me, I'd have you handle all my tickets.

1      MR. LORIG:  Well, saying that you could have got

2   it without a theft doesn't mean it was reasonably available

3   to you.  Even if there had been a nondisclosure agreement,

4   somebody could always breach it; the point being --

5      THE COURT:  Yes.  But then you would have been

6   protecting it.  Without a nondisclosure agreement, that's --

7      MR. LORIG:  Yes.  But, Your Honor, the testimony

8   is that there was an expectation of confidentiality with the

9   artists and their agents and promoters; and that what

10  happened is Mr. Mead used his access to the software to copy

11  it for the benefit of Ticketmaster; and we believe that's an

12  issue for the jury to decide.

13     THE COURT:  It might be.  But it might eventually

14  end up being an issue for me to decide because I don't quite

15  get how that can be but I guess it will depend on what the

16  testimony is.

17     But I think there's some relatively strong law

18  about keeping things secret and it doesn't sound like you

19  kept things secret to me on this.

20     MR. LORIG:  I think the belief at the time was

21  that Ticketmaster would not have access to it because the

22  artists who were using it were the artists who wanted to use

23  something in a non-Ticketmaster fashion.

24     Certainly there's no evidence to direct in this

25  case -- none -- that anybody actually provided this

1    information to Ticketmaster.

2            Instead, the only evidence --

3            THE COURT:  That's not the test.  The test is

4    whether it was secret not whether they got it in some

5    wrongful way.

6            Move on.  What's Item No. 2.

7            MR. LORIG:  Item No. 2 is the matter in which the

8    online stores were managed, the actual software used to

9    manage the stores.

10           Item No. 3 --

11           THE COURT:  So what was secret about that.  If

12   they're online stores, can't anybody go on and see what's on

13   there?

14           MR. LORIG:  Yes.  But they can't get down to the

15   software to see how it's being done.  I mean, this isn't

16   just copying what you see on a screen, Your Honor.  I mean,

17   basically he was giving the keys to the software kingdom to

18   his new employer.

19           THE COURT:  Nevermind talking in hyperbole.  I'm

20   trying to figure out literally how it's done so I can tell

21   whether there's some merit to this claim.

22           MR. LORIG:  My understanding --

23           THE COURT:  What's secret is how it's done behind

24   the scenes, not what shows up on the screen?

25           MR. LORIG:  That's correct.

```
 1                    THE COURT:  All right.

 2                    Item No. 3.

 3                    MR. LORIG:  The artist pipelines.

 4                    THE COURT:  What's that?

 5                    MR. LORIG:  That dealt with who the potential

 6      clients were.  What Mr. Mead was doing was providing his

 7      access to Songkick and then clone CrowdSurge to actually

 8      advise his new employer which artists they were approaching

 9      in order that Ticketmaster could go there first and head

10      them off at the pass.

11                    THE COURT:  So this is not just a list of artists;

12      this is a list of artists that Songkick believed it wanted

13      to go after?

14                    MR. LORIG:  Correct.

15                    THE COURT:  Okay.

16                    MR. LORIG:  4 is financial information.  One of

17      the exhibits that I hope I submitted to Your Honor.  If not,

18      I apologize.  Was him explaining to his bosses at

19      Ticketmaster that he had taken with him all of the periodic

20      business reports, head of department reports, with all the

21      financial information which he did offer to and did share

22      with Mr. Zaidi and other employees at Ticketmaster.

23                    THE COURT:  What kind of information was this?

24                    MR. LORIG:  It was profit and loss, projected

25      business, where they hoped to do business, where they were
```

```
1   going to next, whether it was going to be in the U.S. or it
2   would in the U.K.  Just the sort of detailed periodic heads
3   of department data that would you would expect in any
4   business.
5           THE COURT:  Okay.  Next?
6           MR. LORIG:  Customer data.  That's just the
7   classic, you know, who are the customers; customer lists not
8   generally available.
9           THE COURT:  Who were the actual Songkick
10  customers?
11          MR. LORIG:  That's correct.
12          THE COURT:  Were there entities out there other
13  than Ticketmaster and Songkick that were heavy into this
14  market?
15          MR. LORIG:  There was.  There was Tickets Today,
16  one of their subsidiaries, BubbleUp, a couple of others,
17  Your Honor.  There were other companies seeking to serve at
18  that time.  At the moment there's nobody left.
19          THE COURT:  Okay.  And your view is that as
20  opposed to just knowing who the artists are that are
21  appearing at venues or might appear at venues, that
22  Ticketmaster specifically used the Songkick list?
23          MR. LORIG:  Yes.  There were actually specific
24  examples of that where there would be a particular artist
25  like Kenny Chesney that they'd hear about it and go try to
```

1    head it off at the pass.

2         And it's fairly classic internal trade secret

3    lists.  Certainly the identity of customers in general, you

4    know, may be known.  But the particular customers doing

5    business and when you're approaching them usually can be

6    treated as a secret depending on the circumstances.

7         THE COURT:  I think usually there's a little bit

8    more to it like which ones actually pay their bills and

9    things like that.  But this may pass muster.

10        What's next?

11        MR. LORIG:  Well, in response to that, Your Honor,

12   a lot of that deals with what a particular artist wants in

13   terms of data, what they would like --

14        THE COURT:  Okay.

15        MR. LORIG:  So there's some of that as well.

16        THE COURT:  All right.

17        MR. LORIG:  And customer data, heads of department

18   report I've discussed, client lists I've discussed, board of

19   directors presentations and business plans we've discussed

20   and contracts with third parties.

21        At one point we reduced the number of nine down

22   to -- it was either six or three.  They complained that we

23   had dropped trade secrets by oversimplifying the compilation

24   so we banged it back up to nine.  They overlap somewhat.

25        THE COURT:  What's "compilation" mean?  I don't

1    understand.

2              MR. LORIG:  Well, a compilation -- you know, a

3    trade secret -- Your Honor, a trade secret can be a

4    compilation of data.

5              THE COURT:  Well, it can be but you're listing

6    nine things.

7              MR. LORIG:  Yes.  And each one of those is a

8    compilation of data.  Some of that data is public.  Some of

9    that data is private.  But the compilation itself is secret.

10             THE COURT:  So you're talking about a compilation

11   within categories, not a compilation of the nine things

12   somehow?

13             MR. LORIG:  Yes.  Each one is separate, not one

14   giant compilation, Your Honor.

15             THE COURT:  So what did they use from the board of

16   directors' presentations.

17             MR. LORIG:  Well, the board of directors

18   presentations, you know, showed them, for instance, the fact

19   that they were going to be -- how to put it -- emphasizing

20   their work at the U.S. at the risk of the U.K. who they were

21   hoping to target, which managers, which promoters, what

22   their plans were for the future in terms of investment.

23             THE COURT:  Okay.  And the weekly head of

24   department reports they were suggesting that they were out

25   of date and you don't use that anymore; is that right?

1          MR. LORIG:  Well, they weren't out of date in 2014

2     when he gave them access.  If Your Honor had the opportunity

3     to look at any of those memos and they weren't featured in

4     the summary judgment motion because they didn't attack that

5     case.

6          You'll find that they were thought to be very

7     valuable.  They were shared.  They were discussed.  They

8     thought they were valuable enough that they were shared even

9     though he put in a warning in those memos, you know, don't

10    let them know you have access to this.

11         They clearly understood it was secret.  It's in

12    the documents themselves, Your Honor.

13         THE COURT:  Well, they have to use them too.  Is

14    there some way in which they used them?

15         MR. LORIG:  Yes, they did, Your Honor.  They built

16    basically a clone of the CrowdSurge-Songkick model.  They

17    used the same tools to basically say:  You don't have to do

18    business with Songkick.  We now have the exact same thing.

19    We have copied them.  You can buy from us.  You don't have

20    to do business with the upstart.

21         THE COURT:  That relates to the weekly head of the

22    department reports?

23         MR. LORIG:  Well, they -- it was accessed to both

24    the tools, the toolbox, and knowing how the business model

25    worked, how they approached clients, what they told clients.

1          THE COURT:  Okay.  What about the contracts with
2     third parties?  Is there some provision in the contracts
3     that they can't reveal the terms of the contracts to
4     anybody?
5          MR. LORIG:  Your Honor, I don't know.  I don't
6     believe so.  But there may have been.  Certainly there was
7     an expectation of privacy because there was no reason to
8     share that.
9          THE COURT:  I don't think that really works.
10          You enter into a contract with somebody and say:
11     Gee, I really think they'll probably keep this private and
12     so it becomes a trade secret?  That's not how it works.
13          MR. LORIG:  Well, my understanding is anything is
14     a trade secret if it's not reasonably available to a
15     competitor.
16          You don't have to lock it in a room, you don't
17     have to swear them to secrecy.  If it's not reasonably
18     available to a competitor and you have an expectation of
19     secrecy, that's enough if wrongful means are used.  And here
20     there's no question wrongful means were used.  They brought
21     85,000 documents with them.
22          THE COURT:  No, I think they agree with that.
23     Don't you?  You're not arguing that he didn't give you that
24     stuff?
25          MR. WALL:  We're not going to defend the way the

1    information was taken, Your Honor.

2              THE COURT:   All right.

3              Okay.  What else?  Is that all of it?

4              MR. LORIG:   I believe that's the end of it.

5              THE COURT:   Okay.

6              MR. LORIG:   There was the computer fraud and abuse

7    but that's a really a subset of that.

8              THE COURT:   Right.

9              All right.   Interference with contracts.   Is that

10   the artist contracts?

11             MR. LORIG:   Yes, Your Honor.

12             THE COURT:   Are those written contracts?

13             MR. LORIG:   Yes, Your Honor.  I believe -- no,

14   they were not written contracts, Your Honor.   They were oral

15   contracts.

16             THE COURT:   So they're different from these

17   contracts with third parties that you contend were trade

18   secrets?

19             MR. LORIG:   Yes, Your Honor.  Although, again,

20   some of the ones that were interfered with they learned

21   about from misappropriation, not all of them.

22             THE COURT:   Okay.  So what kind of oral contracts?

23             MR. LORIG:   As I understand it, basically there

24   was a deal between the company and the artist and the

25   promoters to represent them; that a fee was received and

| | |
|---|---|
| 1 | they would manage the presale and fan club for the artist. |
| 2 | THE COURT:  Is there any statute of frauds issue? |
| 3 | MR. LORIG:  I don't think so. |
| 4 | THE COURT:  All right.  Have you indicated what |
| 5 | contracts you're referring to somewhere? |
| 6 | MR. LORIG:  Yes.  The Complaint actually |
| 7 | identified the specific contracts involved.  It was a subset |
| 8 | of the 139 artists Your Honor referred to earlier. |
| 9 | THE COURT:  Okay.  So do you think, contrary to |
| 10 | what the defendants claim, that you still have a claim for |
| 11 | interference with contract if the venue contracts allow the |
| 12 | defendants to sell all the tickets? |
| 13 | MR. LORIG:  We believe so, Your Honor, because the |
| 14 | contracts that we're referring to with respect to business |
| 15 | advantage, we're referring to our -- between us and the |
| 16 | artists or the promotor and the manager not the venue. |
| 17 | And regardless of whether they have an exclusive |
| 18 | dealing contract that includes both venue sales and artist |
| 19 | presale tickets or if it's a carve-out as Your Honor |
| 20 | indicated in the summary judgment ruling or earlier at the |
| 21 | injunction hearing, it doesn't matter.  It's either an |
| 22 | antitrust violation because it's exclusive dealing or it's |
| 23 | an antitrust violation because they are attempting to |
| 24 | leverage their monopoly position and venue ticketing |
| 25 | services to artists presales as Your Honor discussed in your |

1   order.

2              THE COURT:  All right.  Prospective economic

3   relations.  What's different about this than the other

4   claims?  Can you succeed on this one if you don't succeed on

5   any of the other claims?

6              MR. LORIG:  The prospective business advantage is

7   a subset of both the antitrust and the trade secret.

8   Basically, the idea is that there were clients that they had

9   not been able to do business with; that they didn't have

10  oral or written contracts with; that they could have done

11  business with in the but-for world without the alleged

12  predicate acts of monopolization and unfair competition

13  discussed in the summary judgment papers.

14             So I think the answer is yes.  It really depends

15  on what the jury finds.  The jury could hypothetically find

16  no trade secret, the antitrust.

17             The jury could hypothetically find no antitrust

18  but unfair competition under Cel-Tech which comes in under

19  intentional interference.

20             You know, one is not necessarily dispositive of

21  the other and of course the computer fraud is a standalone

22  which Mr. Wolfson just reminded me.

23             THE COURT:  Yes.  Well, my question was whether we

24  really needed prospective economic relations because this

25  case is going to be long enough as it is.

1          So each of you seems to contend the other should

2     have mitigated damages so what's your argument on mitigating

3     damages?

4          MR. LORIG:  I don't know how we could have

5     mitigated damages.  They won't give us seats, artist presale

6     seats.

7          THE COURT:  No, I don't know either.  Do you

8     contend they should have mitigated their damages on their

9     claims?

10          MR. LORIG:  You know, their claim is the exact

11     opposite of our claim.  They claim that they're not guilty

12     of anything.  Our existence in doing business with them was

13     an interference with their contract.

14          We believe they could have mitigated that by

15     developing the same tools and the same offerings we did

16     without stealing our trade secrets to do so.

17          So, yeah, they could have at least -- they could

18     have done part of it.  They couldn't have done the exact

19     same way we did it without our trade secrets but they

20     certainly could have done more.  They could have offered

21     clients' data.

22          One of the things that kind of sticks out as I was

23     getting ready for this hearing is prior to Songkick and

24     CrowdSurge coming into the marketplace, Ticketmaster held

25     data as sort of their own treasure, their own secret.

1        Everybody had to do business with Ticketmaster.

2   Only Ticketmaster knew who the customers were, where they

3   were.  They kept that to themselves.

4        THE COURT:  How could Ticketmaster -- I mean, I

5   don't know.  Maybe you agree with that.  I don't understand.

6   These are artists, not all the ones that I recognize but I'm

7   old.

8        So how could they not -- and they're appearing at

9   venues that Ticketmaster contracts with apparently

10  exclusively.  How could they not know who the people are?

11       MR. LORIG:  Well, Your Honor, I had the same kind

12  of issues when I first got involved in the case so it turns

13  out Paul McCartney, who will die before this case, he would

14  appear at a venue.

15       Ticketmaster knew who it was selling the tickets

16  to.  Paul McCartney did not know.  The venue might know.

17  Paul McCartney did not know.  He didn't know who they were,

18  what their demographic is.  There was no way for him to

19  market to his audience because only Ticketmaster --

20       THE COURT:  Oh, that's the information there.

21  Okay.

22       MR. LORIG:  Yes.

23       THE COURT:  That's different information.  Okay.

24       All right.  I'll hear from Ticketmaster on the

25  mitigation issue and then we'll move on to other things.

1          MR. WALL:  So, in general, obviously our position

2     is that the way that they could have mitigated their losses

3     was to have gone after ticketing inventories like everyone

4     else could and bought them and made deals with venues and

5     try to compete for them.

6          They made a business choice not to do that and to

7     base their entire business on the idea of trying to get a

8     waterfall of tickets through the presale provision; and when

9     they ran into trouble with that, they said it was illegal

10    and everything.  We understand.

11         But they didn't try anything else at all to try to

12    get the tickets such as going to a venue and saying:  Hey,

13    you know what?  I know Ticketmaster is buying exclusive but

14    I can do a great thing on presales.  Can you reserve for me

15    a piece of those tickets for the next contract and I'll pay

16    you some money for it.

17         THE COURT:  So where did they get the tickets they

18    were selling?

19         MR. WALL:  So the only places they're getting

20    tickets, what their documents say is they never pay for

21    inventory.  That's a deliberate decision.  They never pay

22    for inventory.

23         They find an artist; that they went to the artist.

24    They would typically, quite frankly, misrepresent the terms

25    of Ticketmaster's fan club policy.

1        They'd say:  These are your tickets.  You are

2    entitled to these tickets.  You should tell the venue that

3    they want some of those tickets.

4        And we would get into a fight with them over this

5    if they didn't have a fan club.  But otherwise, if they did,

6    we'd give them the tickets.  We'd release the tickets to

7    them; and then they would have their show and that's what

8    they would do.  They would go on.

9        Now, in those circumstances when there wasn't a

10    fan club or where we got into a fight about it or whatever

11    the case may be, it appears to us they didn't do anything at

12    all because they would just move on to the next show.

13        THE COURT:  Okay.

14        MR. WALL:  If I may say, I just wanted to make a

15    quick comment about the mitigation issue and --

16        THE COURT:  Okay.

17        MR. WALL:  -- just as it relates to this artist

18    toolbox and I know this is not the time to argue all those

19    things.  But just so it's clear, of the trade secrets this

20    artist toolbox is the only thing that carries any weight in

21    the rest of their case.

22        The artist toolbox is essentially the product

23    itself.  It's like saying that the dashboard of my Mercedes

24    is a trade secret.  Well, once you buy it, you get to look

25    at it and my friends can look at it as well.

1    And ours, yes, we have a dashboard too because

2  everybody has a dashboard.  We built ours before the events

3  that they're claiming were the theft of trade secret.

4          THE COURT:  Okay.

5          MR. LORIG:  May I address the Court?

6          THE COURT:  Let me guess.  You disagree?

7          MR. LORIG:  I do.

8          To begin with, the tool he says that was the same

9  thing, it was something that they developed for the venues.

10  It wasn't for the artists.  They kept it from the artists.

11  It was different than what we gave and what they now give to

12  the artist.  It was not the same thing but, more

13  importantly, contrary to their representation, it was

14  something that was developed for the venues, not for the

15  artists.  The artists never got the data.

16          Secondly, if Your Honor wants the specifics of the

17  trade secret claim, I'm not as prepared as I should be on it

18  but sitting behind me is David Kramer one of our young

19  lawyers who has been in charge of working up the trade

20  secret case and he may be able to answer very specifically

21  questions you have.

22          I just didn't realize they were going to come up

23  today.  I'm not as prepared as I should be and if you'd like

24  to hear from him --

25          THE COURT:  No, I think I've heard a brief summary

| | |
|---|---|
| 1 | and I just think these are things that the two of you -- the |
| 2 | ten of you or the 20 of you or however many there are of you |
| 3 | are out there -- need to be working on to try to cut this |
| 4 | case down a bit and hopefully settle it because most cases |
| 5 | should settle and this certainly seems to be one of those. |
| 6 | MR. LORIG:  We tried to and we will try, Your |
| 7 | Honor; and with regards to cutting it done, with regards to |
| 8 | the intentional interference, given Your Honor's summary |
| 9 | judgment rules, I believe that the two of us, Mr. Wall and |
| 10 | I, can pare down this case for trial. |
| 11 | THE COURT:  Great.  Because I'm going to give you |
| 12 | very little time to try it so. |
| 13 | MR. LORIG:  Even more reason, Your Honor. |
| 14 | THE COURT:  You won't have any choice. |
| 15 | All right.  Moving on.  You provided a joint |
| 16 | statement.  Thank you.  There's one phrase in it I don't |
| 17 | understand and you may not have it in front of you so I'll |
| 18 | read it.  It's a very long sentence though. |
| 19 | "The only reason Songkick and Ticketmaster got |
| 20 | into conflict with each other Ticketmaster contends, was |
| 21 | because Songkick tried to circumvent the rules of |
| 22 | Ticketmaster's fan club policy which is a program by which |
| 23 | Ticketmaster will let artists conduct presales through their |
| 24 | preexisting fan clubs." |
| 25 | And then this is the sentence I don't understand. |

1          "Ticketmaster contends that it owns the rights to

2     ticket those sales."

3          What does that mean?  To ticket presales?

4          MR. WALL:  Yes.  That the presales are within the

5     scope of the exclusive rights.  I mean, they are of course

6     explicitly.

7          THE COURT:  Well, I would suggest you figure out a

8     way to rephrase that sentence because this is the

9     introduction of the case to the jury.

10          MR. WALL:  Understood.

11          THE COURT:  And the phrase "ticket those sales"

12     doesn't really -- I don't think they're going to grasp what

13     that means.

14          MR. WALL:  Your Honor, on a related point, I know

15     you would have seen this; that we are hoping that since it

16     is a question of law that Your Honor will ultimately simply

17     charge the jury as to what those contracts mean so that we

18     don't have like a shadow contract case in the middle of this

19     trial.

20          THE COURT:  I was going to get to that and when I

21     did I was going to tell you that I agree that I should do

22     that but you need to tell me what it is you think that I

23     should say about them.

24          MR. WALL:  Okay.

25          THE COURT:  And then I'll decide whether that's

1    what I should say or something else.

2              MR. WALL:  Very well.

3              THE COURT:  I'm not going to come up with it out

4    of whole cloth here.

5              All right.  I've looked at your pretrial order

6    which is the largest pretrial order I've ever seen submitted

7    in almost 14 years and the lengthiest list of documents.

8              I don't know how you think I can resolve

9    objections about documents being not timely produced so --

10   and that's not the kind of thing I want to spend time on as

11   you're submitting a document to a witness.

12             And since the time will count against whichever

13   party I rule against, I don't think you want me to be

14   wasting your time with that either.  So I think you really

15   need to work those out.

16             If there's an argument that impacts all or a

17   category of the documents, then you can make that to me in

18   advance I hope and I can rule on a group of documents.  But

19   on a document-by-document basis, that's not going to make

20   any sense.

21             I took a quick look through those because without

22   having the documents I really can't tell how to rule on

23   objections.  But why people would -- and lawyers do this all

24   time -- why anybody would designate a notice of deposition,

25   I don't know.  So take out the stuff that really doesn't

1    belong in a list of exhibits.

2           I see there's a lot of hearsay objections and,

3    again, this will go to one of the motions in limine but I

4    need to know who the people are for the purpose of

5    determining whether they're statements of a party, for

6    example, that would allow them to come in even if they

7    otherwise would be hearsay.

8           So I want a list -- first of all, I want a list of

9    all of your witnesses in alphabetical order and what their

10   positions are briefly or who they are if they're not with

11   either company.

12          And you'll submit that to Ms. Plato which she will

13   share with our court reporters so they don't have to ask you

14   every day how to spell your witnesses names and, also, I'd

15   like a glossary of any other unusual names, phrases, words,

16   submitted in advance again so our court reporters have those

17   in their dictionaries and they can just easily take those

18   down.  It speeds up the court reporting.

19          I've looked at the two witness lists which were a

20   little bit hard to figure out.  You sort of did what I asked

21   except the descriptions of the testimony seemed to be

22   somewhat cut and pasted and seem very repetitive and I

23   couldn't figure out how to put the two together.

24          Some witnesses are on both lists so I couldn't

25   figure out whether you were each planning to call them in

1  your respective cases and whether that meant that the time

2  for direct and cross in the plaintiff's list was in addition

3  to the time for those witnesses that were repeated on the

4  defendants and cross-claimants lists so I couldn't figure

5  out even what you thought the time was.

6         The defendants gave me a total.  I don't think

7  plaintiffs gave me a total.  And as I said, I worked on this

8  all weekend so it was good for a laugh to see how much time

9  you thought you were going to have to try this case.

10        I think you said fifteen days in your papers but

11 the hours that you add up would be much more than fifteen

12 days and you're not going to have fifteen days.  So you need

13 to take a hard look at your claims and your witnesses.

14        MR. WALL:  Your Honor, may I just make a comment

15 about this process generally and --

16        THE COURT:  Yes.

17        MR. WALL:  But from our perspective, the

18 difficulty in estimating time more than anything else is a

19 function of trying to figure out how many of these 139

20 vignettes we're going to have to respond to.

21        And I know that -- I heard what you said earlier

22 about laying a foundation.  I don't know how much time

23 you're going to give us before another trial date.

24        But in just thinking about it as I'm sitting here

25 now, I am wondering whether the right thing to do in this

1   case is not to have a Special Master appointed to determine

2   how many of those vignettes have the proper foundation to

3   form the basis of a trial.

4           A process so it isn't Your Honor having to do it

5   and so that when we say how long this is going to take to

6   try, I'm not guessing as to whether I have to defend the U2

7   incident.

8           Because if I do, there's a particular person I

9   need to call about that one; and if I don't, I don't call

10  that person.   And in fact I may not call ten people, you

11  know, because these artists-managers, it's a fragmented

12  community.   There are so many of them.

13          And this is the biggest problem that we have as a

14  practical matter in getting ready for this trial which is we

15  don't know who, you know, when it's our turn, how many of

16  these vignettes I've got to address.

17          And it's sort of compounded by the fact that there

18  was, you know, this rather bold move by the plaintiff to

19  actually object to our having identified witnesses late when

20  so many of these 139 artists were first revealed to us in

21  the damages report after the close of fact discovery.

22          THE COURT:   That was not a valid argument and

23  those witnesses will be allowed to testify so.

24          MR. WALL:   So I would absolutely urge this and we

25  will participate in good faith.   I have done this in other

1    cases before where judges said this is too much of the same

2    issue over and over and over, have a Special Master come in

3    and pare it down.

4              THE COURT:  Well, I'm not -- I appreciate the

5    offer and I'd love to send you away to a Special Master or a

6    settlement judge or something to just go through all of

7    this.

8              I understand that you can't figure out and that

9    has a lot to do with the time.  It's part of my problem too.

10   I'm happy to have somebody else help me with my work because

11   I don't get paid by the hour.

12             But I'm not sure how much -- how to phrase it --

13   I'm not sure how much the dispute really is; and maybe when

14   we get to the motion in limine we can talk about that and so

15   we'll put that off for the moment because I agree.

16             It's practically impossible to come up with a

17   number but I'm going to come up with one anyway because if I

18   left you to your own devices, you would each be spending 50

19   or 60 hours or more based on the numbers that you gave me

20   and that would be much too much time for the jury.  I don't

21   have that much time and it doesn't make any sense.

22             MR. LORIG:  May I be heard briefly?

23             THE COURT:  Yes.

24             MR. LORIG:  As Mr. Yurkerwich testified when he

25   was deposed, he relied for those 139 on his interviews with

1   Mr. Block, Ms. Bellin, and Mr. Glicken who are going to

2   testify.

3           He saw himself more as an auditor saying no, not

4   somebody saying yes and so there's three different people

5   who are going to testify.  They have access to the

6   documents.

7           They're the ones who are going to be, I guess,

8   what you would call a causation witness.  It's not going to

9   take very long I don't think.  They're going to go through

10  their reasons for believing that but-for they would have had

11  this business.

12          And, you know, as for a Special Master, Your Honor

13  doesn't need me to say this.  This is a jury trial and we

14  believe that for all the reasons Mr. Yurkerwich testified to

15  in his deposition he properly relied on these witnesses and

16  they're going to appear at trial and it's not going to take

17  a half hour or anything per artists.

18          They're very specific reasons, very specific

19  documents.  That part of the case should go quickly, Your

20  Honor.

21          THE COURT:  Define quickly.

22          MR. LORIG:  A matter of hours, not a matter of

23  days.  You know, Mr. Block is going to be up there for a

24  number of hours and so it's not going to be nearly as long

25  as Mr. Wall seems to think it's going to take.

```
1         The witnesses are going to go through who -- which
2    specific artist they thought they would have gotten in a
3    but-for world; and then based on Your Honor's ruling on the
4    Daubert --
5         THE COURT:  Well, there has to be some substance
6    to it.  They can't just sit there and say:  I think I would
7    have gotten --
8         MR. LORIG:  Absolutely.  I couldn't agree with you
9    more, Your Honor.  And as I understand the process, unless
10   there was an entry in the sales force database or a document
11   to support it, there had to be some non-verbal piece of
12   evidence or Mr. Yurkerwich acting as sort of an auditor
13   didn't let it get into the damage study.
14        There was a lot these people wanted to assert that
15   didn't get asserted.  If there wasn't a document or solid
16   basis for it, it didn't get on the list.
17        THE COURT:  Well, I'm not sure that's what I saw
18   in his report but maybe I just wasn't reading it correctly.
19        In any event, I think you need to take a closer
20   look at that and let the defense know what amount of time
21   you think that will take.
22        Because at the moment I'm thinking somewhere
23   between 28 and 30 hours for each side; and if you don't like
24   that, I'm going to send you over to Judge Klausner or
25   Judge Walter who would give you about half of that so that
```

1   includes the opening statements but not closing arguments

2   and if you're on your feet it counts against you.

3          As I said if I get objections and there are too

4   many objections, I'm just going to start taking time off the

5   losing side.  So you can't just run out the other side's

6   time, not that either of you would dream of doing that.

7          You did mention a trial date.  I have four

8   criminal trials set to start on November 28.  I think one of

9   them told me this morning they're going to ask for a

10  continuance.

11         But there's at least one that, for various

12  reasons, I believe definitely will go forward.  I can try to

13  verify with them that they really intend to rely on the

14  speedy trial rights to go on November 28 and there's nothing

15  I can do about that constitutional and statutory right.

16         So I can't start this trial unless -- on the

17  14th unless you think you can get your cases presented in

18  about 16 hours each.

19         So I'll give you that option.  We can go on the

20  14th if you can do that.  Or I'm actually free the next

21  two weeks as well so you can start on Halloween if you'd

22  like and then you can have more time.

23         But I think you're better off trying to settle

24  this case than trying to scurry for the next few days and

25  get ready for trial.  So let's go over the motions in

1    limine.

2              Plaintiff's Motion in Limine No. 1.

3              Thank you.  I think you figured out by my initial

4    comment that there will be no references to judicial

5    opinions criticizing the experts.

6              You shouldn't have had to make this motion.  I

7    can't even imagine why you thought that would be a thing

8    that you could do.

9              The late disclosed witnesses, again, I mentioned

10   there was no reason to know who would you need until

11   Yurkerwich submitted his report as far as I could tell.

12             Yes.

13             MR. WOLFSON:  May I be heard on that partially,

14   Your Honor?

15             THE COURT:  Let me give you my tentatives first.

16             MR. WOLFSON:  Okay.

17             THE COURT:  And then you can all argue with me.

18             I don't know where we are with all this under seal

19   stuff and I'm on the verge of sanctioning people who cause

20   me to have to review things under seal that shouldn't be

21   under seal and especially things that I've already ruled on

22   that type of category.

23             And I know sometimes the other side designated it,

24   you want to use it and the other side won't let you file it

25   not under seal.  So whoever's fault it is under seal, that's

1   the side that is going to get sanctioned because this is
2   ridiculous.
3            The volume of documents that you've been
4   submitting, the number of under seal documents is what has
5   caused all of your rulings to be delayed not to mention an
6   extraordinary and unnecessary amount of time for both my law
7   clerk and me to just try to be diligent with regard to all
8   of these things.  It's practically impossible.  You've taken
9   up half of my law clerks' offices with your boxes.
10           Number 3, we'll hold off on and see what happens
11  with the Zaidi and Mead.
12           All right.  Testimony that the market and venue
13  ticketing services is competitive.  I don't see any reason
14  why the expert can't testify but there's issues with regard
15  to the Consent Decree, I understand.
16           I'm not sure that 16(h) really applies in this
17  particular context and certainly there has to be a way that
18  that information can be used.
19           And so I think what you ought to do is just talk
20  about -- talk to each other about a way that the information
21  can come in.  The explanation can come in without referring
22  to a Consent Decree or a settlement agreement.
23           If you can work that out, that would be the best.
24  Otherwise, I'll just let you know what I think can and can't
25  be used.  But I think it would be better not to give too

1  many details.  Then we have to explain what a Consent Decree
2  is and all this other stuff.
3          And as I said, talking about the interpretation of
4  contracts, you need to propose to me what to tell the jury.
5  So does this eliminate any of the witnesses or shorten the
6  witnesses' testimony if I just tell the jury what the
7  contracts say or what they mean?
8          MR. WALL:  It would definitely shorten it without
9  a doubt.  I can't think right off the top of my head whether
10 it eliminates anybody but it definitely shortens it.
11         THE COURT:  Is there a purpose to this industry
12 practice testimony if the contracts control?  Or does it
13 have some other --
14         MR. WALL:  Well, I mean, Your Honor has put the
15 legality of the industry, you know, practice squarely an
16 issue in your ruling on summary judgment.  We have to defend
17 this now.  We have to say why it's reasonable and certainly
18 one of our main points is this is really venue driven.
19         I mean, I'll tell you there's an irony to all of
20 this because if you'd just like to enter an order
21 eliminating all exclusive agreements in the ticketing
22 industry right now, it wouldn't be a bad thing for
23 Ticketmaster.
24         We have to pay for these things in competition
25 because this is how the venues want to do it so we have to

1   put that case on.  Now, that it is an industry phenomenon

2   and it's not just some Ticketmaster plot to take over the

3   world.

4               THE COURT:  Okay.

5               MR. LORIG:  Your Honor, we would certainly

6   stipulate that there is no exclusive --

7                          (Laughter.)

8               THE COURT:  Well, I don't know it's a one-sided

9   stipulation then.

10              All right.  The defendants, The String Cheese

11  Incident.  The Complaint and the settlement agreement and

12  the terms of the settlement aren't coming in.

13              But if there are relevant admissions by a party,

14  then they're all admissions by a party.  So I think the

15  plaintiff, if it wants to use any of these, you need to make

16  a list.

17              I know you don't know yet whether there'll be any

18  contrary testimony; but if there's admissions that you think

19  you'll need to use, I think you should make a list, provide

20  it to the defendants so they can indicate in advance if

21  there are objections.

22              Just because they are admissions doesn't

23  necessarily make them relevant now; but I can't really tell

24  the relevance until the time of trial.  But you guys can so

25  it really would be better, again, if you would work on this

1    and I don't think there should be any discussion that these

2    statements come from a settlement agreement.

3              So the question to impeach the witness, which I

4    assume is the point, would be, you know:  Didn't

5    Ticketmaster say this at some point in the past without

6    saying:  Didn't you settle a lawsuit on this same topic or

7    some such thing.

8              Damages relating to trade secrets and the CFAA

9    claims.  I'm inclined to grant it in part and deny it in

10   part.  I don't know where the computation of lost business

11   value damages resulting from the trade secret and CFAA

12   claims is, although I think in your papers plaintiffs kept

13   saying there was one or that Mr. Yurkerwich came back and

14   said, yes, I was doing it for this purpose.

15             But if it hasn't been disclosed, then it can't be

16   used so he can't present a damages argument for the trade

17   secret and CFAA claims alone based on the lost business

18   value so -- and as we're going through, I think that means

19   some of these jury instructions can be deleted or need to be

20   deleted as well.

21             Nondisclosure of the Section 1030(e)(11) losses.

22   If you didn't disclose it, you can't seek them but I don't

23   think that means -- I don't think it goes to the standing

24   issue.

25             Were you trying to contest the standing now?

1    Making some kind of motion on --

2              MR. WALL:  Mr. Schecter will address this, Your

3    Honor.

4              THE COURT:  Thank you.

5              MR. SCHECTER:  Yes.  As a matter of standing,

6    after the plaintiff amended the Complaint in late

7    February-early March, they amended their disclosures to add

8    witnesses, to add subject matter related to the trade

9    secrets and the CFAA claim.

10             None of those witnesses identified that they were

11   going to testify as to loss.  There were no documents

12   produced until two weeks ago when we got a computation of

13   loss and a fourth amended disclosure.

14             So it's a matter of disclosure to us, Your Honor,

15   and we would contest standing because there was never any

16   disclosure in discovery about what the loss was and what

17   comprised it; and there's case law where courts have come

18   out multiple ways depending on what the law says.  We had no

19   ability to test it, to do discovery on it.

20             THE COURT:  Well --

21             MR. LORIG:  Your Honor, Ms. Trebicka is prepared

22   to argue that for our side.

23             THE COURT:  All right.  Well, you got prepared so

24   I'll hear from you.

25             MS. TREBICKA:  I'll take the lectern then.

1     THE COURT:  Please.

2     MS. TREBICKA:  This one suits my height better so

3  I'll take this one.

4     THE COURT:  Actually, the lectern goes up and down

5  which is really neat for us short women.  I can't tell if

6  you're really short.  I am.

7     MS. TREBICKA:  So, Your Honor, the loss that they

8  are now contesting we never disclosed is a jurisdictional

9  issue and that's very clear in the text of this passage

10  itself.

11     And the term "loss" it says is something that any

12  person who suffers damage or loss by reason of a violation

13  of this section may maintain a civil action.

14     So it's purely a jurisdiction threshold and it

15  does not need to be disclosed and it does not need to be

16  disclosed because FRCP 26(a)(1)(A)(iii) which requires a

17  disclosure that now defendants are relying on only requires

18  disclosure of a computation of the category of damages.

19     This is a jurisdictional issue.  It's a threshold

20  issue.  It's not a category of damages.

21     THE COURT:  I agree with that argument and so

22  that's why I was asking counsel whether they were disputing

23  standing now which I suppose, if it's not in the Complaint,

24  they could still do.

25     MS. TREBICKA:  It is in the Complaint, Your Honor,

1   and --

2           THE COURT:  So you just gave a statement of the

3   loss but without details; is that --

4           MS. TREBICKA:  We provided sufficient details and,

5   frankly, they didn't ever -- they did never contest the

6   sufficiency of the pleadings on the loss.

7           THE COURT:  Right.

8           MS. TREBICKA:  And in all the cases that defendant

9   are now citing for the proposition that we should not have a

10  CFAA because we don't have standing, because we haven't

11  disclosed the loss, actually deal with either judgment on

12  the pleadings or a motion to dismiss.

13          So they don't really help here.  We disclosed we

14  have more than $5,000 in loss.  They never contested the

15  sufficiency of the pleadings.  Now is not the time.  If they

16  do, then I suppose we'll deal with it but this is not the

17  proper mechanism, Your Honor.

18          THE COURT:  Okay.  Well, I can dismiss any claim

19  right now that I feel I don't have jurisdiction over so not

20  only can I but I should; and so I'm asking the defense:  Is

21  there an argument that did you have no warning from the

22  pleadings that they were alleging more than $5,000 in loss

23  as a jurisdictional matter?

24          MR. SCHECTER:  There was notice pleading, Your

25  Honor.  The issue is whether they had disclosed evidence

1   during discovery that would permit them to put on proof.

2          We're in a bit of an odd posture on the trade

3   secret --

4          THE COURT:  Do they need to put on proof of the

5   jurisdictional issue?

6          MR. SCHECTER:  Oh, absolutely.  They're going to

7   have to prove that they suffered at least $5,000 worth of

8   loss.  And in fact there really is no debate about that

9   because on September 21st of this year we received a

10  fourth supplemental disclosure which contained a two-page

11  chart -- I can pass it up to Your Honor -- which details the

12  hourly expense of the employees.

13         We received that six months -- five and a half

14  months after the close of discovery.

15         THE COURT:  Okay.  Well, they can't get that as

16  damages but that's different from a jurisdictional

17  allegation.

18         MR. SCHECTER:  Understood, Your Honor.  But what

19  we're left with is -- and I understand the Court's ruling --

20  is there's no documents produced during discovery that

21  categorize the loss.

22         So we contest loss.  They pled it.  They could

23  prove it.  We contest it and there's no witness disclosed

24  about loss and there was no disclosure of what the dollar

25  figures were that comprised loss so that we could wait until

1    trial but there will be a JMOL at trial because there is no

2    cognizable evidence testimonial or documentary that can come

3    in.

4            Again, we received this computation but we

5    received it three weeks ago or a month ago now.

6            THE COURT:  All right.  I'll figure that out at

7    trial if I have to.

8            All right.  Motion in limine re certain evidence

9    to establish antitrust damages.  This really seems like a

10   summary judgment motion to me and it should be argued to the

11   jury so I'm inclined to deny that motion.

12           MR. WALL:  May I be heard, Your Honor?

13           THE COURT:  Yes.

14           MR. WALL:  So let me explain why.  First of all,

15   why I think this is an in limine motion.  Again, this

16   relates back to the point we're dealing with these 139

17   artists.

18           When we got the damages disclosure and so forth,

19   Mr. Yurkerwich had the six categories you've already

20   addressed.  Three of them are specifically related to the

21   fan club; three are not.

22           In the category of the ones that are not, which

23   we're talking, you know, well over a hundred artists here

24   so, you know, it's 88 percent of the damages falls outside

25   the ones that are related to the fan clubs specifically.  So

1    it's by far the bulk of the damages.

2            Those include artists like Beyonce and Jay Z.

3    It's two million total Ticketmaster tickets at which they

4    said they would have the presales, where the entirety of the

5    showing that is made in Mr. Yurkerwich's report and which

6    appears to be trying to get back to this database that they

7    kept, is that Beyonce's husband Jay Z is a very close

8    business partner with Live Nation which is true and, as a

9    result of that, that was sort of an impenetrable problem in

10   their getting the business.

11           It includes also the artist Miley Cyrus.  This is

12   341,000 tickets where the internal Songkick document says

13   that they're not using CrowdSurge because Live Nation pulled

14   out their checkbook which on the face of it sounds like

15   competition.

16           But regardless, it isn't anything that has to do

17   with restrictive fan club criteria or the exercise of

18   exclusive rights or anything like that.

19           That's what they're saying it includes the

20   Zack Brown band, 350,000 tickets where the document says

21   that they did a deal with Ticketmaster this year; we might

22   get them next year and all sorts of things like that.

23           Now, it has been --

24           THE COURT:  Sounds like some of this is evidence

25   for you, not them.

1          MR. WALL:  Indeed.  But my point is that it has

2     been the law for a long, long time in the antitrust field

3     that regardless of whatever leeway one may have under the

4     Bigelow case with respect to the extent of damages, that

5     damages can only be based upon anticompetitive conduct.

6          And our point here is we're looking at a report

7     where for 88 percent of the damages we can't see anything

8     other than a rhetorical connection to the actual practices

9     that they have complained about.

10          Now, for one of those categories, Your Honor has

11     sort of alluded to it earlier, it's explicitly based on

12     things that Live Nation did; and that's not an issue whether

13     Live Nation would be accountable for what Ticketmaster does.

14          It's a question -- there aren't any claims against

15     Live Nation; that it's about Live Nation conduct in its own

16     capacity as a concert promoter and so forth.

17          So I don't see how anything on that basis should

18     be allowed to come into evidence.  For others, it's a close

19     call.

20          What we're really talking about here by the way we

21     make this in limine motion, Your Honor, is we need a

22     protocol, we need a criteria for how something -- it's not

23     just the hearsay issue which is a related issue.

24          It is how does this get validated as being

25     potentially related to one of the things they say is

| | |
|---|---|
| 1 | unlawful as opposed to this amorphous concept of this is |
| 2 | pressure and harmed relationships and things which could |
| 3 | just as easily be competition as anticompetitive effects. |
| 4 | So we raised it here as a kind of clarion call to |
| 5 | say this is just going to happen over and over again at this |
| 6 | trial.  We don't -- we fully understand Your Honor is not |
| 7 | going to want that to happen at trial. |
| 8 | So how do we get ahead of this issue and have some |
| 9 | way to make sure that the only evidence that is presented |
| 10 | relates to claims and is admissible evidence about the |
| 11 | effects of those claims? |
| 12 | MR. WOLFSON:  May I respond, Your Honor? |
| 13 | THE COURT:  Yes. |
| 14 | MR. WOLFSON:  Your Honor, one thing that's |
| 15 | uncontested in the case is the law on a 100 percent |
| 16 | parent-owner's liability, direct liability for its |
| 17 | subsidiary's anticompetitive conduct. |
| 18 | And in agreed jury instruction No. 32, the parties |
| 19 | agree that the law is that if the 100 percent parent |
| 20 | corporation directs, aids, participates in a subsidiary's |
| 21 | anticompetitive scheme, then it is directly liable for those |
| 22 | acts and for its subsidiary's acts. |
| 23 | Here Mr. Wall is saying:  Well, we don't |
| 24 | understand how this could at all be possible that Live |
| 25 | Nation's conduct is connected to this scheme. |

1          Well, what the evidence has shown is that -- and

2   we've talked about this in our opposition -- Live Nation did

3   the following:  It enforced the fan club.  It was out in the

4   market saying you have to abide by the fan club.

5          It was talking to its artists saying you're going

6   to face a lot less, you know, resistance if you're using

7   Ticketmaster instead of Songkick.

8          It entered into agreements where its artists were

9   then -- well, artists that promoted because the artists were

10  represented separately by managers -- where they were

11  agreeing to use Ticketmaster for artists presales.

12         Again, this is an element of exclusive dealings,

13  substantial foreclosure.  It's not just Ticketmaster's

14  contracts here that are at issue.  It's also the agreements

15  to foreclose competition from rival competitive artist

16  presale ticketing service providers.

17         Your Honor, I think really hit it on the head that

18  this is a summary judgment motion in disguise.  Category one

19  of three categories that defendants challenge here is where

20  Ticketmaster or Live Nation threaten to pull marketing away

21  from artists or prevent them from running album bundles or

22  fan club bundles on 92 percent of their tickets if they use

23  any artist presale ticketing service provider other than

24  Ticketmaster.

25         That was an argument they raised in summary

1    judgment.  It was rejected in Your Honor's recent order.  So

2    category one immediately is something that Your Honor has

3    already said that goes to the jury.

4           The idea that there's these narrow boxes that, you

5    know, we are somehow foreclosed from bringing up Live

6    Nation's conduct because Live Nation itself is not accused

7    of tying concert promotion to ticketing services.

8           Again, that was an issue that Your Honor dealt

9    with in the summary judgment order ruling that this is about

10   exclusionary conduct in the market based on agreements,

11   based on contracts, based on the Live Nation enterprises'

12   overall conduct within the relevant markets.

13          To be clear, we're not arguing that Live Nation's

14   conduct is relevant as a concert promoter but as

15   Ticketmaster's parent corporation and the party directing

16   Ticketmaster to do these acts.

17          Michael Rapino, the documents have shown, as we've

18   cited in summary judgment opposition in papers, is up to his

19   elbows in this and he was specifically directing when fan

20   club policy related communications go out to the market,

21   receiving updates constantly on these activities, asking:

22   How are we going to get out there and beat CrowdSurge?  How

23   are we going to get out there and beat Songkick?

24          You also have to take in mind that it's the

25   overall combined effect here that matters.  Because

Ticketmaster has its fan club policy out in the market.

It's aggressively enforcing the fan club policy.
It's telling people it cannot use any other presale provider
but Ticketmaster; and it's creating the market dynamic
underlying these three categories of conduct where sometimes
it was Ticketmaster committing these acts, sometimes it was
Live Nation then stepping in as part of a multi-punch combo.

You had Ticketmaster for example in the
Paul McCartney situation.  You had Ticketmaster soften him
up and then who comes in and closed the deal?

Michael Rapino from Live Nation.

So, again, these are factual issues.  These are
issues that the jury is going to have to look at.  They're
going to have to look at it within the context of all the
other acts and the jury is going to have to decide is this
part of the overall competitive scene?  Are these acts that
give rise to damages?

To the extent that Mr. Wall was saying that none
of this ties to our theories addressed.  It ties into
exclusive dealing such as forcing artists into exclusive
deals for artist presale ticketing services with
Ticketmaster, extending Ticketmaster's contracts so they are
effectively exclusive deals for all tickets despite any
house-seat carve-outs.  Live Nation itself entering into
these exclusive deals.

1          To the extent that Live Nation was coordinating

2     the vertically arranged boycotts so that these artists

3     wouldn't use Songkick, that's again analyzed under the rule

4     of reason as Ticketmaster is 100 percent parent corporation,

5     aiding Ticketmaster's monopolization attempts.

6          And to us this really is a quintessential fact

7     issue for the jury to decide.  It's not something where you

8     can just say this is categorically not tied to Songkick's

9     claims.

10          THE COURT:  Let me go back because you mentioned a

11    couple of different things and make sure I understand.

12          You mentioned several different types of antitrust

13    claims and I don't know whether you're planning on

14    proceedings with all of them.

15          You've got the tying exclusive dealing,

16    hub-and-spoke, and this vertically arranged boycott so is

17    Songkick planning on going forward with each of these

18    different theories?

19          MR. WOLFSON:  Your Honor, the hub-and-spoke

20    conspiracy, they've asserted that we've alleged a

21    hub-and-spoke.  We don't.

22          THE COURT:  Okay.

23          MR. WOLFSON:  Yeah.

24          In terms of tying claims, that's a portion of our

25    overall claims.  Exclusive dealing also a portion of our

1  overall claims, yes.  Vertically arranged boycotts, a

2  portion, absolutely.

3           THE COURT:  Okay.

4           All right.  Now, the fan club policy, defendant's

5  motion in limine.  I'm not really sure what part the fan

6  club policy is playing in this case overall.  I don't know

7  if it's a sideline or how important it is.

8           But is the plaintiff planning on using any

9  documents that haven't been produced?

10           MR. WOLFSON:  This is their other motion in

11  limine, Your Honor?

12           THE COURT:  Yes.

13           MR. WOLFSON:  No.  Except to the extent documents

14  are public or for impeachment purposes but --

15           THE COURT:  Well, for impeachment purposes the

16  fact the document is public doesn't mean you're not to turn

17  it over to them.

18           MR. WOLFSON:  No.  I'm sorry.  Are you saying that

19  we have to turn it over for discovery purposes or if they

20  request it?

21           THE COURT:  Or at least identify it.

22           MR. WOLFSON:  Sure.  We're not -- for making our

23  case on fan club policy compliance, we are intending on

24  relying on documents that were produced in the case.

25           THE COURT:  Okay.

1      And what about this testimony?  You going to have

2   people testify to the way things looked even though you

3   don't have any evidence now of what it looked like?

4      MR. WOLFSON:  First of all, Your Honor, one of the

5   assumptions in that question is that we don't or didn't

6   produce anything about how Songkick helped their artists

7   comply with the policy; and we actually -- we disagree with

8   defense characterizations along those lines.

9      We produced 363,000 documents, 152,000 of which

10  came from the head of compliance at Songkick.  She alone

11  produced more than five times as many documents as --

12     THE COURT:  I don't know why you keep saying that.

13  What difference does it make how many documents each side

14  submitted?  So you produced more than they did.  I hope they

15  produced everything they were supposed to.  Maybe they had

16  fewer so it's not relevant to anything.

17     My question was:  Do you plan on having people

18  testify to the way something looked even though there's no

19  document showing what it looked like?

20     It's a simple question.

21     MR. WOLFSON:  Your Honor, we -- the way something

22  looked, I don't believe so.  But to the extent of the

23  substance of content in fan clubs generally speaking, yes,

24  because they will say things like:  We worked with our

25  clients to put up context and put up pictures and videos.

1         But saying for Jack Johnson on September 14th,

2    he had a picture with a blue guitar and red stripes signed

3    for his clients.  That's not, unless we can base it off of

4    documents under the rules, that's not our intention.

5         THE COURT:  All right.

6         Then we have these various categories of evidence

7    that may or may not be hearsay and may or may not be subject

8    to an exception.  So testimony about statements of artists,

9    managers, about why the artist was not using Songkick.

10         I assume that somebody is -- this is not going to

11    be through Yurkerwich.  It's going to be through somebody

12    else who is going to testify to what the manager said either

13    to that person or in some other form that's going to make it

14    admissible?

15         MR. WOLFSON:  Yes, Your Honor.

16         THE COURT:  And so give me an example.

17         MR. WOLFSON:  We submitted a couple of

18    declarations from folks like Matt Jones, the CEO of

19    Songkick, Stephen Glicken.

20         THE COURT:  You mentioned Mr. Glicken and there

21    was an excerpt of something from his declaration and it

22    seemed to me the first part where he was saying somebody

23    said something to me is likely admissible but then it went

24    on to say:  And I understand these conversations continued.

25    That there's no basis for that.

1          MR. WOLFSON:  And, Your Honor, I think we will --

2     not think.  We will tailor testimony to make sure that it is

3     admissible within those lines.

4          THE COURT:  Okay.  So the Emmert case is not

5     really relevant here.  There are several cases.  I wish

6     there were more.  But there are several that interpret the

7     motive aspect of 803 and so it seems to me that the

8     statements, to the extent they're direct statements and

9     recognizing that's only one of the levels of hearsay we have

10    to deal with or I have to deal with, that the statements of

11    their motive for not using Songkick or using Ticketmaster

12    are admissible under 803.

13         I have a whole lot of problems with the way that

14    rule seems to apply to this case but I can't change the

15    rules.  So the information comes in for motive if it's

16    properly presented but not for the truth of the matter

17    asserted.

18         It's a little bit beyond me of what use it is if

19    it's not for the truth of the matter but that will be the

20    instruction that the jury will get.  I don't, again, go into

21    this fan club.  I'm not sure what --

22         MR. GASS:  Your Honor, may I be heard briefly

23    before we move on?

24         THE COURT:  Let me finish these.

25         The testimony about statements of artists'

1    managers about the belief that the fan club was compliant, I

2    don't even know what that has to do with anything.

3            But if an artist-manager is on the stand and he

4    wants to talk about that, I guess I'll rule on its

5    admissibility when it to comes to that.

6            By the way, all the motions in limine are

7    tentative and should something happen at trial that suggests

8    that I might be inclined to change my ruling, you should

9    certainly bring that to my attention.

10           Hearsay in these e-mails, I have no clue as I said

11   before.  I have no way of knowing if some of the e-mails

12   could be presented for a non-hearsay purpose.

13           I don't know who they're to or from and I don't

14   know what they say so to the extent that plaintiff wants to

15   submit these e-mails as evidence, you need to let me -- you

16   need to gather them together and provide them to me in

17   advance.

18           I don't want to be ruling on these things on the

19   fly.  There's, frankly, too much at stake in this case for

20   both sides and I'd like to try this and I'm sure you would

21   like me to try this only once; and so the more advanced

22   notice I have about hearsay issues, which are often very

23   difficult to deal with, the better.

24           The database of conversations, I'm not sure.

25   Doesn't appear that the defendants are contesting these are

1    business records.

2           So if a certain document meets the test for

3    business records and there's no objection and certainly if

4    the statements weren't made or recorded in anticipation of

5    litigation, then those may well come in.

6           But as I said, I really need to get these things

7    in advance so I can give you my best effort at making the

8    right ruling.

9           And you may need, if you find some more authority

10   that's targeted to the types of evidence and provide it to

11   me in advance, that could be very helpful.

12          So, Counsel, you can address all the issues or

13   whatever.

14          MR. GASS:  Your Honor, thank you for the

15   opportunity.  Andy Gass on behalf of defendants.

16          I think Your Honor was exactly right in

17   highlighting the limit on the articulation of the rule on

18   cases like the Equifax case where the courts are clear that

19   the hearsay evidence, for example with respect to the

20   alleged cause of the lost business that Songkick is

21   asserting -- can never come in, quote, as evidence of facts

22   recited as furnishing the motive.

23          And the reason why that's important is that is

24   precisely what Songkick is going to try to do; and I say

25   that with confidence because we heard Mr. Lorig earlier

1   today say that in the relevant part of their case they plan

2   to have three witnesses come up and explain the basis for

3   how Songkick lost the business of these 139 artists;

4   Mr. Glicken, Ms. Bellin, and Mr. Block.

5            That's the only evidence they're going to have

6   that, for example, Adam Flick at Creative Artists Agency

7   threatened Fleetwood Mac or the Eagles; and on the basis of

8   those threats, Fleetwood Mac and the Eagles decided not to

9   do business with Songkick.  There's nothing else that they

10  will have.

11           So when Mr. Jones, for example, or someone else

12  tries to testify:  I talked to Adam Flick.  Here's what he

13  told me.  That testimony is not relevant to motive unless

14  there's some other evidence that Live Nation actually issued

15  those threats.

16           So that's really the basis for the motion in

17  limine; that there isn't going to be a non- -- it's going to

18  be a permissible purpose for this testimony given the way

19  that they're going to try to show the fact of the cause.

20           THE COURT:  All right.

21           And somewhere over here I cut you off early on and

22  said I was going wait to the end and then we ended up

23  arguing each individual one so I will give you the

24  opportunity to argue about any of these that you want.

25                    *(Counsel conferred.)*

|   |   |
|---|---|
| 1 | *(Pause in the proceedings.)* |
| 2 | MR. LORIG:  I don't think we need to add anything. |
| 3 | Looking at some people, there's silence.  I don't believe |
| 4 | so, Your Honor. |
| 5 | THE COURT:  Okay. |
| 6 | MR. WALL:  Same, Your Honor.  I'm sorry. |
| 7 | THE COURT:  All right. |
| 8 | I've taken a pass through your jury instructions. |
| 9 | I wish you had agreed on more than you did but it looked to |
| 10 | me like you were, on many of them, taking a model |
| 11 | instruction, I think the ABA instructions for the most part, |
| 12 | and then just tinkering with it in a way that suited your |
| 13 | client which is what attorneys always try to do; but I may |
| 14 | just take out all the tinkering and go with the model |
| 15 | instruction or I may make improvements or changes. |
| 16 | Ordinarily, I would not even start a trial with |
| 17 | this many disputes but I think we can handle this without |
| 18 | delaying the trial especially since the trial will take at |
| 19 | least a few days. |
| 20 | While we're on -- |
| 21 | MR. WALL:  Your Honor, may I just highlight maybe |
| 22 | two issues on the jury instruction and I'll say no more |
| 23 | about them today? |
| 24 | THE COURT:  Sure. |
| 25 | MR. WALL:  One is we have a major substantive |

1   disagreement as to whether any of the model forms, but in

2   particular the ABA model form, is consistent in its

3   articulation of the rule of reason and the role of less

4   restrictive business alternatives vis-à-vis the O'Bannon

5   case, the most recent Ninth Circuit case on this issue.

6        The O'Bannon case sets a stepwise way of dealing

7   with this that the steps are simply different than what one

8   finds in the ABA model rule; and one doesn't get to the

9   balancing step under the O'Bannon decision except under

10  certain specific and restricted circumstances.

11       So I would just -- I will say no more about it

12  today.  That is one that I ask you to take a look at because

13  I do think that there is just a circuit variation.

14       The second point is that the other sort of

15  meta-dispute between us is that as to this specificity of

16  the instructions about the practices that are pled in the

17  Complaint and that are supposedly underlying their case.

18       The plaintiff is generally opting for highly

19  generalized instructions.  We're trying to make sure that

20  the jury gets all the elements of all of the different

21  offenses which are embedded into their theory.

22       And so those two things, I think more than

23  anything, are the disputes and they're not just -- I mean,

24  we fight over a lot.  Don't get me wrong but those are

25  good-faith differences of opinion about how the law works in

1    this area that I ask Your Honor to consider.

2              THE COURT:  Well, certainly for the latter point I

3    have to wait and see what comes in at trial to figure out.

4              MR. WALL:  And I understand that that may be what

5    it is.  But that's really the essence of the dispute.

6              THE COURT:  Okay.

7              MR. TERUYA:  Kevin Teruya from Quinn Emanuel for

8    plaintiff Songkick.

9              Your Honor, on the issue regarding O'Bannon, we

10   don't agree that the O'Bannon case changes the

11   well-established four-step procedure under the rule of

12   reason.

13             We submitted a supplemental authority including a

14   case called County of -- hopefully I pronounce this

15   correctly -- Tuolumne.

16             THE COURT:  Tuolumne.

17             MS. TREBICKA:  In which lays out a four-step

18   process where there's first the plaintiff showing

19   anticompetitive effect or harm, then the defendant showing

20   pro-competitive benefits, then the plaintiff having an

21   opportunity to undermine the defendant's showing of

22   pro-competitive benefits.

23             And if the plaintiff does not undermine the

24   defendant's showing, then, as the name of the rule suggests,

25   there's a rule of reason balancing test where the court --

1   sorry -- where the fact-finder would weigh the

2   anticompetitive effect against the pro-competitive benefit

3   to determine whether on balance the conduct is reasonable.

4           And the O'Bannon case did not overrule that

5   approach and in fact the O'Bannon case cites favorably

6   County of Tuolumne on the least restrictive alternatives

7   approach.

8           And we also think that this approach makes sense

9   because one can imagine a situation where conduct, even

10   though there is no less restrictive alternative, would have

11   huge anticompetitive effects but very small pro-competitive

12   benefits.

13           And in that circumstance, it wouldn't make sense

14   for the fact-finder not to be able to say that this conduct

15   is not reasonable because of the huge anticompetitive effect

16   in comparison to the pro-competitive benefit.

17           In addition, with respect to the fact that the

18   plaintiff's -- the defendants want to fill in the blanks in

19   the models which we have predominately used in certain ways

20   to limit our claims, we don't think that that is

21   appropriate.

22           You know, we have tried to stick to the models as

23   much as possible and -- but there are blanks in the models

24   and the defendants would like to fill in the blanks about

25   our claims in certain ways that narrow them.

And as Your Honor said in her summary judgment order, as we've heard several times today, some of this conduct may not fit neatly into a box.

And just because something doesn't fit neatly into the tying box or exclusive dealing box doesn't make it okay or not anticompetitive under the antitrust laws.

And so we think we should be able to have to fill in the boxes or pick which instruction is appropriate among the ones in the model.

You know, we shouldn't have to go with the hub-and-spoke conspiracy instruction if that's not what we're claiming; and so we think as the plaintiff we should be allowed to pick or otherwise we would submit on what we've put in the statements in our submissions on the jury instructions.

THE COURT:  Well, actually I'll get to pick so.

*(Laughter.)*

THE COURT:  Thank you.

MR. TERUYA:  Thank you.

THE COURT:  All right.  I'll know better how many jurors we'll need when we figure out how much time this trial is going to take; but each side gets three peremptories as you probably know.

The verdict form.  I'm not -- repeat not -- sending a 44-page, 95-question verdict form to the jury.

1    They will just quit.  They don't get paid either.

2            They don't need to find every element.  We'll give

3    them the jury instructions that tell them when they can find

4    for the plaintiff and the cross-complainant; and if they

5    find all those elements by a preponderance of the

6    evidence -- and you can certainly remind them of all of that

7    in the closing -- so the plaintiff's version is much closer.

8            I don't need any advice from the jury.  Thank you

9    very much.  Unless there's a law that says I have to ask for

10   their advice so we don't need instructions on the equitable

11   claims.  There's already too many instructions and too many

12   questions on the verdict form.

13           We do need to figure out how to deal with the

14   issue of damages so you need to think further about that.  I

15   don't want to end up with a verdict form that we all look at

16   and say:  Well, now how do we figure out what they really

17   meant to do and whether there is inappropriate duplication?

18   So I suggest you keep working on that.

19           You submitted a stipulation concerning the trial

20   and I certainly appreciate that you agreed on something and

21   you can stipulate to whatever you want.

22           But if there's documents that you know you want to

23   use and the other side is going to object, again, if you let

24   me know as soon as possible what they are, the categories

25   are, so that I can make the best -- my best effort at a

1    proper ruling that would be to everyone's benefit.

2           And you mentioned something about hopefully after

3    2:00 o'clock I can rule on things like depositions and

4    objections.

5           The reason I go from 8:00 to 2:00 is because I

6    have a day job and it starts at 2:00 o'clock when I get rid

7    of my trial.  We are six judges down.  We should have eight

8    more than we have.  That means we're 14 judges down and we

9    have 22 active judges.

10          So I can only do what I can do so I can't give up,

11   stop working for all the other citizens in the district for

12   the time it takes for you to try your case.

13          So I will do my best but you really need to focus

14   on getting as much agreed to as you can and I'll do as much

15   as I can to address the issues in a way that helps you

16   present your case effectively.

17          And again with regard to the deposition testimony,

18   I have no idea what the depositions were like.  Sometimes

19   the lawyers only make valid objections.  Actually it doesn't

20   happen all that often but sometimes they object to every

21   question for no good reason.

22          So if there's a few objections, I can rule on them

23   in time enough for you to use them the next day; but if it's

24   full of objections that I have to rule on, as I said, I may

25   not be able to drop everything and rule on that at 2:00 p.m.

1   except if it's 2:00 p.m. on an Friday since I always work

2   over the weekends anyway.

3            If it's 2:00 p.m. on a Friday, I can probably

4   e-mail you my responses by Sunday and have you working on it

5   by Tuesday.  But I can't promise that.

6            And also with regard to the time, you need to

7   agree on the time to be attributed to each of you.  I'm not

8   going to be able to tell which one of you gets the time

9   charged.

10           With regard to those video depositions, generally

11  we don't report those.  We'll just have the transcripts

12  attached to the record.

13           So is that agreeable to everybody?

14           MR. WALL:  Yes, Your Honor.

15           MR. LORIG:  Yes, Your Honor.

16           THE COURT:  All right.  Fine.

17           Well, I think we've -- at least I hope we've done

18  enough for one day.  Somebody rolled in a cart full of

19  boxes.  I hope those weren't for me.

20           MR. LORIG:  No, Your Honor.

21           THE COURT:  Okay.  I have a whole bunch of boxes

22  for you.  I don't know when you want to arrange to take

23  those out of here but the sooner the better.

24           What's your suggestion with regard to the trial

25  date?  I think you have a lot to think about here and a lot

1    to talk about with the mediator.

2          MR. WALL:  Well, I'll tell you that I think that

3    the best thing for all parties concerned is if Your Honor

4    were to set a trial date sometime in mid-February.  I don't

5    think you'll see us if you do that.

6          MR. LORIG:  Your Honor, I originally wanted a

7    trial date after Thanksgiving where it's going to conflict

8    with your criminal trial.

9          But since Your Honor appears to be granting in

10   part the Daubert, it seems to me that we need the time to

11   fix Mr. Yurkerwich's report, give it to them in enough time

12   for them to take his deposition and so I would ask for a

13   January -- February is -- I have a conflict in February but

14   if Your Honor can make room for us in January, it would be

15   good for us.

16         MR. WALL:  I did not anticipate the fix and

17   redepose Mr. Yurkerwich part of this so --

18         THE COURT:  Well, I don't think there's -- I'm

19   just going to make a suggestion based on looking at it

20   already.

21         I think all of the information is in there.  I do

22   think it would have to be presented to the jury in a

23   different way, but I don't know why there would be any need

24   to redepose him.

25         It's just taking the information that's in there

1   that I've allowed because there's no category so he couldn't

2   aggregate the information.  It would have to be separated

3   out.

4          But if it's not -- if the information isn't

5   already in the report, I haven't been asked to and I'm not

6   reopening the expert witness deadline for him to do

7   something that he hasn't already done.

8          MR. WALL:  I just -- I fear, Your Honor, that it

9   would just be better for all around if we had a little bit

10  more time to react to this; and the last thing I want to do

11  is to go another round and round with depositions and stuff.

12  I have no interest in that.

13         I just think that what's going to happen here as a

14  practical matter is that a lot of the discussions we're

15  going to have about settlement are going to be taking all of

16  this into account.

17         THE COURT:  Yes.

18         MR. WALL:  What you've done here and that's not

19  going to happen overnight.  That's going to take some time

20  and we're going to -- and the holidays are coming up which

21  means it's going to be hard to grab the mediator and all

22  that kind of stuff.

23         So I think that if you set us off in February,

24  that's best chance to get --

25         THE COURT:  I'm not going to set you off into a

1  month where Mr. Lorig has conflicts.

2         MR. WALL:  I'm sorry.  I'm sorry.  I shouldn't

3  have done that.  I forgot that.  The first of March if that

4  would work.

5         THE COURT:  Well, first of all, you need to get

6  together with your calendars and then Ms. Plato has to look

7  at my calendar.

8         Unfortunately, the way this works is the defendant

9  has a right to go to trial within 70 days of the Information

10 or the Indictment, et cetera, et cetera, et cetera; and they

11 usually continue the trials with a Speedy Trial waiver and

12 then that's the new date.

13        But anything past 70 days, it's -- I don't even

14 know who's been indicted and who will be assigned to me yet.

15 Once I have your date, then Ms. Plato will do her best to

16 remind me when people are continuing their dates to stay

17 away from that block of time.

18        But it also would be helpful before the mediation

19 if you can -- and I certainly hope I don't see you again.

20 No offense but --

21        MR. WALL:  None taken.

22        THE COURT:  -- if you could pare down your witness

23 list, rethink it, and come up with better numbers so I can

24 come up with a more realistic number.

25        If the one I have is not realistic but I can look

1  for a block of time that fits in at least what I think the

2  time I'm going to give you and which is clearly going to be

3  more than two weeks.

4          MR. WALL:  May we take it as Your Honor's

5  direction that we are to meet and confer and then to advise

6  the Court of both a mediation date and a proposed trial

7  date?

8          THE COURT:  I think that would be helpful.

9          MR. WALL:  Thank you, Your Honor.

10          THE COURT:  All right.  Thank you.

11          MR. LORIG:  Your Honor, the only thing I would

12  add.

13          THE COURT:  Yes.

14          MR. LORIG:  Because Songkick has been forced out

15  of business, the longer this waits, the worse it is for

16  them.  That's why I asked for January but we will meet and

17  confer and discuss it.

18          THE COURT:  Okay; great.  Thank you.

19          MR. WALL:  Thank you very much, Your Honor.

20          (At 4:53 p.m. proceedings were concluded.)

21

22                    -o0o-

23

24

25

CERTIFICATE

I, PAT CUNEO, CSR 1600, hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


Date:  October 24, 2017


_____
/s/ PAT CUNEO                _

PAT CUNEO, OFFICIAL REPORTER
CSR NO. 1600

MR. GASS: [2]  70/21 72/13
MR. LORIG: [88]
MR. SCHECTER: [4]  55/4 57/23 58/5
58/17
MR. TERUYA: [3]  11/14 76/6 78/18
MR. WALL: [38]  3/20 4/24 5/18 16/23
21/14 31/24 36/25 37/18 38/13 38/16
41/3 41/9 41/13 41/23 42/1 44/13
44/16 45/23 52/7 52/13 55/1 59/11
59/13 60/25 74/5 74/20 74/24 76/3
81/13 82/1 82/15 83/7 83/17 84/1
84/20 85/3 85/8 85/18
MR. WOLFSON: [20]  6/14 6/18 6/24
7/3 7/7 50/12 50/15 62/11 62/13 66/18
66/22 67/9 67/12 67/17 67/21 68/3
68/20 69/14 69/16 69/25
MS. TREBICKA: [7]  55/24 56/1 56/6
56/24 57/3 57/7 76/16
THE CLERK: [2]  3/2 3/8
THE COURT: [160]

## $

$117 [1]  21/2
$5,000 [3]  57/14 57/22 58/7

## -

-and [1]  2/15
-oOo [2]  3/2 85/22

## /

/s [1]  86/16

## 0

0600 [1]  2/19

## 1

10 [3]  12/7 12/19 18/10
100 [4]  10/24 62/15 62/19 66/4
100 million [1]  12/12
10250 [1]  2/12
1030 [1]  54/21
107 [1]  14/9
10th [1]  2/6
11 [3]  16/11 16/14 54/21
1100 [1]  2/13
117 [1]  15/7
117 million [2]  10/25 15/4
12 [1]  3/3
13 [3]  13/14 18/19 18/23
139 [7]  17/4 33/8 44/19 45/20 46/25
59/16 73/3
14 [3]  14/3 42/7 80/8
14.0 [2]  14/8 14/9
14th [3]  49/17 49/20 69/1
15-9814 [1]  1/9
152,000 [1]  68/9
16 [2]  49/18 51/16
1600 [4]  1/25 2/22 86/3 86/17
1782 [1]  2/24

## 2

20 [2]  20/25 40/2
2000 [1]  2/18
2012 [1]  9/17
2013 [1]  9/17
2014 [2]  9/17 30/1
2015 [4]  9/17 10/23 11/10 15/4

2017 [5]  1/22 3/1 15/6 16/13 86/11
213-894-5523 [1]  2/7
213-443-3047 [1]  2/7
213-894-1785 [1]  2/24
21st [1]  58/9
22 [1]  80/9
23 [2]  1/22 3/1
24 [1]  86/11
26 [1]  56/16
28 [4]  48/23 49/8 49/14 86/4
2:00 [6]  80/3 80/5 80/6 80/25 81/1 81/3
2:54 [2]  1/22 3/1

## 3

30 [1]  48/23
3047 [1]  2/7
32 [2]  11/20 62/18
341,000 [1]  60/12
350 [1]  2/23
350,000 [1]  60/20
363,000 [1]  68/9

## 4

415-391-0600 [1]  2/19
424-653-5500 [1]  2/14
424-653-5501 [1]  2/14
4311 [1]  2/23
44-page [1]  78/25
4565 [1]  2/24
46 [3]  11/19 12/16 13/13
47 [1]  19/25
4:53 [1]  85/20

## 5

50 [1]  46/18
505 [1]  2/18
51 [1]  19/25
5500 [1]  2/14
5501 [1]  2/14

## 6

60 [1]  46/19
6538 [1]  2/19

## 7

70 [2]  84/9 84/13
753 [1]  86/4

## 8

803 [2]  70/7 70/12
85,000 [1]  31/21
865 [1]  2/5
88 percent [2]  59/24 61/7
8:00 [1]  80/5

## 9

90012-4565 [1]  2/24
90017 [1]  2/6
90067 [1]  2/13
92 percent [1]  63/22
94111-6538 [1]  2/19
95-question [1]  78/25
9814 [2]  1/9 3/3

## A

ABA [3]  74/11 75/2 75/8
Abarca [1]  15/21
abeyance [1]  6/16
abide [1]  63/4

ability [1]  55/19
able [11]  6/3 6/8 9/5 15/3 15/8 34/9
39/20 77/14 78/7 80/25 81/8
about [61]  3/13 5/5 6/6 6/7 8/14 13/24
14/4 19/9 21/21 22/10 22/21 24/18
25/11 27/25 29/10 31/1 32/21 34/3
38/10 38/15 41/23 42/9 44/15 44/22
44/24 45/9 46/14 48/25 49/15 49/18
51/20 51/20 52/3 55/16 58/8 58/24
61/9 61/15 61/20 62/10 63/2 64/9 68/1
68/6 69/8 69/9 70/25 71/1 71/4 71/22
73/24 74/23 75/11 75/16 75/25 77/24
79/14 80/2 81/25 82/1 83/15
above [1]  86/7
above-entitled [1]  86/7
absolutely [5]  22/5 45/24 48/8 58/6
67/2
abuse [1]  32/6
academic [1]  10/11
access [10]  10/8 10/9 16/3 23/21
24/10 24/21 26/7 30/2 30/10 47/5
accessed [1]  30/23
according [1]  19/13
account [1]  83/16
accountable [1]  61/13
accountants [1]  8/10
accused [1]  64/6
acting [1]  48/12
action [1]  56/13
active [1]  80/9
activities [2]  23/6 64/21
acts [7]  34/12 62/22 62/22 64/16 65/6
65/15 65/16
actual [7]  12/8 12/25 13/23 14/10 25/8
27/9 61/8
actually [15]  7/17 8/7 24/25 26/7 27/23
28/8 33/6 45/19 49/20 56/4 57/11 68/7
73/14 78/16 80/19
ADAM [3]  2/3 73/6 73/12
adamwolfson [1]  2/8
add [5]  44/11 55/7 55/8 74/2 85/12
addition [2]  44/2 77/17
address [9]  8/23 8/23 21/14 21/25
39/5 45/16 55/2 72/12 80/15
addressed [4]  17/14 22/6 59/20 65/19
admissibility [2]  15/25 71/5
admissible [8]  8/13 16/5 17/9 62/10
69/14 69/23 70/3 70/12
admissions [4]  53/13 53/14 53/18
53/22
adopted [1]  4/16
advance [6]  42/18 43/16 53/20 71/17
72/7 72/11
advanced [1]  71/21
advantage [2]  33/15 34/6
advice [2]  79/8 79/10
advise [2]  26/8 85/5
advised [1]  4/11
after [9]  5/20 10/25 26/13 37/3 45/21
55/6 58/14 80/2 82/7
again [23]  3/11 4/25 5/19 5/24 9/21
16/24 20/23 32/19 43/3 43/16 50/9
53/25 59/4 59/15 62/5 63/12 64/8
65/12 66/3 70/20 79/23 80/17 84/19
against [5]  42/12 42/13 49/2 61/14
77/2
Agency [1]  73/6
agents [1]  24/9

# A

**aggregate [1]** 83/2
**aggregated [1]** 8/19
**aggressively [1]** 65/2
**ago [3]** 55/12 59/5 59/5
**AGR [1]** 1/9
**agree [9]** 31/22 36/5 41/21 46/15 48/8 56/21 62/19 76/10 81/7
**agreeable [1]** 81/13
**agreed [4]** 62/18 74/9 79/20 80/14
**agreeing [1]** 63/11
**agreement [8]** 5/7 7/10 23/14 24/3 24/6 51/22 53/11 54/2
**agreements [5]** 7/9 52/21 63/8 63/14 64/10
**ahead [3]** 4/20 12/6 62/8
**aiding [1]** 66/5
**aids [1]** 62/20
**album [1]** 63/21
**all [91]**
**allegation [1]** 58/17
**alleged [6]** 9/18 11/4 20/20 34/11 66/20 72/20
**alleging [1]** 57/22
**allow [3]** 17/7 33/11 43/6
**allowed [7]** 4/2 4/3 4/17 45/23 61/18 78/13 83/1
**alluded [1]** 61/11
**almost [2]** 19/8 42/7
**alone [4]** 19/14 19/24 54/17 68/10
**along [1]** 68/8
**alphabetical [1]** 43/9
**already [8]** 5/12 50/21 59/19 64/3 79/11 82/20 83/5 83/7
**also [11]** 8/16 10/16 21/4 43/14 60/11 63/14 64/24 66/25 77/8 81/6 84/18
**alternate [1]** 21/8
**alternative [1]** 77/10
**alternatives [2]** 75/4 77/6
**although [3]** 9/10 32/19 54/12
**always [3]** 24/4 74/13 81/1
**am [2]** 44/25 56/6
**Amazon [1]** 15/16
**amended [2]** 55/6 55/7 55/13
**among [1]** 78/8
**amorphous [1]** 62/1
**amount [2]** 48/20 51/6
**analysis [3]** 16/2 17/3 17/15
**analyzed [1]** 66/3
**ANDREW [1]** 2/17
**andrew.gass [1]** 2/20
**Andy [1]** 72/15
**Angeles [5]** 1/21 2/6 2/13 2/24 3/1
**angles [1]** 22/23
**another [4]** 4/2 15/24 44/23 83/11
**answer [2]** 34/14 39/20
**anticipate [1]** 82/16
**anticipation [1]** 72/4
**anticompetitive [9]** 61/5 62/3 62/17 62/21 76/19 77/2 77/11 77/15 78/6
**antitrust [9]** 33/22 33/23 34/7 34/16 34/17 59/9 61/2 66/12 78/6
**any [41]** 8/6 8/8 8/16 8/22 9/3 9/15 16/5 19/12 20/15 20/20 21/11 21/13 23/11 27/3 30/3 33/2 34/5 38/20 40/14 42/20 43/15 46/21 48/19 51/13 52/5 53/15 53/17 54/1 55/15 56/11 57/18

**61/14 63/21 65/3 65/23 67/8 68/3
73/24 75/7 79/6 82/23**
**anybody [8]** 19/2 19/12 23/14 24/25 25/12 31/4 42/24 52/10
**anymore [1]** 29/25
**anyone [1]** 18/4
**anything [18]** 5/5 21/18 31/13 35/12 37/11 38/11 44/18 47/17 60/16 60/18 61/7 61/17 68/6 68/16 71/2 74/2 75/23 84/13
**anyway [2]** 46/17 81/2
**apologize [5]** 11/18 13/15 14/9 14/14 26/18
**apparently [2]** 5/18 36/9
**appear [5]** 8/16 27/21 36/14 47/16 71/25
**appearances [2]** 2/1 3/6
**appearing [2]** 27/21 36/8
**appears [3]** 38/11 60/6 82/9
**applied [1]** 19/3
**applies [1]** 51/16
**apply [1]** 70/14
**appointed [1]** 45/1
**appreciate [3]** 14/16 46/4 79/20
**approach [8]** 9/14 9/14 10/2 10/3 14/21 77/5 77/7 77/8
**approached [1]** 30/25
**approaching [2]** 26/8 28/5
**appropriate [3]** 7/16 77/21 78/8
**are [84]** 3/8 3/13 3/18 7/9 8/9 8/19 12/21 18/24 21/15 22/13 22/15 22/22 23/5 27/7 27/20 27/20 31/19 32/12 33/23 36/6 36/10 38/1 38/1 40/1 40/2 40/3 41/4 41/5 41/15 43/4 43/10 43/10 43/24 45/12 47/1 47/5 47/7 48/1 49/3 50/18 53/13 53/21 53/22 56/8 56/17 57/9 59/20 59/21 59/22 59/25 63/14 64/5 64/22 64/23 65/12 65/12 65/16 65/22 67/14 67/18 67/23 70/5 70/6 70/12 71/6 71/22 71/25 71/25 72/18 75/7 75/16 75/17 75/21 75/23 75/24 77/23 79/24 79/25 80/7 83/15 83/20 84/16 85/5
**area [1]** 76/1
**Areeda [1]** 14/23
**aren't [2]** 53/12 61/14
**argue [5]** 6/11 38/18 50/17 55/22 73/24
**argued [4]** 14/20 14/23 16/7 59/10
**arguing [3]** 31/23 64/13 73/23
**argument [8]** 8/4 35/2 42/16 45/22 54/16 56/21 57/21 63/25
**arguments [1]** 49/1
**arm's [1]** 12/25
**arm's-length [1]** 12/25
**around [2]** 6/23 83/9
**arrange [1]** 81/22
**arranged [2]** 66/2 66/16 67/1
**articulation [2]** 72/17 75/3
**artist [34]** 8/6 8/14 8/21 9/14 9/16 17/8 17/8 22/18 22/22 22/22 23/8 23/20 23/23 26/3 27/24 28/12 32/10 32/24 33/1 33/18 35/5 37/23 37/23 38/17 38/20 38/22 39/12 48/2 60/11 63/15 63/23 65/21 69/9 71/3
**artist-client [1]** 9/14
**artist-manager [1]** 71/3
**artists [36]** 8/17 17/4 24/9 24/22 24/22

**26/8 26/11 26/12 27/20 33/8 33/16
33/25 36/8 39/10 39/10 39/15 39/15
40/23 45/11 45/20 47/17 59/17 59/23
60/2 63/5 63/8 63/9 63/9 63/11 63/21
65/20 66/22 68/6 69/8 73/3 73/6**
**artists' [1]** 70/25
**artists-managers [1]** 45/11
**as [105]**
**aside [1]** 19/17
**ask [9]** 16/21 21/7 22/3 43/13 49/9 75/12 76/1 79/9 82/12
**asked [4]** 12/1 43/20 83/5 85/16
**asking [4]** 4/23 56/22 57/20 64/21
**aspect [2]** 7/4 70/7
**assert [1]** 48/14
**asserted [3]** 48/15 66/20 70/17
**asserting [1]** 72/21
**assigned [1]** 84/14
**assignments [1]** 3/18
**ASSOCIATE [2]** 2/4 2/4
**assume [3]** 18/14 54/4 69/10
**assumption [1]** 9/15
**assumptions [1]** 68/5
**at [89]**
**attached [3]** 10/17 12/15 81/12
**attack [1]** 30/4
**attempting [1]** 33/23
**attempts [1]** 66/5
**attendance [1]** 7/13
**attention [1]** 71/9
**ATTORNEY [3]** 2/16 2/17 2/17
**attorneys [3]** 2/5 2/12 74/13
**attributed [1]** 81/7
**audience [1]** 36/19
**auditor [2]** 47/3 48/12
**authority [2]** 72/9 76/13
**available [7]** 7/14 7/15 23/19 24/2 27/8 31/14 31/18
**average [1]** 18/2
**awaiting [1]** 4/9
**away [4]** 21/4 46/5 63/20 84/17**

# B

**back [9]** 13/22 18/18 20/23 23/12 28/24 54/13 59/16 60/6 66/10
**bad [1]** 52/22
**balance [1]** 77/3
**balancing [2]** 75/9 76/25
**band [1]** 60/20
**banged [1]** 28/24
**base [3]** 20/2 37/7 69/3
**based [20]** 8/11 8/24 10/10 11/1 13/4 14/1 14/5 14/21 15/18 16/15 17/3 46/19 48/3 54/17 61/5 61/11 64/10 64/11 64/11 82/19
**basically [6]** 3/25 25/17 30/16 30/17 32/23 34/8
**basis [11]** 10/22 16/8 21/3 42/19 45/3 48/16 61/17 69/25 73/2 73/7 73/16
**be [121]**
**beat [2]** 64/22 64/23
**became [1]** 9/17
**because [57]** 5/12 5/17 6/5 8/7 9/18 10/20 14/5 17/10 21/8 23/10 23/18 24/14 24/21 30/4 31/7 33/13 33/22 33/23 34/24 36/19 38/12 39/1 40/4 40/11 40/21 41/8 42/21 45/8 45/11 46/10 46/15 46/17 48/22 51/1 52/20

**B**

**because...** [22] 52/25 53/22 55/15 56/16 57/10 57/10 58/9 59/1 60/13 63/9 64/6 64/25 66/10 68/24 72/25 75/12 77/9 77/15 79/14 80/5 83/1 85/14
**becomes** [1] 31/12
**been** [21] 5/3 5/4 10/13 10/21 10/22 11/3 15/7 22/6 24/3 24/5 31/6 34/9 39/19 51/3 54/15 60/23 61/2 67/9 83/5 84/14 85/14
**before** [17] 3/10 5/9 10/13 10/24 12/1 14/21 16/22 17/7 21/1 21/11 36/13 39/2 44/23 46/1 70/23 71/11 84/18
**begin** [4] 5/13 9/22 16/25 39/8
**behalf** [1] 72/15
**behind** [2] 25/23 39/18
**being** [7] 10/7 14/14 24/4 24/14 25/15 42/9 61/24
**belief** [2] 24/20 71/1
**believe** [21] 7/12 7/16 9/12 10/1 10/2 10/10 11/5 16/1 16/8 20/18 24/11 31/6 32/4 32/13 33/13 35/14 40/9 47/14 49/12 68/22 74/3
**believed** [1] 26/12
**believing** [1] 47/10
**Bellin** [2] 47/1 73/4
**belong** [1] 43/1
**bench** [1] 11/12
**benefit** [4] 24/11 77/2 77/16 80/1
**benefits** [3] 76/20 76/22 77/12
**best** [8] 51/23 72/7 79/25 79/25 80/13 82/3 83/24 84/15
**better** [9] 49/23 51/25 53/25 56/2 71/23 78/20 81/23 83/9 84/23
**between** [4] 32/24 33/15 48/23 75/15
**Beyonce** [1] 60/2
**Beyonce's** [1] 60/7
**beyond** [1] 70/18
**Bigelow** [1] 61/4
**biggest** [1] 45/13
**bills** [1] 28/8
**bit** [6] 28/7 40/4 43/20 58/2 70/18 83/9
**black** [2] 13/16 13/16
**blanks** [3] 77/18 77/23 77/24
**block** [5] 47/1 47/23 73/4 84/17 85/1
**blue** [1] 69/2
**board** [3] 28/18 29/15 29/17
**bold** [1] 45/18
**bosses** [1] 26/18
**both** [11] 10/10 16/2 22/9 22/14 30/23 33/18 34/7 43/24 51/6 71/20 85/6
**bottom** [1] 8/19
**bought** [1] 37/4
**Boulevard** [1] 2/12
**box** [3] 78/3 78/5 78/5
**boxes** [9] 5/10 5/10 5/10 5/12 51/9 64/4 78/8 81/19 81/21
**boycott** [1] 66/16
**boycotts** [2] 66/2 67/1
**breach** [2] 5/7 24/4
**brief** [1] 39/25
**briefly** [3] 43/10 46/22 70/22
**bring** [1] 71/9
**bringing** [1] 64/5
**brought** [4] 5/9 15/10 21/25 31/20
**Brown** [1] 60/20
**BubbleUp** [1] 27/16

**built** [2] 30/15 39/2
**bulk** [1] 60/16
**bunch** [1] 78/22
**bundles** [2] 63/21 63/22
**burn** [1] 5/14
**business** [40] 8/7 9/13 10/21 11/3 11/4 14/24 15/1 17/14 21/10 21/10 23/10 26/20 26/25 26/25 27/4 28/5 28/19 30/18 30/20 30/24 33/14 34/6 34/9 34/11 35/12 36/1 37/6 37/7 47/11 54/10 54/17 60/8 60/10 72/1 72/3 72/20 73/3 73/9 75/4 85/15
**business-model** [1] 9/13
**but** [113]
**but-for** [6] 10/22 14/5 15/6 34/11 47/10 48/3
**buy** [2] 30/19 38/24
**buying** [5] 23/7 23/7 23/8 23/8 37/13

**C**

**calculating** [2] 11/9 12/13
**calculations** [1] 8/1
**calendar** [1] 84/7
**calendars** [1] 84/6
**CALIFORNIA** [7] 1/2 1/21 2/6 2/13 2/19 2/24 3/1
**call** [10] 12/22 13/11 22/13 43/25 45/9 45/9 45/10 47/8 61/19 62/4
**called** [2] 13/6 76/14
**Calling** [1] 3/3
**came** [3] 23/23 54/13 68/10
**can** [77] 4/20 8/21 8/23 9/6 9/9 9/25 11/22 12/3 12/11 12/14 13/18 13/19 14/15 16/14 21/25 22/20 23/3 23/5 24/15 25/20 28/5 29/3 29/5 30/19 34/4 37/14 37/14 38/25 40/10 42/8 42/17 42/18 43/17 46/14 49/12 49/15 49/17 49/19 49/20 49/21 49/22 50/17 51/18 51/21 51/21 51/23 51/24 53/20 53/24 54/19 57/18 57/20 58/11 59/2 61/5 66/8 69/3 72/7 72/12 72/21 74/17 77/9 79/3 79/6 79/21 79/25 80/3 80/10 80/10 80/14 80/15 80/22 81/3 82/14 84/19 84/23 84/25
**can't** [29] 8/17 8/20 11/14 15/2 15/8 20/2 21/6 25/12 25/14 31/3 42/22 46/8 48/6 49/5 49/16 50/7 51/14 51/24 52/9 53/23 54/15 54/16 54/22 56/5 58/15 61/7 70/14 80/10 81/5
**cannot** [2] 20/21 65/3
**capacity** [1] 61/16
**carries** [1] 38/20
**cart** [1] 81/18
**carve** [2] 33/19 65/24
**carve-out** [1] 33/19
**carve-outs** [1] 65/24
**case** [42] 4/12 15/20 15/21 19/1 24/25 30/5 34/25 36/12 36/13 38/11 38/21 39/20 40/4 40/10 41/9 41/18 44/9 45/1 47/19 49/24 53/1 55/17 61/4 62/15 67/6 67/23 67/24 70/4 70/14 71/19 72/18 73/1 75/5 75/5 75/6 75/17 76/10 76/14 77/4 77/5 80/12 80/16
**cases** [7] 40/4 44/1 46/1 49/17 57/8 70/5 72/18
**categorically** [1] 66/8
**categories** [9] 8/17 8/18 29/11 59/19 61/10 63/19 65/5 69/6 79/24

**categorize** [1] 58/21
**category** [8] 42/17 50/22 56/18 56/20 59/22 63/18 64/2 83/1
**causation** [2] 9/23 47/8
**cause** [3] 50/19 72/20 73/19
**caused** [1] 51/5
**Cel** [1] 34/18
**Cel-Tech** [1] 34/18
**CENTRAL** [1] 1/2
**CEO** [2] 20/7 69/18
**certain** [5] 59/8 72/2 75/10 77/19 77/25
**certainly** [19] 5/13 8/1 10/7 15/6 15/14 24/24 28/3 31/6 35/20 40/5 51/17 52/17 53/5 71/9 72/3 76/2 79/6 79/20 84/19
**CERTIFICATE** [1] 86/1
**certify** [1] 86/3
**cetera** [3] 84/10 84/10 84/10
**CFAA** [5] 54/8 54/11 54/17 55/9 57/10
**challenge** [1] 63/19
**chambers** [1] 5/11
**chance** [2] 21/7 83/24
**chance to** [1] 83/24
**change** [2] 70/14 71/8
**changes** [2] 74/15 76/10
**characterizations** [1] 68/8
**charge** [2] 39/19 41/17
**charged** [1] 81/9
**chart** [1] 58/11
**checkbook** [1] 60/14
**Cheese** [1] 53/10
**Chesney** [1] 27/25
**choice** [5] 15/13 37/6 40/14
**circuit** [4] 15/23 17/1 75/5 75/13
**circumstance** [1] 77/13
**circumstances** [3] 28/6 38/9 75/10
**circumvent** [1] 40/21
**cited** [2] 15/20 64/18
**cites** [1] 77/5
**citing** [2] 7/21 57/9
**citizens** [1] 80/11
**City** [1] 15/22
**civil** [1] 56/13
**claim** [10] 16/16 25/21 33/10 33/10 35/10 35/11 35/11 39/17 55/9 57/18
**Claimant** [1] 1/14
**claimants** [1] 44/4
**claiming** [2] 39/3 78/12
**claims** [20] 8/14 21/22 34/4 34/5 35/9 44/13 54/9 54/12 54/17 61/14 62/10 62/11 66/9 66/13 66/24 66/25 67/1 77/20 77/25 79/11
**clarified** [1] 19/23
**clarion** [1] 62/4
**classic** [2] 27/7 28/2
**clean** [1] 5/11
**clear** [8] 8/13 12/14 14/24 18/8 38/19 56/9 64/13 72/18
**clearly** [2] 30/11 85/2
**clerk** [1] 51/7
**clerks'** [1] 51/9
**client** [4] 9/14 9/17 28/18 74/13
**clients** [6] 26/6 30/25 30/25 34/8 68/25 69/3
**clients'** [1] 35/21
**clone** [2] 26/7 30/16
**close** [4] 45/21 58/14 60/7 61/18

# C

closed [1] 65/10
closer [2] 48/19 79/7
closing [2] 49/1 79/7
cloth [1] 42/4
club [18] 33/1 37/25 38/5 38/10 40/22
 59/21 60/17 63/3 63/4 63/22 64/20
 65/1 65/2 67/4 67/6 67/23 70/21 71/1
clubs [3] 40/24 59/25 68/23
clue [1] 71/10
CM [2] 1/25 2/22
Code [1] 86/4
cognizable [1] 59/2
combination [1] 19/15
combined [1] 64/25
combo [1] 65/7
come [18] 17/22 39/22 42/3 43/6 46/2
 46/16 46/17 51/21 51/21 54/2 55/17
 59/2 61/18 72/5 72/21 73/2 84/23
 84/24
comes [5] 34/18 65/10 70/15 71/5 76/3
coming [5] 12/11 23/5 35/24 53/12
 83/20
comment [4] 20/3 38/15 44/14 50/4
commented [1] 20/11
committing [1] 65/6
communications [1] 64/20
community [1] 45/12
companies [13] 10/18 14/6 14/11 15/3
 15/18 16/3 16/4 16/19 18/2 18/12
 20/24 20/24 27/17
company [20] 9/9 10/5 10/7 10/14
 13/2 13/4 13/10 13/15 13/21 14/5
 14/24 15/14 17/18 18/4 19/2 20/17
 21/3 21/9 32/24 43/11
comparison [1] 77/16
compete [1] 37/5
competition [6] 34/12 34/18 52/24
 60/15 62/3 63/15
competitive [8] 51/13 63/15 65/16
 76/20 76/22 77/2 77/11 77/16
competitor [2] 31/15 31/18
compilation [9] 28/23 28/25 29/2 29/4
 29/8 29/9 29/20 29/11 29/14
compilations [1] 22/13
complainant [1] 79/4
complained [2] 28/22 61/9
Complaint [6] 33/6 53/11 55/6 56/23
 56/25 75/17
COMPLETE [3] 1/6 1/16 3/4
compliance [2] 67/23 68/10
compliant [1] 71/1
complies [1] 12/5
comply [1] 68/7
compounded [1] 45/17
comprised [2] 55/17 58/25
computation [4] 54/10 55/12 56/18
 59/4
computer [2] 32/6 34/21
concept [1] 62/1
concern [2] 15/1 19/24
concerned [1] 82/3
concerning [3] 8/6 19/25 79/19
concert [4] 20/1 61/16 64/7 64/14
concluded [1] 85/20
conduct [16] 8/8 9/16 40/23 61/5
 61/15 62/17 62/25 64/6 64/10 64/12

64/14 65/5 77/3 77/9 77/14 78/4
confer [2] 85/5 85/17
conference [4] 1/23 3/17 22/7 86/9
conferred [1] 73/25
confidence [1] 72/25
confidentiality [1] 24/8
confirm [1] 3/24
conflict [3] 40/20 82/7 82/13
conflicts [1] 84/1
conformance [1] 86/8
connected [1] 62/25
connection [1] 61/8
Consent [3] 51/15 51/22 52/1
consider [2] 16/21 76/1
considerations [1] 17/24
considering [1] 18/6
consistent [2] 6/22 75/2
conspiracy [2] 66/20 78/11
constantly [1] 64/21
Constellation [1] 2/12
constitutional [1] 49/15
contact [1] 5/24
contain [1] 22/12
contained [1] 58/10
contend [3] 32/17 35/1 35/8
contends [2] 40/20 41/1
content [2] 21/15 68/23
contentions [1] 22/8
contest [5] 54/25 55/15 57/5 58/22
 58/23
contested [1] 57/14
contesting [2] 56/8 71/25
context [4] 17/1 51/17 65/14 68/25
continuance [1] 49/10
continue [3] 11/16 14/18 84/11
continued [1] 69/24
continuing [1] 84/16
contract [6] 31/10 33/11 33/18 35/13
 37/15 41/18
contracts [24] 28/20 31/1 31/2 31/3
 32/9 32/10 32/12 32/14 32/15 32/17
 32/22 33/5 33/7 33/11 33/14 34/10
 36/9 41/17 52/4 52/7 52/12 63/14
 64/11 65/22
contrary [3] 33/9 39/13 53/18
control [2] 7/13 52/12
controlled [1] 20/16
controlling [1] 20/16
conversations [2] 69/24 71/24
cooperate [1] 7/11
coordinating [1] 66/1
copied [2] 22/15 30/19
copy [4] 12/3 12/4 14/15 24/10
copying [2] 25/16
copyright [1] 23/16
corporation [3] 62/20 64/15 66/4
correct [5] 7/25 25/25 26/14 27/11
 86/5
correctly [3] 20/6 48/18 76/15
could [33] 6/15 15/1 15/11 20/9 20/15
 23/25 24/1 24/4 26/9 34/10 34/15
 34/17 35/4 35/14 35/17 35/17 35/20
 35/20 36/4 36/8 36/10 37/2 37/4 50/8
 50/11 56/24 58/22 58/25 62/2 62/24
 71/12 72/11 84/22
couldn't [7] 22/14 35/18 43/23 43/24
 44/4 48/8 83/1
counsel [12] 2/1 3/6 3/14 4/8 5/3 9/20

11/13 11/25 12/5 56/22 72/12 73/25
count [1] 12/12
Counter [2] 1/14 1/18
counts [1] 49/2
County [2] 76/14 77/6
couple [5] 8/25 18/18 27/16 66/11
 69/17
course [6] 5/21 8/22 17/20 18/20
 34/21 41/5
court [11] 1/1 3/11 7/10 15/21 15/22
 39/5 43/13 43/16 43/18 76/25 85/6
Court's [1] 58/19
Courthouse [1] 2/23
courtroom [3] 5/18 6/22 11/12
courts [2] 55/17 72/18
creating [1] 65/4
creative [2] 16/16 73/6
credibility [2] 15/24 16/6
criminal [2] 49/8 82/8
criteria [4] 17/22 18/13 60/17 61/22
critical [1] 17/17
criticisms [1] 16/5
criticizing [1] 50/5
cross [3] 44/2 44/4 79/4
cross-claimants [1] 44/4
cross-complainant [1] 79/4
CrowdSurge [5] 26/7 30/16 35/24
 60/13 64/22
CrowdSurge-Songkick [1] 30/16
CRR [2] 1/25 2/22
CRR-CM [2] 1/25 2/22
crystal [1] 18/8
crystal-clear [1] 18/8
CSR [4] 1/25 2/22 86/3 86/17
cumulative [1] 17/4
CUNEO [5] 1/25 2/22 86/3 86/16 86/17
current [1] 9/9
customer [3] 27/6 27/7 28/17
customers [6] 23/5 27/7 27/10 28/3
 28/4 36/2
cut [3] 40/3 43/22 73/21
cutting [1] 40/7
CV [2] 1/9 3/3
CV 15-9814 [1] 3/3
Cyrus [1] 60/11

# D

D/B/A [2] 1/6 1/17
DALE [1] 1/4
damage [2] 48/13 56/12
damages [24] 8/15 8/20 14/25 20/2
 35/2 35/3 35/5 35/8 45/21 54/8 54/11
 54/16 56/18 56/20 58/16 59/9 59/18
 59/24 60/1 61/4 61/5 61/7 65/17 79/14
Dan [2] 5/19 16/24
Dan Wall [2] 5/19 16/24
dan.wall [1] 2/20
DANIEL [4] 2/11 2/16 3/21 4/25
Daniel Wall [2] 3/21 4/25
daniel.schecter [1] 2/14
dashboard [3] 38/23 39/1 39/2
data [15] 8/19 22/14 22/23 23/11 27/3
 27/6 28/13 28/17 29/4 29/8 29/9
 35/21 35/25 39/15
database [3] 48/10 60/6 71/24
date [12] 29/25 30/1 44/23 49/7 81/25
 82/4 82/7 84/12 84/15 85/6 85/7 86/11
dates [1] 84/16

**D**

**Daubert [4]** 3/17 7/20 48/4 82/10
**David [1]** 39/18
**David Kramer [1]** 39/18
**day [4]** 43/14 80/6 80/23 81/18
**days [9]** 22/9 44/10 44/12 44/12 47/23
  49/24 74/19 84/9 84/13
**deadline [1]** 83/6
**deal [11]** 11/23 11/24 32/24 57/11
  57/16 60/21 65/10 70/10 70/10 71/23
  79/13
**dealing [10]** 13/1 22/14 33/18 33/22
  59/16 65/20 66/15 66/25 75/6 78/5
**dealings [1]** 63/12
**deals [5]** 28/12 37/4 65/21 65/23 65/25
**dealt [3]** 11/20 26/5 64/8
**debate [2]** 17/17 58/8
**decades [1]** 15/17
**decide [7]** 5/8 8/11 24/12 24/14 41/25
  65/15 66/7
**decided [2]** 8/7 73/8
**decision [3]** 15/23 37/21 75/9
**decisions [1]** 7/23
**deck [2]** 14/9 14/14
**declaration [4]** 11/19 11/20 12/16
  69/21
**declarations [1]** 69/18
**Decree [3]** 51/15 51/22 52/1
**defend [3]** 31/25 45/6 52/16
**defendant [8]** 1/18 23/19 23/20 23/20
  23/21 57/8 76/19 84/8
**defendant's [4]** 15/10 67/4 76/21
  76/24
**defendants [17]** 1/11 2/10 7/11 7/15
  8/8 33/10 33/12 44/4 44/6 53/10 53/20
  56/17 63/19 71/25 72/15 77/18 77/24
**defendants' [1]** 16/16
**defense [5]** 3/20 21/12 48/20 57/20
  68/8
**Define [1]** 47/21
**definitely [3]** 49/12 52/8 52/10
**delayed [1]** 51/5
**delaying [1]** 74/18
**deleted [2]** 54/19 54/20
**deliberate [1]** 37/21
**demographic [1]** 36/18
**denial [1]** 20/11
**deny [2]** 54/9 59/11
**department [5]** 26/20 27/3 28/17
  29/24 30/22
**depend [1]** 24/15
**depending [2]** 28/6 55/18
**depends [1]** 34/14
**deponents [1]** 4/9
**deposed [1]** 46/25
**deposition [7]** 4/10 4/17 13/23 42/24
  47/15 80/17 82/12
**depositions [7]** 4/2 6/6 6/9 80/3 80/18
  81/10 83/11
**derived [2]** 16/2 18/16
**derives [1]** 17/4
**described [1]** 17/12
**descriptions [1]** 43/21
**designate [1]** 42/24
**designated [1]** 50/23
**despite [1]** 65/23
**detailed [1]** 27/2

**details [4]** 52/1 57/3 57/4 58/11
**determination [2]** 25/1 77/3
**determine [2]** 43/1 77/5
**determining [1]** 43/5
**developed [2]** 39/9 39/14
**developing [1]** 35/15
**devices [1]** 46/16
**dictionaries [1]** 43/17
**dictionary [1]** 6/23
**did [28]** 9/17 11/22 15/2 20/3 20/21
  23/10 26/21 26/21 29/15 30/15 35/15
  35/19 36/16 36/17 37/17 38/5 41/21
  43/20 49/7 57/5 57/21 60/21 61/12
  63/2 68/14 74/9 77/4 82/16
**didn't [23]** 5/13 9/16 9/23 12/2 15/16
  19/24 23/11 30/4 31/23 34/9 36/17
  37/11 38/5 38/11 39/22 48/13 48/15
  48/16 54/4 54/6 54/22 57/5 68/5
**didn't ever [1]** 57/5
**die [1]** 36/13
**difference [1]** 68/13
**differences [1]** 75/25
**different [13]** 8/25 32/16 34/3 36/23
  39/11 47/4 58/16 66/11 66/12 66/18
  75/7 75/20 82/23
**differentiate [1]** 22/24
**difficult [2]** 10/20 71/23
**difficulty [1]** 44/18
**diligent [1]** 51/7
**direct [4]** 24/24 44/2 62/16 70/8
**directed [2]** 20/7 20/14
**directing [3]** 20/19 64/15 64/19
**direction [1]** 85/5
**directly [1]** 62/21
**directors [2]** 28/19 29/17
**directors' [1]** 29/16
**directs [1]** 62/20
**disagree [2]** 39/6 68/7
**disagreement [1]** 75/1
**discarded [1]** 16/8
**disclose [1]** 54/22
**disclosed [9]** 50/9 54/15 56/8 56/15
  56/16 57/11 57/13 57/25 58/23
**disclosure [8]** 55/13 55/14 55/16
  56/17 56/18 58/10 58/24 59/18
**disclosures [1]** 55/7
**discovery [7]** 45/21 55/16 55/19 58/1
  58/14 58/20 67/19
**discuss [1]** 85/17
**discussed [6]** 28/18 28/18 28/19 30/7
  33/25 34/13
**discussion [1]** 54/1
**discussions [1]** 83/14
**disguise [1]** 59/22
**dismiss [2]** 57/12 57/18
**dispositive [1]** 34/20
**dispute [3]** 46/13 75/15 76/5
**disputes [2]** 74/17 75/23
**disputing [1]** 56/22
**district [5]** 1/1 1/2 15/21 15/22 80/11
**divide [1]** 8/17
**DIVISION [1]** 1/3
**do [62]** 3/7 6/3 6/7 6/12 6/13 8/7 10/1
  10/10 11/24 15/8 19/5 19/21 23/25
  26/25 30/17 30/20 33/9 34/9 35/7
  35/16 36/1 37/6 37/14 38/11 39/7
  41/21 42/23 44/25 45/4 45/8 46/9
  49/15 49/20 50/8 51/19 52/25 55/19
  56/24 57/16 58/4 60/16 62/8 64/16

  68/17 71/2 72/24 73/9 74/13 75/13
  79/13 79/16 79/17 80/10 80/10 80/13
  80/14 82/5 82/21 83/6 83/10 84/15
**document [11]** 12/15 42/11 42/19
  42/19 48/10 48/15 60/12 60/20 67/16
  68/19 72/2
**document-by-document [1]** 42/19
**documentary [1]** 59/2
**documents [27]** 5/15 10/8 11/7 22/14
  30/12 31/21 37/20 42/7 42/9 42/17
  42/18 42/22 47/6 47/19 51/3 51/4
  55/11 58/20 64/17 67/9 67/13 67/24
  68/9 68/11 68/13 69/4 79/22
**does [11]** 12/23 19/19 41/3 52/5 52/12
  56/15 56/15 61/13 61/24 68/13 76/23
**doesn't [20]** 8/6 8/16 13/7 13/22 14/2
  19/18 24/2 24/18 33/21 41/12 42/25
  46/21 47/13 53/22 67/16 71/25 75/8
  78/4 78/5 80/19
**doing [6]** 22/21 26/6 28/4 35/12 49/6
  54/14
**dollar [1]** 58/24
**don't [92]**
**done [16]** 13/25 16/4 20/20 25/15
  25/20 25/23 34/10 35/18 35/18 35/20
  40/7 45/25 81/17 83/7 83/18 84/3
**doubt [1]** 52/9
**down [10]** 25/14 28/21 40/4 40/10
  43/18 46/3 56/4 80/7 80/8 84/22
**dream [1]** 49/6
**driven [1]** 52/18
**drop [1]** 80/25
**dropped [1]** 28/23
**DSF [1]** 1/9
**DSF-AGR [1]** 1/9
**duplication [1]** 79/17
**during [2]** 58/1 58/20
**dynamic [1]** 65/4

**E**

**E-B-I-T-D-A [1]** 15/11
**e-mail [1]** 81/4
**e-mails [3]** 71/10 71/11 71/15
**each [21]** 3/11 3/12 8/14 11/20 11/24
  14/11 18/12 29/7 29/13 35/1 40/20
  43/25 46/18 48/23 49/18 51/20 66/17
  68/13 73/23 78/22 81/7
**Eagles [2]** 73/7 73/8
**earlier [6]** 17/13 33/8 33/20 44/21
  61/11 72/25
**early [2]** 55/7 73/21
**easily [2]** 43/17 62/3
**EBITDA [3]** 15/11 18/23 20/24
**economic [2]** 34/2 34/24
**effect [4]** 64/25 76/19 77/2 77/15
**effectively [2]** 65/23 80/16
**effects [4]** 19/25 62/3 62/11 77/11
**effort [2]** 72/7 79/25
**efforts [1]** 5/16
**eight [1]** 80/7
**either [10]** 20/2 28/22 33/21 35/7
  42/14 43/11 49/6 57/11 69/12 79/1
**elbows [2]** 20/12 64/19
**element [2]** 63/12 79/2
**elemental [1]** 19/5
**elements [2]** 75/20 79/5
**eliminate [1]** 52/5
**eliminates [1]** 52/10

**E**

eliminating [1] 52/21
ELLISON [1] 2/11
else [14] 19/2 19/12 21/18 21/19 23/14 32/3 37/4 37/11 42/1 44/18 46/10 69/12 73/9 73/11
EMANUEL [2] 2/2 76/7
embedded [1] 75/21
Emmert [1] 70/4
emphasizing [1] 29/19
employee [2] 20/8 20/13
employees [3] 5/2 26/22 58/12
employer [2] 25/18 26/8
end [5] 6/2 24/14 32/4 73/22 79/15
ended [1] 73/22
enforced [1] 63/3
enforcing [1] 65/2
ENGLISH [2] 2/4 13/10
enough [8] 5/17 9/13 30/8 31/19 34/25 80/23 81/18 82/11
enrichment [1] 9/12
enter [2] 31/10 52/20
entered [1] 63/8
entering [1] 65/24
enterprises' [1] 64/11
ENTERTAINMENT [5] 1/6 1/10 1/16 3/4 3/5
entire [1] 37/7
entirety [1] 60/4
entities [1] 27/12
entitled [3] 18/11 38/2 86/7
entity [2] 20/16
entry [1] 48/10
Equifax [1] 72/18
equitable [1] 79/10
especially [2] 50/21 74/18
essence [1] 76/5
essentially [3] 17/21 20/22 38/22
establish [1] 59/9
established [2] 17/8 76/11
estimate [2] 11/2 12/14
estimates [2] 10/15 11/1
estimating [1] 44/18
et [3] 84/10 84/10 84/10
et cetera [3] 84/10 84/10 84/10
evaluating [2] 13/4 13/20
evaluation [1] 12/12
even [14] 6/23 21/3 24/3 30/8 40/13 43/6 44/5 50/7 68/2 68/18 71/2 74/16 77/9 84/13
event [2] 9/3 48/19
Eventbrite [2] 14/6 14/11
events [1] 39/2
eventually [1] 24/13
ever [4] 18/4 19/2 42/6 57/5
every [6] 9/16 18/12 19/10 43/14 79/2 80/20
everybody [3] 36/1 39/2 81/13
everyone [2] 19/14 37/3
everyone's [1] 80/1
everything [3] 37/10 68/15 80/25
evidence [26] 8/11 8/13 8/21 10/16 17/9 19/14 24/24 25/2 48/12 57/25 59/2 59/8 60/24 61/18 62/9 62/10 63/1 68/3 69/6 71/15 72/10 72/19 72/21 73/5 73/14 79/6
exact [3] 30/18 35/10 35/18

exactly [1] 72/16
example [6] 43/6 65/8 69/16 72/19 73/6 73/11
examples [2] 18/8 27/24
Excellent [1] 6/1
except [4] 43/21 67/13 75/9 81/1
exception [1] 69/8
excerpt [2] 16/12 69/21
exchange [1] 12/1
exclusionary [1] 64/10
exclusive [15] 33/17 33/22 37/13 41/5 52/21 53/6 60/18 63/12 65/20 65/20 65/23 65/25 66/15 66/25 78/5
exclusively [1] 36/10
excuse [2] 11/11 21/4
exercise [1] 60/17
exhibit [6] 11/19 11/20 12/16 13/13 13/13 14/8
Exhibit 14.0 [1] 14/8
Exhibit 32 [1] 11/20
Exhibit 46 [3] 11/19 12/16 13/13
exhibits [3] 11/19 26/17 43/1
existence [1] 35/12
expect [2] 5/11 27/3
expectation [3] 24/8 31/7 31/18
expense [1] 58/12
expert [5] 9/23 10/17 15/13 51/14 83/6
expert's [1] 15/23 15/24
expertise [4] 8/2 8/6 8/16 19/18
experts [1] 50/5
explain [3] 52/1 59/14 73/2
explaining [1] 26/18
explanation [1] 51/21
explicitly [2] 41/6 61/11
extending [1] 65/22
extent [8] 7/24 61/4 65/18 66/1 67/13 68/22 70/8 71/14
extraordinary [1] 51/6

**F**

face [2] 60/14 63/6
fact [17] 14/4 15/10 18/13 19/18 22/8 29/18 45/10 45/17 45/21 58/8 66/6 67/16 73/19 77/1 77/5 77/14 77/17
fact-finder [2] 77/1 77/14
factor [2] 17/18 19/24
facts [3] 8/9 8/10 72/21
factual [1] 65/12
fairly [1] 28/2
faith [2] 45/25 75/25
falls [1] 59/24
fan [21] 33/1 37/25 38/5 38/10 40/22 40/24 59/21 59/25 60/17 63/3 63/4 63/22 64/19 65/1 65/2 67/4 67/5 67/23 68/23 70/21 71/1
far [2] 50/11 60/1
fashion [1] 24/23
fault [1] 50/25
favorably [1] 77/5
fear [1] 83/8
featured [1] 30/3
February [5] 55/7 82/4 82/13 82/13 83/23
February-early [1] 55/7
fee [1] 32/25
feel [1] 57/19
feet [1] 49/2
few [3] 49/24 74/19 80/22

fewer [2] 5/10 68/16
field [1] 61/2
fifteen [3] 44/10 44/11 44/12
fight [3] 38/4 38/10 75/24
Figueroa [1] 2/5
figure [14] 6/8 25/20 41/7 43/20 43/23 43/25 44/4 44/19 46/8 59/6 76/3 78/21 79/13 79/16
figured [1] 50/3
figures [1] 58/25
file [1] 50/24
filing [1] 5/1
fill [3] 77/18 77/24 78/7
final [2] 3/25 16/22
Finally [1] 16/10
financial [2] 26/16 26/21
find [8] 30/6 34/15 34/17 37/23 72/9 79/2 79/3 79/5
finder [2] 77/1 77/14
finds [2] 34/15 75/8
Fine [1] 81/16
finish [1] 70/24
first [16] 2/23 2/23 3/23 17/3 17/8 26/9 36/12 43/8 45/20 50/15 59/14 68/4 69/22 76/18 84/3 84/5
FISCHER [1] 1/4
fit [2] 78/3 78/4
fits [1] 85/1
five [3] 18/2 58/13 68/11
fix [2] 82/11 82/16
Fleetwood [2] 73/7 73/8
Flick [2] 73/6 73/12
Floor [1] 2/6
fly [1] 71/19
focus [1] 80/13
folks [1] 69/18
following [1] 63/3
force [1] 48/10
forced [2] 14/24 85/14
forcing [1] 65/20
foreclose [1] 63/15
foreclosed [1] 64/5
foreclosure [2] 63/13
foregoing [1] 86/5
forget [1] 5/9
forgot [1] 84/3
form [7] 45/3 69/13 75/2 78/24 78/25 79/12 79/15
format [1] 86/7
forms [1] 75/1
forth [3] 18/7 59/18 61/16
forum [1] 15/23
forward [2] 49/12 66/17
foundation [4] 9/15 19/19 44/22 45/2
four [3] 49/7 76/11 76/17
four-step [2] 76/11 76/17
fourth [2] 55/13 58/10
fragmented [1] 45/11
Francisco [1] 2/19
Franklin [1] 15/22
frankly [3] 37/24 57/5 71/19
fraud [2] 32/6 34/21
frauds [1] 33/2
FRCP [1] 56/16
Fred [1] 9/21
FREDERICK [3] 2/2 3/16 4/7
Frederick Lorig [2] 3/16 4/7
fredericklorig [1] 2/7

**F**

free [1] 49/20
Friday [2] 81/1 81/3
friends [1] 38/25
front [1] 40/17
full [2] 80/24 81/18
fully [1] 62/6
function [1] 44/19
furnishing [1] 72/22
further [1] 79/14
future [4] 7/1 9/7 13/4 29/22

**G**

GASS [2] 2/17 72/15
gather [1] 71/16
gave [6] 30/2 39/11 44/6 44/7 46/19 57/2
Gee [1] 31/11
general [3] 7/24 28/3 37/1
generalized [1] 75/19
generally [5] 27/8 44/15 68/23 75/18 81/10
get [37] 4/10 6/9 22/3 23/24 24/15 25/14 37/7 37/12 37/17 38/4 38/24 41/20 46/11 46/14 48/13 48/15 48/16 49/3 49/17 49/25 51/1 58/15 60/6 60/22 61/24 62/8 64/22 64/23 70/20 72/6 75/8 75/24 78/16 79/1 80/6 83/24 84/5
gets [3] 75/20 78/22 81/8
getting [5] 35/23 37/19 45/14 60/10 80/14
giant [1] 29/14
give [24] 8/3 12/3 12/3 18/8 19/12 23/11 31/23 35/5 38/6 39/11 40/11 44/23 48/25 49/19 50/15 51/25 65/17 69/16 72/7 73/23 79/2 80/10 82/11 85/2
given [3] 20/18 40/8 73/18
gives [1] 23/8
giving [1] 25/17
Glicken [4] 47/1 69/19 69/20 73/4
glossary [1] 43/15
gmail.com [1] 2/25
GMV [1] 12/22
go [30] 4/20 5/23 10/20 11/13 12/6 16/5 20/25 22/21 25/12 26/9 26/13 27/25 38/8 43/3 46/6 47/9 47/19 48/1 49/12 49/14 49/19 49/25 64/20 66/10 70/20 74/14 78/10 80/5 83/11 84/9
goes [4] 15/24 54/23 56/4 64/3
going [86] 3/12 3/14 4/19 4/23 5/11 5/17 6/8 6/10 8/3 15/1 15/3 15/8 17/7 19/12 27/1 27/1 29/19 31/25 34/25 37/12 39/22 40/11 41/12 41/20 41/21 42/3 42/19 44/9 44/12 44/20 44/23 45/5 46/17 47/1 47/5 47/7 47/8 47/9 47/16 47/16 47/23 47/24 47/25 48/1 48/24 49/4 49/9 51/1 54/18 55/11 58/6 62/5 62/7 63/5 64/22 64/23 65/13 65/14 65/15 66/17 68/1 69/10 69/11 69/12 69/13 72/24 73/5 73/17 73/17 73/19 73/22 78/22 79/23 81/8 82/7 82/19 83/13 83/19 83/19 83/19 83/20 83/21 83/25 85/2 85/2
gone [1] 37/3
good [5] 44/8 45/25 75/25 80/21 82/15
good-faith [1] 75/25
got [11] 4/1 25/4 36/12 38/10 39/15 40/19 45/16 65/12 65/23 59/18 66/15
gotten [2] 48/2 48/7
grab [1] 83/21
grant [1] 54/9
granting [1] 82/9
grasp [1] 41/12
great [3] 37/14 40/11 85/18
gross [10] 9/1 13/4 13/5 13/9 15/19 17/19 17/23 18/5 18/14 18/23
group [1] 42/18
GTV [41] 8/24 8/24 9/25 10/2 10/3 10/7 10/10 10/15 10/18 11/1 11/5 11/24 12/14 12/21 13/11 13/19 14/1 14/5 14/7 14/12 14/12 14/21 15/2 15/8 15/11 16/1 16/11 16/15 16/18 17/2 18/11 18/13 18/15 18/20 19/3 19/14 19/15 20/23 21/3 21/6 21/9
GTVs [1] 11/21
guess [4] 24/15 39/6 47/7 71/4
guessing [1] 45/6
guidance [1] 6/3
guilty [1] 35/11
guitar [1] 69/2
guys [1] 53/24

**H**

had [26] 4/15 10/13 11/18 13/2 13/25 15/15 15/20 24/3 26/19 28/23 30/2 34/8 36/1 36/11 47/10 48/11 50/6 55/18 57/25 59/19 65/8 65/9 68/15 69/2 74/9 83/9
hadn't [2] 11/3 22/6
half [4] 47/17 48/25 51/9 58/13
Halloween [1] 49/21
hand [3] 11/22 13/19 14/16
handed [2] 16/11 18/9
handle [3] 3/17 23/25 74/17
handling [2] 3/14 8/1
happen [6] 62/5 62/7 71/7 80/20 83/13 83/19
happened [1] 24/10
happens [2] 6/16 51/10
happy [1] 46/10
hard [3] 43/20 44/13 83/21
hardly [1] 16/16
harm [1] 76/19
harmed [1] 62/2
has [26] 5/4 7/10 7/11 11/25 17/11 17/12 18/4 39/2 39/19 46/9 48/5 51/4 51/17 52/14 60/16 60/23 61/1 61/10 63/1 64/2 65/1 71/2 84/1 84/6 84/9 85/14
hasn't [3] 19/20 54/15 83/7
have [150]
haven't [3] 57/10 67/9 83/5
having [6] 10/21 42/22 45/4 45/19 68/17 76/20
he [41] 6/22 7/11 7/14 8/9 8/16 8/17 9/4 9/6 9/9 12/2 14/4 14/4 17/4 18/2 18/3 19/19 20/2 20/14 20/15 25/17 26/19 26/21 26/21 30/2 30/9 31/23 36/13 36/17 39/8 39/20 46/24 46/25 47/3 47/15 54/16 64/19 69/2 69/22 71/3 73/12 83/1 83/7
he's [5] 7/12 13/24 17/11 20/8 20/12
head [8] 26/9 26/20 28/1 29/23 30/21 52/9 63/17 68/10
heads [2] 3/12 28/17
hear [7] 3/12 8/4 9/19 27/25 36/24 39/24 55/24
heard [8] 39/25 44/21 46/22 50/13 59/12 70/22 72/25 78/2
hearing [3] 12/2 33/21 35/23
hearsay [9] 43/2 43/7 61/23 69/7 70/9 71/10 71/12 71/22 72/19
heavy [1] 27/13
height [1] 56/2
held [3] 23/12 35/24 86/6
help [3] 20/14 46/10 57/13
helped [1] 68/6
helpful [6] 7/22 11/23 15/21 72/11 84/18 85/8
helps [1] 80/15
her [2] 78/1 84/15
here [25] 7/3 11/14 13/6 13/17 17/17 17/25 21/23 31/19 42/4 44/24 57/13 59/23 61/6 61/20 62/4 62/23 63/14 63/19 64/25 70/5 73/21 81/23 81/25 83/13 83/18
Here's [2] 23/24 73/12
hereby [1] 86/3
Hey [1] 37/12
highlight [1] 74/21
highlighting [1] 72/17
highly [1] 75/18
him [10] 7/15 9/24 12/3 26/18 26/19 36/18 39/24 65/9 82/24 83/6
himself [1] 47/3
his [28] 8/2 8/18 9/1 9/8 9/15 13/24 14/3 14/8 14/10 18/3 18/10 18/19 20/2 20/12 24/10 25/18 26/6 26/8 26/18 36/19 46/25 47/15 48/18 50/11 64/18 69/3 69/21 82/12
hit [1] 63/17
hold [3] 6/15 7/19 51/10
holidays [1] 83/20
Honor [123]
Honor's [7] 4/9 5/21 17/6 40/8 48/3 64/1 85/4
HONORABLE [1] 1/4
hook [1] 12/23
hope [6] 26/17 42/18 68/14 81/17 81/19 84/19
hoped [2] 15/21 26/25
hopefully [3] 40/4 76/14 80/2
hoping [2] 29/21 41/15
hour [2] 46/11 47/17
hourly [1] 58/12
hours [6] 44/11 46/19 47/22 47/24 48/23 49/18
house [1] 65/24
house-seat [1] 65/24
Hovenkamp [1] 14/23
how [49] 10/14 15/3 15/7 18/11 22/20 22/21 23/8 24/15 25/15 25/20 25/23 29/19 30/24 30/25 31/12 35/4 36/4 36/8 36/10 42/8 42/22 43/14 43/23 44/8 44/19 44/22 45/2 45/5 45/15 46/12 46/12 46/13 52/25 61/17 61/22 61/24 62/8 62/24 64/22 64/22 67/7 68/6 68/13 73/3 75/25 78/20 78/21 79/13 79/16
however [1] 40/2
hub [4] 66/16 66/19 66/21 78/11

**H**

**hub-and-spoke [4]** 66/16 66/19 66/21 78/11
**huge [2]** 77/11 77/15
**hundred [1]** 59/23
**husband [1]** 60/7
**hyperbole [1]** 25/19
**hypothetical [2]** 9/7 21/3
**hypothetically [2]** 34/15 34/17

**I**

**I'd [5]** 9/25 23/25 43/14 46/5 71/20
**I'll [26]** 3/16 5/8 6/1 6/25 7/19 7/20 8/4 9/19 18/8 36/24 37/15 40/17 41/25 49/19 51/24 52/19 55/24 55/25 56/3 59/6 71/4 74/22 78/16 78/20 80/14 82/2
**I'm [47]** 3/12 4/13 4/19 4/23 5/11 7/22 8/3 11/12 12/18 21/24 25/19 36/6 39/17 39/23 40/11 42/3 44/24 45/6 46/4 46/10 46/12 46/13 46/17 48/17 48/22 48/24 49/4 49/20 50/19 51/16 54/9 57/20 59/11 67/5 67/18 70/21 71/20 71/24 74/6 78/24 81/7 82/18 83/5 83/25 84/2 84/2 85/2
**I've [10]** 28/18 28/18 39/25 42/5 42/6 43/19 45/16 50/21 74/8 83/1
**idea [4]** 34/8 37/7 64/4 80/18
**identified [3]** 33/7 45/19 55/10
**identify [1]** 67/21
**identity [1]** 28/3
**if [99]**
**iii [1]** 56/16
**illegal [1]** 37/9
**imagine [2]** 50/7 77/9
**immediately [1]** 64/2
**impacts [1]** 42/16
**impeach [1]** 54/3
**impeachment [2]** 67/14 67/15
**impenetrable [1]** 60/9
**implied [1]** 9/6
**important [2]** 67/7 72/23
**importantly [2]** 11/7 39/13
**impossible [2]** 46/16 51/8
**improvements [1]** 74/15
**imputed [1]** 18/2
**inappropriate [1]** 79/17
**INC [1]** 1/10
**incident [2]** 45/7 53/11
**inclined [3]** 54/9 59/11 71/8
**include [1]** 60/2
**included [1]** 8/21
**includes [4]** 33/18 49/1 60/11 60/19
**including [1]** 17/24 76/13
**Indeed [1]** 61/1
**indicate [1]** 53/20
**indicated [4]** 10/3 17/6 33/4 33/20
**indicating [1]** 7/21
**indicted [1]** 84/14
**Indictment [1]** 84/10
**individual [2]** 8/14 73/23
**industry [7]** 15/9 19/19 19/20 52/11 52/15 52/22 53/1
**infects [2]** 17/13 17/14
**influence [1]** 20/1
**information [15]** 25/1 26/16 26/21 26/23 32/1 36/20 36/23 51/18 51/20

70/15 82/21 82/25 83/2 83/4 84/9

**Initial [1]** 50/3
**injunction [1]** 33/21
**instance [1]** 29/18
**instead [2]** 25/2 63/7
**instruction [10]** 6/17 7/6 7/16 62/18 70/20 74/11 74/15 74/22 78/8 78/11
**instructions [10]** 22/12 54/19 74/8 74/11 75/16 75/19 78/15 79/3 79/10 79/11
**intend [1]** 49/13
**intended [1]** 9/24
**intending [1]** 67/23
**intention [3]** 5/20 5/25 69/4
**intentional [2]** 34/19 40/8
**interest [1]** 83/12
**interfered [1]** 32/20
**interference [5]** 32/9 33/11 34/19 35/13 40/8
**internal [4]** 12/9 18/21 28/2 60/12
**interpret [1]** 70/6
**interpretation [1]** 52/3
**interviews [1]** 46/25
**introduction [1]** 41/9
**inventories [1]** 37/3
**inventory [2]** 37/21 37/22
**investment [7]** 10/25 10/25 11/10 12/12 15/5 16/3 29/22
**investor [3]** 13/1 13/1 13/14
**investors [6]** 10/9 11/8 12/10 13/25 16/20 18/11
**involved [2]** 33/7 36/12
**irony [1]** 52/19
**irrespective [1]** 17/23
**is [237]**
**isn't [7]** 9/15 22/19 25/15 45/4 60/16 73/17 83/4
**issue [31]** 4/17 11/24 17/17 17/21 20/23 20/24 21/13 22/13 24/12 24/14 33/2 36/25 38/15 46/2 52/16 54/24 56/9 56/19 56/20 57/25 58/5 61/12 61/23 61/23 62/8 63/14 64/8 66/7 75/5 76/9 79/14
**issued [1]** 73/14
**issues [11]** 6/17 8/4 20/4 36/12 51/14 65/12 65/13 71/22 72/12 74/22 80/15
**it [235]**
**it's [84]** 4/19 6/21 6/22 6/24 10/20 13/10 13/16 15/16 15/21 16/7 17/20 18/12 18/19 19/1 19/6 21/4 22/21 23/2 23/16 23/18 23/18 25/15 25/20 25/23 28/2 30/11 31/14 31/17 33/19 33/21 33/22 33/22 38/19 38/23 40/18 45/11 45/15 45/17 46/9 46/16 47/8 47/16 47/24 47/25 51/8 52/17 53/2 53/8 55/14 56/14 56/19 56/20 56/23 59/24 60/1 60/3 61/11 61/14 61/15 61/18 61/22 63/13 63/14 64/24 65/2 65/3 65/4 66/7 67/7 68/16 68/20 69/11 70/15 70/18 70/19 73/17 80/23 81/1 81/3 82/7 82/25 83/4 83/21 84/13
**Item [5]** 3/3 25/6 25/7 25/10 26/2
**Item No. 12 [1]** 3/3
**Item No. 2 [2]** 25/6 25/7
**Item No. 3 [1]** 25/10
**its [12]** 10/10 17/2 17/19 18/20 61/15 62/16 62/22 63/5 63/8 65/1 71/4 75/2
**itself [9]** 16/15 16/15 16/20 22/24 29/9

38/23 56/10 64/6 65/24

**J**

**Jack [1]** 69/1
**JAMES [1]** 2/11
**January [3]** 82/13 82/14 85/16
**Jay [2]** 60/2 60/7
**JENNIFER [1]** 2/4
**jenniferenglish [1]** 2/9
**JMOL [1]** 59/1
**job [1]** 80/6
**Johnson [1]** 69/1
**joint [1]** 40/15
**joke [1]** 19/9
**Jones [2]** 69/18 73/11
**judge [7]** 1/4 3/24 4/16 6/21 46/6 48/24 48/25
**Judge Rosenberg's [1]** 3/24
**Judge Walter [1]** 48/25
**judges [4]** 46/1 80/7 80/8 80/9
**judges' [1]** 7/21
**judgment [14]** 5/21 20/10 30/4 33/20 34/13 40/9 52/16 57/11 59/10 63/18 64/1 64/9 64/18 78/1
**judicial [2]** 50/4 86/8
**jurisdiction [2]** 56/14 57/19
**jurisdictional [5]** 56/8 56/19 57/23 58/5 58/16
**jurors [1]** 78/21
**jury [30]** 8/10 10/20 17/8 22/12 24/12 34/15 34/15 34/17 41/9 41/17 46/20 47/13 52/4 52/6 54/19 59/11 62/18 64/3 65/13 65/15 66/7 70/20 74/8 74/22 75/20 78/14 78/25 79/3 79/8 82/22
**just [55]** 3/23 5/3 8/1 16/25 17/16 18/8 19/1 22/5 25/16 26/11 27/2 27/6 27/20 34/22 38/12 38/14 38/17 38/19 39/22 40/1 43/17 44/14 44/24 46/6 48/6 48/18 49/4 49/5 51/7 51/19 51/24 52/6 52/20 53/2 53/22 57/2 61/23 62/3 62/5 63/13 66/8 74/12 74/14 74/21 75/11 75/13 75/23 78/4 79/7 81/11 82/19 82/25 83/8 83/9 83/13

**K**

**keep [4]** 6/25 31/11 68/12 79/18
**keeping [1]** 24/18
**Kenny [1]** 27/25
**kept [5]** 24/19 36/3 39/10 54/12 60/7
**KEVIN [2]** 2/3 76/7
**Kevin Teruya [1]** 76/7
**kevinteruya [1]** 2/8
**keys [1]** 25/17
**kind [10]** 7/22 23/13 26/23 32/22 35/22 36/11 42/10 55/1 62/4 83/22
**kinds [1]** 8/9
**kingdom [1]** 25/17
**Klausner [1]** 48/24
**knew [2]** 36/2 36/15
**know [77]** 3/7 5/4 5/9 6/24 10/6 10/23 13/10 15/3 15/7 17/1 19/6 19/8 19/9 19/17 23/9 27/7 28/4 29/2 29/18 30/9 30/10 31/5 34/20 35/4 35/7 35/10 36/5 36/10 36/16 36/16 36/17 36/17 37/13 37/13 38/18 41/14 42/8 42/25 43/4 44/21 44/22 45/11 45/15 45/15 45/18 47/12 47/23 48/20 50/10 50/18 50/23

## K

know... [26]  51/24 52/15 53/8 53/17
  53/17 54/4 54/10 59/23 59/24 63/6
  64/5 66/13 67/6 68/12 71/2 71/13
  71/14 77/22 78/10 78/20 78/23 79/22
  79/24 81/22 82/23 84/14
knowing [3]  27/20 30/24 71/11
known [1]  28/4
Kramer [1]  39/18

## L

largest [1]  42/6
last [3]  11/9 20/6 83/10
late [3]  45/19 50/9 55/6
later [1]  8/23
LATHAM [3]  2/10 2/16 3/21
latter [1]  76/2
laugh [1]  44/8
Laughter [2]  53/7 78/17
law [18]  2/5 2/12 2/16 2/17 2/17 22/9
  23/15 24/17 41/16 51/6 51/9 55/17
  55/18 61/2 62/15 62/19 75/25 79/9
laws [1]  78/6
lawsuit [1]  54/6
lawyers [3]  39/19 42/23 80/19
laying [1]  44/22
lays [1]  76/17
learned [1]  32/20
least [12]  4/12 5/12 6/21 21/7 35/17
  49/11 58/7 67/21 74/19 77/6 81/17
  85/1
leave [1]  11/12
lectern [5]  4/6 6/22 6/24 55/25 56/4
leeway [1]  61/3
left [4]  11/2 27/18 46/18 58/19
legality [1]  52/15
length [1]  12/25
lengthiest [1]  42/7
less [3]  63/6 75/3 77/10
let [14]  16/25 30/10 39/6 40/23 48/13
  48/20 50/15 50/24 51/24 59/14 66/10
  70/24 71/15 79/23
let's [17]  3/23 6/5 7/20 12/19 21/13
  21/21 49/25
levels [1]  70/9
leverage [1]  33/24
liability [2]  62/16 62/16
liable [1]  62/21
like [39]  5/6 7/23 10/1 15/14 15/15
  16/3 18/5 18/25 20/24 24/18 27/25
  28/8 28/9 28/13 37/3 38/23 39/23
  41/18 43/15 48/23 49/22 52/20 59/9
  60/2 60/14 60/18 60/22 60/24 68/3
  68/19 68/24 69/18 71/20 71/21 72/18
  74/10 77/24 80/3 80/18
likely [1]  69/23
limine [18]  1/23 6/5 6/7 6/11 7/5 8/22
  16/8 43/3 46/14 50/1 50/2 59/8 59/15
  61/21 67/5 67/11 71/6 73/17
limit [2]  72/17 77/20
line [1]  8/19
lines [3]  18/13 68/8 70/3
list [12]  26/11 26/12 27/22 42/7 43/1
  43/8 43/8 44/2 48/16 53/16 53/19
  84/23
listing [1]  29/5
lists [7]  14/10 27/7 28/3 28/18 43/19

43/24 44/4
literally [1]  28/20
literature [1]  67/15
litigation [2]  10/14 72/5
little [5]  28/7 40/12 43/20 70/18 83/9
LIVE [27]  1/10 3/4 16/12 16/14 16/20
  20/1 20/7 20/14 20/15 60/8 60/13
  61/12 61/13 61/15 61/15 62/24 63/2
  63/20 64/5 64/6 64/11 64/13 65/7
  65/11 65/24 66/1 73/14
LLC [4]  1/6 1/10 1/13 1/17
LLP [2]  2/2 2/10 2/16
lock [1]  31/16
long [8]  10/13 34/25 40/18 45/5 47/9
  47/24 61/2 61/2
longer [2]  5/2 85/15
look [16]  12/7 14/25 18/10 18/18 30/3
  38/24 38/25 42/21 44/13 48/20 65/13
  65/14 75/12 79/15 84/6 84/25
looked [9]  19/2 42/5 43/19 68/2 68/3
  68/18 68/19 68/22 74/9
looking [8]  13/3 13/18 13/25 16/14
  18/5 61/6 74/3 82/19
LORIG [12]  2/2 3/16 4/7 5/3 6/9 9/21
  11/16 18/9 20/3 21/18 72/25 84/1
Los [5]  1/21 2/6 2/13 2/24 3/1
loses [1]  19/9
losing [1]  49/5
loss [19]  8/24 17/9 26/24 55/11 55/13
  55/16 56/7 56/11 56/12 57/3 57/6
  57/11 57/14 57/22 58/8 58/21 58/22
  58/24 58/25
losses [2]  37/2 54/21
lost [5]  17/14 54/10 54/17 72/20 73/3
lost-business [1]  17/14
lot [10]  28/12 43/2 46/9 48/14 63/6
  70/13 75/24 81/25 81/25 83/14
love [1]  46/5
lw.com [5]  2/14 2/15 2/20 2/20 2/20

## M

Mac [2]  73/7 73/8
made [6]  5/16 7/14 13/15 15/15 15/16
  20/4 21/11 37/4 37/6 60/5 72/4
Magistrate [1]  4/16
mail [1]  81/4
mails [3]  71/10 71/11 71/15
main [2]  3/14 52/18
maintain [1]  56/13
major [1]  74/25
make [31]  4/24 6/25 7/15 7/23 12/14
  15/17 17/22 21/1 38/14 42/17 42/19
  44/14 46/21 50/6 53/15 53/19 53/23
  61/21 62/9 66/11 68/13 69/13 70/2
  74/15 75/19 77/13 78/5 79/25 80/19
  82/14 82/19
makes [3]  14/24 19/10 77/8
making [4]  16/22 55/1 67/22 72/7
manage [2]  25/9 33/1
managed [1]  25/8
manager [2]  33/16 69/12 71/3
managers [5]  29/21 45/11 63/10 69/9
  71/1
many [15]  40/2 44/19 45/2 45/12 45/15
  45/20 49/4 52/1 68/11 68/13 74/10
  74/17 78/20 79/11 79/11
March [2]  55/7 84/3
margin [3]  18/23 18/23 19/11

market [9]  14/21 27/14 36/19 51/12
  63/4 64/10 64/20 65/1 65/4
market-based [1]  14/21
marketing [2]  23/6 63/20
marketplace [1]  35/24
markets [1]  64/12
master [5]  20/22 45/1 46/2 46/5 47/12
Matt [1]  69/18
matter [14]  15/12 25/7 33/21 45/14
  47/22 47/22 55/5 55/8 55/14 57/23
  70/16 70/19 83/14 86/7
matters [2]  16/22 64/25
may [36]  4/11 5/4 7/17 17/1 20/25
  23/15 28/4 28/9 31/6 38/11 38/14 39/5
  39/20 40/17 44/14 45/10 46/22 50/13
  56/13 59/12 61/3 62/12 69/7 69/7 69/7
  69/7 70/22 72/5 72/9 73/4 74/13 74/15
  74/21 76/4 78/3 80/24 85/4
maybe [6]  23/15 36/5 46/13 48/18
  68/15 74/21
McCartney [4]  36/13 36/16 36/17 65/9
me [50]  4/14 5/9 7/22 8/5 11/11 12/4
  16/25 21/4 23/25 24/14 24/19 34/22
  37/14 39/6 39/18 41/22 42/13 42/17
  44/6 44/7 46/10 46/19 47/13 49/9
  50/15 50/17 50/20 51/7 52/4 59/10
  59/14 66/10 69/16 69/22 69/23 70/7
  70/18 70/24 71/15 71/16 71/21 72/11
  73/13 74/10 75/24 79/24 81/19 82/10
  84/14 84/16
Mead [5]  7/10 22/16 24/10 26/6 51/11
mean [13]  24/2 25/15 25/16 28/25 36/4
  41/3 41/5 41/17 52/7 52/14 52/19
  67/16 75/23
means [8]  7/12 31/19 31/20 41/13
  54/18 54/23 80/8 83/21
meant [3]  19/23 44/1 79/17
mechanism [1]  57/17
mediated [1]  5/20
mediation [3]  5/22 84/18 85/6
mediator [3]  5/24 82/1 83/21
meet [2]  85/5 85/16
meets [1]  72/2
memoranda [1]  22/8
memorandum [1]  12/9
memorandums [2]  20/9 20/19
memos [2]  30/3 30/9
mention [3]  19/24 49/7 51/5
mentioned [5]  50/9 66/10 66/12 69/20
  80/2
mentions [1]  18/3
Mercedes [1]  38/23
merchandise [3]  13/5 13/9 18/14
merger [1]  9/7
merit [1]  25/21
merits [1]  17/2
meta [1]  75/15
meta-dispute [1]  75/15
method [1]  9/4
methodologies [1]  14/22
methodology [3]  15/24 21/8 23/2
methods [1]  10/4
metric [1]  17/20
metrics [2]  15/12 18/24
Michael [3]  20/6 64/17 65/11
mid [2]  82/4
mid-February [1]  82/4
middle [1]  41/18

**M**

**midst** [1]  10/23
**might** [7]  4/3 24/13 24/13 27/21 36/16 60/21 71/8
**Miley** [1]  60/11
**million** [6]  10/24 10/25 12/12 15/4 21/2 60/3
**mind** [4]  6/25 13/22 14/2 64/24
**minute** [1]  12/17
**misappropriation** [2]  9/18 32/21
**miscalculation** [1]  8/24
**misrepresent** [1]  37/24
**missing** [5]  6/17 7/5 7/7 7/16 17/25
**mitigated** [5]  35/2 35/5 35/8 35/14 37/2
**mitigating** [1]  35/2
**mitigation** [2]  36/25 38/15
**model** [9]  9/13 30/16 30/24 74/10 74/14 75/1 75/2 75/8 78/9
**models** [3]  77/19 77/22 77/23
**moment** [3]  27/18 46/15 48/22
**Monday** [2]  1/22 3/1
**money** [2]  19/9 37/16
**monopolization** [4]  10/24 11/4 34/12 66/5
**monopoly** [1]  33/24
**Montgomery** [1]  2/18
**month** [2]  59/5 84/1
**months** [2]  58/13 58/14
**moot** [1]  17/10
**more** [32]  5/5 5/10 5/10 6/1 6/2 11/7 15/7 28/8 35/20 39/12 40/13 44/11 46/19 46/19 47/3 48/9 49/22 57/14 57/22 68/11 68/14 70/6 71/21 72/9 74/9 74/22 75/11 75/22 80/8 83/10 84/24 85/3
**morning** [1]  49/9
**most** [6]  5/12 17/25 19/5 40/4 74/11 75/5
**motion** [28]  4/21 4/24 5/1 5/8 6/5 6/7 6/11 6/16 7/4 7/20 9/10 16/9 20/11 30/4 46/14 50/2 50/6 55/1 57/12 59/8 59/10 59/11 59/15 61/21 63/18 67/5 67/10 73/16
**motions** [8]  1/23 3/18 8/22 20/10 21/25 43/3 49/25 71/6
**motive** [5]  70/7 70/11 70/15 72/22 73/13
**move** [7]  7/20 21/13 25/6 36/25 38/12 45/18 70/23
**Moving** [1]  40/15
**Mr** [1]  73/4
**Mr.** [55]  4/12 5/3 6/9 6/10 6/12 7/10 7/25 8/5 8/12 9/23 10/17 11/16 11/19 11/20 12/16 13/24 14/15 16/1 17/3 17/21 18/9 19/18 20/3 20/12 20/19 20/21 20/21 21/18 22/16 22/16 24/10 26/6 26/22 34/22 40/9 46/24 47/1 47/1 47/14 47/23 47/25 48/12 54/13 55/2 59/19 60/5 62/23 65/18 69/20 72/25 73/4 73/11 82/11 82/17 84/1
**Mr. Block** [3]  47/1 47/23 73/4
**Mr. Glicken** [2]  47/1 69/20
**Mr. Jones** [1]  73/11
**Mr. Lorig** [8]  5/3 6/9 11/16 18/9 20/3 21/18 72/25 84/1
**Mr. Mead** [4]  7/10 22/16 24/10 26/6

**Mr. Rapino** [3]  20/12 20/19 20/21
**Mr. Schecter** [1]  58/2
**Mr. Wall** [5]  14/15 40/9 47/25 62/23 65/18
**Mr. Wilson** [1]  6/12
**Mr. Wolfson** [2]  6/10 34/22
**Mr. Wolfson's** [3]  11/19 11/20 12/16
**Mr. Yurkerwich** [14]  7/25 8/5 8/12 9/23 13/24 17/21 19/18 20/21 46/24 47/14 48/12 54/13 59/19 82/17
**Mr. Yurkerwich's** [5]  10/17 16/1 17/3 60/5 82/11
**Mr. Zaidi** [3]  4/12 22/16 26/22
**Ms** [1]  73/4
**Ms.** [6]  3/7 43/12 47/1 55/21 84/6 84/15
**Ms. Bellin** [1]  47/1
**Ms. Plato** [4]  3/7 43/12 84/6 84/15
**Ms. Trebicka** [1]  55/21
**much** [19]  15/15 23/8 44/8 44/11 44/22 46/1 46/12 46/13 46/20 46/20 46/21 71/19 77/23 78/21 79/7 79/9 80/14 80/14 85/19
**multi** [1]  65/7
**multi-punch** [1]  65/7
**multiple** [6]  10/7 10/18 14/7 14/13 19/3 55/18
**multiples** [1]  15/18
**multiplying** [2]  17/11 18/1
**muster** [1]  28/9
**my** [30]  5/11 5/14 7/23 8/3 9/19 22/9 23/25 25/22 31/13 34/23 38/23 38/25 46/9 46/10 50/3 50/15 51/6 51/9 52/9 56/2 61/1 68/17 71/8 71/9 72/7 79/25 80/7 80/13 81/4 84/7

**N**

**name** [2]  3/11 76/24
**names** [2]  43/14 43/15
**narrow** [2]  64/4 77/25
**NATION** [22]  1/10 3/4 16/15 16/20 20/7 20/14 20/15 60/8 60/13 61/12 61/13 61/15 61/15 63/2 63/20 64/6 64/11 65/7 65/11 65/24 66/1 73/14
**Nation's** [5]  16/12 20/1 62/25 64/6 64/13
**nearly** [1]  47/24
**neat** [1]  56/5
**neatly** [2]  78/3 78/4
**necessarily** [2]  34/20 53/23
**need** [41]  5/10 5/10 5/13 5/23 5/23 7/17 8/13 40/3 41/22 42/15 43/4 44/12 45/9 47/13 48/19 50/10 52/4 53/15 53/19 54/19 56/15 56/15 58/4 61/21 61/22 71/15 71/16 72/6 72/9 74/22 78/21 79/2 79/8 79/10 79/13 79/14 80/13 81/6 82/10 82/23 84/5
**needed** [1]  34/24
**negative** [1]  19/25
**neither** [1]  19/12
**never** [9]  15/16 37/20 37/21 39/15 55/15 56/8 57/5 57/14 72/21
**Nevermind** [1]  25/19
**Nevertheless** [1]  15/17
**new** [3]  25/18 26/8 84/12
**next** [9]  27/1 27/5 28/10 37/15 38/12 49/20 49/24 60/22 80/23
**nine** [5]  22/12 28/21 28/24 29/6 29/11

**Ninth** [1]  75/5
**no** [52]  4/9 3/24 4/7 9/2 9/4 12/1 13/2 17/11 18/3 18/10 19/14 21/9 24/24 31/7 31/20 31/22 32/13 34/16 34/17 35/7 36/18 39/25 47/3 50/4 50/10 53/6 55/11 55/18 57/21 58/8 58/20 58/23 58/24 59/1 62/18 67/13 67/18 68/18 69/25 71/10 71/11 72/3 74/22 75/11 77/10 80/18 80/21 81/20 83/1 83/12 84/20 86/17
**No.** [10]  3/3 6/5 6/8 6/11 22/17 25/6 25/7 25/10 26/2 50/2
**No. 1** [2]  22/17 50/2
**No. 3** [4]  6/5 6/8 6/11 26/2
**nobody** [2]  11/12 27/18
**non** [4]  24/23 48/11 71/12 73/17
**non-hearsay** [1]  71/12
**non-Ticketmaster** [1]  24/23
**non-verbal** [1]  48/11
**nondisclosure** [3]  24/3 24/6 54/21
**none** [4]  24/25 55/10 65/18 84/21
**not** [145]
**note** [1]  7/2
**noted** [1]  7/10
**nothing** [4]  21/16 21/19 49/14 73/9
**notice** [3]  42/24 57/24 71/22
**November** [2]  49/8 49/14
**November 28** [2]  49/8 49/14
**now** [24]  4/19 5/14 7/3 30/18 38/9 39/11 44/25 52/17 52/22 53/1 53/23 54/25 56/8 56/17 56/23 57/9 57/15 57/19 59/5 60/23 61/10 67/4 68/3 79/16
**number** [8]  17/11 22/17 28/21 46/17 47/24 51/4 51/10 84/24
**numbers** [3]  17/7 46/19 84/23
**numerous** [1]  22/14

**O**

**O'Bannon** [7]  75/4 75/6 75/9 76/9 76/10 77/4 77/5
**o'clock** [2]  80/3 80/6
**O'MARA** [1]  2/17
**object** [3]  45/19 79/23 80/20
**objection** [2]  21/13 72/3
**objections** [11]  3/24 42/9 42/23 43/2 49/3 49/4 53/21 80/4 80/19 80/22 80/24
**obvious** [2]  8/5 17/25
**obviously** [1]  37/1
**October** [3]  1/22 3/1 86/11
**odd** [1]  58/2
**off** [13]  7/19 7/21 26/10 28/1 46/15 49/4 49/23 51/10 52/9 69/3 73/21 83/23 83/25
**offense** [1]  84/20
**offenses** [1]  75/21
**offer** [3]  9/23 26/21 46/5
**offered** [1]  35/20
**offerings** [1]  35/15
**offices** [1]  51/9
**Official** [3]  1/25 2/22 86/17
**often** [2]  71/22 80/20
**Oh** [2]  36/20 58/6
**okay** [36]  3/19 6/12 12/6 12/23 13/12 22/17 22/19 26/15 27/5 27/19 28/14 29/23 31/1 32/3 32/5 32/22 33/9 36/21 36/23 38/13 38/16 39/4 41/24 50/16

**Q**

okay... **[12]** 53/4 57/18 58/15 66/22
67/3 67/25 70/4 74/5 76/6 78/5 81/21
85/18
old **[2]** 19/9 36/7
on **[153]**
once **[4]** 4/9 38/24 71/21 84/15
one **[60]** 4/24 5/6 6/16 10/4 12/9 14/15
14/21 15/11 15/12 15/23 16/11 17/18
18/10 18/12 18/13 18/19 18/22 19/14
21/25 22/23 23/9 26/16 27/16 28/21
29/7 29/13 29/13 34/4 34/20 35/22
39/18 40/5 40/16 43/3 45/9 46/17 49/8
49/11 52/18 53/8 54/13 56/2 56/3 61/3
61/10 61/25 62/14 63/18 64/2 68/4
70/9 73/23 74/25 75/7 75/8 75/12 77/9
81/8 81/18 84/25
one-sided **[1]** 53/8
ones **[8]** 22/15 28/8 32/20 36/6 47/7
59/22 59/25 78/9
online **[2]** 25/8 25/12
only **[21]** 7/7 8/20 14/15 17/22 18/5
25/2 36/2 36/19 37/19 38/20 40/19
56/17 57/20 61/5 62/9 70/9 71/21 73/5
80/10 80/19 85/11
oOo **[2]** 3/2 85/22
opening **[1]** 49/1
opinion **[1]** 75/25
opinions **[2]** 7/21 50/5
opportunity **[4]** 30/2 72/15 73/24
76/21
opposed **[2]** 27/20 62/1
opposite **[1]** 35/11
opposition **[2]** 63/2 64/18
opting **[1]** 75/18
option **[1]** 49/19
or **[75]** 5/12 8/8 9/17 9/17 11/13 13/5
17/19 19/1 19/18 20/25 23/16 27/1
27/21 28/22 33/16 33/19 33/20 33/22
34/10 38/10 38/10 40/2 40/2 42/1
42/16 43/10 46/5 46/6 46/19 46/19
47/17 48/10 48/12 48/15 48/24 49/20
51/22 52/5 52/7 52/12 54/6 54/13
54/19 56/12 57/12 59/2 59/5 60/17
60/18 63/20 63/21 63/21 67/7 67/14
67/19 67/21 68/5 69/7 69/7 69/13
70/10 70/11 71/13 72/4 72/12 73/7
73/11 74/15 74/16 76/19 78/5 78/6
78/8 78/13 84/10
oral **[3]** 32/14 32/22 34/10
order **[18]** 3/17 3/25 4/9 4/10 4/13 4/18
4/19 4/19 5/21 26/9 34/1 42/5 42/6
43/9 52/20 64/1 64/9 78/2
ordinarily **[2]** 14/25 74/16
original **[1]** 13/16
originally **[1]** 82/6
other **[49]** 3/18 7/21 8/4 8/8 8/12 10/9
10/17 11/13 12/15 14/5 15/2 15/4 16/4
16/18 17/13 17/24 19/15 20/4 21/5
21/13 22/19 23/15 26/22 27/12 27/17
34/3 34/5 34/21 35/1 36/25 40/20
43/15 45/25 49/5 50/23 50/24 51/20
52/2 52/13 61/8 63/23 65/3 65/15
67/10 69/13 73/14 75/14 79/23 80/11
others **[2]** 27/16 61/18
otherwise **[6]** 21/16 23/19 38/5 43/7
51/24 78/13

ought **[1]** 51/49
our **[34]** 3/11 7/21 9/15 9/20 9/23 9/22
10/4 10/8 14/23 35/15 35/11 35/12
35/16 35/19 37/1 39/18 43/13 43/16
44/17 45/15 45/19 52/18 55/22 61/6
63/2 65/19 66/24 66/25 67/22 68/24
69/4 77/20 77/25 78/14
ours **[3]** 12/13 39/1 39/2
out **[48]** 5/11 6/8 9/22 10/21 11/3
14/24 17/5 21/10 21/10 23/3 25/20
27/12 29/24 30/1 33/19 35/22 36/13
40/3 41/7 42/3 42/15 42/25 43/20
43/23 43/25 44/5 44/19 46/8 49/5 50/3
51/23 55/18 59/6 60/14 63/3 64/20
64/22 64/23 65/1 74/14 76/3 76/17
78/21 79/13 79/16 81/23 83/3 85/14
out there **[1]** 40/3
outs **[1]** 65/24
outside **[2]** 18/11 59/24
over **[18]** 15/18 15/24 38/4 46/2 46/2
46/2 48/24 49/25 53/2 57/19 59/23
62/5 62/5 67/17 67/19 73/21 75/24
81/2
overall **[6]** 64/12 64/25 65/16 66/25
67/1 67/6
overlap **[1]** 28/24
overnight **[1]** 83/19
overrule **[1]** 77/4
oversimplifying **[1]** 28/23
own **[8]** 7/23 16/12 18/21 23/5 35/25
35/25 46/18 61/15
owned **[1]** 20/15
owner's **[1]** 62/16
owns **[1]** 41/1

**P**

p.m **[6]** 1/22 3/1 80/25 81/1 81/3 85/20
page **[4]** 14/9 58/10 78/25 86/7
pages **[1]** 18/18
paid **[2]** 46/11 79/1
papers **[10]** 9/22 10/4 10/8 11/7 14/23
16/17 34/13 44/10 54/12 64/18
paragraphs **[1]** 19/25
pare **[3]** 40/10 46/3 84/22
parent **[4]** 62/16 62/19 64/15 66/4
parent-owner's **[1]** 62/16
part **[16]** 7/8 13/14 17/3 35/18 46/9
47/19 54/9 54/10 65/7 65/16 67/5
69/22 73/1 74/11 82/10 82/17
partially **[1]** 50/13
participate **[1]** 45/25
participates **[1]** 62/20
particular **[7]** 23/2 27/24 28/4 28/12
45/8 51/17 75/2
particularly **[1]** 7/22
parties **[5]** 28/20 31/2 32/17 62/18
82/3
partner **[4]** 2/2 2/3 2/3 60/8
party **[7]** 16/2 16/20 42/13 43/5 53/13
53/14 64/15
pass **[5]** 26/10 28/1 28/9 58/11 74/8
passage **[1]** 56/9
past **[3]** 13/2 54/5 84/13
pasted **[1]** 43/22
PAT **[5]** 1/25 2/22 86/3 86/16 86/17
patcuneo1600 **[1]** 2/25
Paul **[4]** 36/13 36/16 36/17 65/9
Paul McCartney **[3]** 36/16 36/17 65/9

Pause **[1]** 74/1
pay **[6]** 28/8 37/15 37/20 37/21 52/24
pending **[2]** 7/5 9/10
people **[15]** 3/8 19/20 22/20 36/10
42/23 43/4 45/10 47/4 48/14 50/19
65/3 68/2 68/17 74/3 84/16
per **[1]** 47/17
percent **[6]** 59/24 61/7 62/15 62/19
63/22 66/4
percentages **[1]** 8/18
peremptories **[1]** 78/23
periodic **[2]** 26/19 27/2
permissible **[1]** 73/18
permit **[1]** 58/1
person **[4]** 45/8 45/10 56/12 69/13
personally **[1]** 20/7
perspective **[1]** 44/17
phenomenon **[1]** 53/1
phone **[2]** 23/3 23/14
phrase **[3]** 40/16 41/11 46/12
phrases **[1]** 43/15
pick **[3]** 78/8 78/13 78/16
picture **[2]** 6/24 69/2
pictures **[1]** 68/25
piece **[2]** 37/15 48/11
pipelines **[1]** 26/3
place **[1]** 7/9
placed **[1]** 21/2
places **[1]** 37/19
plainly **[1]** 7/11
plaintiff **[16]** 1/7 2/2 3/15 21/22 45/18
53/15 55/6 67/8 71/14 75/18 76/8
76/18 76/20 76/23 78/12 79/4
plaintiff's **[5]** 9/20 44/2 50/2 77/18
79/7
plaintiffs **[2]** 44/7 54/12
plan **[4]** 4/3 23/5 68/17 73/1
planning **[5]** 21/22 43/25 66/13 66/17
67/8
plans **[2]** 28/19 29/22
Plato **[4]** 3/7 43/12 84/6 84/15
playing **[1]** 67/6
pleading **[1]** 57/24
pleadings **[4]** 57/6 57/12 57/15 57/22
please **[2]** 4/6 56/1
pled **[2]** 58/22 75/16
plot **[1]** 53/2
podium **[2]** 4/5 6/20
point **[17]** 11/24 16/10 16/10 16/22
17/10 17/16 20/6 24/4 28/21 41/14
54/4 54/5 59/16 61/1 61/6 75/14 76/2
pointed **[1]** 9/22
points **[2]** 22/8 52/18
policy **[9]** 37/25 40/22 64/20 65/1 65/2
67/4 67/6 67/23 68/7
portion **[4]** 14/3 66/24 66/25 67/2
position **[2]** 33/24 37/1
positions **[1]** 43/10
possible **[3]** 62/24 77/23 79/24
post **[2]** 7/2 15/5
post-investment **[1]** 15/5
post-it **[1]** 7/2
posture **[1]** 58/2
posture on **[1]** 58/2
potential **[2]** 13/3 26/5
potentially **[1]** 61/25
PowerPoints **[3]** 10/13 11/22 12/8
practical **[2]** 45/14 83/14

**P**

practically [2]  46/16 51/8
practice [2]  52/12 52/15
practices [2]  61/8 75/16
pre [1]  12/12
pre-investment [1]  12/12
precise [2]  21/21 21/22
precisely [1]  72/24
predicate [1]  34/12
predominately [1]  77/19
preexisting [1]  40/24
prefer [1]  6/19
preferred [1]  14/22
prepare [1]  11/22
prepared [5]  10/13 39/17 39/23 55/21
 55/23
preponderance [1]  79/5
presale [8]  33/1 33/19 35/5 37/8 63/16
 63/23 65/3 65/21
presales [8]  9/16 33/25 37/14 40/23
 41/3 41/4 60/4 63/11
present [2]  54/16 80/16
presentation [1]  13/15
presentations [3]  28/19 29/16 29/18
presented [8]  8/11 8/21 10/8 49/17
 62/9 70/16 71/12 82/22
PRESIDING [1]  1/4
pressure [1]  62/2
pretrial [7]  1/23 3/15 3/17 22/1 22/7
 42/5 42/6
prevent [1]  63/21
price [1]  14/25
prior [1]  35/23
privacy [1]  31/7
private [2]  29/9 31/11
pro [5]  76/20 76/22 77/2 77/11 77/16
pro-competitive [5]  76/20 76/22 77/2
 77/11 77/16
probably [3]  31/11 78/23 81/3
problem [4]  11/2 45/13 46/9 60/9
problems [2]  17/13 70/13
procedure [1]  76/11
proceed [1]  21/23
proceedings [5]  1/20 66/14 74/1 85/20
 86/6
process [5]  17/12 44/15 45/4 48/9
 76/18
produce [1]  68/6
produced [9]  42/9 55/12 58/20 67/9
 67/24 68/9 68/11 68/14 68/15
product [2]  17/2 38/22
profit [5]  15/16 15/17 19/11 21/1 26/24
profitability [7]  13/2 13/3 17/24 18/6
 18/16 18/24 19/6
profits [3]  15/15 20/25 21/11
program [1]  40/22
projected [1]  26/24
projections [1]  13/19
promise [1]  81/5
promoted [1]  63/9
promoter [4]  20/1 23/21 61/16 64/14
promoters [4]  22/22 24/9 29/21 32/25
promotion [1]  64/7
promotor [1]  33/16
pronounce [1]  76/14
pronunciation [1]  7/25
proof [2]  58/1 58/4

proper [3]  45/2 57/17 80/1
properly [3]  16/2 47/15 70/16
propose [1]  52/4
proposed [4]  4/8 4/18 22/12 85/6
proposition [1]  57/9
prospective [3]  34/2 34/6 34/24
protecting [1]  24/6
protocol [1]  61/22
prove [3]  15/3 58/7 58/23
provide [3]  53/19 71/16 72/10
provided [4]  10/16 24/25 40/15 57/4
provider [2]  63/23 65/3
providers [1]  63/16
provides [2]  14/12 14/12
providing [1]  26/6
provision [2]  31/2 37/8
public [3]  29/8 67/14 67/16
pull [1]  63/20
pulled [1]  60/13
punch [1]  65/7
puppet [1]  20/22
puppet-master [1]  20/22
purely [2]  8/18 56/14
purpose [6]  7/13 43/4 52/11 54/14
 71/12 73/18
purposes [5]  9/1 18/15 67/14 67/15
 67/19
pursuant [1]  86/4
pushed [1]  10/21
put [14]  17/7 21/10 21/10 29/19 30/9
 43/23 46/15 52/14 53/1 58/1 58/4
 68/25 68/25 78/14
putting [1]  16/25

**Q**

quandary [1]  10/20
quarter [1]  16/12
quash [6]  4/11 4/21 4/24 5/1 5/4 5/8
question [11]  19/6 31/20 34/23 41/16
 54/3 61/14 68/5 68/17 68/20 78/25
 80/21
questions [3]  22/3 39/21 79/12
quick [2]  38/15 42/21
quickly [2]  47/19 47/21
QUINN [2]  2/2 76/7
quinnemanuel.com [5]  2/7 2/8 2/8 2/9
 2/9
quintessential [1]  66/6
quit [1]  79/1
quite [2]  24/14 37/24
quote [1]  72/21

**R**

raised [2]  62/4 63/25
ran [1]  37/9
Rapino [6]  20/7 20/12 20/19 20/21
 64/17 65/11
rather [4]  15/11 15/25 23/10 45/18
re [1]  59/8
react [1]  83/10
read [1]  40/18
readability [1]  13/16
reading [1]  48/18
ready [3]  35/23 45/14 49/25
real [1]  19/15
Real's [1]  6/21
realistic [2]  84/24 84/25
realize [1]  39/22

really [32]  16/5 17/16 31/9 31/11 32/7
 34/14 34/24 41/12 49/4 42/22 42/23
 46/13 49/13 51/16 52/18 53/23 53/25
 56/5 56/6 57/13 58/8 59/9 61/20 63/17
 66/6 67/5 70/5 72/6 73/16 76/5 79/16
 80/13
realtime [1]  23/4
reason [16]  8/9 10/2 20/21 31/7 40/13
 40/19 50/10 51/13 56/12 66/4 72/23
 75/3 76/12 76/23 80/5 80/21
reasonable [3]  52/17 77/3 77/15
reasonably [5]  15/1 23/19 24/2 31/14
 31/17
reasons [6]  11/6 23/9 47/10 47/14
 47/18 49/12
recalls [1]  19/8
receive [1]  22/23
received [6]  5/22 32/25 58/9 58/13
 59/4 59/5
receiving [1]  64/21
recent [2]  64/1 75/5
recited [1]  72/22
recognize [1]  36/6
recognizing [1]  70/9
recommendation [1]  4/16
record [7]  9/13 10/2 10/11 13/2 18/4
 19/14 81/12
recorded [1]  72/4
records [2]  72/1 72/3
red [1]  69/2
redepose [2]  82/17 82/24
reduced [1]  28/21
references [1]  50/4
referred [2]  21/4 33/8
referring [5]  12/21 33/5 33/14 33/15
 51/21
refers [1]  14/8
refuse [1]  7/15
regard [7]  9/12 51/7 51/14 80/17 81/6
 81/10 81/24
regarding [1]  76/9
regardless [3]  33/17 60/16 61/3
regards [5]  9/25 13/20 20/23 40/7 40/7
registered [1]  18/24
regulations [1]  86/8
rejected [1]  64/1
related [7]  41/14 55/8 59/20 59/25
 61/23 61/25 64/20
relates [4]  30/21 38/17 59/16 62/10
relating [3]  8/20 20/1 54/8
relations [2]  34/3 34/24
relationships [1]  62/2
relatively [1]  24/17
release [1]  38/6
relevance [1]  53/24
relevant [8]  53/13 53/23 64/12 64/14
 68/16 70/5 73/1 73/13
reliance [1]  13/24
relied [2]  46/25 47/15
relies [1]  8/9
rely [4]  8/10 9/24 20/21 49/13
relying [2]  56/17 67/24
remember [1]  7/3
remind [1]  79/6 84/16
reminded [1]  34/22
reopening [1]  83/6
repeat [1]  78/24
repeated [1]  44/3

**R**

repetitive [1] 43/22
rephrase [1] 41/8
reply [1] 15/10
report [18] 9/1 9/8 10/17 14/4 14/8 14/10 18/3 22/8 23/4 28/18 45/21 48/18 50/11 60/5 61/6 81/11 82/11 83/5
reported [1] 86/6
reporter [4] 1/25 2/22 3/12 86/17
REPORTER'S [1] 1/20
reporters [2] 43/13 43/16
reporting [1] 43/18
reports [6] 10/6 16/12 26/20 26/20 29/24 30/22
represent [1] 32/25
representation [1] 39/13
represented [1] 63/10
reproduction [2] 12/8 14/3
request [2] 7/6 67/20
requested [1] 7/13
requires [2] 56/16 56/17
reserve [1] 37/14
resistance [1] 63/6
resolve [2] 9/11 42/8
RESOURCES [3] 1/6 1/16 3/4
respect [4] 33/14 61/4 72/19 77/17
respectfully [6] 10/19 11/5 16/18 16/21 20/18 21/6
respective [1] 44/1
respond [2] 44/20 62/12
response [1] 28/11
responses [1] 81/4
responsible [1] 20/16
rest [1] 38/21
restricted [1] 75/10
restrictive [4] 60/17 75/4 77/6 77/10
result [1] 60/9
resulting [1] 54/11
rethink [1] 84/23
return [1] 5/22
reveal [1] 31/3
revealed [1] 45/20
revenue [1] 18/15
review [1] 50/20
rhetorical [1] 61/8
rid [1] 80/6
ridiculous [1] 51/2
right [46] 3/10 3/23 5/6 5/16 6/18 7/8 7/19 9/3 13/19 14/17 16/23 19/10 21/17 21/20 26/1 28/16 29/25 32/2 32/8 32/9 33/4 34/2 36/24 40/15 42/5 44/25 49/15 51/12 52/9 52/22 53/10 55/23 57/7 57/19 59/6 59/8 67/4 69/5 72/8 72/16 73/20 74/7 78/20 81/16 84/9 85/10
right-hand [1] 13/19
rights [4] 41/1 41/5 49/14 60/18
rise [1] 65/17
risk [1] 29/20
rival [1] 63/15
ROBERT [1] 2/11
robert.ellison [1] 2/15
role [1] 75/3
rolled [1] 81/18
room [4] 2/23 5/17 31/16 82/14
Rosenberg [1] 4/16

Rosenberg's [1] 3/24
round [3] 11/23 11/23 11/25
rule [16] 42/3 42/18 42/22 66/3 70/14 71/4 72/17 75/3 75/8 76/11 76/24 76/25 80/3 80/22 80/24 80/25
ruled [1] 50/21
rules [4] 40/9 40/21 69/4 70/15
ruling [10] 16/22 33/20 48/3 52/16 58/19 64/9 71/8 71/18 72/8 80/1
rulings [3] 6/2 20/4 51/5
run [2] 11/3 49/5
running [1] 63/21

**S**

said [21] 15/22 18/20 19/2 23/23 37/9 44/7 44/10 44/21 46/1 49/3 52/3 54/14 60/4 64/3 69/12 69/23 71/10 72/6 73/22 78/1 80/24
sale [2] 14/10 19/10
sales [6] 17/20 22/23 33/18 41/2 41/11 48/10
same [11] 3/22 18/15 30/17 30/18 35/15 35/15 35/19 36/11 39/8 39/12 46/1 54/6 74/6
San [1] 2/19
sanctioned [1] 51/1
sanctioning [1] 50/19
sanctions [1] 4/1
saw [2] 47/3 48/17
say [31] 7/18 10/21 13/7 13/10 15/4 19/19 30/17 31/10 37/20 38/1 38/14 41/23 42/1 45/5 47/13 48/6 52/7 52/17 54/5 61/25 62/5 66/8 68/24 69/24 71/14 72/24 73/1 74/22 75/11 77/14 79/16
saying [17] 22/5 24/1 37/12 38/23 47/3 47/4 54/6 54/13 60/19 62/23 63/4 63/5 65/18 67/18 68/12 69/1 69/22
says [7] 13/7 39/8 55/18 56/11 60/12 60/20 79/9
scene [1] 65/16
scenes [1] 25/24
SCHECTER [2] 2/11 55/2
schedule [1] 5/24
scheme [2] 62/21 62/25
scientific [1] 15/23
scope [1] 41/5
SCOTT [1] 2/11
screen [2] 25/16 25/24
scurry [1] 49/24
seal [6] 50/18 50/20 50/21 50/25 50/25 51/4
seat [1] 65/24
SeatGeek [2] 14/7 14/12
seats [2] 35/5 35/6
second [4] 13/13 16/12 17/16 75/14
Secondly [1] 39/16
secrecy [2] 31/17 31/19
secret [26] 22/20 23/17 23/18 24/18 24/19 25/4 25/11 25/23 28/2 28/6 29/3 29/3 29/9 30/11 31/12 31/14 34/7 34/16 35/25 38/24 39/3 39/17 39/20 54/11 54/17 58/3
secrets [10] 21/21 21/22 22/13 28/23 32/18 35/16 35/19 38/19 54/8 55/9
section [4] 6/23 54/21 56/13 86/4
Section 1030 [1] 54/21
see [26] 6/7 6/16 7/17 12/8 12/11

12/14 13/18 13/19 13/23 16/14 18/19 20/9 22/20 23/4 25/12 25/18 25/16 43/2 44/8 51/10 51/13 61/7 61/17 76/3 82/5 84/19
seek [3] 4/11 5/4 54/22
seeking [1] 27/17
seem [1] 43/22
seemed [2] 43/21 69/22
seems [10] 8/1 8/5 8/25 35/1 40/5 47/25 59/9 70/7 70/14 82/10
seen [4] 10/6 11/25 41/15 42/6
sell [1] 33/12
selling [2] 36/15 37/18
send [2] 46/5 48/24
sending [1] 78/25
sense [5] 19/5 42/20 46/21 77/8 77/13
sensible [1] 19/16
sent [1] 6/23
sentence [3] 40/18 40/25 41/8
separate [3] 5/3 20/17 29/13
separated [1] 83/2
separately [1] 63/10
separation [1] 7/10
September [2] 58/9 69/1
September 14th [1] 69/1
September 21st [1] 58/9
Sequoia [2] 10/9 16/3
serve [2] 4/10 27/17
service [2] 63/16 63/23
services [4] 33/25 51/13 64/7 65/21
set [4] 49/8 82/4 83/23 83/25
sets [1] 75/6
settle [4] 40/4 40/5 49/23 54/6
settlement [7] 5/17 46/6 51/22 53/11 53/12 54/2 83/15
several [5] 10/12 66/12 70/5 70/6 78/2
shadow [1] 41/18
Shall [1] 14/18
share [3] 26/21 31/8 43/13
shared [2] 30/7 30/8
she [2] 43/12 68/10
short [3] 17/1 56/5 56/6
short-circuit [1] 17/1
shorten [2] 52/5 52/8
shortens [1] 52/10
should [25] 4/4 16/4 16/5 19/23 35/1 35/8 38/2 39/17 39/23 40/5 41/21 41/23 42/1 47/19 53/19 54/1 57/9 57/20 59/10 61/17 71/7 71/8 78/7 78/12 80/7
shouldn't [4] 50/6 50/20 78/10 84/2
show [5] 14/15 23/14 38/7 38/12 73/19
showed [2] 10/14 29/18
showing [6] 60/5 68/19 76/18 76/19 76/21 76/24
shown [2] 63/1 64/17
shows [2] 18/13 25/24
shred [1] 5/14
shredder [1] 5/14
side [10] 13/19 48/23 49/5 50/23 50/24 51/1 55/22 68/13 78/22 79/23
side's [1] 49/5
sided [1] 53/8
sideline [1] 67/7
sides [1] 71/20
sign [1] 4/19
signed [1] 69/2
significant [1] 19/13

**S**

silence [1] 74/3
Similarly [1] 18/18
simple [1] 68/20
simply [3] 18/1 41/16 75/7
since [6] 16/1 41/15 42/12 74/18 81/1
82/9
sit [1] 48/6
sitting [3] 11/13 39/18 44/24
situation [2] 65/9 77/9
six [4] 28/22 58/13 59/19 80/7
skip [1] 6/5
slide [11] 12/7 12/16 13/14 13/23 14/2
14/20 16/11 16/14 18/10 18/19 18/23
slides [4] 11/16 18/9 21/5 21/7
small [1] 77/11
Snapchat [1] 15/16
Snapshot [1] 20/25
so [163]
soften [1] 65/9
software [5] 23/3 24/10 25/8 25/15
25/17
sold [6] 9/10 10/7 10/18 14/7 15/1
18/24
solely [1] 18/5
solid [1] 48/15
some [36] 6/1 6/2 8/8 11/22 17/1 19/3
23/13 24/17 25/4 25/21 28/15 29/8
29/8 30/14 31/2 32/20 37/16 38/3
43/24 48/5 48/11 52/13 53/2 54/5 54/7
54/19 55/1 60/24 62/8 69/13 71/11
72/9 73/14 74/3 78/2 83/19
somebody [9] 19/9 24/4 31/10 46/10
47/4 69/10 69/11 69/22 81/18
somehow [2] 29/12 64/5
someone [2] 8/11 73/11
something [23] 7/14 15/7 16/7 22/19
23/16 24/23 39/9 39/14 42/1 46/6
56/11 61/22 64/2 66/7 68/18 68/21
69/21 69/23 71/7 78/4 79/20 80/2 83/7
sometime [1] 82/4
sometimes [5] 50/23 65/5 65/6 80/18
80/20
somewhat [3] 17/10 28/24 43/22
somewhere [3] 33/5 48/22 73/21
SONGKICK [39] 1/6 1/17 8/7 8/14
10/10 11/9 15/14 18/20 19/1 20/25
22/24 23/10 23/24 26/7 26/12 27/9
27/13 27/22 30/16 30/18 35/23 40/19
40/21 60/12 63/7 64/23 66/3 66/17
68/6 68/10 69/9 69/19 70/11 72/20
72/24 73/3 73/9 76/8 85/14
Songkick's [2] 18/11 66/8
soon [1] 79/24
sooner [1] 81/23
sorry [8] 11/15 11/16 12/18 67/18 74/6
77/1 84/2 84/2
sort [9] 19/8 27/2 35/25 43/20 45/17
48/12 60/9 61/11 75/14
sorts [2] 18/25 60/22
sound [1] 24/18
sounds [3] 5/6 60/14 60/24
speak [3] 3/10 4/4 6/19
speaking [1] 68/23
speaks [1] 11/12
Special [4] 45/1 46/2 46/5 47/12
specific [7] 8/20 27/23 33/7 47/18

47/18 48/2 75/10
specifically [5] 27/22 39/20 58/20
59/25 64/19
specificity [1] 75/15
specifics [1] 39/16
speculative [1] 8/18
speeds [1] 43/18
speedy [2] 49/14 84/11
spell [1] 43/14
spend [1] 42/10
spending [1] 46/18
spent [1] 22/9
spoke [4] 66/16 66/19 66/21 78/11
squarely [1] 52/15
stake [1] 71/19
stand [1] 71/3
standalone [1] 34/21
standing [6] 54/23 54/25 55/5 55/15
56/23 57/10
start [9] 7/21 10/6 15/14 20/24 49/4
49/8 49/16 49/21 74/16
start-up [3] 10/6 15/14 20/24
starts [1] 80/6
state [3] 3/6 3/11 10/1
stated [1] 11/6
statement [2] 40/16 57/2
statements [10] 43/5 49/1 54/2 69/8
70/8 70/8 70/10 70/25 72/4 78/14
STATES [3] 1/1 86/4 86/9
statute [1] 33/2
statutory [1] 49/15
stay [3] 11/13 12/19 84/16
stealing [1] 35/16
stenographically [1] 86/6
step [3] 75/9 76/11 76/17
Stephen [1] 69/19
stepping [1] 65/7
steps [1] 75/7
stepwise [1] 75/6
stick [1] 77/22
sticks [1] 35/22
still [3] 7/5 33/10 56/24
stipulate [2] 53/6 79/21
stipulation [2] 53/9 79/19
stop [1] 80/11
stores [3] 25/8 25/9 25/12
Street [5] 2/5 2/18 2/23 2/23 19/12
String [1] 53/10
stripes [1] 69/2
strong [2] 7/23 24/17
strong-willed [1] 7/23
StubHub [2] 14/6 14/11
study [1] 48/13
stuff [6] 31/24 42/25 50/19 52/2 83/11
83/22
subject [2] 55/8 69/7
submissions [1] 78/14
submit [5] 4/18 10/19 43/12 71/15
78/13
submitted [12] 10/12 11/18 20/10 21/8
26/17 42/6 43/16 50/11 68/14 69/17
76/13 79/19
submitting [1] 42/11 51/4
subpoenas [3] 4/10 4/17 4/20
subset [3] 32/7 33/7 34/7
subsidiaries [1] 27/16
subsidiary [1] 20/15
subsidiary's [3] 62/17 62/20 62/22

substance [2] 48/5 68/23
substantial [1] 63/19
substantive [1] 74/25
succeed [2] 34/4 34/4
such [3] 37/12 54/7 65/20
suffered [1] 58/7
suffers [1] 56/12
sufficiency [2] 57/6 57/15
sufficient [1] 57/4
suggest [2] 41/7 79/18
suggesting [1] 29/24
suggestion [2] 81/24 82/19
suggests [2] 71/7 76/24
Suite [2] 2/13 2/18
suited [1] 74/12
suits [1] 56/2
SULLIVAN [1] 2/2
summary [14] 5/21 20/10 30/4 33/20
34/13 39/25 40/8 52/16 59/10 63/18
63/25 64/9 64/18 78/1
Sunday [1] 81/4
supplemental [2] 58/10 76/13
support [7] 9/4 9/13 10/1 10/3 10/11
10/11 48/11
supported [1] 11/6
suppose [4] 6/16 23/23 56/23 57/16
supposed [1] 68/15
supposedly [1] 75/17
sure [18] 4/13 6/25 18/22 21/24 46/12
46/13 48/17 51/16 62/9 66/11 67/5
67/22 70/2 70/21 71/20 71/24 74/24
75/19
suspect [1] 21/12
swear [1] 31/17

**T**

table [1] 10/17
tailor [1] 70/2
take [22] 23/3 42/25 43/17 44/13 45/5
47/9 47/16 47/25 48/19 48/21 53/2
55/25 56/3 64/24 74/14 74/18 75/12
78/22 81/22 82/12 83/19 85/4
taken [5] 26/19 32/1 51/8 74/8 84/21
takes [1] 80/12
taking [6] 17/23 18/1 49/4 74/10 82/25
83/15
talk [9] 11/11 11/14 21/21 22/10 46/14
51/19 51/20 71/4 82/1
talked [4] 4/8 6/6 63/2 73/12
talking [7] 13/24 25/19 29/10 52/3
59/23 61/20 63/5
talks [1] 14/4
target [1] 29/21
targeted [1] 72/10
Tech [1] 34/18
tell [14] 25/20 38/2 41/21 41/22 42/22
50/11 52/4 52/6 52/19 53/23 56/5 79/3
81/8 82/2
telling [1] 65/3
tells [1] 23/7
ten [2] 40/2 45/10
tentative [7] 8/3 9/11 9/19 17/6 20/4
21/15 71/7
tentatives [1] 50/15
term [1] 56/11
terms [6] 28/13 29/22 31/3 37/24
53/12 66/24
TERUYA [2] 2/3 76/7

**test [5]** 25/3 25/3 55/19 72/2 76/25

**testified [2]** 46/24 47/14

**testify [13]** 8/17 9/5 9/6 9/9 45/23 47/2 47/5 51/14 55/11 68/2 68/18 69/12 73/12

**testimonial [1]** 59/2

**testimony [18]** 8/22 9/24 13/23 15/25 24/7 24/16 43/21 51/12 52/6 52/12 53/18 68/1 69/8 70/2 70/25 73/13 73/18 80/17

**text [1]** 56/9

**than [25]** 5/5 8/12 11/13 15/4 15/7 15/11 15/25 23/10 27/13 34/3 39/11 44/11 44/18 49/24 57/14 57/22 61/8 63/23 68/11 68/14 74/9 75/7 75/22 80/8 85/3

**thank [13]** 16/24 19/22 40/16 50/3 55/4 72/14 78/18 78/19 79/8 85/9 85/10 85/18 85/19

**Thanksgiving [1]** 82/7

**that [450]**

**that's [51]** 5/25 7/25 9/11 15/12 18/22 18/22 19/17 21/24 24/6 24/11 25/3 25/25 27/6 27/11 31/12 31/19 32/4 32/7 36/20 36/23 37/21 38/7 41/25 42/10 42/19 48/17 50/25 56/9 56/22 58/16 60/19 61/12 62/14 66/3 66/24 69/3 69/4 69/13 70/9 72/10 72/23 73/5 73/16 76/5 78/11 82/25 83/18 83/19 83/24 84/12 85/16

**The Complaint [1]** 33/6

**theft [2]** 24/2 39/3

**their [41]** 7/12 12/11 15/18 16/16 22/22 23/14 24/9 27/16 28/8 29/20 29/22 33/24 35/8 35/8 35/10 35/13 35/25 35/25 36/18 37/2 37/7 37/20 38/7 38/21 39/13 40/23 43/9 43/17 47/10 55/7 60/10 60/14 63/22 67/10 68/6 70/11 73/1 75/17 75/21 79/10 84/16

**them [55]** 5/7 5/12 5/13 5/14 8/11 17/7 21/10 22/10 23/11 26/10 28/5 29/18 30/2 30/10 30/13 30/14 30/19 31/17 31/21 32/21 32/25 35/12 37/4 37/5 38/4 38/6 38/7 41/23 43/6 43/25 45/12 49/9 49/13 53/23 54/22 58/1 59/20 60/22 60/25 63/21 66/14 67/17 71/16 71/16 74/10 74/23 77/25 79/3 79/3 79/6 80/22 80/23 82/11 82/12 85/16

**themselves [4]** 11/8 13/25 30/12 36/3

**then [36]** 3/10 7/15 8/4 18/16 24/5 26/7 36/25 38/7 40/25 41/25 42/17 48/3 49/22 50/17 52/1 53/9 53/14 54/15 55/25 57/16 62/21 63/9 65/7 65/10 69/6 69/23 72/5 73/22 74/12 76/19 76/20 76/24 84/6 84/12 84/15 85/5

**theories [2]** 65/19 66/18

**theory [1]** 75/21

**there [85]** 3/17 3/24 4/1 4/1 4/21 4/24 5/7 9/12 9/15 10/1 10/3 10/10 12/14 12/25 17/9 18/3 23/13 23/15 24/3 24/8 25/13 26/9 27/12 27/12 27/15 27/15 27/17 27/23 27/24 30/14 31/2 31/6 31/6 31/7 32/6 32/23 33/2 34/8 36/18 36/20 38/9 40/2 40/3 45/12 45/17

47/23 48/5 48/6 48/10 48/11 48/14 48/18 49/3 50/7 50/10 51/17 52/17 53/6 53/13 53/24 54/1 54/13 55/11 55/15 57/21 57/24 58/8 58/24 59/1 59/1 61/14 64/22 64/23 69/20 70/5 70/6 70/6 73/17 75/13 77/10 77/23 79/17 82/21 82/23 82/25

**there'll [1]** 53/17

**there's [42]** 4/22 8/21 9/3 9/10 19/11 20/20 24/17 24/24 25/21 27/18 28/7 28/15 31/20 40/16 42/16 43/2 45/8 47/4 49/11 49/14 51/14 52/19 53/18 55/17 58/20 58/23 64/4 68/18 69/25 71/19 72/3 73/9 73/14 74/3 76/18 76/25 79/9 79/11 79/22 80/22 82/18 83/1

**Therefore [1]** 10/19

**these [45]** 3/7 5/2 13/25 16/21 18/2 18/15 21/7 32/16 36/6 38/1 38/2 40/1 44/19 45/11 45/16 45/20 47/15 48/14 51/8 52/24 53/15 54/1 54/19 59/16 64/4 64/16 64/21 65/5 65/6 65/12 65/12 65/16 65/25 66/2 66/17 69/6 69/24 70/24 71/10 71/15 71/18 71/25 72/6 73/3 73/24

**they [163]**

**they'd [2]** 27/25 38/1

**they'll [1]** 31/11

**they're [28]** 7/7 13/18 23/8 23/8 25/12 32/16 35/11 36/8 37/19 39/3 41/12 43/5 43/10 47/7 47/9 47/16 47/18 49/9 53/14 58/6 60/13 60/19 65/13 70/8 71/13 73/5 73/19 75/23

**they've [1]** 66/20

**thing [16]** 17/25 18/15 30/18 37/14 38/20 39/9 39/12 42/10 44/25 50/7 52/22 54/7 62/14 82/3 83/10 85/11

**things [27]** 18/22 18/25 19/15 24/18 24/19 28/9 29/6 29/11 35/22 36/25 38/19 40/1 50/20 50/21 51/8 52/24 60/22 61/12 61/25 62/2 66/11 68/2 68/24 71/18 72/6 75/22 80/3

**think [73]** 4/2 5/24 7/5 9/8 18/19 19/5 19/17 24/17 24/20 28/7 31/9 31/11 31/22 33/3 33/9 34/14 39/25 40/1 41/12 41/22 42/8 42/13 42/14 44/6 44/10 47/9 47/25 48/6 48/19 48/21 49/8 49/17 49/23 50/3 51/19 51/24 51/25 52/9 53/14 53/18 53/19 54/1 54/12 54/18 54/23 54/23 59/15 63/17 70/1 70/2 72/16 74/2 74/11 74/17 75/13 75/22 77/8 77/20 78/7 78/12 79/14 81/17 81/25 81/25 82/2 82/5 82/18 82/21 82/22 83/13 83/23 85/1 85/8

**think there's [1]** 82/18

**thinking [2]** 44/24 48/22

**thinks [1]** 11/23

**third [5]** 16/2 16/20 28/20 31/2 32/17

**third-party [2]** 16/2 16/20

**this [150]**

**those [44]** 4/20 6/9 9/19 11/1 11/25 14/11 18/12 29/7 30/3 30/9 32/12 37/15 38/3 38/9 38/18 40/5 41/2 41/11 41/17 42/15 42/21 43/16 43/17 44/3 45/2 45/23 46/25 55/10 60/2 61/10 62/11 62/21 68/8 70/3 72/5 73/8 73/15 75/22 75/24 79/5 81/10 81/11 81/19

81/23

**though [6]** 6/7 7/5 21/3 39/9 40/18 68/2 68/18 77/10

**thought [6]** 30/6 30/8 44/5 44/9 48/2 50/7

**thoughts [2]** 8/3 9/19

**threaten [1]** 63/20

**threatened [1]** 73/7

**threats [2]** 73/8 73/15

**three [12]** 10/4 14/22 18/13 28/22 47/4 59/5 59/20 59/21 63/19 65/5 73/2 78/22

**threshold [2]** 56/14 56/19

**through [12]** 5/23 10/16 37/8 40/23 42/21 46/6 47/9 48/1 54/18 69/11 69/11 74/8

**throughout [1]** 15/9

**ticket [3]** 41/2 41/3 41/11

**Ticketfly [2]** 14/7 14/12

**ticketing [17]** 10/18 14/6 15/2 16/4 16/19 17/18 18/4 19/2 19/19 33/24 37/3 51/13 52/21 63/16 63/23 64/7 65/21

**TICKETMASTER [57]** 1/10 1/13 5/2 9/16 20/8 20/8 20/13 20/14 20/17 20/20 20/22 22/25 23/10 23/11 23/21 23/24 24/11 24/21 24/23 25/1 26/9 26/19 26/22 27/13 27/22 35/24 36/1 36/2 36/4 36/9 36/15 36/19 36/24 37/13 40/19 40/20 40/23 41/1 52/23 53/2 54/5 60/3 60/21 61/13 63/7 63/11 63/20 63/24 64/16 65/1 65/4 65/6 65/8 65/9 65/22 66/4 70/11

**Ticketmaster's [6]** 37/25 40/22 63/13 64/15 65/22 66/5

**tickets [22]** 17/4 18/24 23/25 27/15 33/12 33/19 36/15 37/8 37/12 37/15 37/17 37/20 38/1 38/2 38/3 38/6 38/6 60/3 60/12 60/20 63/22 65/23

**TicketsNow [2]** 14/6 14/11

**tied [1]** 66/8

**ties [2]** 65/19 65/19

**tim.omara [1]** 2/20

**time [43]** 3/12 9/6 15/18 22/10 23/11 24/20 27/18 38/18 40/12 42/10 42/12 42/14 42/24 44/1 44/3 44/5 44/8 44/18 44/22 46/9 46/20 46/21 48/20 49/4 49/6 49/22 51/6 53/24 57/15 61/2 78/21 80/12 80/23 81/6 81/7 81/8 82/10 82/11 83/10 83/19 84/17 85/1 85/2

**timely [1]** 42/9

**times [2]** 68/11 78/2

**TIMOTHY [1]** 2/17

**tinkering [2]** 74/12 74/14

**Title [1]** 86/4

**today [8]** 6/2 15/16 27/15 39/23 73/1 74/23 75/12 78/22

**together [3]** 43/23 71/16 84/6

**told [5]** 5/3 5/4 30/25 49/9 73/13

**too [11]** 5/3 30/13 39/1 46/1 46/9 46/20 49/3 51/25 71/19 79/11 79/11

**took [1]** 42/21

**tool [1]** 39/8

**toolbox [4]** 30/24 38/18 38/20 38/22

**toolboxes [2]** 22/18 22/22

**tools [4]** 22/15 30/17 30/24 35/15

**top [1]** 52/9

**T**

**topic** [1]  54/6
**total** [3]  44/6 44/7 60/3
**trade** [25]  21/21 22/13 23/17 23/18
28/2 28/23 29/3 29/3 31/12 31/14
32/17 34/7 34/16 35/16 35/19 38/19
38/24 39/3 39/17 39/19 54/8 54/11
54/16 55/8 58/2
**transaction** [7]  9/1 12/24 13/1 15/19
17/19 17/23 18/5
**transactional** [1]  13/5
**transactions** [1]  16/19
**transcript** [3]  1/20 86/5 86/7
**transcripts** [1]  81/11
**translating** [1]  23/4
**treasure** [1]  35/25
**treated** [1]  28/6
**TREBICKA** [2]  2/4 55/21
**trial** [37]  5/18 6/4 7/13 9/24 16/7 40/10
41/19 44/23 45/3 45/14 47/13 47/16
49/7 49/14 49/16 49/25 53/24 59/1
59/1 59/7 62/6 62/7 71/7 74/16 74/18
74/18 76/3 78/22 79/19 80/7 81/24
82/4 82/7 82/8 84/9 84/11 85/6
**trials** [2]  49/8 84/11
**trickery** [1]  16/16
**tried** [4]  5/14 40/6 40/21 77/22
**tries** [1]  73/12
**trouble** [1]  37/9
**true** [2]  60/8 86/5
**truth** [2]  70/16 70/19
**try** [18]  6/22 27/25 37/5 37/11 37/11
40/3 40/6 40/12 44/9 45/6 49/12 51/7
71/20 71/21 72/24 73/19 74/13 80/12
**trying** [10]  11/2 17/21 25/20 37/7
44/19 49/23 49/24 54/25 60/6 75/19
**Tuesday** [1]  81/5
**Tuolumne** [3]  76/15 76/16 77/6
**turn** [3]  45/15 67/16 67/19
**turning** [2]  13/22 14/2
**turns** [1]  36/12
**two** [17]  4/1 4/2 6/6 6/9 11/18 18/8
40/1 40/9 43/19 43/23 49/21 55/12
58/10 60/3 74/22 75/22 85/3
**two-page** [1]  58/10
**tying** [4]  64/7 66/15 66/24 78/5
**type** [1]  50/22
**types** [2]  66/12 72/10
**typically** [1]  37/24

**U**

**U.K** [2]  27/2 29/20
**U.S** [2]  27/1 29/20
**U2** [1]  45/6
**ultimately** [1]  41/16
**uncontested** [1]  62/15
**under** [17]  7/12 34/18 34/18 50/18
50/20 50/21 50/25 52/5 51/4 61/3
66/3 69/4 70/12 75/9 75/9 76/11 78/6
**underlining** [1]  12/13
**underlying** [2]  65/5 75/17
**undermine** [2]  76/21 76/23
**understand** [18]  9/10 20/6 23/16 29/1
32/23 36/5 37/10 40/17 40/25 46/8
48/9 51/15 58/19 62/6 62/24 66/11
69/24 76/4
**understanding** [5]  4/15 5/1 7/9 25/22

31/13
**understood** [3]  30/1 41/10 58/18
**unfair** [2]  34/12 34/18
**Unfortunately** [1]  84/8
**UNITED** [3]  1/1 86/4 86/9
**unjust** [1]  9/12
**unlawful** [2]  8/8 62/1
**unless** [7]  19/11 48/9 49/16 49/17 69/3
73/13 79/9
**unnecessary** [1]  51/6
**until** [8]  4/15 6/8 9/11 17/8 50/10
53/24 55/12 58/25
**unusual** [1]  43/15
**up** [42]  5/14 7/3 10/6 11/23 12/23
14/16 15/10 15/14 15/18 16/11 17/22
18/9 19/10 20/24 20/24 21/25 24/14
25/24 28/24 39/19 39/22 42/3 43/18
44/11 46/16 46/17 47/23 51/9 56/4
58/11 64/5 64/18 65/10 68/25 68/25
73/2 73/22 79/15 80/10 83/20 84/23
84/24
**updates** [1]  64/21
**upon** [3]  17/3 19/3 61/5
**upstart** [1]  30/20
**urge** [1]  45/24
**URQUHART** [1]  2/2
**us** [15]  30/19 33/15 35/5 38/11 40/9
44/23 45/20 55/14 56/5 66/6 75/15
82/5 82/14 82/15 83/23
**use** [20]  15/2 15/8 15/11 15/23 21/6
21/7 24/22 29/15 29/25 30/13 50/24
53/15 53/19 63/11 63/22 65/3 66/3
70/18 79/23 80/23
**used** [26]  7/2 8/20 8/25 11/8 12/9
13/20 15/8 16/18 16/19 16/20 18/20
22/15 22/22 22/24 23/2 24/10 25/8
27/22 30/14 30/17 31/19 31/20 51/18
51/25 54/16 77/19
**users** [1]  18/24
**uses** [2]  19/14 19/14
**using** [9]  9/4 14/21 24/22 60/13 63/6
67/8 69/9 70/11 70/11
**usually** [3]  28/5 28/7 84/11

**V**

**valid** [2]  45/22 80/19
**validated** [2]  19/20 61/24
**validation** [2]  17/11 18/3
**valuable** [2]  30/7 30/8
**valuation** [10]  9/4 9/6 9/7 9/9 14/22
15/13 17/18 17/22 18/21 21/2
**valuations** [1]  14/1
**value** [19]  9/1 10/4 10/22 10/24 11/3
11/9 13/5 13/5 13/7 13/20 14/10 15/12
15/17 15/19 17/19 19/13 21/9 54/11
54/18
**valued** [5]  10/9 10/14 10/15 18/4 18/12
**values** [3]  11/1 16/15 19/15
**valuing** [1]  14/4
**variation** [1]  75/13
**various** [5]  3/18 3/18 22/15 49/11 69/6
**venue** [10]  33/11 33/16 33/18 33/24
36/14 36/16 37/12 38/2 51/12 52/18
**venues** [7]  27/21 27/21 36/9 37/4 39/9
39/14 52/25
**verbal** [1]  48/11
**verdict** [4]  78/24 78/25 79/12 79/15
**verge** [1]  50/19

**verify** [1]  49/13
**version** [1]  79/7
**vertically** [3]  66/2 66/16 67/1
**very** [20]  10/20 15/15 20/19 21/7 30/6
39/20 40/12 40/18 42/2 43/22 47/9
47/18 47/18 56/9 60/7 71/22 72/11
77/11 79/9 85/19
**video** [1]  81/10
**videos** [1]  68/25
**view** [1]  27/19
**vignettes** [3]  44/20 45/2 45/16
**VIOLA** [1]  2/4
**violation** [3]  33/22 33/23 56/12
**violations** [1]  23/15
**violatrebicka** [1]  2/9
**vis** [2]  75/4 75/4
**vis-à-vis** [1]  75/4
**volume** [15]  13/8 13/9 17/19 17/23
17/25 18/1 18/6 18/14 18/16 18/17
19/6 19/7 19/10 19/11 51/3

**W**

**wait** [6]  6/7 7/17 12/17 58/25 73/22
76/3
**waiting** [1]  4/13
**waits** [1]  85/15
**waiver** [1]  84/11
**WALL** [11]  2/16 3/21 4/25 5/19 14/15
16/24 19/12 40/9 47/25 62/23 65/18
**Walter** [1]  48/25
**want** [26]  5/13 6/7 6/12 11/11 12/2
12/14 20/3 21/14 22/4 22/10 38/3
42/10 42/13 43/8 43/8 50/24 52/25
62/7 71/18 73/24 77/18 79/15 79/21
79/22 81/22 83/10
**wanted** [5]  24/22 26/12 38/14 48/14
82/6
**wants** [6]  23/9 28/12 39/16 53/15 71/4
71/14
**warning** [2]  30/9 57/21
**was** [112]
**wasn't** [5]  20/17 38/9 39/10 48/15
48/18
**waste** [1]  3/12
**wasting** [1]  42/14
**Water** [1]  15/22
**waterfall** [1]  37/8
**WATKINS** [3]  2/10 2/16 3/21
**way** [27]  12/13 19/16 20/15 21/9 25/5
30/14 31/25 35/19 36/18 37/2 41/8
51/17 51/20 61/20 62/9 68/2 68/18
68/21 70/13 71/6 71/11 73/18 74/12
75/6 80/15 82/23 84/8
**ways** [4]  8/25 55/18 77/19 77/25
**we** [177]
**we'd** [2]  38/6 38/6
**we'll** [7]  36/25 46/15 51/10 57/16
78/21 79/2 81/11
**we're** [26]  4/9 4/25 5/17 10/19 11/2
15/3 15/8 31/25 33/14 33/15 44/20
54/18 58/2 58/19 59/16 59/23 61/6
61/20 64/13 67/22 74/20 75/19 78/12
80/8 83/14 83/20
**we've** [13]  5/22 6/5 7/9 7/13 10/6
28/19 63/2 64/17 66/20 78/2 78/14
81/17 81/17
**weekend** [2]  22/9 44/8
**weekends** [1]  81/2

W

**weekly [2]** 29/23 30/21
**weeks [4]** 49/21 55/12 59/5 85/3
**weigh [1]** 77/1
**weight [1]** 38/20
**well [52]** 4/18 5/6 6/21 8/1 10/11 11/6 11/7 12/3 12/17 16/3 23/13 24/1 28/11 28/15 29/2 29/5 29/17 30/1 30/13 30/23 31/13 34/23 36/11 38/24 38/25 41/7 42/2 46/4 48/5 48/17 49/21 52/14 53/8 54/20 55/20 55/23 57/18 58/15 59/23 62/23 63/1 63/9 67/15 72/5 76/2 76/11 78/16 79/16 81/17 82/2 82/18 84/5
**well-established [1]** 76/11
**well-supported [1]** 11/6
**went [3]** 15/18 37/23 69/23
**were [69]** 3/24 4/1 4/1 4/2 4/11 10/18 11/1 11/8 12/12 13/20 14/7 15/4 17/7 20/10 22/15 24/22 24/22 25/8 26/6 26/8 26/25 27/9 27/12 27/13 27/17 27/23 29/19 29/20 29/22 29/24 29/24 30/6 30/7 30/7 30/8 30/8 31/20 32/14 32/14 32/17 32/20 34/8 36/2 36/3 36/17 37/18 39/3 39/22 43/19 43/25 44/3 44/9 45/20 54/25 55/10 55/11 56/22 57/22 58/25 63/8 63/9 63/10 67/24 68/15 70/6 74/10 80/18 82/4 85/20
**weren't [5]** 4/17 30/1 30/3 72/4 81/19
**WESTERN [1]** 1/3
**what [100]**
**what's [14]** 4/3 14/20 19/3 22/17 25/6 25/12 25/23 26/4 28/10 28/25 34/3 35/2 81/24 83/13
**whatever [6]** 17/2 22/3 38/10 61/3 72/13 79/21
**when [25]** 11/8 11/12 14/24 23/3 28/5 30/2 36/12 37/8 38/9 41/20 45/5 45/15 45/19 46/13 46/24 55/12 59/18 64/19 71/5 73/11 78/21 79/3 80/6 81/22 84/16
**where [35]** 7/11 10/17 12/23 13/24 14/4 15/22 23/4 23/7 26/25 26/25 27/24 36/2 37/17 38/10 46/1 50/18 54/10 55/17 60/4 60/12 60/20 61/7 63/8 63/10 63/19 65/5 66/7 69/22 72/18 76/18 76/25 77/1 77/9 82/7 84/1
**whether [24]** 6/8 8/6 17/18 25/4 25/4 25/21 27/1 33/17 34/23 41/25 43/5 43/25 44/1 44/25 45/6 52/9 53/17 56/22 57/25 61/12 66/13 75/1 77/3 79/17
**which [57]** 5/21 8/14 8/21 8/23 8/23 10/14 11/20 11/22 13/13 14/25 15/15 17/1 17/3 17/25 18/10 18/14 19/13 22/9 25/7 26/8 26/21 28/8 29/21 29/21 30/14 34/18 34/22 40/22 40/22 42/6 43/12 43/19 45/14 48/1 54/3 56/5 56/16 56/23 58/10 58/11 59/22 60/3 60/5 60/8 60/14 61/23 62/2 68/9 71/22 74/13 75/21 76/17 77/19 78/8 81/8 83/20 85/2
**whichever [1]** 42/12
**While [1]** 74/20
**who [32]** 3/7 3/13 3/14 19/9 24/22 24/22 26/5 27/7 27/9 27/20 29/20 36/2

36/10 36/13 36/15 36/17 39/19 43/4 43/10 46/11 47/3 47/9 47/17 48/1 48/25 50/10 50/19 56/4 85/10 69/12 71/13 84/14
**who's [4]** 23/5 23/7 23/7 84/14
**whoever's [1]** 50/25
**whole [3]** 42/4 70/13 81/21
**wholly [1]** 20/15
**wholly-owned [1]** 20/15
**why [21]** 4/21 4/24 5/9 19/13 19/17 20/21 23/9 23/16 42/23 42/24 50/7 51/14 52/17 56/22 59/14 59/15 68/12 69/9 72/23 82/23 85/16
**will [40]** 3/11 3/25 4/10 4/19 6/3 6/3 8/10 8/23 11/23 18/19 21/12 24/15 36/13 40/6 40/23 41/16 42/12 43/3 43/12 45/23 45/25 48/21 49/12 50/4 55/2 59/1 68/24 70/1 70/2 70/19 70/20 73/10 73/23 74/18 75/11 79/1 80/13 84/14 84/15 85/16
**willed [1]** 7/23
**Wilson [1]** 6/12
**wish [2]** 70/5 74/9
**within [8]** 8/2 14/14 29/11 41/4 64/12 65/14 70/3 84/9
**without [14]** 10/21 11/4 21/9 24/2 24/6 34/11 35/16 35/19 42/21 51/21 52/8 54/5 57/3 74/17
**witness [10]** 6/17 7/6 7/16 42/11 43/19 47/8 54/3 58/23 83/6 84/22
**witnesses [14]** 43/9 43/14 43/24 44/3 44/13 45/19 45/23 47/15 48/1 50/9 52/5 55/8 55/10 73/2
**witnesses' [1]** 52/6
**WOLFSON [4]** 2/3 6/10 6/14 34/22
**Wolfson's [3]** 11/19 11/20 12/16
**women [1]** 56/5
**won't [4]** 9/4 35/5 40/14 50/24
**wondering [1]** 44/25
**words [2]** 17/13 43/15
**work [9]** 4/20 5/2 29/20 42/15 46/10 51/23 53/25 81/1 84/4
**worked [3]** 30/25 44/7 68/24
**working [5]** 39/19 40/3 79/18 80/11 81/4
**works [4]** 31/9 31/12 75/25 84/8
**world [8]** 10/22 11/4 14/5 15/6 19/16 34/11 48/3 53/3
**worse [1]** 85/15
**worth [3]** 15/4 15/7 58/7
**would [82]** 4/21 4/24 5/7 5/14 5/22 6/19 6/24 7/5 7/15 8/19 10/22 11/3 13/22 14/16 14/25 15/6 15/21 16/21 21/6 23/21 24/5 24/21 27/2 27/3 27/3 27/24 28/13 33/1 36/13 37/24 38/4 38/7 38/8 38/8 38/12 41/7 41/15 42/23 42/24 43/6 43/7 44/11 45/24 46/18 46/20 47/8 47/10 48/2 48/6 48/25 49/6 50/7 50/10 51/23 51/25 52/8 53/5 53/25 53/25 54/4 55/15 58/1 60/4 61/13 71/20 74/16 75/11 77/1 77/10 77/24 78/13 80/1 82/12 82/14 82/22 82/23 83/2 83/9 84/4 84/18 85/8 85/11
**wouldn't [3]** 52/22 66/3 77/13
**written [3]** 32/12 32/14 34/10
**wrong [1]** 75/24
**wrongdoing [1]** 20/19
**wrongful [3]** 25/5 31/19 31/20

**Y**

**yeah [2]** 35/17 66/23
**year [3]** 58/9 60/21 60/22
**years [3]** 21/1 21/4 42/7
**yes [43]** 3/9 4/6 9/2 11/17 12/20 13/9 14/19 18/22 20/5 22/2 22/11 24/5 24/7 25/14 27/23 29/7 29/13 30/15 32/11 32/13 32/19 33/6 34/14 34/23 36/22 39/1 41/4 44/16 46/23 47/4 50/12 54/14 55/5 59/13 62/13 67/1 67/12 68/23 69/15 81/14 81/15 83/17 85/13
**yet [15]** 15/15 53/17 84/14
**you [264]**
**you'd [3]** 39/23 49/21 52/20
**you'll [7]** 6/2 12/8 13/23 30/6 43/12 53/19 82/5
**you're [19]** 4/13 4/23 6/8 11/13 28/5 29/5 29/10 31/23 33/5 42/11 44/12 44/23 49/2 49/23 56/6 63/5 63/6 66/13 67/16
**you've [6]** 10/21 51/3 51/8 59/19 66/15 83/18
**young [2]** 20/24 39/18
**your [165]**
**Yurkerwich [16]** 7/25 8/5 8/12 9/23 13/24 17/21 19/18 20/21 46/24 47/14 48/12 50/11 54/13 59/19 69/11 82/17
**Yurkerwich's [5]** 10/17 16/1 17/3 60/5 82/11

**Z**

**Zack [1]** 60/20
**Zaidi [4]** 4/12 22/16 26/22 51/11