1    QUINN EMANUEL URQUHART & SULLIVAN, LLP

2      Frederick A. Lorig (Bar No. 057645)
  fredlorig@quinnemanuel.com
3      Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
4      Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
5    865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
6    Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100
7
8    Attorneys for Complete
Entertainment Resources LLC

9                    UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

| | |
|---|---|
| Complete Entertainment Resources LLC d/b/a Songkick, | CASE NO. 15-cv-9814 DSF (AGRx) |
| Plaintiff, | **PLAINTIFF COMPLETE ENTERTAINMENT RESOURCES LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS** |
| v. | |
| Live Nation Entertainment, Inc.; Ticketmaster LLC, | The Honorable Alicia G. Rosenberg |
| Defendants. | Date:    October 23, 2017 |
| | Time:    3:00 p.m. |
| Ticketmaster LLC, | Crtrm.:   B, 8th Floor |
| Counter Claimant, | Trial Date:  November 14, 2017 |
| v. | |
| Complete Entertainment Resources LLC d/b/a Songkick, | **UNREDACTED VERSION** |
| Counter Defendant. | |

1

2

# **TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| TABLE OF AUTHORITIES | | | II |
| I. | PRELIMINARY STATEMENT | | 1 |
| II. | ARGUMENT | | 3 |
| | A. | Defendants' Attempts to Pass Off This Situation as the Result of Unavoidable "Human Error" are Questionable | 3 |
| | B. | Rule 37(c)(1) Sanctions Properly Apply Here | 4 |
| | C. | The Late Production Prejudiced Songkick's Discovery Process, Summary Judgment Positions, and Trial Preparation Efforts | 6 |
| | D. | Defendants' Opposition *Confirms* There Was Sufficient Recklessness and Frivolousness For the Bad Faith Required For Sanctions Pursuant to Court's Inherent Powers | 8 |
| | | 1. Withholding One Third of the Documents Mentioning the Plaintiff Demonstrates Recklessness | 8 |
| | | 2. The Frivolous and Reckless Disregard of Plaintiff's Discovery Rights is Tantamount to Bad Faith | 8 |
| | E. | The Sanctions Songkick Seeks Are Proportionate And the Only Way to Cure Prejudice | 10 |
| | F. | Defendants' "Offense is the Best Defense" Tactic Is Meritless | 11 |
| III. | CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*,
2016 WL 1611585 (D. Nev. Apr. 21, 2016) ...................................................... 4

*Aylus Networks, Inc. v. Apple Inc.*,
2015 WL 6667460 (N.D. Cal. Nov. 2, 2015) ..................................................... 5

*B.K.B. v. Maui Police Dep't.*,
276 F.3d 1091 (9th Cir. 2002) .......................................................................... 8

*Bioriginal Food & Science*,
2015 WL 10733384 (C.D. Cal. Aug. 24, 2015) ................................................ 7

*Estate of Gonzalez*,
2007 WL 3237635 (C.D. Cal. June 28, 2007) .................................................. 7

*First Mariner Bank v. Resolution Law Grp.*,
2013 WL 5797381 (D. Md. Oct. 24, 2013) ..................................................... 10

*Fjelstad v. Am. Honda Motor Co.*,
762 F.2d 1334 (9th Cir. 1985) .......................................................................... 4

*Hyde & Drath v. Baker*,
24 F.2d 1162 (9th Cir. 1994) ............................................................................ 4

*Knickerbocker v. Corinthian Colleges*,
298 F.R.D. 670 (W.D. Wash. 2014) ............................................................... 10

*N. Am. Watch Corp. v. Princess Ermine Jewels*,
786 F.2d 1447 (9th Cir. 1986) .......................................................................... 7

*Nagy v. FMC Butner*,
376 F.3d 252 (4th Cir. 2004) ............................................................................ 8

*Payne v. Exxon Corp.*,
121 F.3d 503 (9th Cir. 1997) ............................................................................ 4

*Plunk v. Vill. of Elwood, Ill.*,
2009 WL 1444436 (N.D. Ill. May 20, 2009) ................................................. 10

*Stanphill v. Health Care Service Corp.*,
2008 WL 2359730 (W.D. Ok. June 3, 2008) ................................................. 10

*Thomas v. Baca*,
2007 WL 738545 (C.D. Cal. Feb. 28, 2007), *aff'd*, 308 F. App'x 87
(9th Cir. 2009) .................................................................................................. 8

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir. 1990) .......................................................................... 9

Case No. 15-cv-9814 DSF (AGRx)

SONGKICK'S REPLY IN SUPPORT OF SANCTIONS MOTION

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ........................................................ 4, 6

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*,
  2013 WL 6159177 (S.D. Cal. Nov. 25, 2013) ................................. 10

**<u>Statutes and Rules</u>**

Fed. R. Civ. P. 37(c) ........................................................... 2, 5, 12

Fed. R. Civ. P. 37(c)(1) ........................................................... 4, 5

Fed. R. Civ. P. 26 .................................................................... 5

## I.    PRELIMINARY STATEMENT

Defendants refuse to take responsibility for the prejudice they caused Songkick after producing nearly 4,000 indisputably responsive and relevant documents (or 13% of their total production) six months after discovery closed and just over two months before trial.  Instead, Defendants forced Songkick to file for sanctions and then opposed that motion with questionable spin and mischaracterization.  For instance, Defendants claim the 4,000 withheld documents constituted only a "0.22% error rate" of their total review, but fail to explain how they could have inadvertently withheld almost *a third of all documents mentioning Songkick or CrowdSurge*.  Wolfson Decl. ¶ 3.  In other words, Defendants' error rate regarding their most obviously responsive and highly relevant documents is approximately 33%.

Defendants also claim the newly-produced documents are "cumulative" of earlier productions, when the substance of these documents proves otherwise.  For example, the new production provides evidence of a Ticketmaster "summit" designed "to pow-wow about strategy and [Ticketmaster's] platform plan to trump Crowdsurge," and at which Songkick's former Vice President, Stephen Mead, provided a "Crowdsurge tutorial/demo" so Defendants could "create [a] comparable platform[]" to Songkick.  Similarly, the new production includes withheld portions of previously-produced chains—including a previously-withheld email in which Zeeshan Zaidi interprets Live Nation CEO Michael Rapino's email to be "asking about 'fan clubs' as it relates to beating Crowdsurge" and developing a variety of tools "to trump what Crowdsurge offers."  Finally, the new production also reveals that, despite his contrary deposition testimony, Mr. Mead shared his Songkick Separation Agreement with Ticketmaster—the day *after* internal Ticketmaster conversations regarding a possible lawsuit with CrowdSurge.  There can be no doubt that withholding this evidence (and much more like it, as discussed below) prejudiced Songkick.  Songkick was unable to provide these documents to its

1  experts, use them to oppose summary judgment, or put them in front of key

2  witnesses at depositions.

3       Worse, the Opposition discloses for the first time that ***Defendants terminated***

4  ***employees Stephen Mead and Zeeshan Zaidi***—the two individuals at the heart of

5  Songkick's trade secret and Computer Fraud and Abuse Act claims, and whose

6  depositions Songkick asked the Court to re-open.  In other words, rather than bear

7  the risk of having these employees confronted with Defendants' newly-produced

8  documents, Defendants instead seek to wash themselves clean of Mr. Mead and Mr.

9  Zaidi's misconduct and suddenly claim that they "have no ability to compel [Mead

10  and Zaidi's] presence at a re-opened deposition." Such blatant gamesmanship is an

11  affront to the judicial process and demonstrates Songkick's need for the Court to

12  step in to rectify the prejudice.

13       Defendants' opposition, which claims that sanctions and adverse inference

14  instructions are permitted only in the face of spoliation, is wrong as a matter of law.

15  In cases involving the delayed production of documents, courts have advised juries

16  of such misconduct and instructed them of their ability to draw adverse inferences

17  therefrom, even where the wrongdoer did not spoliate the evidence.  Such a remedy

18  falls within the ambit of both Rule 37(c) and the Court's inherent power.

19       Although Defendants attempt to avoid this result by offering an elaborate

20  description of their document review process, no description accounts for

21  Defendants withholding more than 3 out of every 10 documents bearing Songkick's

22  own name—including parts of email chains that were otherwise produced.

23  Defendants' belated production also contradicts their earlier representations—both

24  to the Court (when Defendants ridiculed Songkick for complaining about gaps in

25  Defendants' productions) and to Songkick (during meet and confers recorded by a

26  stenographer)—and thus suggests that the documents were recklessly and

27  frivolously withheld.  Wolfson Decl. Ex. 1 at 41:24-42:2; 43:6-7 (Defendants'

28  counsel stating that if chains "hit upon the search terms they would have been

reviewed. And if they're responsive they should have been marked responsive. … you're just completely surmising that you think maybe there are more documents.").

Sanctions are the only way to remedy the prejudice Defendants have caused. These sanctions should include: (1) reopening the depositions of Zeeshan Zaidi and Stephen Mead on an expedited basis, and, on good cause shown, reopening the depositions of Michael Rapino and/or Jared Smith; (2) recommending to Judge Fischer that the Court provide adverse inference instructions regarding Defendants' misconduct; and (3) awarding Songkick its attorneys' fees for reviewing the new production and briefing this motion.

## II.     ARGUMENT

### A.     Defendants' Attempts to Pass Off This Situation as the Result of Unavoidable "Human Error" are Questionable

Defendants' rote recitation of their various document review protocols does nothing to disprove the facial recklessness of their document production. As an initial matter, Defendants' error rate was not 0.22%, as they claim. Fully 3 out of every 10 documents mentioning Songkick or CrowdSurge were not produced until September 11, making the error rate *31.3%* for documents mentioning the plaintiff in the case. Wolfson Decl. ¶ 3. That high of an error rate in the application of the simplest of responsiveness criteria reflects a systematic and pervasive problem.

Tellingly, Defendants offer *no explanation whatsoever* that anything other than recklessness accounts for the withholding of 4,000 documents:

- Defendants do not claim there was a technical glitch or clerical mistake; instead, they try to blame contract attorneys they trained and quality-checked.

- Defendants do not claim one or two "rogue" contract attorneys were responsible for marking 4,000 documents "non-responsive." Nor could they, since that would imply just two attorneys of a group of 40 withheld over 13% of Defendants' total production.

- Defendants previously represented their database enabled thread-suppression, which is an electronic tool used to ensure that emails in the same chains are tagged just once. But many of the documents Defendants wrongly withheld (~ 16.2% of emails) were part of chains produced during discovery. Wolfson Decl. ¶ 4. This suggests that

Defendants' reviewers manually changed the coding to withhold the documents, which in turn suggests that Defendants gave their contract attorneys inherently reckless and deficient review instructions.

Also questionable is what Defendants say (or refuse to say) in response:

- Defendants do not disclose the date when they discovered their purported "mistake." O'Mara Decl. ¶ 17.

- Defendants do not disclose the unspecified "supplemental search" they ran to identify the 4,000 newly-produced documents, nor the universe of documents reviewed in that search. *Id.* ¶ 18.

- Defendants claim their supplemental review of the (unspecified) universe of documents "revealed more documents that referenced 'Songkick' or 'CrowdSurge.'" *Id.* ¶ 18. This implies that Defendants only reviewed unproduced documents that hit on the initial string of "Songkick"-related search terms, and did not run any broader searches to confirm no additional responsive documents were wrongly marked "non-responsive" from the broader list of agreed search terms.

As explained in further detail below, Defendants' attempts to downplay the significance of the new production also do not square with the facts, thus further calling into question their claims it was no big deal and requires no Court action.

## B. Rule 37(c)(1) Sanctions Properly Apply Here

Although Defendants spend most of their brief arguing there was no "bad faith," they do not dispute that bad faith is unnecessary for the self-executing Rule 37(c)(1) sanctions Songkick seeks. *See Hyde & Drath v. Baker*, 24 F.2d 1162, 1171 (9th Cir. 1994); *see also Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1343 (9th Cir. 1985) ("We consistently have held that sanctions may be imposed even for negligent failures to provide discovery."). The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)," *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001), which include "consider[ing] all of a party's discovery misconduct …." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

A failure to timely supplement a production is automatically sanctionable *unless* Defendants can prove substantial justification or no prejudice (which they cannot, see *infra* Section II.C.). Here, Defendants do not dispute that the newly-

-4-

1  produced documents were (1) plainly responsive to Songkick's initial discovery

2  requests; (2) reviewed by attorneys trained and overseen by Defendants' counsel of

3  record; and (3) withheld as "non-responsive" until long after discovery closed.

4       Citing inapposite authority, Defendants argue there was nonetheless *no* failure

5  to supplement because their production came only 11 days after the senior-most

6  attorney working on the case was alerted of the deficiency.[1]  But Rule 37(c)(1) does

7  not have a "lead counsel" safe harbor, whereby Rule 26's duty to supplement is

8  triggered only when certain attorneys learn of the discovery deficiency.  Not

9  surprisingly, Defendants cite no authority in support of such a proposition.

10      Moreover, such a safe harbor plainly would not apply here, because, *during*

11 *discovery*, Songkick specifically raised concerns to Latham & Watkins partners and

12 senior associates that Defendants' production was missing portions of email chains.

13 Those counsel downplayed Songkick's concern by claiming it was a non-issue,

14 telling Songkick that if other emails in the same chains "hit upon the search terms

15 they would have been reviewed.  And if they're responsive they should have been

16 marked responsive. … you're just completely surmising that you think maybe there

17 are more documents."  Wolfson Decl. Ex. 1 at 41:24-42:2; 43:6-7.

18      Given the timing of Defendants' previous productions, it is virtually certain

19 they reviewed and withheld the newly-produced documents in 2016, well before the

20 discovery cutoff.  Defendants do not disclose when Latham & Watkins attorneys

21 first learned of the wrongful withholding, *see* O'Mara Decl. ¶¶ 16-17, but the record

---

24  [1]  In *Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, 2016 WL 1611585, at *3 (D. Nev. Apr. 21, 2016), the court found a delay in supplementation with documents reasonable where it occurred **by the discovery cutoff**, which was in line with the parties' agreement regarding supplements.  In *Aylus Networks, Inc. v. Apple Inc.*, 2015 WL 6667460, at *3 (N.D. Cal. Nov. 2, 2015), court found that disclosure of design around information in a patent case **well before the close of discovery and more than six months before the trial date** "seems timely" – but even if not, Apple met its burden in demonstrating no harm, unlike Defendants here.

is clear that Defendants' licensed attorneys reviewed the documents and were aware
of their contents.  Despite this, Defendants only produced the documents at the very
end of the case.  On this record, the production clearly was not timely, Defendants
implicitly admit they were (at the *very* least) negligent, and Defendants admit they
had no justification to withhold the documents.  Rule 37(c) applies.

### C.  The Late Production Prejudiced Songkick's Discovery Process, Summary Judgment Positions, and Trial Preparation Efforts

Defendants' claim that Songkick "cannot make the requisite showing of
prejudice" misapprehends the burdens here:  ***Defendants***, not Songkick, must show
no harm.  *Yeti by Molly*, 259 F.3d at 1107.  Defendants cannot meet that burden.

With no basis for withholding the documents, Defendants produced them only
*after* Songkick completed depositions, *after* Songkick prepared its expert reports,
*after* Songkick briefed summary judgment, and *after* a large majority of its trial
preparation efforts were well underway and near completion.  Under these facts,
Defendants' arguments that Songkick did not suffer prejudice are meritless.

First, Defendants argue Songkick will suffer no harm because the new
production will not be offered against Songkick at trial.  Br. at 17-18.  Given that the
documents strongly support Songkick's claims, that hardly counts.

Second, Defendants argue that the new production is "cumulative" of prior
discovery.  As an initial matter, this fails as an argument because it is no defense to
withhold the best evidence in a case just because other pieces of circumstantial or
less clear evidence supporting similar points were already produced.  Nor is it
permissible to withhold additive evidence of disputed factual matters.  The
"cumulative" argument is also incorrect.  Very briefly:

- Songkick learned for the first time of a Ticketmaster "summit" at which Stephen Mead walked multiple Ticketmaster Artist Services employees through CrowdSurge's confidential systems;
- Songkick learned for the first time that Mead forwarded his CrowdSurge Separation Agreement to Zaidi, thus confirming Ticketmaster knew Mead was breaching his confidentiality obligations;

- Songkick received evidence of **additional** misappropriation that Defendants try to downplay because, to quote Defendants' Appendix B, "Ticketmaster already produced evidence that Mead provided Ticketmaster with artist toolbox credentials";
- Songkick received several pieces of direct evidence confirming theories previously supported by circumstantial evidence only; and
- Songkick received several pieces of evidence more directly supporting its antitrust theories than it had before, when it had to rely on multiple documents to make the same fundamental points.

*See generally* Appendix A hereto.[2]

Third, Songkick's desire to proceed with trial does not demonstrate a lack of prejudice. Given the production's timing, as well as Songkick's inability to reopen discovery or the already-briefed summary judgment motion, trial has **already** been disrupted. *See N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (endorsing finding that "given the imminence of the trial date, [discovery violations] prejudiced [movant's] ability to prepare for trial"). Songkick is suffering the consequences of Defendants' untimely production by diverting significant resources to assessing and incorporating the production at this late date.

Defendants' generic contention that "ample case law" supports a finding of lack of prejudice is not borne out by the two cases they actually cite. In *Estate of Gonzalez*, 2007 WL 3237635, at *6 (C.D. Cal. June 28, 2007), there was no prejudice from late-disclosed expert reports because plaintiffs had timely disclosed the full substance of those reports, giving defendants five months to depose the experts. In *Bioriginal Food & Science*, 2015 WL 10733384, at *2 (C.D. Cal. Aug. 24, 2015), plaintiffs were not prejudiced by a late-disclosed damages claim because defendants timely disclosed the general magnitude of the claim and provided extensive documentary support, including an expert report, during discovery. Here,

_____

[2] Defendants' Appendix B [Dkt. 346-1] is an improper attempt to circumvent page limit restrictions. Assuming the Court does not strike Defendants' Appendix, Songkick's Appendix A provides the necessary response to the misstatements in Defendants' pleading.

Defendants did *not* timely inform Songkick of numerous, highly-relevant details contained within thousands of internal documents.  Consequently, Songkick was *not* able to invoke these documents or details in fact discovery, nor in post-discovery motion practice.  Try as they may, Defendants cannot obscure that these two realities—*i.e.*, Defendants' materially incomplete production and Songkick's inability to conduct fully-informed discovery—define Songkick's prejudice.

**D.    Defendants' Opposition *Confirms* There Was Sufficient Recklessness and Frivolousness For the Bad Faith Required For Sanctions Pursuant to Court's Inherent Powers**

The facts of the late production here, which Defendants' Opposition confirms, support a finding of bad faith.  Defendants do not dispute bad faith can be shown where there is "recklessness plus frivolousness;" Defendants are guilty of both here.

**1.    Withholding One Third of the Documents Mentioning the Plaintiff Demonstrates Recklessness**

As noted above, Defendants have no answer to the objective inadequacy of their review, including that they wrongfully withheld 4,000 documents, 3 out of every 10 documents which did not involve even marginally close responsiveness calls.  This course of conduct alone is more than sufficient to meet the recklessness standard.  *Thomas v. Baca*, 2007 WL 738545, at *9 (C.D. Cal. Feb. 28, 2007), *aff'd*, 308 F. App'x 87 (9th Cir. 2009) ("reckless conduct with knowledge of the applicable law or standard of conduct is tantamount to 'bad faith'") (internal citations omitted).

**2.    The Frivolous and Reckless Disregard of Plaintiff's Discovery Rights is Tantamount to Bad Faith**

Defendants argue that it makes "no sense" to accuse them of recklessness here, focusing almost entirely on "frivolousness."  Their arguments miss the point.

First, it is the non-responsive calls themselves that are conduct tantamount to bad faith here.  There was no legitimate or even marginally reasonable basis for withholding these documents, as Defendants have implicitly admitted throughout this process.  Such conduct implicates the Court's inherent sanctions power. *Thomas*, 2007 WL 738545, at *9; *cf. Nagy v. FMC Butner*, 376 F.3d 252, 256 (4th

Case No. 15-cv-9814 DSF (AGRx)

SONGKICK'S REPLY IN SUPPORT OF SANCTIONS MOTION

1  Cir. 2004) ("The word 'frivolous' is inherently elastic and not susceptible to

2  categorical definition.") (internal quotations omitted).

3     Second, even focusing on "frivolousness" as the controlling question, the

4  Ninth Circuit is clear that making unequivocal representations to the Court without a

5  reasonable basis for such claims is the definition of "frivolous." *See Townsend v.*

6  *Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

7     In the context of defending their overall document review process—which

8  was prompted by Defendants' incredible claim that, of 85,000 documents from LNE

9  custodians, exactly zero were responsive to Songkick's broader document

10  requests—Defendants' counsel represented to the Court that they "ha[d] searched

11  everything [the agreed document custodians] have in terms of electronic documents,

12  ran the agreed-upon search terms, ***and produced the existing documents***." Wolfson

13  Decl. Ex. 2 at 84:16-19 (emphasis added). Counsel then discouraged the Court from

14  finding that documents "weren't reviewed properly in this case and produced if they

15  were responsive." *Id.* at 95:20-21. Counsel had no reasonable basis to make these

16  representations; over 30% of documents mentioning Songkick were withheld on the

17  basis of "non-responsiveness."

18     Moreover, counsel's statements went far beyond process, forcefully denying

19  that "there's gaps in [Defendants' production] and that therefore somehow that they

20  should – if there had been a duty to preserve, that there would be more documents in

21  some way and that therefore they ought to get a forensic search." *Id.* at 84:19-24.

22  Again, counsel facially had no reasonable basis to make these claims, therefore

23  rendering the statements frivolous (in addition to the recklessness discussed above).

24     Last, Defendants now appear to claim the above statements are inapplicable,

25  because they were made in the context of a dispute regarding *LNE* custodians and

26  the "coding error" discovered here concerned *Ticketmaster* custodians only. Br. at

27  16. If counsel is now arguing that the statements they made to the Court about the

28  robustness of the LNE custodian collection, search, and review do not apply to the

1  Ticketmaster custodians, because that process specially applied to LNE custodians

2  only, that is itself a sanctionable subversion of the discovery process.

3  **E.    The Sanctions Songkick Seeks Are Proportionate And the Only Way to Cure Prejudice**

4       Defendants argue (at 25) that Songkick's request for targeted adverse jury

5  instructions is "fundamentally inconsistent" with applicable law, because such

6  instructions are only reserved for spoliation.  That is incorrect.  *Permissive* adverse

7  jury instructions—which Songkick seeks here—are frequently granted in cases

8  involving unduly-delayed productions.  *Stanphill v. Health Care Service Corp.*,

9  2008 WL 2359730, at *6 (W.D. Ok. June 3, 2008) ("Accordingly, the Court will

10  instruct the jury that it can draw inferences adverse to the Defendant based on its

11  failure to timely supplement its document production …"); *First Mariner Bank v.

12  Resolution Law Grp.*, 2013 WL 5797381, at *14 (D. Md. Oct. 24, 2013) (explaining

13  permissive adverse instructions are proper in a case involving wrongfully-delayed

14  documents).  Songkick's request is fully supported by the law.

15       Adverse inference instructions regarding (1) Defendants' discovery failings

16  and (2) Defendants' circulation and use of Songkick's trade secrets are perfectly

17  "commensurate to the sanctioned party's degree of fault and the other party's

18  prejudice." *See Knickerbocker v. Corinthian Colleges*, 298 F.R.D. 670, 681 (W.D.

19  Wash. 2014) (citing *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, 2013 WL

20  6159177, at *7 (S.D. Cal. Nov. 25, 2013)); *Plunk v. Vill. of Elwood, Ill.*, 2009 WL

21  1444436, at *14 (N.D. Ill. May 20, 2009) (granting adverse inference instructions

22  despite being "unable to determine whether these acts were intentionally done").

23       Defendants also argue (at 25) that adverse inference instructions are improper

24  because "Songkick has the documents at issue and can present them at trial."  That

25  is a disingenuous argument since Defendants now suddenly disclaim control over

26  Zeeshan Zaidi and Stephen Mead, the two primary witnesses against whom these

27  documents would be used.  Br. at 25 n.12.  The timing of these terminations smacks

28

of gamesmanship and, in fact, shows how much new information the September 11 production provides.  Nearly ten months ago, LNE CEO Michael Rapino testified that he would have fired these individuals "on the spot" for their trade secret misappropriation.  Dkt. 315-26.  He clearly did not.  Mr. Zaidi was apparently fired only *after* Songkick filed this motion seeking to re-depose him.  Wolfson Decl. Ex. 3.  His termination is thus an active interference with the judicial process and is itself further evidence of Defendants' bad faith discovery conduct.  The Court should order the opening of Messrs. Mead and Zaidi's depositions, and also order the disclosure of the terms of any separation agreement between them and Defendants, including whether such agreements provide Defendants with control over these former employees' presence at trial.

### F.    Defendants' "Offense is the Best Defense" Tactic Is Meritless

In a transparent attempt to distract the Court from the merits of Songkick's motion, Defendants try to make "issues" out of *Songkick's* recent conduct. These attempts at redirecting blame where it does not belong are meritless.

First, Defendants argue (at 22-23) that Songkick wrongfully withheld documents related to its fan club policy compliance efforts, but Songkick has already explained elsewhere that Defendants are wrong and Songkick made a reasonable and proportional production of documents responsive to that topic.[3]

Second, Defendants complain that Songkick did not produce a July 2017 agreement (*i.e.* a post-discovery contract) until September 2017.  Br. at 23-24. Songkick entered that agreement because, near the close of discovery, Defendants anticompetitively forced it out of business.  Defendants declined Songkick's offer to produce that contract earlier.  Wolfson Decl. ¶ 4.  Defendants claim Songkick

---

[3] Songkick extensively addresses this complaint in its Opposition to Defendants' Motion *in Limine* on this topic, which Songkick incorporates by reference.  [Dkt. 369-11].

should have produced yet another contract mentioned in that agreement. Songkick
was not required to do so since the party to that contract is not a party in this case
and not under Songkick's control.  Wolfson Decl. Ex. 4.[4]

      The obvious point of these side shows is to try and create the appearance of
parity between the parties' discovery efforts.  That is, unequivocally, a false
equivalency.  There is simply no comparison between one party's failure to timely
produce 4,000 indisputably responsive documents and another party's arguments
regarding disproportionality and a single nonresponsive contract.  Moreover,
Defendants cannot use these arguments to imply that Defendants should escape
sanctions because neither side has been "perfect."  Songkick does not argue
Defendants needed to be perfect; it seeks relief for what is unquestionably an
unfairly withheld cache of highly relevant documents that Defendants admit they
reviewed and never should have withheld.  Absent relief from the Court, it is far too
late for Songkick to put these documents to use for discovery purposes, because
Defendants are refusing even the most basic remedy of making the most important
custodians (*e.g.*, Zeeshan Zaidi and Stephen Mead) available for deposition before
trial, or even ***at*** trial.  This is inherently unfair and requires relief.

## III.   CONCLUSION

      For these reasons, Songkick respectfully reiterates its request that the Court
grant its Motion for Sanctions.  In addition, the Court should order Defendants to
disclose any separation agreements with Messrs. Zaidi and Mead, including whether
they provide Defendants with control over Zaidi's and/or Mead's presence at trial.

---

    [4]  Defendants reference a private email between Mr. Wall and a senior Quinn
Emanuel partner discussing the scope of the pending arguments. *See* Wall Decl. ¶ 7.
Defendants presumably believe this email is a defense against Defendants'
sanctionable conduct.  It is not.  The facts speak for themselves and plainly support
Rule 37(c) sanctions (requiring no bad faith) and also a finding that Defendants'
conduct was tantamount to bad faith (requiring no intent).  *See* Section II.B, *supra*.

Case No. 15-cv-9814 DSF (AGRx)
SONGKICK'S REPLY IN SUPPORT OF SANCTIONS MOTION

1

2    Dated:  October 9, 2017                    **QUINN EMANUEL URQUHART &
                                                 SULLIVAN, LLP**

3
                                                 By: */s/ Frederick A. Lorig*
4                                                    Frederick A. Lorig
                                                     Kevin Y. Teruya
5                                                    Adam B. Wolfson

6                                                    Attorneys for Plaintiff
                                                     COMPLETE ENTERTAINMENT
7                                                    RESOURCES LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28