LATHAM & WATKINS LLP
Daniel M. Wall (SBN 102580)
*dan.wall@lw.com*
Timothy L. O'Mara (SBN 212731)
*tim.o'mara@lw.com*
Andrew M. Gass (SBN 259694)
*andrew.gass@lw.com*
Kirsten M. Ferguson (SBN 252781)
*kirsten.ferguson@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Attorneys for Defendant LIVE NATION ENTERTAINMENT, INC. and Defendant and Counter-Claimant TICKETMASTER LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

Complete Entertainment Resources LLC d/b/a Songkick,

Plaintiff,

v.

Live Nation Entertainment, Inc.; Ticketmaster LLC,

Defendants.

Ticketmaster LLC,

Counter-Claimant,

v.

Complete Entertainment Resources LLC d/b/a Songkick,

Counter-Defendant.

CASE NO. 2:15-CV-09814 DSF (AGRx)

**DEFENDANTS AND COUNTER-CLAIMANT'S OPPOSITION TO SONGKICK'S *EX PARTE* APPLICATION FOR CLARIFICATION AND MODIFICATION OF THE COURT'S RECENT RULE 16(b)(4) ORDER**

The Honorable Dale S. Fischer

Trial: January 23, 2018

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

Page

I. BACKGROUND .... 2

A. The Court Opens Discovery Into Songkick's Asset Sale .... 2

B. Defendants Serve Subpoenas Pursuant To The Court Order .... 4

C. Songkick Attempts To Intervene In The Third Party Discovery .... 5

II. ARGUMENT .... 5

A. This Application Is Procedurally Improper On Multiple Grounds .... 5

1. The Application Should Be Referred to Magistrate Judge Rosenberg .... 5

2. The Court Should Deny the Application as an Improper Motion for Reconsideration .... 6

B. There Is No Basis For Any Relief Regarding The Noticed Depositions of Songkick's Executives .... 7

C. There Is No Basis For Any Relief Regarding The Third Party Discovery .... 9

1. Songkick Does Not Have Standing to Challenge the Third Party Subpoenas .... 10

2. Defendants' Third-Party Discovery is Reasonable .... 11

(a) The Order and Rule 45 Authorize Document Discovery .... 11

(b) Defendants Have Reasonably Limited the Scope of Their Discovery and the Entities from Whom They Seek It .... 12

III. CONCLUSION .... 14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ActiveRain Corp. v. Move, Inc.*, 2008 WL 11343022 (C.D. Cal. May 8, 2008) .......... 13

*Aydlett v. Flat Rate Moving & Storage Md. LLC*, 2017 WL 3579548 (C.D. Cal. July 27, 2017) .......... 6-7

*Cole v. City of N.Y.*, 2012 WL 1138570 (S.D.N.Y. Apr. 5, 2012) .......... 12

*Crispin v. Christian Audigier*, Inc., 717 F. Supp. 2d 965 (C.D. Cal. 2010) .......... 10

*In re Marvel Entm't Grp., Inc.*, 273 B.R. 58 (D. Del. 2002) .......... 13

*Miniace v. Pac. Martime Ass'n*, 2006 WL 335389 (N.D. Cal. Feb. 13, 2006) .......... 13

*Terteryan v. Nissan Motor Acceptance Corp.*, 2017 WL 3576844 (C.D. Cal. July 5, 2017) .......... 10

*Voice Int'l, Inc. v. Oppenheimer Cine Rental*, LLC, 2016 WL 6674989 (C.D. Cal. May 3, 2016) .......... 10

**RULES**

Fed. R. Civ. P. 30(b)(6) .......... *passim*

Fed. R. Civ. P. 45 .......... 3, 4, 11, 14

Fed. R. Civ. P. 45(a)(1)(C) .......... 11, 12

Local Rule 7-18 .......... 6

**TREATISES**

8A Charles Alan Wright et al, *Federal Practice and Procedure* (3d ed. 2010) .......... 12

9A Charles Alan Wright et al, *Federal Practice and Procedure* (3d ed. 2008) .......... 10

**OTHER AUTHORITIES**

Access Industries, Warner Music Group, https://www.accessindustries.com/holdings/warner-music-group/ .......... 4

Black's Law Dictionary (9th ed. 2009) .......... 12

Bloomberg, Company Overview of Warner Music Group Corp, https://www.bloomberg.com/ research/stocks/private/board.asp?privcapId=734078 .......... 4

The Hon. Dale S. Fischer's Procedures & Schedules, http://www.cacd.uscourts.gov/honorable-dale-s-fischer .......... 5

Songkick Sells Concert-Recommending Service to Warner, N.Y. Times, July 14, 2017, https://www.nytimes.com/2017/07/14/business/media/songkick-warner-concerts.html .......... 3

18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP'N TO PL.'S *EX PARTE* APPL. RE 16(b)(4) ORDER
NO. 2:15-CV-09814 DSF (AGRX)

iii

**INTRODUCTION**

Songkick's pattern of procedural gamesmanship continues. With no good reason to do so, Songkick filed this *Ex Parte* Application eight minutes before the start of the parties' long-scheduled mediation in this litigation—an important commitment that would, of course, tie up Defendants' lead counsel for most of the 24 hours Defendants would have to respond. In substance, the application advances arguments that are premature, for which Songkick has no standing, and which should have been filed with Magistrate Judge Rosenberg because it is entirely focused on discovery.

The immediate impetus for Songkick's filing is that the Court's previous order authorizing discovery into Songkick's lost enterprise value claim (ECF No. 548) has struck a nerve. Songkick is plainly afraid of what Defendants are going to learn by exercising the discovery rights the Court has provided. Indeed, the initial results of Defendants' review of Songkick's document production confirm the true motive for the Application – it calls Songkick's damages theories and prior representations to the Court into significant question. So in this preemptive manner, Songkick is trying to raise the specter of overbroad discovery to erect barriers to the very process the Court previously ordered. There is no sound basis for Songkick's complaints, much less its use of the inappropriate vehicle of an *ex parte* application to voice them. *See* Standing Order ¶ 11, ECF No. 9 ("Ex parte applications are solely for extraordinary relief.").

Songkick takes issue with both (a) discovery Defendants have sought from Songkick, and (b) third-party discovery Defendants are seeking from Songkick's investors. Any such complaints are both unfounded and unripe. Defendants have not yet taken a single deposition pursuant to the Court's order expressly authorizing them. Defendants received Songkick's document production over the weekend, and are in the process of reviewing it. Defendants have noticed the depositions of three Songkick officers, and will determine whether it makes sense to proceed with all, or

just some, of them once we have processed the documents. But as of now, there is little happening on this front, let alone anything that could warrant emergency relief.

With respect to Songkick's investors, the discovery has been a tougher slog. But Defendants are sorting that out with counsel for those third parties, who are the only ones with standing to raise objections. As a matter of law, Songkick has no standing to quash any subpoena issued to another company, and as a matter of practice, those companies—major venture capital firms—can (and do) speak for themselves are ably represented. For the Court's reference, we describe in some detail below and in the accompanying Declaration of Mark Seifert precisely what the state of play is on this third-party discovery. But the salient point is that *Songkick* is cannot be heard to complain about it.

Finally, the substance of the discovery Defendants are taking overwhelmingly justifies any burden it imposes (on all parties equally) in any event. In the few days that Defendants have been in possession of the documents Songkick has produced, it has become clear that the investigation this Court allowed has entirely vindicated Defendants' suspicion that the transaction at issue—the July 2017 sale of assets by Songkick to Warner Music, which is owned by Songkick's principal investor—was not arm's-length. That evidence irrefutably contradicts numerous assertions by Songkick's counsel, made both to Defendants' counsel and to this Court, that the transaction was fully above-board and profit-maximizing on its own terms, rather than a cynical litigation ploy to inflate Songkick's damages case in this litigation. The discovery Defendants are continuing to seek from Songkick and third parties is easily proportionate to the stakes and scale of this issue, which concerns a portion of Songkick's antitrust damages case worth $45 million, before trebling.

## I.   BACKGROUND

### A.   The Court Opens Discovery Into Songkick's Asset Sale

In mid-July 2017, Songkick announced that it had sold a number of assets—including the Songkick brand and "discovery app" business, which was the business

previously known as "Songkick" before that firm merged with the artist presale company CrowdSurge—to Warner Music Group Corp. ("Warner") for an undisclosed amount. *See* Songkick Sells Concert-Recommending Service to Warner, N.Y. Times, July 14, 2017, https://www.nytimes.com /2017/07/14/business/media/songkick-warner-concerts.html. On September 22, 2017—two months after the transaction's close—Songkick produced the asset purchase agreement to Defendants. Fisher Decl. Ex. 1. Two weeks later, Songkick served a supplemental report from its expert, David Yurkerwich, in which he relied on the asset sale in offering a new opinion about Songkick's lost business value damages claim.

On October 30, 2017, when the Court continued the trial to January 23, 2018, Defendants promptly requested limited discovery related to the asset sale, because it involved a $45 million damages issue. Songkick refused, and Defendants moved *ex parte* to reopen discovery regarding the asset sale. Defs.' *Ex Parte* Appl. for Limited Discovery, ECF No. 543.[1]

On November 6, 2017, the Court granted Defendants' application in full, holding that "Defendants are entitled to inquire into the circumstances of the sale . . . in order to probe whether the sale price is a meaningful true market value of the assets." Order Granting in Part and Denying in Part Defs.' Rule 37(c) Mot., ECF No. 548 at 3. The Court also signed Defendants' proposed order, which expressly authorized the issuance of "deposition subpoenas pursuant to Federal Rule of Civil Procedure 45 to Warner Music Group and any other third party reasonably knowledgeable of the July 2017 sale of Songkick's assets to Warner Music Group." *Ex Parte* Order at 1.

[1] Defendants' *ex parte* application to the Court included document requests that are substantially identical to those served on the third parties through Defendants' subpoenas. Fisher Decl. Ex. 2.

**B. Defendants Serve Subpoenas Pursuant To The Court Order**

Pursuant to the Court's order, Defendants served subpoenas seeking documents and a deposition on Warner on November 9, 2017. Seifert Decl. Exs. 7, 8. Within the same week, Defendants served substantially identical subpoenas on Songkick's three largest investors: Access Industries, Inc. ("Access"), Index Ventures (U.S.), Inc. ("Index"), and Sequoia Capital U.S. Venture Fund, L.P. ("Sequoia"). Seifert Decl. Exs. 1-6. Index and Sequoia are the two largest investors in Songkick other than Access, which owned 48.9% of Songkick as of March 2017. Fisher Decl. Ex. 3, Dep. of J. Martinez 35:1-38:16. Access' 30(b)(6) deponent in this litigation, Javier Martinez, testified that [REDACTED] [REDACTED].[2] *Id.* 23:4-16, 145:2-9.

Notwithstanding this Court's order, Access, Index, Sequoia, and Warner (collectively, the "Subpoenaed Third Parties") each served objections and responses to the subpoenas, refusing either to produce documents or a witness for deposition (or both).[3] Seifert Decl. Exs. 9-15. Defendants continue to meet and confer with the Subpoenaed Third Parties regarding their refusal to comply with the subpoenas. Seifert Decl. ¶¶ 25-26, Exs. 20-24.

---

[2] Mr. Blavatnik not only controls Songkick; he also owns many other businesses through Access, including (significantly for purposes of this opposition) Warner Music Group Corp. *See* Access Industries, Warner Music Group, https://www.accessindustries.com/holdings/warner-music-group/. Indeed, Mr. Blavatnik is the Vice-Chairman of Warner's board. *See* Bloomberg, Company Overview of Warner Music Group Corp, https://www.bloomberg.com/research/stocks/private/board.asp?privcapId=734078.

[3] One of the principal arguments advanced by the Subpoenaed Third Parties is that because the Court's order granting discovery expressly stated that depositions were authorized, *see Ex Parte* Order, the Court's order somehow prohibited document discovery. Seifert Decl. ¶ 20. Defendants have explained to the Subpoenaed Third Parties that their reading of the Court's order is unreasonable, and that Rule 45 specifically authorizes a party to obtain document discovery through a deposition subpoena. For the avoidance of doubt, Defendants re-served the Subpoenaed Third Parties with combined deposition and document subpoenas that include identical deposition topics and document requests as the prior subpoenas. Seifert Decl. Exs. 16-19.

### C. Songkick Attempts To Intervene In The Third Party Discovery

On November 9, 2017, three weeks before its document production, Songkick complained that Defendants' noticing of the depositions of Songkick's CEO, CFO and COO regarding the asset sale was unduly burdensome in light of the January 23 trial date. Fisher Decl. Ex. 4. Songkick preferred a single Rule 30(b)(6) deposition instead. On November 14, Defendants replied that it was impossible to make decisions regarding depositions until Defendants had received and reviewed Songkick's document production, and reminded Songkick that any interference with the parties' trial preparations caused by the depositions was a problem created by Songkick's failure to produce the asset sale agreement for three months. Fisher Decl. Ex. 5.

On November 30, again before making its production, Songkick demanded that Defendants unilaterally agree to limit their discovery from the Subpoenaed Third Parties and Songkick, "else [Songkick] will move for a protective order" from "Judge Fischer." Fisher Decl. Ex. 6. The parties subsequently exchanged emails but did not complete the meet and confer process before Songkick filed its premature *ex parte* application on the morning of mediation. Fisher Decl. Exs. 7-8.

## II. ARGUMENT

### A. This Application Is Procedurally Improper On Multiple Grounds

#### 1. The Application Should Be Referred to Magistrate Judge Rosenberg

This is, in substance, a discovery dispute. Paragraph 4(b) of the Standing Order entered in this action provides that "[a]ll discovery matters have been referred to the assigned magistrate judge." Initial Standing Order at 3, ECF No. 9; *see also* The Hon. Dale S. Fischer's Procedures & Schedules at ¶ 2, http://www.cacd.uscourts.gov/honorable-dale-s-fischer ("All discovery motions and stipulations, including those relating to protective orders, are to be calendared before the magistrate judge whose initials appear in parentheses after the case number.").

Magistrate Judge Rosenberg is the magistrate judge assigned to this action and has presided over numerous discovery matters throughout this case. *See* Notice of Assignment, ECF No. 6. Songkick's application—which Songkick framed as a "motion for a protective order" until Monday evening, *see supra* Section I.C—is a procedurally improper attempt to avoid Magistrate Judge Rosenberg's jurisdiction over discovery matters. Accordingly, the Court should refer Songkick's application to Magistrate Judge Rosenberg, where it should have been filed in the first instance (if at all).

**2. The Court Should Deny the Application as an Improper Motion for Reconsideration**

After Defendants advised Songkick that its motion must be heard by Magistrate Judge Rosenberg, and that Songkick lacked standing to move for a protective order on behalf of the subpoenaed third parties, Songkick reframed its application (albeit without even attempting to meet and confer on this basis with Defendants). In an apparent attempt to avoid Magistrate Judge Rosenberg, Songkick now attempts to characterize its application as seeking "clarification" or "modification" of the Court's order reopening discovery. *See Ex Parte* Order. But the Federal Rules do not provide for "motions for clarification or modification." Songkick's application is really an improper motion for *reconsideration*: it seeks to relitigate the issues briefed and decided by this Court's recent order, *id.*, granting Defendants leave to pursue the limited discovery it has barely begun to take.

Local Rule 7-18 provides that the only grounds for a motion for reconsideration are "(a) a material difference in fact or law that . . . could not have been known to the party moving for reconsideration at the time of such decision," "(b) the emergence of new material facts or a change of law," or "(c) a manifest showing of a failure to consider material facts presented to the Court." *See also Aydlett v. Flat Rate Moving & Storage Md. LLC*, 2017 WL 3579548, at *1 (C.D. Cal. July 27, 2017) (noting that the grounds for granting a motion for reconsideration

are "mistake, surprise, or excusable neglect; newly discovered evidence that, with reasonable diligence, could not have been discovered in time"). Songkick has not even cited Local Rule 7-18, let alone attempted to satisfy the standard it imposes. For that reason alone, the application should be denied.

### B. There Is No Basis For Any Relief Regarding The Noticed Depositions of Songkick's Executives

With respect to discovery that Defendants are seeking from Songkick, the request in the Application is relatively narrow: Songkick asks the Court to limit Defendants to a single Rule 30(b)(6) deposition of a Songkick employee because "there is no indication the Asset Sale was anything but an arms' length transaction." Pl.'s *Ex Parte* Appl for Clarification ("Pl.'s Appl.") at 6, ECF No. 558.

The relief Songkick seeks is at best premature. Defendants received Songkick's document production on Friday evening (December 1). There has been no opportunity to thoroughly review who the relevant document custodians appear to have been, much less analyze the substance of their correspondence and analysis. Defendants are under no obligation—certainly not one from the Court's prior order, nor one from the Federal Rules—to limit themselves to a Rule 30(b)(6) deposition is the sensible course forward here before even looking comprehensively at the material Songkick has disclosed.

That said, in just the preliminary stages of their review, Defendants have uncovered numerous documents that belie Songkick's representations to the Court that Songkick did everything it could to maximize the price of the asset sale, that Access had no influence over the asset sale, and that the valuation of legacy Songkick was the product of an arm's length transaction. Instead, the documents show that Songkick's focus was on a quick sale that would not dilute Access' ownership interest in Songkick.

For example, one email sent by Songkick CEO Matt Jones to a Warner employee described the process for selling the concert-discovery app business as

follows: [redacted] ” Fisher Decl. Ex. 9 at -163 (emphasis added). In another document discussed below, Songkick noted that [redacted] Fisher Decl. Ex. 12 at -057 (emphasis added). Given those restrictions and priorities, it is hardly surprising that Warner would be the highest bidder, given that only Access and its subsidiary had any insight into legacy Songkick's value.

Other documents similarly call the arm's-length nature of the transaction into question:

- [redacted]
- [redacted]
- [redacted]
- [redacted]

Defendants are only beginning to scratch the surface of Songkick's document production, and are concerned that Songkick's production is underinclusive in several respects, including Songkick's apparent failure to produce documents stored in Songkick's Google Docs system. Until Defendants have an opportunity to fully review these documents, however, any motion practice regarding whether depositions of particular Songkick employees are appropriate is unripe. That said, it certainly does appear, at first blush, that Songkick's representations to the Court that it sought nothing but the highest value for its concert-discovery app were false. *E.g.* Pl.'s Appl. at 7; Pl.'s Response to Defs.' *Ex Parte* Appl. at 7, ECF No. 546 ("Only a few submitted formal bids . . . . Songkick then took the highest bid offered. How that could be anything but an arms' length transaction is an issue Defendants blithely ignore").

### C. There Is No Basis For Any Relief Regarding The Third Party Discovery

Songkick's requests for various forms of relief with respect to third-party discovery fail for numerous reasons.

### 1. Songkick Does Not Have Standing to Challenge the Third Party Subpoenas

Federal courts, including courts in this district, have held that "a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."[4] *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973-74 (C.D. Cal. 2010) (Morrow, J.) (quoting 9A Charles Alan Wright et al, *Federal Practice and Procedure* § 2459 (3d ed. 2008)); *see also Terteryan v. Nissan Motor Acceptance Corp.*, 2017 WL 3576844, at *2 (C.D. Cal. July 5, 2017) (same) (Stevenson, M.J.); *Voice Int'l, Inc. v. Oppenheimer Cine Rental, LLC*, 2016 WL 6674989, at *3 (C.D. Cal. May 3, 2016) (same) (Stevenson, M.J.).

There are good reasons for this doctrine, including that when one actor seeks to interpose itself in a dispute between two other actors, the interloper may not have a complete picture of the relevant facts. That is precisely what has happened here. Moreover, even if Songkick had standing to object, its recitation of the state of play between Defendants and Songkick's investors is simply wrong in a number of critical respects:

- Songkick asserts that Defendants "[t]hreatened a motion to compel against Access Industries, even though it offered a Rule 30(b)(6) witness on the notice topics." Pl.'s Appl. at 6. In fact, Access offered only a two-hour deposition by videoconference, and also is refusing to produce documents, which prompted Defendants to initiate the meet and confer process with Access regarding a possible motion to compel, which is still ongoing. Seifert Decl. ¶¶ 13, 25-27 Exs. 9, 20, 24.

- Songkick asserts that Defendants "[t]hreatened a motion to compel against Index Ventures . . . even though it produced all the documents it has." Pl.'s Appl. at 5. In fact, Index is asserting numerous objections that may have limited its production, and is refusing to provide a witness for deposition despite the fact that it has admitted that it would take almost no time to educate a witness with Index's knowledge. Seifert Decl. ¶¶ 14-15, 25, 27, Exs. 10-11, 21.

---

[4] Songkick's papers do not contend that Songkick has any personal right or privilege in the Subpoenaed Third Parties' documents.

- Songkick asserts that Defendants "[t]hreatened a motion to compel against Warner Music Group, even though it offered the most knowledgeable deponent to testify in a Rule 30(b)(6) capacity." Pl.'s Appl. at 5. In fact, Warner asserted numerous objections and offered an employee hired only three months before the asset sale transaction, and has refused to educate that witness with Warner's collective knowledge, including board-level knowledge. Seifert Decl. ¶¶ 18-19, 25, 27, Exs. 14-15, 23. Despite that, Defendants offered to accept the employee's documents and testimony if Warner also offered Mr. Blavatnik's and Mr. Benet's board-level documents. *Id.* ¶¶ 25-27, Ex. 23. Warner refused, leading to the current dispute. Seifert Decl. ¶¶ 25, 27, Ex. 23.

- Finally, Songkick makes much of the fact that Defendants have subpoenaed four third-party depositions, Pl.'s Appl. at 6, while ignoring the fact that these depositions are limited in scope *to a single transaction*. Moreover, Defendants still have not obtained documents from the Subpoenaed Third Parties that would permit Defendants to determine whether the depositions are ultimately necessary.

Not only, then, is Songkick's effort to restrict Defendants' third-party discovery improper from the start. It also reflects significant mistakes of fact that distort the record of correspondence, the negotiations, and the progress of those third-party discovery efforts. There is no basis for the Court to do anything at all vis-à-vis companies other than Songkick from whom Defendants now seek discovery.

### 2.  Defendants' Third-Party Discovery is Reasonable

The discovery Defendants are seeking (and have not yet received) from third parties is perfectly reasonable in any event.

#### (a)  The Order and Rule 45 Authorize Document Discovery

Songkick argues, on behalf of the Subpoenaed Third Parties, that the Court's order reopening discovery impliedly prohibited document discovery from third parties. Even if Songkick had standing to make that argument (it does not), Songkick's strained reading of the Court's order is contradicted by Rule 45 and common sense.

Songkick's contention is predicated entirely on the last sentence of the Court's order, which provides that "Defendants may issue deposition subpoenas pursuant to

Federal Rule of Civil Procedure 45 to Warner Music Group and any other third party reasonably knowledgeable of the July 2017 sale of Songkick's assets to Warner Music Group." *Ex Parte* Order at 1. Songkick narrowly focuses on the term "deposition subpoenas," arguing that because the Court's order made crystal-clear that depositions were authorized, the Court must have intended to prohibit document discovery.

Rule 45 expressly provides that "[a] command to produce documents . . . may be included in a subpoena commanding attendance at a deposition." Fed. R. Civ. P. 45(a)(1)(C). Thus, a "deposition subpoena [issued] pursuant to Federal Rule of Civil Procedure 45," ECF No. 549 at 1, is a subpoena that can validly "command to produce documents." Fed. R. Civ. P. 45(a)(1)(C); *see also Cole v. City of N.Y.*, 2012 WL 1138570, at *3 (S.D.N.Y. Apr. 5, 2012) (noting that a "subpoena ordering the witness to appear . . . and to bring specified documents, records, or things" is "[a]lso termed deposition subpoena duces tecum.") (quoting Black's Law Dictionary 1563 (9th ed. 2009)); *id.* at *3-4 ("Rule 45(a)(1)(C) authorizes a subpoena to command production of documents at a deposition.") (quoting 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2108 (3d ed. 2010)). In short, the distinction Songkick is attempting to draw simply does not exist in the Federal Rules or the Court's order.

Songkick's objection not only ignores the Federal Rules, it also defies common sense. Depositions of the third parties without the benefit of documents would be inefficient, preclude Defendants from testing the veracity of the testimony, and undermine Defendants' efforts to take the discovery it needs to defend against Songkick's $45 million damages claim.

(b) **Defendants Have Reasonably Limited the Scope of Their Discovery and the Entities from Whom They Seek It**

Defendants have heeded the Court's directive to limit third party discovery to "Warner Music Group and any other third party reasonably knowledgeable of the

July 2017 sale of Songkick's assets to Warner Music Group." In accordance with the Court's order, Defendants have limited their discovery efforts to the parties to the transaction (Songkick and Warner) and Songkick's largest investors (Sequoia, Index, and Access). Defendants have also limited the scope of the deposition topics and document requests sought from each of the Subpoenaed Third Parties. In fact, each of Defendants' subpoenas includes substantially identical document requests and deposition topics as those that the Court approved in its order reopening discovery.

Songkick makes much of the fact that Defendants asked Warner's counsel if it would accept service of subpoenas on Len Blavatnik, the owner of Access and Vice-Chairman of Warner's board of directors, as well as Lincoln Benet, an Access employee and another member of Warner's board of directors. What Songkick fails to explain is that Defendants' request was prompted by Warner's counsel taking the remarkable position that Warner does not have possession, custody, or control of *any* documents in the possession of its directors. Seifert Decl. ¶¶ 25, 27 Ex. 23. That is incorrect as a matter of law, as documents in the control of a corporation's directors are within the corporation's control. *See Miniace v. Pac. Martime Ass'n*, 2006 WL 335389, at *2 (N.D. Cal. Feb. 13, 2006) (holding that corporation has control over its directors, including outside directors, and that production is therefore required); *ActiveRain Corp. v. Move, Inc.*, 2008 WL 11343022, at *2 (C.D. Cal. May 8, 2008) (ordering production of documents "provided to or discussed by [the corporation's] Board of Directors."); *cf. In re Marvel Entm't Grp., Inc.*, 273 B.R. 58, 74 (D. Del. 2002) ("[A] corporation acts through its board."). It appears this issue will be litigated before Magistrate Judge Rosenberg, Seifert Decl. ¶¶ 25, 27 Ex. 23, but Defendants are entitled to seek alternative, more efficient means of obtaining the discovery to which it is entitled, given Warner's obstreperousness on this point.

More generally, Defendants' efforts to review Mr. Benet's and Mr. Blavatnik's documents regarding the sale is entirely reasonable. The basis for the

18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP'N TO PL.'S *EX PARTE* APPL. RE 16(b)(4) ORDER
NO. 2:15-CV-09814 DSF (AGRX)

13

present discovery that Defendants are conducting is precisely that Mr. Blavatnik's ownership of *both* Warner and Songkick afforded ample opportunity for funny business regarding the pricing of the sale of Songkick to Warner, conducted in the course of this litigation, in the context of a nine-figure damages claim. He and his right-hand man, Mr. Benet, are plainly the key custodians from whom discovery is necessary: they would be the ones to have emails suggesting an interest to maximize litigation damages at the expense of fair market value, or otherwise affording indicia of a transaction that does not pass the smell test.

There is nothing "abusive" or "harassing" about an effort to subpoena these gentlemen individually, in the face of unfounded assertions by the entities they are affiliated with that the entities themselves cannot and will not produce them. Songkick's objections to this third party discovery are not only barred by law, but are also baseless.

## III. CONCLUSION

Defendants respectfully request that the Court refer Songkick's application to Magistrate Judge Rosenberg, or in the alternative deny it in its entirety.

Dated: December 6, 2017

LATHAM & WATKINS LLP

By: */s/ Daniel M. Wall*
Daniel M. Wall
Timothy L. O'Mara
Andrew M. Gass
Kirsten M. Ferguson

Attorneys for Defendant LIVE NATION ENTERTAINMENT, INC. and Defendant and Counter-Claimant TICKETMASTER LLC